## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

　　*Plaintiff*,

　　　　　　v.

JEFFREY LOWE,

LAUREN LOWE,

GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and

TIGER KING, LLC,

　　*Defendants*.

Case No.　　20-cv-423-JFH

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, United States of America, by authority of the Attorney General of the United States and through its undersigned attorneys, files this Complaint and alleges as follows:

### INTRODUCTION

1.　　This is a civil action against Jeffrey Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP LLC"), and Tiger King, LLC (together "Defendants") for violations of section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a)(1), (g), and violations of the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2134, 2159.

2.　　In January 2018, Jeffrey Lowe claimed to have "learned a lot about distracting, diverting attention, & using smoke and mirrors in the last few years." Lowe has said, "If we lose a lawsuit, we simply change the name and open another animal business someplace else, we all have multiple USDA licenses available." U.S. Department of Agriculture ("USDA")-APHIS-Animal Care Animal Welfare Complaint No. AC18-426, at 197 (May 18, 2018).

3.      To avoid federal investigation and inspection, Defendants have unlawfully established an unlicensed exhibition facility on an approximately 33-acre parcel of land in Thackerville, Oklahoma.  (See photo below).  The Lowes have dubbed the facility "Tiger King Park."



4.      Upon information and belief, the Lowes have granted film crews access to this facility. In public statements, including on the Internet, the Lowes have declared that the facility will operate for the foreseeable future as a film set for exhibiting Tiger King-related content.  Upon information and belief, Tiger King programming has been and will be available to the public through the paid subscription service Netflix®. The Lowes are also exhibiting animals in "shout out" videos made available to members of the public for a fee on the video-sharing platform, Cameo. (See photos below).



5.      Lauren Lowe also exhibits animals, including lions and tigers, on the paid subscription

online platform "OnlyFans" using the handle @tigerqueen_.

6.      The Lowes also have advertised to the public their intent to open the new "Tiger King

Park" for public exhibition.  The Lowes maintain a website at https://www.officialtigerking.com.

A link labeled "Animal Park" takes viewers to a page showing a white tiger, and stating:



7.     Other webpages advertise Tiger King Park apparel and other merchandise for sale. These webpages similarly exhort the public to purchase the merchandise to "HELP BUILD THE NEW TIGER KING PARK" and "Support the New Tiger King Park opening 2021!"



8.     According to recent inspection records and other sources, the Lowes possess

approximately 100 to 200 ESA-protected animals.  Upon information and belief, those animals are now housed at the Thackerville facility.  This facility is located in the midst of an otherwise residential, rural area.  While there could be more than 200 wild or exotic animals living at the site, the government has no information about the facility's provisions for water supply or waste disposal at the facility.  Upon information and belief, there is no municipal water or sewer service at the facility.

9.   Even when subject to federal inspection and oversight, the Lowes compiled a record of inadequate and inhumane treatment of animals, including ESA-protected animals.

10.   Prior to August 21, 2020, Jeffrey Lowe individually held AWA license 73-C-0230. Jeffrey Lowe, together with Lauren Lowe and GWEAP LLC, exhibited numerous species of animals, including ESA-protected animals, at a roadside zoo in Wynnewood, Oklahoma: Greater Wynnewood Exotic Animal Park ("GWEAP" or "Wynnewood facility").

11.   On August 14, 2020, USDA's Animal and Plant Health Inspection Service ("APHIS") suspended AWA license 73-C-0230.  USDA then filed an administrative complaint seeking permanent revocation of that license on August 17, 2020.

12.   On August 21, 2020, Jeffrey Lowe voluntarily terminated AWA license 73-C-0230. But the Lowes continue to exhibit animals without a required AWA exhibitor license and thereby attempt to avoid government investigation or inspection.

13.   In violation of federal regulations for animal exhibitors, during the last two years, the Lowes and GWEAP LLC failed to employ an attending veterinarian and failed to provide timely and adequate veterinary care to the animals in their possession.  The failure to have formal arrangements with an attending veterinarian, including a written program of veterinary care and regularly scheduled visits to the premises to ensure the health and well-being of the animals, has

resulted in the animals receiving inadequate and/or untimely care.

14.     The Lowes' animals have suffered from and continue to suffer from easily preventable or treatable conditions, which in some cases has caused the untimely death of animals.  Indeed, in the last two years, many animals have not been seen and/or treated by a veterinarian at all.

15.     The Lowes and GWEAP LLC have then burned or otherwise disposed of the carcasses, including tigers, in makeshift pyres.  (June 22, 2020 USDA Inspection Report, attached as Ex. 1 at 31):



16.     In violation of federal regulations for animal exhibitors, the Lowes and GWEAP LLC have regularly provided food to their animals that is unwholesome, unpalatable, and/or contaminated and of insufficient quantity and nutritive value to maintain the animals' good

health.  Several ESA-protected animals were and continue to be underweight or emaciated and/or suffering from nutritional deficiencies.  In the past year, these included metabolic bone disease in certain animals, which causes the animals to be lame, makes them more susceptible to fractures, in some cases prevents them from standing or walking, and may result in neurological problems.

17.    The Lowes and GWEAP LLC also thereby allowed animals to become extremely thin. This included a grizzly bear "Gizzy," observed with evident spinous process of vertebral bodies, hip bones, and scapula (See photo below and Ex. 1 at 19 & 32):



18.    In violation of the ESA, the Lowes and GWEAP LLC have routinely separated their Big Cat[1] cubs and ring-tailed lemur pups from their mothers at too early an age for exhibition and interstate transport to other roadside zoos, resulting in physical and psychological harm.

19.    In violation of the ESA and AWA regulations, the Lowes and GWEAP LLC have routinely forced their Big Cat cubs and ring-tailed lemurs to have direct contact with members of the public and each other.  This significantly disrupts and impairs them from carrying out their natural behaviors in a manner that is likely to result in significant physical and psychological injury.

---

[1] Big Cat refers to lions, tigers, and hybrids thereof.

20.     In violation of federal regulations for exhibitors, the Lowes and GWEAP LLC failed to maintain sanitary and safe conditions at the Wynnewood facility, resulting in, among other things, fly strikes.  These are large patches of painful ulceration on the animals' ears and legs caused by flies continuously attacking, biting, and penetrating the skin of an animal. (See photo below and Ex. 1 at 36 & 38):

 

21.     In violation of federal regulations for exhibitors, the Lowes and GWEAP LLC failed to maintain adequate enclosures.  This thereby allowed for at least one senior tiger to be attacked by other tigers, resulting in his death three days later.

22.     These actions and practices "harm" and "harass" ESA-protected animals in violation of the ESA's take prohibition.  The Lowes and GWEAP LLC also violated the ESA by possessing, delivering, carrying, or transporting these taken animals.

23.     Neither Jeffrey Lowe nor the other Defendants currently have a valid USDA Class C exhibitor license.  Nevertheless, Defendants continue to exhibit animals to members of the public without a USDA exhibitor license in violation of the AWA.

24.     Defendants' actions placed and are continuing to place the health of numerous animals in serious danger.  Defendants are in violation of AWA and its implementing regulations and standards.

25.    For the foregoing reasons, the United States complains and seeks a preliminary injunction, including an order permitting the United States immediate access to investigate and inspect the so-called "Tiger King Park" and determine the condition of many animals believed in peril thereon, as well as permanent injunctive relief.

## JURISDICTION AND VENUE

26.    The Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) (actions arising under the ESA); 7 U.S.C. § 2146(c) (actions arising under the AWA); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1345 (United States as plaintiff).

27.    Venue is proper in the United States District Court for the Eastern District of Oklahoma pursuant to 7 U.S.C. § 2159, and 28 U.S.C. § 1391.

28.    The Court may grant the requested relief under the ESA, 16 U.S.C. § 1540(e); AWA, 7 U.S.C. §§ 2146(c), 2159; and 28 U.S.C. §§ 2201, 2202 (declaratory and injunctive relief).

## THE PARTIES

29.    The Plaintiff is the United States of America.  Authority to bring this action is vested in the Attorney General of the United States pursuant to 28 U.S.C. §§ 516, 519; 16 U.S.C. § 1540(e)(6); and 7 U.S.C. § 2159.

30.    Upon information and belief, Defendant Jeffrey Lowe currently is a resident of Love County, Oklahoma.  Until the end of September 2020, Mr. Lowe resided at 25803 N. CR 3250, Wynnewood, Oklahoma 73096, which was the location of the Wynnewood facility.  Mr. Lowe was an owner and/or operator of the Wynnewood facility, overseeing day-to-day operations, managing animal care, acting as an animal caregiver, supervising employees and volunteers, and participating in USDA inspections.  Mr. Lowe also purports to be the President of GWEAP LLC acting on its behalf.  Mr. Lowe owns and exhibits the animals that are the subject to this action.

31.     After being ordered to vacate the Wynnewood property, *see Big Cat Rescue Corp. v. Schreibvogel*, No. CIV-16-155-SLP, 2020 WL 2842845 (W.D. Okla. June 1, 2020), Dkt. No. 152, Mr. Lowe relocated the animals to 21469 Jimbo Road, Thackerville, Oklahoma, 73459, and/or 21619 Jimbo Road, Thackerville, OK 73459  ("Thackerville facility").

32.     Defendant Lauren Lowe is the wife of Jeffrey Lowe and, upon information and belief, currently resides with him in Love County, Oklahoma.  Lauren Lowe also formerly resided at 25803 N. CR 3250, Wynnewood, Oklahoma 73096.  Lauren Lowe, as co-owner and/or co-operator of the Wynnewood facility, was fully involved its operation, including decisions on husbandry, diets, and veterinary care, and participated in USDA inspections.  She also handled the records, including inventory, acquisition, and disposition of the animals.  Lauren Lowe purports to be the Vice President of GWEAP LLC.  She is also a member of Tiger King, LLC. Lauren Lowe also owns and exhibits the animals that are the subject to this action.

33.     Defendant GWEAP LLC is an Oklahoma limited liability company located at 25803 N. CR 3250, Wynnewood, Oklahoma 73096.  On information and belief, GWEAP LLC owns and/or exhibits the animals that are the subject of this action.

34.     Defendant Tiger King, LLC is an Oklahoma limited liability company with its principal place of business at 21469 Jimbo Road, Thackerville, Oklahoma, 73459.  Tiger King, LLC was registered on May 15, 2020, and has the Trade Name "Tiger King Park."

35.     The Thackerville facility is located in a rural, residential area. (See photo below).  At the entrance of the facility, there is a big stop sign and a white rectangular sign which states the following: Private Driveway, No Trespassing, No Filming Permitted, 24-hour Armed Security, Violators will be Prosecuted, for contact information visit www.officialtigerking.com, Instagram symbol @tigerkingpark." (See photo below).





36.   Upon information and belief, Defendants own, possess, and/or exhibit the animals that are included in the subject of this action.

## LEGAL BACKGROUND

### I.   The Animal Welfare Act.

37.   The Animal Welfare Act was enacted to "insure that animals intended . . . for exhibition purposes . . . are provided humane care and treatment." 7 U.S.C. § 2131. The AWA is administered by the Secretary of Agriculture or his representative. 7 U.S.C. § 2132(b). The AWA authorizes the Secretary to "promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of [the AWA]." 7 U.S.C. § 2151. The Secretary has delegated his authority to the Administrator of APHIS.

38.   The AWA defines an "exhibitor" as "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary, and such term includes . . . zoos exhibiting such animals whether operated for profit or not." 7 U.S.C. § 2132(h); 9 C.F.R. § 1.1. Exhibitors must obtain and maintain a valid "Class C" license from the USDA. 7 U.S.C. §§ 2133, 2134; 9 C.F.R. §§ 1.1, 2.1-2.12.

39.   "Zoo" is defined as "any park, building, cage, enclosure, or other structure or premise in which a live animal or animals are kept for public exhibition or viewing, regardless of compensation." 9 C.F.R. § 1.1.

40.   The Secretary promulgated regulations and standards to govern the humane handling, care, treatment, and transportation by exhibitors, which includes the minimum requirements for handling, housing, feeding, watering, sanitation, ventilation, shelter from extreme weather and temperatures, and adequate veterinary care. 7 U.S.C. § 2143(a)(1)-(a)(2)(A). Exhibitors must

comply in all respects with the regulations and standards for the humane handling, care, treatment, housing, and transportation of animals.  9 C.F.R. § 2.100(a).

41.    With regard to food, it must be wholesome, palatable, and free from contamination and of sufficient quantity and nutritive value to maintain all animals in good health.  9 C.F.R. § 3.129(a).  Further, supplies of food must be stored in facilities which adequately protect it against deterioration, molding, or contamination by vermin.  9 C.F.R. § 3.125(c).  Refrigeration shall be provided for supplies of perishable food.  *Id.*

42.    With regard to sanitation, the standards mandate that "[a] safe and effective program for the control of insects, ectoparasites, and avian and mammalian pests shall be established and maintained."  9 C.F.R. § 3.131(d).

43.    With regard to facilities, indoor and outdoor housing facilities must be structurally sound and maintained in good repair to protect animals from injury and to contain the animals.  9 C.F.R. § 3.125(a).  Further, any surfaces that come in contact with nonhuman primates must be free of rust and jagged edges or sharp points that might injure the animals.  9 C.F.R. § 3.75(c)(1)(i)-(ii).

44.    With regard to nonhuman primates, such as ring-tailed lemurs, exhibitors must develop, document, and follow a plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates, and include specific provisions to address the social needs of nonhuman primates of species known to exist in social groups in nature.  9 C.F.R. § 3.81(a).

45.    With regard to veterinary care, each exhibitor shall have an "attending veterinarian" and assure that the attending veterinarian "has appropriate authority to ensure the provision of adequate veterinary care and to oversee the adequacy of other aspects of animal care and use."  9

C.F.R. § 2.40(a)-(a)(2).  The exhibitor "shall employ an attending veterinarian under formal arrangements."  9 C.F.R. § 2.40(a)(1).  The formal arrangements must include "a written program of veterinary care and regularly scheduled visits to the premises of the . . . exhibitor."  *Id.*  Each exhibitor must establish and maintain programs of adequate veterinary care that include, but are not limited to, "[t]he use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the availability of emergency, weekend, and holiday care," *id.* § 2.40(b)(2), and daily observation of all animals to assess their health and well-being, *id.* § 2.40(b)(3).  While the daily observation can be accomplished by someone other than the attending veterinarian, there must be a mechanism of direct and frequent communication so that timely and accurate information of problems of animal health, behavior, and well-being is conveyed to the attending veterinarian.  *Id.*

46.    The AWA, through its implementing regulations and standards, sets parameters and restrictions on the public exhibition of animals.  "Animals shall be exhibited only for periods of time and under conditions consistent with their good health and well-being."  9 C.F.R. § 2.131(d)(1).  During public exhibition, an animal must be handled so there is minimal risk of harm to the animal and to the public, "with sufficient distance and/or barriers between the animal and the general viewing public."  *Id.* § 2.131(c)(1).  In particular, "[y]oung or immature animals shall not be exposed to rough or excessive public handling or exhibited for periods of time which would be detrimental to their health or well-being."  *Id.* § 2.131(c)(3).

47.    The AWA requires the Secretary to make investigations and inspections as necessary to determine whether any exhibitor has violated any provision of the AWA or any regulation or standard issued thereunder.  7 U.S.C. § 2146(a).  The inspector shall have access to the places of business and the facilities, animals, and records.  *Id.*; 9 C.F.R. § 2.126.

48.     Exhibitors must make, keep, and retain records for at least one year pertaining to the purchase, sale, transportation, identification, and previous ownership of the animal, which fully and correctly discloses information concerning the animal purchased or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which is transported, sold, euthanized, or otherwise disposed of by that exhibitor (including records of any offspring).  7 U.S.C. § 2140; 9 C.F.R. §§ 2.8, 2.75(b)(1)-(3).

49.     Under the AWA, United States district courts "are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of [the AWA], and shall have jurisdiction in all other kinds of cases arising under [the AWA]," except in one instance not applicable here.  7 U.S.C. § 2146(c).  Whenever the Secretary has reason to believe that any exhibitor is placing the health of any animal in serious danger in violation of the AWA or regulations or standards issued thereunder, the Secretary shall notify the Attorney General, who may seek an injunction in the United States district court.  7 U.S.C. § 2159(a).

II.     **Endangered Species Act.**

50.     The AWA and ESA are distinct but complementary statutes, each with its own scope, purpose, and enforcement mechanisms.  The AWA provides for a standard of care and treatment of all animals exhibited in captivity; whereas the ESA provides for additional, heightened protections that apply to specific protected animals, including Big Cats, ring-tailed lemurs, jaguars, and grizzly bears.

51.     Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such [species]."  16 U.S.C. § 1531(b).

52.     The ESA defines the term "person" to include "an individual, corporation, partnership,

trust, association, or any other private entity."  16 U.S.C. § 1532(13).  The ESA defines the term

"species" to include fish or wildlife that interbreed when mature and the term "fish and wildlife"

as any member of the animal kingdom, including mammals, and any "offspring thereof."  16

U.S.C. §§ 1532(16), 1532(8). The ESA defines an "endangered species" as "any species which is

in danger of extinction," 16 U.S.C. § 1532(6), and a "threatened species" as "any species which

is likely to become an endangered species within the foreseeable future," *id.* § 1532(20).  The

ESA authorizes the Secretary of the Interior to administer the ESA with respect to terrestrial

species.  This authority has been delegated to the U.S. Fish and Wildlife Service.  16 U.S.C. §

1532(15); 50 C.F.R. § 402.01(b).

53.    Except as authorized by permit, the ESA makes it unlawful for any person to "take"

any endangered species within the United States.  16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. §

17.21(a), (c)(1).  Likewise, except as authorized by permit, the ESA prohibits any person from

taking of any threatened species within the United States listed prior to September 26, 2019,

unless the U.S. Fish and Wildlife Service has issued a species-specific 4(d) rule.  16 U.S.C. §

1538(a)(1)(G); 50 C.F.R. § 17.31(a), (c).  The ESA also makes it unlawful for any person subject

to the jurisdiction of the United States to attempt to commit taking, to solicit another to commit

taking, or to cause taking to be committed with such endangered or threatened species.  16

U.S.C. § 1538(g); 50 C.F.R. §§ 17.21(a), 17.31(a), (c).

54.    The ESA defines the term "take" to include "*harass, harm*, pursue, hunt, shoot, wound,

kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19)

(emphasis added).

55.    The term "harass" is defined by regulation to include an "intentional or negligent act or

omission which creates a likelihood of injury to wildlife by annoying it to such an extent as to

significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."  50 C.F.R. § 17.3.  This definition, when applied to captive wildlife, does not include generally accepted:  (1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act; (2) Breeding procedures; or (3) Provisions of veterinary care for confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife. *Id*.  The term "harm" is defined by regulation as an act which "kills or injures" an endangered or threatened wildlife.  *Id.*

56.     Under the ESA, it is also illegal to possess, deliver, carry, or transport any unlawfully taken endangered species, or any unlawfully taken threatened species listed on or prior to September 26, 2019, unless otherwise provided by a species-specific 4(d) rule.  16 U.S.C. § 1538(a)(1)(D), (G); 50 C.F.R. §§ 17.21(d), 17.31(a).  It likewise prohibits any person subject to the jurisdiction of the United States to attempt to commit, to solicit another to commit, or to cause to be committed these prohibited acts with such endangered or threatened species.  16 U.S.C. § 1538(g); 50 C.F.R. §§ 17.21(a), 17.31(a); (c).

57.     The ESA authorizes the Secretary of the Interior to issue a permit for any act that is otherwise prohibited by 16 U.S.C. § 1538, but, as relevant here, only if such act is "for scientific purposes or to enhance the propagation or survival of the affected species" and other strict requirements are met.  16 U.S.C. § 1539(a)(1)(A), (c), (d).

58.     All fish or wildlife taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of the ESA, any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States. 16 U.S.C. § 1540(e)(4)(A).

Moreover, the Attorney General of the United States may seek to enjoin any person who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof. *Id.* § 1540(e)(6).

59.    Grizzly bears, *Ursus arctos horribilis*, are listed as "threatened" in the lower-48 states. 50 C.F.R. §§ 17.11(h), 17.40(b);[2] 40 Fed. Reg. 31,734 (July 28, 1975).  Ring-tailed lemurs, *Lemuridae catta*, are listed as "endangered."  50 C.F.R. § 17.11(h); 35 Fed. Reg. 8,491 (June 2, 1970).  Tigers, *Panthera tigris*, are listed as "endangered" under the ESA.  50 C.F.R. § 17.11(h); 37 Fed. Reg. 6,576 (Mar. 30, 1972).  Lions are listed as either "endangered" or "threatened" depending upon their subspecies—the subspecies *Panthera leo leo* is listed as "endangered" and the subspecies *Panthera leo melanochaita* is listed as "threatened."  50 C.F.R. §§ 17.11(h), 17.40(r); 80 Fed. Reg. 80,000 (Dec. 23, 2015).  Through the species-specific 4(d) rule for *Panthera leo melanochaita*, all of the activities that are prohibited with endangered species are also prohibited with the threatened *Panthera leo melanochaita*.  50 C.F.R. §§ 17.31(a), (c); 17.40(r); 80 Fed. Reg. 80,000 (Dec. 23, 2015).  Jaguars, *Panthera onca*, are listed as "endangered" under the ESA.  50 C.F.R. § 17.11(h); 37 Fed. Reg. 6,476 (Mar. 30, 1972); 62 Fed. Reg. 39,147 (July 22, 1997).

## FACTUAL BACKGROUND

60.    Jeffrey and Lauren Lowe operated the Wynnewood facility, exhibiting wild and exotic animals in Wynnewood, Oklahoma under AWA license 73-C-0230 until the APHIS Administrator suspended the license on August 14, 2020.  Jeffrey Lowe voluntarily terminated

---

[2]  Under the species-specific 4(d) rule for grizzly bears, take is permitted in self-defense if reported within 5 days, by Federal, State, or Tribal authorities to remove nuisance bears or for scientific or research purposes under certain circumstances, and in National Parks if in compliance with regulations of the National Park Service.  50 C.F.R. § 17.40(b)(1)(i)(A)-(F).  None of these exceptions applies here.

the license one week later.  At the Wynnewood facility, the Lowes and GWEAP LLC exhibited

numerous animals, including ESA-protected Big Cats, a grizzly bear, and ring-tailed lemurs to

the public for compensation.  Members of the public paid a fee to directly interact with Big Cat

cubs and ring-tailed lemurs and to view the other animals at the zoo.

61.    In 2017, the Lowes represented to APHIS that they held 29 animals (1 nonhuman

primate and 28 wild or exotic mammals); in 2018, they represented to APHIS that they held 162

animals (7 nonhuman primates and 155 wild or exotic mammals); in 2019, they represented to

APHIS that they held 202 animals (10 nonhuman primates and 192 wild or exotic mammals); in

2020, they represented to APHIS that they held 212 animals (7 nonhuman primates and 205 wild

or exotic mammals). Upon information and belief, the Lowes have approximately 100 to 200

ESA-protected animals in their possession.

62.    However, the Lowes routinely violated 9 C.F.R. § 2.75(b) by failing to make, keep, and

maintain records or forms that fully and correctly disclose their acquisition and disposition of

animals.

63.    Such instances include, on or about October 23, 2017, the Lowes failed to make, keep,

and maintain records or forms that fully and correctly disclose the disposition of one tiger.

64.    On or about March 7, 2018, the Lowes failed to make, keep, and maintain records or

forms that fully and correctly disclose the disposition of one tiger and one ring-tailed lemur.

65.    On or about August 30, 2018, the Lowes failed to make, keep, and maintain records or

forms that fully and correctly disclose the acquisition of four animals that were observed by an

APHIS inspector, including two tigers (Forrest and Enzo), one cougar, and one Canada lynx.

66.    On or about February 20, 2019, the Lowes failed to make, keep, and maintain records

or forms that fully and correctly disclose the disposition of a lion-tiger hybrid, a ring-tailed lemur

and a tiger.

67.   On or about July 8, 2020, the Lowes failed to make, keep, and maintain records or forms that fully and correctly disclose the disposition of twenty-five animals, including one capybara, two baboons, one prehensile tailed porcupine, one red ruffed lemur, one kinkajou, eight prairie dogs, three bats, one Fisher Cat, one sloth, one wolf (Sky), four tigers (Rheque, Amarouk, Tess, and Jughead), and one lion-tiger hybrid (Lizzy).

68.   In addition, the Lowes failed to make, keep, and maintain records or forms that fully and correctly disclose the acquisition of nine animals, including two armadillos, two caracals, one ocelot, three tigers (Medusa, Filet and Mudcat), and one lion-tiger hybrid (Mani).

69.   In addition to the Wynnewood and the Thackerville facilities, the Lowes also have exhibited animals at off-site locations throughout the United States.  For example, Jeffrey Lowe transported animals for exhibition at locations in and around Las Vegas, Nevada on a number of occasions.

70.   On July 13, 2017, Jeffrey Lowe was cited for exhibiting, without required city and county permits, a 4-week-old tiger at a McDonalds in Pahrump, Nevada.

71.   On November 16, 2017, the City of Las Vegas, Nevada cited Jeffrey Lowe for not having a permit for wild animals, conducting business without a license, and for maintaining a public nuisance. Jeffrey Lowe pleaded *nolo contendere* to conducting business without a license. The Las Vegas Municipal Court found him guilty on April 5, 2018, issued a suspended jail sentence, a *Stay Out of Trouble* order, and ordered him to pay $2,500 in restitution.

72.   Three additional counts for not having a permit for wild animals are pending. Las Vegas Municipal Court, Case No. C1185093A—Jeffery (sic) Lee Lowe (Nov. 16, 2017).

73.   Further, Jeffrey Lowe surrendered ownership of a tiger cub, lion-tiger hybrid cub, and a

baby ring-tailed lemur that were confiscated from his facility by Las Vegas authorities in November 2017.  Regarding the cubs, neither had received adequate veterinary care.  Both cubs were underweight with sunken bellies and protruding hip bones and exhibited bloody, mucous diarrhea, and intestinal parasites.

74.    Upon information and belief, Jeffrey Lowe stuffed Big Cat cubs into a suitcase to transport them into casinos in Las Vegas, Nevada.

75.    Upon information and belief, while in Las Vegas, Nevada, Jeffrey Lowe gave a ring-tailed lemur under the age of 1 year a shot of Fireball whiskey.

76.    On June 22, 2020, APHIS inspectors conducted a routine inspection of the Wynnewood facility.  Jeffrey Lowe was cited for failure to present a written program of veterinary care prepared by an attending veterinarian; failure to obtain adequate veterinary care for two wolves, a lion-tiger hybrid who had died a week earlier, a lion cub, and two bears, including a grizzly bear; maintaining certain enclosures in a way that risks injury to the animals; and for unsanitary conditions at the park.  (Ex. 1).

77.    On July 8, 2020, APHIS inspectors returned to the Wynnewood facility for a focused inspection to ensure that Jeffrey Lowe had addressed all issues identified by the inspectors during their June 22, 2020 visit.  The APHIS inspectors found that Jeffrey Lowe was not following any program of veterinary care.  (July 8, 2020 Inspection Report attached hereto as Ex. 2).

78.    In addition, the Lowes again failed to provide sufficient bedding to two geriatric wolves as prescribed by the veterinarian Lowe had consulted; failed to obtain adequate veterinary care for a lame Fisher Cat; failed to present acquisition and disposition records; failed to handle a juvenile lioness so that there is minimal risk of harm to the animal and to the public; failed to

repair enclosures identified by the inspectors during the June 22, 2020 inspection; and failed to properly maintain meat intended to be fed to the animals. (Ex. 2).

**I.    Defendants Continue to Exhibit Animals without a Valid USDA Class C Exhibitor License.**

79.    By e-mail dated January 24, 2018, Jeffrey Lowe wrote, "I've learned a lot about distracting, diverting attention, & using smoke and mirrors in the last few years."  Lowe continued, "If we lose a lawsuit, we simply change the name and open another animal business someplace else, we all have multiple USDA licenses available. Or better yet, we all negotiate with Indians to put zoo's inside their reservations and live displays in their casinos like I've been doing. That takes the USDA out of the equation entirely."  USDA-APHIS-Animal Care Animal Welfare Complaint No. AC18-426, at 197 (May 18, 2018).

80.    By letter dated August 14, 2020, pursuant to 7 U.S.C. § 2149, the APHIS Administrator suspended Jeffrey Lowe's AWA license (No. 73-C-0230) for 21 days, effective immediately after service of the suspension letter.

81.    The suspension letter advised Jeffrey Lowe that it is a violation of the AWA regulations to buy, sell, transport, exhibit, or deliver for transportation, any "animal," as the term is defined in the AWA and regulations, during the period of suspension and that in addition to Jeffrey Lowe, this prohibition applies to any employee, agent or other person acting on his behalf.

82.    On August 17, 2020, USDA filed an administrative complaint seeking permanent revocation of AWA license 73-C-0230.

83.    Lauren Lowe does not have a USDA Class C exhibitor license.

84.    The administrative complaint was amended on October 26, 2020, to add GWEAP LLC as a Respondent.

85.    Jeffrey Lowe voluntarily terminated AWA license 73-C-0230 on August 21, 2020.

86.    At the end of September 2020, the Lowes moved some of their animals to the Thackerville facility.  The Lowes moved at least 36 animals to out-of-state facilities.

87.     Defendants are not authorized to "take" ESA-protected animals under 16 U.S.C. § 1539(a)(1)(A).

88.    Defendants continue to exhibit animals to members of the public without a USDA exhibitor license.

89.    Upon information and belief, Defendants have been exhibiting their animals to a film crew as recently as October 2020.

90.    The Lowes have made public statements that the new Thackerville facility will be dubbed "Tiger King Park" and that the facility will operate as a film set for Tiger King-related television content.

91.    Lowe promised to release two reality shows along with "shout-out" videos featuring Big Cats.

92.    Upon information and belief, Defendants have exhibited at least one tiger—Thor—to members of the public through an online platform called Cameo for compensation.

93.    Lauren Lowe has exhibited and continues to exhibit animals, including lions and tigers, to members of the public for compensation through the paid subscription online platform called OnlyFans.

94.    Upon information and belief, Defendants do not have adequate financial resources to provide proper care, including veterinary care, to the animals in their possession without exhibiting them for compensation.

II.     **The Lowes and GWEAP LLC "Harm" and "Harass" Their Animals by Failing to Employ an Attending Veterinarian and by Providing Them Substandard Care.**

95.     Between June 29, 2018, and September 8, 2020, the Lowes and GWEAP LLC "harmed" and "harassed" their animals by failing to employ an attending veterinarian as required by the AWA to provide timely, adequate veterinary care to their animals, and failed to establish and maintain programs of adequate veterinary care that included the use of appropriate methods to prevent injury and disease and daily observation of all animals to assess their health and well-being. *See* 9 C.F.R. § 2.40.

96.     As a result, Defendants' animals have suffered from easily preventable or treatable conditions, which frequently have caused their untimely death.  Many of Defendants' other animals have not been seen by a veterinarian at all in the last two years.

97.     Defendants "harm" and "harass" their animals by providing them substandard care.

98.     The Lowes and GWEAP LLC failed to provide adequate veterinary care to the lion cub, Nala.  The lion cub had been removed from her mother and transported from Indiana to Oklahoma shortly after birth.  Her diet under the Defendants' care was so poor that she likely suffers from metabolic bone disease.

99.     Metabolic bone disease is a condition caused by Big Cats being fed calcium-deficient diets, causing their bones to be weak.  As illustrated by a number of the Big Cat cubs in Defendants' care, including Nala and Ayeesha described below, metabolic bone disease causes the animals to be lame, makes them more susceptible to fractures, in some cases prevents them from standing or walking and may result in neurological problems.

100.    In March 2020, Nala required surgery after she ingested a foreign object.  Upon information and belief, the cub consumed a broken plastic toy that was left in her enclosure.

During the visit, the veterinary hospital discovered whipworms in her esophagus and stool.

101.   During the June 22, 2020 inspection, the APHIS inspectors observed Nala whose body condition was so poor they believed her to be a 4-5-month-old juvenile.  (Ex. 1).  Nala at the time was 10 months old.

102.   According to the June 22, 2020 USDA Inspection Report, she was "lethargic, depressed, and thin and would not get up out of the mud from the sitting position even after prompting."  The Report also stated that "[s]he had a string of purulent nasal discharge hanging from her right nostril and had an accumulation of green discharge in her eyes.  Her respiration was shallow and rapid."  The APHIS inspectors stopped the inspection and directed the Lowes to immediately obtain veterinary care for Nala.  The Lowes later claimed that they already had an appointment scheduled with the veterinarian that morning for Nala.  The Lowes' statement was false.



103.   Nala was seen later that day and was diagnosed with an upper respiratory infection, dehydration, and urinary tract infection.  The veterinarian noted that Nala was underweight, the tips of her ears were ulcerated due to parasites and fleas, and she required intravenous fluids.

104.   Pursuant to a court order, Nala, along with two other lion cubs, was transferred to a wildlife sanctuary in Colorado in September 2020.  Nala was evaluated by Colorado State

University ("CSU").

105.  CSU found that Nala is underweight and undersized for her age.  Nala had difficulty

standing and was lame. Nala was tested for a vitamin A deficiency and her level was found to be

0.1 mcg with a normal level being 90 mcg.  Her vitamin A level was so low that the deficiency

can cause changes in bone development especially in the skull, neurological abnormalities, and

even death.

106.  CSU determined that she suffered from historical poor husbandry and her prognosis

was fair to poor, pending response to husbandry improvement and healing from fractures.  Nala

also suffers from a chronic fracture of her right humerus.  CSU concluded that her poor body

condition was likely due to poor nutrition.

107.  In addition, both of Nala's ears were excoriated and ulcerated from fly strikes.  Fly

strike dermatitis is a condition in which flies continuously attack, bite and penetrate the skin of

an animal, laying eggs on open or irritated skin and causing infestations of maggots.

108.  This painful condition is preventable.  Due to the Lowes' failure to provide adequate

nutrition and care, Nala has suffered from painful and potentially life-threatening conditions.

109.   The other two juvenile lions who were transferred with Nala, Amelia and Leo, were

also underweight and undersized for their age.

110.   The Lowes and GWEAP, LLC failed to provide adequate veterinary care for a lion-

tiger hybrid (Young Yi), who then died on or around June 13, 2020.

111.  On or about June 26, 2020, the Lowes provided to APHIS three veterinary records on

Young Yi, dated July 14, 2019, September 14, 2019, and May 18, 2020.  Upon information and

belief, Young Yi was not examined or treated by any veterinarian before his death despite

exhibiting signs of illness and the veterinary records presented by the Lowes were forged.

112.  Additionally, the Lowes told APHIS inspectors during the June 22, 2020 inspection that Young Yi was 17 years old and they believe he died of renal failure.

113.  The Lowes provided documentation a year earlier stating that Young Yi was born in August 2007.  The animal was only 12 years old when he died.  It is unusual for a Big Cat who is receiving adequate care to die of renal failure at the age of 12.

114.  Upon information and belief, the Lowes and GWEAP LLC failed to provide adequate veterinary care to a young female tiger (Dot) who died due to complications related to an emergency ovariohysterectomy.  Female tigers typically do not have their first litter until they are at least two years of age.  Between the age of two and five, the Lowes bred Dot five times with the final three litters resulting in stillbirths.

115.  Although it is uncommon for tigers to have multiple litters of stillborn cubs, the Lowes continued to breed Dot without seeking the advice of a veterinarian or treatment for the tiger until Dot required an emergency ovariohysterectomy.

116.  Dot died two days later on June 21, 2020, as a result of complications from the surgery.

117.  The Lowes and GWEAP LLC failed to provide timely veterinary care to a tiger who was struggling to give birth (Mama).

118.  Although tigers typically give birth to their entire litter in 1-2 hours, the Lowes allowed the tiger to continue with labor for 48 hours before a veterinarian was called to the zoo to examine and treat the tiger.  At that point, the tiger required surgery and the veterinarian noted the tiger's abdomen was filled with purulent material indicating that the uterus had ruptured and the infected fluids contained in the uterus were now in the abdomen.  The veterinarian then determined that euthanasia was the best course of action.

119.  Had the Lowes called the veterinarian to evaluate the tiger sooner, the tiger would have

had a much greater chance of recovering from this problem.

120.  Upon information and belief, on or about October 3, 2020, the Lowes and GWEAP LLC harmed and harassed a female lion-tiger hybrid who died while the Lowes were preparing to transfer the animal to the Thackerville facility.  The Lowes hired a veterinarian with little to no experience working with Big Cats to assist with tranquilizing animals for transport.  The Lowes or an agent under their direction used two darts to tranquilize the animal, but she still was not sufficiently sedated to be moved.

121.  The Lowes were advised by an expert in immobilizing animals that, if they chose to use a third dart on the animal, they would need to move the animal as soon as she was fully sedated and be prepared to administer an antagonist drug to reverse the tranquilizer drug right away so that the animal would not overdose and die.

122.  The Lowes or their agents used a third dart on the animal and then abandoned the animal instead of monitoring her for signs that they needed to reverse the tranquilizer drug.  By the time the Lowes and their hired veterinarian returned to check on the animal, she was near death or dead.

123.  In March 2019, a tiger (Petunia) was euthanized at the age of 5-6 years old for renal failure.  The Lowes were treating the animal with cannabidiol ("CBD") oil, which was not recommended by the veterinarian who occasionally treated the Lowes' Big Cats.

124.  The Lowes contacted the veterinarian because Petunia was "pretty lethargic" and was not eating. That veterinarian was out of town at the time and the veterinary hospital recommended that the Lowes consult Oklahoma State University.  Instead, they relied on a food animal vet, who specializes in the care of animals raised for food production, to treat Petunia. The tiger died a few days later.

125.  It is unusual for a tiger this young to die of renal failure if receiving adequate veterinary care on a regular basis.

126.  In September 2019, an 11-year-old tiger (Lizzie) was euthanized.  Upon information and belief, the tiger suffered from a subluxated disc, which caused her to have significant mobility issues.  By the time the Lowes had a veterinarian treat her, she was unable to use her back legs and was dragging them.  This caused wounds that went through to her muscle and on the left knee down to the bone.  At that point, the veterinarian was concerned about sepsis due to the wounds.

127.  If the tiger Lizzie had received adequate veterinary care when the condition was first observed, surgery could have successfully corrected the problem.

128.  In December 2018, a tiger (Promise) was euthanized after declining mobility in the back legs, which also resulted in pressure sores.  Once again the Lowes treated the animal with CBD oil, which was not recommended by the veterinarians that the Lowes were consulting.  Promise was unable to walk for 2 weeks before the Lowes finally sought veterinary treatment for the tiger, who was placed back on steroids.  The tiger was euthanized a few days later.

129.  It is uncommon for Big Cats to have fleas.  Nevertheless, a number of Defendants' Big Cats have been harassed by fleas resulting from poor husbandry practices.

130.  On June 22, 2020, APHIS inspectors observed a grizzly bear (Gizzy) to be emaciated and exhibiting a heightened and aggressive activity level.  Accordingly, the Lowes were cited in the June 22, 2020 USDA Inspection Report for failing to have an attending veterinarian provide adequate veterinary care and failing to establish and maintain a program of adequate veterinary care that included the availability of appropriate services and adequate guidance to personnel involved in the care and use of animals regarding an adequate nutritional and parasite control

program.

131.  Upon information and belief, between June 22, 2020, and October 4, 2020, Gizzy was not evaluated in person by a veterinarian to determine whether Gizzy was emaciated as a result of the Lowes failing to feed the bear enough nutritious food or their failure to treat her for a condition that was preventing her from maintaining a healthy weight.

### III.   The Lowes and GWEAP LLC routinely "harm" and "harass" Big Cat cubs and Ring-Tailed Lemur pups by separating them from their mothers and forcing them to interact with the public.

132.  After birth, Big Cat cubs typically stay with their mothers for the first two months to nurse and receive nutrients and antibodies. Big Cat cubs who are separated from their mothers too early are often fed improper diets, which can have long-lasting negative consequences including to the cubs' growth and immune systems.

133.  Specifically, the formulas and weaning diets fed to these cubs are frequently sub-optimal and may cause health issues such as metabolic bone disease that could cause considerable pain and discomfort and could affect the health and welfare of the animal for the rest of its life.  Furthermore, maternal separation may disrupt the cubs' behavioral development.

134.  In addition, cubs experience stress caused by being separated from their mothers too early and being forced to interact with the public.  Stress in animals may compromise immunity, impair coronary health, alter brain structure and function, impair reproduction, stunt growth, reduce body weight, shorten lifespan, or increase abnormal behaviors.  Very young cubs (generally 6 weeks and younger) may respond to over-handling by staying in a helpless, silent state rather than vocalizing or growling.

135.  These actions constitute harm and harassment within the meaning of the ESA take prohibition.  *See PETA v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-cv-186-RYL-

DML, 2020 WL 4448481, at *11 (S.D. Ind. Aug. 3, 2020).

136.   The Lowes and GWEAP LLC regularly remove Big Cat cubs from their mothers within days or weeks of their birth and use those animals to generate profit through playtime activities with members of the public.   The Lowes and GWEAP LLC also transport Big Cat cubs who have been removed from their mothers to other facilities and individuals in the United States and upon information and belief, many of those cubs were then used to generate profit through playtime activities with members of the public.

137.   In January 2018, Jeffrey Lowe submitted to the Oklahoma Department of Agriculture, Food, and Forestry a certificate of veterinary inspection to transport a 3-week-old lion-tiger hybrid to an individual in Florida known for forcing Big Cat cubs to directly interact with members of the public.

138.   In May 2018, Jeffrey Lowe submitted to the Oklahoma Department of Agriculture, Food & Forestry a certificate of veterinary inspection to transport a 1-week-old male lion cub to a facility in North Carolina, where Big Cat cubs are forced to interact directly with members of the public.   Lowe submitted another certificate of veterinary inspection to transport a 4-week-old male tiger and a 4-week-old female tiger to the same facility in August 2018.

139.   In May 2018, Jeffrey Lowe submitted to the Oklahoma Department of Agriculture, Food, and Forestry a certificate of veterinary inspection to transport a 5-week-old female tiger and 5-week-old male tiger to Big Cat Encounters in Nevada.   Big Cat Encounters is operated by Karl Mitchell, whose USDA license was revoked in 2001.   Lowe used those and other Big Cat cubs in playtime sessions and other encounters with the public in Nevada.

140.   In September 2018, Jeffrey Lowe submitted to the Oklahoma Department of Agriculture, Food, and Forestry a certificate of veterinary inspection to transport a 5-month-old

male tiger (Happy) to a facility in Tennessee.

141.  In October 2018, Lowe submitted another certificate of veterinary inspection to transport a 5-week-old male lion-tiger hybrid to the same facility in Tennessee.

142.  A 4.5-month-old male tiger was sent to the same Tennessee facility in November 2018.

143.  In a YouTube video dated November 7, 2018, members of the public take a tour of the Wynnewood facility and participate in a playtime event with the Lowes, in which members of the public are seen bottle feeding and directly interacting with the Lowes' tiger cubs and a ring-tailed lemur jumps around the room.  DJ TOMKAT, *Shaq taking us on a tour of the Greater Wynnewood Exotic Animal Farm*, YouTube (Nov. 7, 2018), https://youtube.com/watch?v=Q2ZCsm1VNgI.

144.  In a YouTube video dated February 2, 2019, members of the public are seen bottle feeding and directly interacting with a white tiger cub and a ring-tailed lemur at the Wynnewood facility.  Faith Vicknair, *Wynnewood Exotic Animal Park Tour*, YouTube (Feb. 2, 2019), https://youtube.com/watch?v=2-NufUpaEWI.

145.  In a YouTube video dated June 30, 2019, three of the Lowes' Big Cat cubs are seen crawling over two young girls and a boy in a playtime session.  A ring-tailed lemur is also seen jumping on the children.

146.  Defendants continued to place ring-tailed lemurs in direct contact with Big Cat cubs during these events despite a lemur previously being clawed in the back by a baby tiger.  Rowe On The Go, *Holding Tiger Cubs ~ Exotix Animal Park*, YouTube (June 30, 2019), https://youtube.com/watch?v=3EbvWkzB7Qk.

147.  In August 2019, Lowe accepted 4 lion cubs from Timothy Stark, who was recently found to be violating the ESA for similar actions in *PETA v. Wildlife in Need and Wildlife in*

*Deed, Inc.*, No. 4:17-cv-186-RYL-DML (S.D. Ind. Aug. 3, 2020), *see* ECF Nos. 378-379.

148.  At the time of transport from Indiana to Oklahoma, three of the cubs were approximately 5 days old and the fourth cub was two weeks old.  The lion cubs—Nala, Amelia, and Leo—are discussed in more detail *supra* ¶¶ 104-109.  Jeffrey Lowe did not try to introduce these cubs to another Big Cat as a surrogate to lessen the impacts to the cubs of being removed from their mothers at such an early age.

149.  On March 4, 2020, a spring break advertisement to play with lemurs and a lion-tiger hybrid cub was posted on Facebook.  Greater Wynnewood Exotic Animal Park, Facebook (Mar. 4, 2020), https://facebook.com/WynnewoodZoo/posts/2844302528951118.

150.  On March 6, 2020, a photo of two women touching a Big Cat cub was posted on the GWEAP Facebook page.  Greater Wynnewood Exotic Animal Park, Facebook (Mar. 6, 2020), https://facebook.com/WynnewoodZoo/posts/2848885951826109.

151.  On March 8, 2020, a photo of a woman and child petting a Big Cat juvenile was posted on the GWEAP Facebook page.  Greater Wynnewood Exotic Animal Park, Facebook (Mar. 8, 2020), https://facebook.com/WynnewoodZoo/posts/2853707744677263.

152.  On March 13, 2020, a notice that "all cub and sloth playtimes are inside" was posted on the GWEAP Facebook page.  Greater Wynnewood Exotic Animal Park, Facebook (Mar. 13, 2020), https://facebook.com/WynnewoodZoo/posts/2864127690301935.

153.  On March 14, 2020, a photo of children touching a tiger cub during a playtime event was posted on the GWEAP Facebook page.  Greater Wynnewood Exotic Animal Park, Facebook (Mar. 14, 2020), https://facebook.com/WynnewoodZoo/posts/2866643223383715.

154.  Ring-tailed lemur pups depend on their mothers for nutrition and nurse for 3-6 months. Ring-tailed lemurs are extremely social animals and usually reside in a conspiracy of 20-30

lemur individuals.  Without being raised in a conspiracy, ring-tailed lemur pups are never taught social norms and can grow to be aggressive and incompatible.

155.  Removal of a ring-tailed lemur from its social group, even for a brief period of time, can cause a reshuffling of the social structure causing the briefly removed ring-tailed lemur to be ousted from or even attacked by the conspiracy.

156.  The Lowes and GWEAP LLC harmed and harassed ring-tailed lemurs by removing them periodically from their conspiracy to interact with the public during "playtime" activities at the Wynnewood facility.

157.  The Lowes and GWEAP LLC harmed and harassed ring-tailed lemurs by transporting individual lemurs to other locations to be housed alone and then forced to interact with members of the public.

158.  The Lowes and GWEAP LLC harmed ring-tailed lemurs by allowing Big Cat cubs to have direct contact with the ring-tailed lemurs.  During one interaction, a tiger cub clawed the ring-tailed lemur's back.

## IV.   The Lowes and GWEAP LLC "harmed" and "harassed" ESA-protected animals by failing to maintain sanitary and safe conditions at the park.

159.  The Lowes' ESA-protected species were harmed and harassed within the meaning of the ESA take prohibition as a result of the Lowes' and GWEAP LLC's failure to maintain sanitary conditions at the park.

160.  During the June 22, 2020 inspection, the APHIS inspectors observed a large pile of wood debris in the back of the park containing the partially burned carcass of Young Yi and a black tarp covering a deceased tiger (Dot).

161.  According to the June 22, 2020 USDA Inspection Report, there was a "foul odor of decomposing flesh" and "many flies [were] present on the board and surrounding areas."  The

flies have created fly strikes on many of the animals, including the Big Cats and wolves.

According to the June 22, 2020 USDA Inspection Report, the fly strikes have resulted in "large

patches of painful ulceration on the ears and legs" of many of the tigers, lions, and wolves.  (Ex.

1 at 6).  The ulcerated areas on the animals were red and scabbed, with some presenting pus and

fresh blood.

162.   The APHIS inspectors directed the Lowes to establish and maintain a safe and effective

program to deal with the flies.  Nevertheless, three months after the Lowes were cited by APHIS,

the three lion cubs—Nala, Amelia, and Leo—were still suffering from fly strike dermatitis.

163.   During the July 8, 2020 inspection, the APHIS inspectors noticed an odor of decaying

flesh.  (Ex. 2 at 4).  When questioned about the odor, the Wynnewood facility representative

identified a broken down refrigerator truck.  The temperature inside the truck was greater than 85

degrees Fahrenheit.  *Id.*  The truck contained open boxes of rotting meat.  (Ex. 2 at 11 & 13):

 

164.   The Wynnewood facility had no other on-site refrigeration or freezer in which to store

meat for the animals at the zoo.  A facility representative acknowledged this to inspectors.

165.   The APHIS inspectors again observed unsanitary conditions during the August 21,

2020 visit.  The Lowes left a heaping pile of trash and biological debris in the back of the park,

which attracted a large number of flies.

166.   The APHIS inspectors also observed a large amount of packaged chicken sitting in the

sun surrounded by flies.

167.   Rodents were also observed during APHIS's August 21, 2020 visit.

168.   The Lowes also harmed a senior tiger (Jughead) by failing to maintain safe conditions in his enclosure.

169.   The tiger Jughead was attacked by tigers from the neighboring enclosure who either gained access to Jughead's enclosure or dragged him through the fence to their enclosure.  The tiger had puncture wounds and an abscess on his face.  He died three days later at the park.

**V.     Defendants have placed the health of their animals in "serious danger" in violation of the AWA.**

170.   Defendants have placed the health of their animals in "serious danger" by failing to employ an attending veterinarian and by providing their animals with substandard care.  *See ¶¶* 95-131.

171.   For example, the Lowes put a lion-tiger hybrid (Ayeesha) in "serious danger" by failing to provide her with adequate care and veterinary care.

172.   Ayeesha was born on October 31, 2019.

173.   Nobody noticed the cub was weak and distressed and unable to nurse, but finally the cub was apparently pulled from her mother on December 24, 2019, at which point she was already suffering from dehydration and malnutrition.

174.   Ayeesha did not see a veterinarian until six days later; at that point she was in such bad condition that she required hospitalization and a feeding tube because she was not eating.  Upon information and belief, the cub was on a feeding tube for many days.

175.   In June 2020, Ayeesha was 7 months old and weighed 60 pounds, which would be the normal weight for a 5-month-old cub.  At 8 months, Ayeesha had lost weight and weighed 58.6 pounds.  At that point, she was diagnosed with a fractured ileus and metabolic bone disease and

was found to have roundworms.

176. The Lowes failed to provide Ayeesha with adequate nutrition, including calcium and other necessary nutrients, to allow her to grow and the bones to develop normally.  This has resulted in many painful fractures that have impaired her mobility.

177. The Lowes failed to follow the advice of the veterinarian treating Ayeesha. During the July 8, 2020 inspection, the USDA inspectors observed that Ayeesha was no longer being cared for in the medical building.

178. When questioned about this change, the Lowes falsely stated that the veterinarian had authorized them to place Ayeesha back outside.

179. At the end of September 2020, the Lowes took Ayeesha to see the veterinarian because she was not eating and was immobile.  The veterinarian found maggots on her rectal area.

180. The Lowes and GWEAP LLC have placed the health of Ayeesha in serious danger by their failure to provide her with the basic nutrients she needed to develop properly and failure to provide adequate care thereafter.

## VI.  Establishment of "Tiger King Park"

181. Upon information and belief, the Lowes moved over 150 animals from the Wynnewood facility to the Thackerville facility to be used for commercial purposes.

182. Pursuant to a federal court order, the Lowes were required to vacate the Wynnewood facility on or before October 1, 2020.  *See Big Cat Rescue Corp.*, 2020 WL 2842845, Dkt. No. 152.

183. From mid-September until October 3, 2020, the Lowes moved animals from the Wynnewood facility to the Thackerville facility.

184. Two days after the court ordered deadline to vacate the premises, the Garvin County

Sheriff prohibited the Lowes from moving any additional animals from the Wynnewood facility. The Lowes surrendered the animals then remaining at the Wynnewood facility to the Wild Animal Sanctuary in Colorado. The surrendered animals included two underweight tigers. The Lowes also surrendered Gizzy, the grizzly bear. At the time of transfer, Gizzy demonstrated behavior of ravenous eating and was determined to be too thin to hibernate. Her food was increased daily until satiation. Gizzy is very small for her age and species.

185.  Upon information and belief, as of October 3, 2020, the Lowes had no formal arrangements with a veterinarian with experience handling and treating Big Cats.  As a result, the Lowes hired a veterinarian with little to no experience treating and handling Big Cats to assist them with the move from Wynnewood to Thackerville.  On or about October 3, 2020, Defendants' liger was overdosed with tranquilizer and died at the Wynnewood facility before she could be moved. *See supra* 120-122.

186.  Upon information and belief, Jeffrey Lowe has stated publicly that voluntary termination of his AWA exhibitor license and operation within "Indian Country" deprives the USDA of authority to enforce the AWA against him and/or his Thackerville facility.

187.  Upon information and belief, Defendants are presently exhibiting animals at the Thackerville facility, which constitutes a "zoo" under the AWA. Defendants are exhibiting and will continue to exhibit their animals by displaying the animals to a film crew and to other members of the public through online sites such as "shout out" videos on Cameo. The Lowes recently posted a video encouraging members of the public to pay for Cameo "shout out" videos and an announcement stating, "filming begins!!!" on Lauren Lowe's OnlyFans account on the internet.

188.  Upon information and belief, Defendants have constructed or are constructing facilities

at Tiger King Park to allow for public exhibition in the future, including a gift shop. (See Photo Below).



**CLAIMS FOR RELIEF**

**<u>CLAIM 1</u>**
**Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Animals by Failing to Maintain an Attending Veterinarian and Establish and Maintain Programs of Adequate Veterinary Care.**

189.  Plaintiff incorporates by reference all allegations of the Complaint.

190.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), 17.40(b), (r), by harassing and harming, and thereby taking, ESA-protected animals, including Big Cats, ring-tailed lemurs, and a grizzly bear, by failing to employ an attending veterinarian to provide timely, adequate veterinary care, and failing to establish and maintain programs of adequate veterinary care.

191.  Unless enjoined, Defendants are likely to continue to provide untimely and inadequate

veterinary care to the ESA-protected animals in their possession, control, and custody, thereby taking ESA-protected animals in violation of the ESA.

192.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. §§ 1540(c), 1540(e)(4)(A), 1540(e)(6).

### CLAIM 2
**Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Animals by Failing to Provide Food that Was Wholesome, Palatable, and Free from Contamination and of Sufficient Quantity and Nutritive Value to Maintain Good Health.**

193.  Plaintiff incorporates by reference all allegations of the Complaint.

194.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), 17.40(b), (r), by harassing and harming, and thereby taking, ESA-protected animals, including Big Cats and a grizzly bear, by providing food that was unwholesome, unpalatable, and/or contaminated and of insufficient quantity and nutritive value to maintain the ESA-protected animals' good health.

195.  Unless enjoined, Defendants will continue to provide inadequate food of an insufficient quantity, quality, and nutritive value to the ESA-protected animals in their possession, control, and custody, thereby taking ESA-protected animals in violation of the ESA.

196.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A), 1540(e)(6).

## CLAIM 3
### Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Animals by Removing Cubs from Their Mothers Prematurely.

197.  Plaintiff incorporates by reference all allegations of the Complaint.

198.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), 17.40(r), by harassing and harming, and thereby taking, ESA-protected Big Cats by prematurely taking cubs away from their mothers for exhibition or interstate transport without a permit.

199.  Unless enjoined, Defendants will continue to prematurely take cubs away from their mothers for exhibition or interstate transport.

200.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A), 1540(e)(6).

## CLAIM 4
### Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Ring-Tailed Lemur Pups By Removing Them from Their Mothers Prematurely.

201.  Plaintiff incorporates by reference all allegations of the Complaint.

202.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), by harassing and harming, and thereby taking, ESA-protected lemurs by prematurely taking ring-tailed lemur pups away from their mothers without a permit.

203.  Unless enjoined, Defendants will continue to prematurely take lemur pups away from their mothers.

204.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A),1540(e)(6).

## CLAIM 5
### Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Animals by Forcing Cub Play Time.

205.  Plaintiff incorporates by reference all allegations of the Complaint.

206.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), 17.40(r), by harassing and harming, and thereby taking, ESA-protected Big Cats by forcing cubs and juveniles to interact directly with the public.

207.  Unless enjoined, Defendants will continue to force Big Car cubs and juveniles to interact directly with the public.

208.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A), 1540(e)(6).

## CLAIM 6
### Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Ring-Tailed Lemurs by Removing them from their Conspiracy for Public Playtime Events.

209.  Plaintiff incorporates by reference all allegations of the Complaint.

210.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), by harassing and harming, and thereby taking, ESA-protected ring-tailed lemurs by

forcing them to interact directly with the public and/or with Big Cats.

211.  Unless enjoined, Defendants will continue to force ring-tailed lemurs to interact with

the public and/or Big Cats.

212.  The United States is entitled to an injunction enjoining Defendants from committing

further ESA violations and ordering them to relinquish possession of their ESA-protected

animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A),

1540(e)(6).

### CLAIM 7
**Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking" Protected Animals by Failing to Maintain Sanitary Conditions.**

213.  Plaintiff incorporates by reference all allegations of the Complaint.

214.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. §

1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1),

17.31(a), (c), 17.40(b), (r), by harassing and harming, and thereby taking, ESA-protected animals

by failing to maintain sanitary conditions resulting in fly strikes.

215.  Unless enjoined, Defendants will continue to maintain unsanitary conditions resulting

in fly strikes to ESA-protected animals, thereby taking ESA-protected animals in violation of the

ESA.

216.  The United States is entitled to an injunction enjoining Defendants from committing

further ESA violations and ordering them to relinquish possession of their ESA-protected

animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A),

1540(e)(6).

## CLAIM 8
**Defendants Violated and Will Continue to Violate the ESA by Unlawfully "Taking"
Protected Animals by Failing to Maintain Adequate and Safe Enclosures.**

217.  Plaintiff incorporates by reference all allegations of the Complaint.

218.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. §

1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1),

17.31(a), (c), 17.40(b), (r), by harassing and harming, and thereby taking, ESA-protected animals

by failing to maintain adequate and safe enclosures.

219.  Unless enjoined, Defendants will continue to maintain inadequate and/or unsafe

enclosures to ESA-protected animals, thereby taking ESA-protected animals in violation of the

ESA.

220.  The United States is entitled to an injunction enjoining Defendants from committing

further ESA violations and ordering them to relinquish possession of their ESA-protected

animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A),

1540(e)(6).

## CLAIM 9
**Defendants Violated and Will Continue to Violate the ESA by Possessing Unlawfully
"Taken" Protected Animals.**

221.  Plaintiff incorporates by reference all allegations of the Complaint.

222.  Defendants have violated and Will continue to violate the ESA, 16 U.S.C. §

1538(a)(1)(D), (G), and its implementing regulations, 50 C.F.R. §§ 17.21(a), (d)(1), 17.31(a),

17.40(b), (r), by possessing unlawfully taken animals.

223.  Unless enjoined, Defendants are likely to continue to possess unlawfully taken animals

in violation of the ESA.

224.  The United States is entitled to an injunction enjoining Defendants from committing

further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A), 1540(e)(6).

### CLAIM 10
**Defendants Violated and Will Continue to Violate the ESA by Delivering, Carrying, and/or Transporting Unlawfully "Taken" Protected Animals.**

225.  Plaintiff incorporates by reference all allegations of the Complaint.

226.  Defendants have violated and will continue to violate the ESA, 16 U.S.C. § 1538(a)(1)(D), (G), and its implementing regulations, 50 C.F.R. §§ 17.21(a), (d)(1), 17.31(a), 17.40(b), (r), by delivering, carrying, and/or transporting and continuing to deliver, carry, and/or transport unlawfully taken animals.

227.  Unless enjoined, Defendants are likely to continue to deliver, carry, and/or transport unlawfully taken animals in violation of the ESA.

228.  The United States is entitled to an injunction enjoining Defendants from committing further ESA violations and ordering them to relinquish possession of their ESA-protected animals to the United States or as otherwise appropriate.  16 U.S.C. § 1540(c), 1540(e)(4)(A), 1540(e)(6).

### CLAIM 11
**Defendants Violated and Will Continue to Violate the AWA by Unlawfully Exhibiting Animals without a Valid USDA Exhibitor License and Placing the Health of Animals in Serious Danger.**

229.  Plaintiff incorporates by reference all allegations of the Complaint.

230.  Defendants have violated and will continue to violate the AWA and its implementing regulations and standards by exhibiting animals without a valid USDA Class C exhibitor license. 7 U.S.C. § 2134; 9 C.F.R. §§ 1.1, 2.1-2.12. Defendants are also placing the health of animals in serious danger in violation of AWA regulations.  *Id.* § 2159(a).

231.  Unless enjoined, Defendants will continue to exhibit animals without a valid USDA Class C exhibitor license in violation of the ESA and place the health of animals in serious danger in violation of AWA regulations.

232.  The United States is entitled to an injunction to prevent and restrain Defendants from exhibiting animals without a valid license and from operating in violation of the AWA or its implementing regulations and standards.  7 U.S.C. §§ 2146(c), 2159(b).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Defendants have violated and will continue to violate the ESA by illegally taking ESA-protected animals.  16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), 17.40(b), (r);

2. Declare that Defendants have violated and will continue to violate the ESA by possessing protected animals, who have been illegally taken.  16 U.S.C. § 1538(a)(1)(D), (G); 50 C.F.R. §§ 17.11(h), 17.21(a), (d)(1), 17.31(a), (c), 17.40(b), (r);

3. Declare that Defendants have violated and will continue to violate the ESA by delivering, carrying, and/or transporting ESA-protected animals, who have been illegally taken.  16 U.S.C. § 1538(a)(1)(D), (G); 50 C.F.R. §§ 17.11(h), 17.21(a), (d)(1), 17.31(a), (c), 17.40(b), (r);

4. Temporarily and permanently enjoin and restrain Defendants from continuing to violate the ESA and its implementing regulations with respect to ESA-protected animals, including prohibitions on taking ESA-protected animals and possessing, delivering, carrying, or transporting ESA-protected animals that have been unlawfully taken;

5. Order Defendants to relinquish possession of all of their ESA-protected animals to the

United States or as otherwise appropriate;

6. Declare that Defendants have violated and continue to violate the AWA by exhibiting
   without a license.  7 U.S.C. § 2134; 9 C.F.R. §§ 1.1, 2.1-2.12;

7. Temporarily and permanently enjoin and restrain Defendants from exhibiting animals
   without a license to the public and placing the animals' health in serious danger in
   violation of AWA regulations. 7 U.S.C. § 2159;

8. Temporarily and permanently enjoin and restrain Defendants from barring, disrupting, or
   otherwise interfering with entry of the USDA and its agents onto the Lowes' properties to
   investigate and inspect the health of the animals and otherwise determine Defendants'
   compliance with AWA regulations;

9. Award the United States its costs in this action; and

10. Grant other relief that the Court deems just and proper.

DATED: November 19, 2020

BRIAN J. KUESTER                      JONATHAN D. BRIGHTBILL
United States Attorney                Principal Deputy Assistant Attorney General
SUSAN BRANDON, Civil Chief            Environment and Natural Resources Division
United States Attorney's Office
Eastern District of Oklahoma
520 Denison Ave                       /s/ Mary Hollingsworth
Muskogee OK  74401                    MARY HOLLINGSWORTH
                                      Senior Trial Attorney
                                      BRIENA L. STRIPPOLI
                                      Trial Attorney
                                      United States Department of Justice
                                      Environment & Natural Resources Division
                                      Wildlife & Marine Resources Section
                                      P.O. Box 7611, Ben Franklin Station
                                      Washington, D.C. 20044-7611
                                      Mary.hollingsworth@usdoj.gov | 202-598-1043
                                      Briena.strippoli@usdoj.gov | 202-598-0412
                                      Fax: 202-305-0275

                                      *Attorneys for the United States of America*