# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　*Plaintiff*,<br>　　　　　　v.<br><br>JEFFREY LOWE,<br><br>LAUREN LOWE,<br><br>GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and<br><br>TIGER KING, LLC,<br><br>　　*Defendants*. | Case No. 6:20-cv-00423-JFH |

## UNITED STATES' MOTION TO ENFORCE THE COURT'S JANUARY 15, 2021 ORDER & THE PARTIES' STIPULATION

The United States moves to enforce the Court's January 15, 2021 order granting the motion for preliminary injunction and motion for temporary restraining order filed by the United States. Dkt. 65. Per the Court's order, Defendants were required to "provide acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020, no later than January 22, 2021." *Id.* at 33 ¶ 4. Despite the government's attempts over two weeks to assist Defendants in getting into compliance with the Court's order, the government has received only a few of the records it was entitled to. The government requests that Defendants be ordered to immediately provide the required records accounting for the additional and missing animals consistent with the Animal Welfare Act ("AWA") and its implementing regulations. *See* 9 C.F.R. § 2.75(b)(1).

The Court also ordered Defendants to "retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40, no later than January 29, 2021." Despite several requests between January 29, 2021, and February 9, 2021,

by the United States to both Defendants and the veterinarian they hired as their attending veterinarian, the U.S. Department of Agriculture ("USDA") still has not received documentation necessary to determine whether the veterinarian meets the requirements of 9 C.F.R. § 1.1. Moreover, the formal arrangements presented in the written program of veterinary care and subsequent emails from the veterinarian do not currently comply with 9 C.F.R. § 2.40. *See* Exh. DDD (Defendants' & Dr. Fryer's Program of Veterinary Care). Accordingly, the United States requests that the Court order Defendants to provide the documentation demonstrating that the veterinarian has "received training and/or experience in the care and management of the *species being attended*" to ensure that she qualifies as an attending veterinarian. 9 C.F.R. § 1.1 (emphasis added). The government also requests that Defendants be ordered to immediately make formal arrangements consistent with 9 C.F.R. § 2.40.

Additionally, pursuant to the Parties' December 14, 2020 stipulation, approved by the Court on December 15, 2020, Defendants agreed not to acquire any animal covered by the Endangered Species Act or any animal covered by the AWA absent leave of court. Dkt. 23 ¶ 2; Dkt. 25. Nevertheless, during the January 20, 2021 inspection, inspectors from USDA's Animal and Plant Health Inspection Service ("APHIS") observed three dozen female animals housed with male animals. The government has twice requested confirmation that the animals are spayed and neutered or otherwise will be separated to prevent breeding, but have not received a response from Defendants. The government requests an order from the Court requiring Defendants to separate unaltered male and female animals to avoid violating the terms of the Parties' court-approved stipulation by acquiring animals through birth.[1]

## I.     LEGAL STANDARD

"Courts have the power to enforce their lawful orders." *In re Unioil*, 948 F.2d 678, 682 (10th Cir. 1991) (citation omitted). "That authority is grounded in 'the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding.'" *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (per curiam)). A motion to enforce should be granted if a "prevailing plaintiff demonstrates that a

---

[1] Counsel for the government conferred with counsel for Defendants consistent with LCvR 7.1(f) on Thursday, February 4, 2021, but were unable to reach agreement on the issues raised in this motion.

defendant has not complied with a judgment entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (citation omitted).

## II. ARGUMENT

### A. Defendants have failed to comply with the Court's January 15, 2021 order to provide acquisition and disposition records.

Pursuant to the Court's January 15, 2021 order, Defendants were required by January 22, 2021, to provide "acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020." Dkt. 65 at 33. "Acquisition and disposition records are necessary to be able to accurately track animals being used in regulated activities to ensure their legal acquisition, proper care, and humane transportation." Dkt. 28, Exh. P at 3. Defendants have failed to comply with the Court's order in several ways. First, Defendants have failed to provide records accounting for a number of the animals missing from or added to the June 22, 2020, August 21, 2020, and December 16, 2020 inventories. Second, of the few records provided by Defendants, many of them fail to comply with the AWA regulations. Third, Defendants provided records that are inconsistent with other evidence that the government has regarding these animals, thereby calling into question the accuracy of the records provided in response to the Court's order.

### 1. Defendants have failed to provide records accounting for "any and all" animals added to or missing from the June, August and December 2020 inventories.

The government twice brought to Defendants' attention a number of missing records; however, many records remain outstanding. First, the government has not received the 34 acquisition and disposition records that Defendants failed to present to APHIS inspectors on July 8, 2020. *See* Dkt. 28, Exh. P at 3-4. Second, the government has not received disposition records for three Big Cats Defendants transferred in August 2020. Defendants provided a record for three Big Cats transferred to Tiger Haven in August 2020. However, the government has information that, in fact, Defendants transferred *six* Big Cats to that facility in August 2020. Third, the government has not received accurate records for Defendants' wolves. On the August 21, 2020 inventory, there are 12 wolves listed. Dkt. 28, Exh. V at 7-8. Defendants provided a disposition record for 11 wolves that were transferred to the Wild Animal Sanctuary in October 2020. However, on the December 16, 2020 inventory, there are four wolves listed. Dkt. 28, Exh. DD at

8. Thus, Defendants must have acquired wolves between August and December 2020 and must provide an acquisition records for those animals.

Additionally, the government has not received acquisition and disposition records for the following animals. Defendants listed a De Brazza's monkey on the June 22, 2020 inventory, who no longer appeared on the August 21, 2020 inventory. *Compare* Dkt. 28, Exh. J at 8, *with* Dkt. 28, Exh. V. Defendants listed two Bare-tailed wooly opossums on the August, 21, 2020 inventory, but only one was listed on the December 16, 2020 inventory. *Compare* Dkt. 28, Exh. V at 24, *with* Dkt. 28, Exh. DD at 16. There are also a handful of animals who appear for the first time on the December 16, 2020 inventory, including Gladys (tiger), Cersi (tiger), Chuckles (tiger) and Tierian (tiger).

Defendants have also failed to provide any acquisition records for births. *See* 9 C.F.R. § 2.75(b)(1) ("The [acquisition] records shall include any offspring born of any animal while in his or her possession or under his or her control."). These records must accurately identify the parents and any other littermates. *See* 9 C.F.R. § 2.75(b)(1). The December 16, 2020 inventory lists Daniel, for example, as the only cub for the August 21, 2020 litter. It would be rare for there to be one cub in a litter unless the "mother is bred too young, overbred, or malnourished." Exh. AAA ¶ 3 (Fourth Declaration of Dr. Laurie Gage). A healthy tiger should produce two to seven cubs per litter with the typical litter having three to four cubs. *Id.* Defendants have previously made statements implying that Tiki, a tiger cub transferred to Tiger Haven in September 2020, was Daniel's littermate. Dkt. 56 at 4 & Exh. 8 ¶ 12. They also provided a record stating that Tiki was a month old at the time of transfer. Exh. FFF at 6 (Acquisition & Disposition Records sent by Dan Card). However, based on the information provided by Tiger Haven, this was false. Tiki was two weeks old at the time of transfer and was in fact the littermate of Shadow and Chanel who were born September 5, 2020. Exh. ZZ ¶ 4 (Decl. of Mary Lynn Haven); *see also* Dkt. 28, Exh. DD at 14. Thus, Tiki is not Daniel's littermate. Defendants must accurately identify the parents of Daniel and any littermates that he had and their whereabouts. They must also produce acquisition records for all other births during the relevant timeframe.

The Court has already ordered Defendants to produce these records. Dkt. 65. The government respectfully requests that the Court order Defendants to immediately provide these records with complete and accurate information to undersigned counsel, which are already 21 days late.

**2. Defendants' records do not comply with AWA regulations.**

Under 9 C.F.R. § 2.75(b)(1), an exhibitor "shall make, keep, and maintain records or forms which fully and correctly disclose [certain] information concerning animals other than dogs and cats, purchased or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which is transported, sold euthanized, or otherwise disposed of by" that exhibitor. The records must include the following information:

- the name and address of the person from whom the animals were purchased or otherwise acquired or to whom an animal was sold or given;
- the USDA license or registration number of the person if she or he is licensed or registered under the AWA;
- If the person is not licensed or registered under the AWA, the record must include the vehicle license number and State, and the driver's license number (or photographic identification card for nondrivers issued by a State);
- The date of purchase, acquisition, sale or disposal of the animal and;
- The species of the animal.

*Id.* § 2.75(b)(1)(i)-(vi)

On January 20, 2021, Defendants presented five disposition records covering 34 animals to APHIS inspectors. Exh. EEE. Only one of those records complied with the AWA regulations. On January 22, 2021, the government alerted Defendants to the fact that the few records APHIS received did not comply with AWA regulations. The government again raised the issue of non-compliance with the AWA regulations on January 25, 2021, and on January 29, 2021. Defendants have not corrected the records for the skunks, the sloth, or the animals that were transferred to Tiger Haven in Tennessee to provide the information required by the AWA regulations and should be ordered to do so immediately.

**3. Defendants' records are so inconsistent that they call into question whether they "fully and correctly" disclose information required under the AWA regulations.**

The AWA regulations require that the records "fully and correctly" disclose information about the animals referenced. 9 C.F.R. § 2.75(b)(1). However, the few records provided call into question whether Defendants have complied with this provision. For example, the travel certificate

for the Big Cats sent to the Wild Animal Sanctuary in October 2020 list the following cats: Diesel, Forest, and Nala. Exh. GGG (October 2020 Travel Certificates for the Wild Animal Sanctuary). When the government asked about the whereabouts of Boo Boo the tiger who was the subject of the Court's January 15, 2021 order as the mother of cats under the age of one, Defendants stated that Nala was in fact Boo Boo, though they had no evidence establishing that the tigers were the same animal. *See* Exh. FFF at 5. As another example, Defendants provided a record for the tiger, Bubbles, stating that Bubbles in fact died on December 17, 2020. *Id.* at 3. This date is consistent with the account provided by Lauren Lowe to the APHIS inspectors during the January 20, 2021 inspection. *See* Exh. CCC at 4 (January 20, 2021 Inspection Report & Letter). However, the record is inconsistent with the Parties' stipulated facts filed on January 11, 2021. Dkt. 54 ¶ 7. A third example is that Defendants stated in their records that 11 pigs were transferred to the Wild Animal Sanctuary; however, no pigs were transferred to that facility. *See* Exh. GGG. As a fourth example, Defendants provided a record stating that Pat Craig "killed [their liger, Unicara] overdosing with his own drugs!" Exh. EEE at 3. That is also false. The veterinarian hired by Defendants to help them transfer animals from Wynnewood to Thackerville states that only he and Jeff Lowe were darting animals that day with drugs provided by another Oklahoma veterinarian and that he recalled giving the final dose to the liger. Exh. BBB at ¶¶ 8-15 (Decl. IES investigator McLaughlin). Finally, Defendants provided a record stating that a lion named Kahari died on September 11, 2020. Exh. FFF at 3. However, the Lowes filed a notice with another court stating that the lion died on August 31, 2020. *People for the Ethical Treatment of Animals v. Wildlife In Need & Wildlife In Deed,* Case No. 4:17-cv-00186, Dkt. 420, ¶ 3 (S.D. Ind. Sept. 16, 2020).

Regarding the records of the animals transferred to Tiger Haven, Defendants provided Mary Lynn Haven with the name, sex, and age of each animal being transferred to her facility. *See* Exh. ZZ at 3 & Attachment. The information provided to Ms. Haven is inconsistent with the records provided to the government to such an extent as to call into question whether the records are even referring to the same animals, as this chart illustrates:

| Name of Cat (Tiger Haven Record) | Age of Cat (Tiger Haven Record) | Age of Cat (Defendants' Record) |
|---|---|---|
| Elizabeth (born at zoo) | 8 months | 1 year |
| Isabella | 8 months | 1 year |

| | | |
|---|---|---|
| (born at zoo) | | |
| Farrah (born at zoo) | 8 months | 1 year |
| Nero | 2 years | 6 years |
| Chibs | 2 years | 6 years |
| Safari | 2 years | 6 years |
| Tiki | 2 weeks | 1 month |
| Otta | 10 years | 15 years |
| Inkandaya | 10 years | 15 years |

*Compare id.*, *with* Exh. FFF at 6-7. Defendants should be required to establish that the animals transferred to Tiger Haven are in fact those animals listed in their disposition records despite the significant difference in ages listed in the records compared with the information provided to the facility that would be caring for Defendants' animals.

### B. Defendants have failed to establish that they have met the requirements for retaining a qualified attending veterinarian under formal arrangements consistent with AWA regulations.

The Court has ordered Defendants to "retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40, no later than January 29, 2021." Dkt 65 at 33 ¶ 3. Under 9 C.F.R. § 1.1, a qualified attending veterinarian must, among other things, have "received training and/or experience in the care and management of *the species being attended*." 9 C.F.R. § 1.1 (emphasis added). Larger facilities, such as the Thackerville facility, which have a variety of species, may need to make arrangements with a number of veterinarians to ensure that this requirement is met. On January 31, 2021, Defendants provided the name of a veterinarian they have retained to be the attending veterinarian for the animals at the Thackerville facility. But despite numerous requests, to date the government has not received documentation establishing Defendants' proposed attending veterinarian's training and/or experience in the species at the Thackerville facility. Without such documentation, Defendants have failed to establish that the veterinarian they have retained is in fact qualified to be the attending veterinarian for the Thackerville facility.

Under 9 C.F.R. § 2.40, "[i]n the case of a part-time attending veterinarian…the formal arrangements shall include a written program of veterinary care and regularly scheduled visits" to the facility. 9 C.F.R. § 2.40(a)(1). Relevant here, the program of veterinary care ("PVC") must include the following components:

(1) The availability of appropriate facilities, personnel, equipment, and services to comply with the provisions of this subchapter; and

(2) The use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the availability of emergency, weekend, and holiday care.

*Id.* § 2.40(b)(1)-(2). The PVC provided to the government on February 5, 2021, does not comply with these requirements.

Among the formal arrangements, Defendants must identify another qualified veterinarian who will serve as a backup to their attending veterinarian when she is unavailable. *See* 9 C.F.R. § 2.40(b)(2). This requirement is particularly important in this case because, to date, Defendants have not provided documentation establishing that the veterinarian they have employed has made formal arrangements with a veterinary hospital or clinic that has the capacity and willingness to treat Defendants' animals, in particular, adult Big Cats. Absent formal arrangements with a veterinary hospital or clinic, Defendants cannot establish the "availability of appropriate facilities, personnel, equipment, and services" to ensure that their animals will receive adequate care. 9 C.F.R. § 2.40(b)(1).

An attending veterinarian must also be able to use "appropriate methods to prevent, control, diagnose, and treat diseases and injuries." 9 C.F.R. § 2.40(b)(2). The veterinarian employed by Defendants does not currently have a Drug Enforcement Agency ("DEA") license to acquire the controlled substances necessary to safely and adequately sedate, examine, and treat the dangerous animals at Defendants' facility. The veterinarian has not explained how she will acquire these medications without a DEA license. Instead the veterinarian has stated that Xylazine, a tranquilizer, will be used at the facility in case of emergency. Using Xylazine alone to immobilize Big Cats, for example, is inappropriate because Big Cats sedated with the tranquilizer alone have been known to spontaneously bite or scratch people despite appearing sedated. Thus, the current plan for immobilizing Big Cats at the Thackerville facility fails to comply with the AWA regulations and creates a significant safety risk for both the people working with the animals as well as the animals, themselves.

Finally, the PVC must address the "appropriate methods to prevent, control, [and] diagnose" diseases. 9 C.F.R. § 2.40(b)(2). Despite the fact that a number of Big Cats at the Thackerville facility have recently been diagnosed with conditions related to malnutrition, there is no nutritional plan in the PVC. The PVC should address issues commonly observed at the facility, such as metabolic bone disease, to ensure that "appropriate methods" are in place to prevent future cases of the disease and other conditions related to poor nutrition.

In sum, the PVC provided by Defendants does not comply with the AWA regulations. The United States respectfully requests that the Court direct Defendants to immediately take the necessary steps to ensure compliance with 9 C.F.R. §§ 1.1 and 2.40.

### C. Defendants continue to breed their animals in violation of the Parties' December 14, 2020 Court-approved stipulation.

On December 14, 2020, the Parties entered into a stipulation, approved by the Court, which states:

> Pending resolution of the merits of the United States' claims in the Complaint, Defendants will not acquire or dispose of any animal covered by the ESA or any animal covered by the AWA, excluding common dogs, cats, hamsters, or rabbits, absent leave of court sought by duly-noticed motion. Prior to seeking leave of court to acquire or dispose of any animal covered by this agreement, Defendants will meet and confer with the United States pursuant to the Local Rules of the Eastern District of Oklahoma.

Dkt. 23 at 2 ¶ 2. Defendants are well aware that "acquisition" includes by birth. *See* Dkt. 28, Exh. P at 4 (citing Defendants for failure to present acquisition and disposition records, including for "any offspring born of any animal while in his or her possession or under his or her control"); *see also* 9 C.F.R. § 2.75(b)(1) (acquisition includes by birth). Nevertheless, they continue to house male and female animals in the same enclosures.

Government counsel reminded Defendants' counsel of the fact that "acquisition" includes breeding during a meet and confer on January 13, 2021. Nevertheless, on January 20, 2021, APHIS inspectors observed over two dozen female Big Cats being housed with male Big Cats. A number of other female animals, including lemurs, bobcats, and foxes, are being housed with males as well. Defendants have not provided documentation that establishes that all of these animals are spayed and neutered. In fact, on January 24, 2021, Defendants asked APHIS officials what would happen to the cubs if any of the four adult females who were seized by USDA pursuant to the Court's January 15, 2021 order are pregnant. Defendants' question suggests that, not only are their

animals not spayed and neutered, but also that Defendants are knowingly housing their animals to produce additional animals despite their stipulation not to do so. Defendants have not conferred with the United States nor have they filed a motion for leave of court for relief from this requirement. Accordingly, the United States requests that the Court order Defendants to comply with the December 14, 2020 stipulation by either spaying and/or neutering animals, or separating male and female animals who are not spayed or neutered.

### III.   CONCLUSION

The United States has demonstrated Defendants have failed to comply with this Court's January 15, 2021 Order and the Parties' stipulation, which the Court approved on December 15, 2020. Therefore, the United States requests that the Court grant its request for relief.

DATED: February 12, 2021

BRIAN J. KUESTER
United States Attorney
SUSAN BRANDON, Civil Chief
Division United States Attorney's Office
Eastern District of Oklahoma
520 Denison Ave
Muskogee OK  74401

Respectfully Submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources

/s/  Mary Hollingsworth
MARY HOLLINGSWORTH
Senior Trial Attorney
AZ Bar # 027080
BRIENA STRIPPOLI
Trial Attorney
United States Department of Justice
Environment & Natural Resources
Division Wildlife & Marine Resources
Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Mary.hollingsworth@usdoj.gov | 202-598-1043
Briena.Strippoli@usdoj.gov | 202-598-0412
Fax: 202-305-0275

*Attorneys for the United States of America*