# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF
# OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>       v.<br><br>JEFFREY LOWE,<br><br>LAUREN LOWE,<br><br>GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and<br><br>TIGER KING, LLC,<br><br>  *Defendants*. | Case No. 6:20-cv-00423-JFH |

# UNITED STATES' OPPOSITION TO
# DEFENDANTS' PARTIAL MOTION TO DISMISS

## **TABLE OF CONTENTS**

PAGE

INTRODUCTION .................................................................................................... 1

ANIMAL WELFARE ACT ..................................................................................... 3

LEGAL STANDARD .............................................................................................. 3

ARGUMENT ........................................................................................................... 4

    I.  The United States Has Sufficiently Pled that Defendants Violated and Will Continue to Violate the AWA by Unlawfully Exhibiting Animals without a Valid USDA Exhibitor License........................................................................................................ 4

        A.  USDA has consistently and rationally interpreted the term "exhibitor"...................... 5

        B.  The allegations supporting the government's unlawful exhibition claim easily meet the standard to survive a motion to dismiss. ....................................................... 9

    II.  The Animal Welfare Act's Definition of "Exhibitor" Is Not Unconstitutionally Vague. ... 12

    III. The Animal Welfare Act's Definition of "Exhibitor" Does Not Violate the First Amendment. ...................................................................................................... 16

    IV. The Complaint Establishes a Legally Cognizable Claim Against Tiger King, LLC. .................................................................................................................. 19

CONCLUSION...................................................................................................... 21

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cnty.*,
    492 F.3d 1164 (10th Cir. 2007) ................................................................. 18

*Am. Target Advert., Inc. v. Giani*,
    199 F.3d 1241 (10th Cir. 2000) ................................................................. 18

*Ashcroft v. ACLU*,
    535 U.S. 564 (2002) ................................................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... 4, 19, 20

*Bostock v. Clayton Cnty.*,
    140 S.Ct. 1731 (2020) ......................................................................... 6, 7, 8

*Boutilier v. Immigr. & Naturalization Servs.*,
    387 U.S. 118 (1967) ................................................................................... 12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) ................................................................................... 18

*City of Renton v. Playtime Theaters, Inc.*,
    475 U.S. 41 (1986) ..................................................................................... 18

*Davis v. Michigan Dep't of Treasury*,
    489 U.S. 803 (1989) .................................................................................. 8, 9

*Doe v. Sch. Dist. No. 1, Denver*,
    970 F.3d 1300 (10th Cir. Aug. 17, 2020) ................................................... 4

*Golan v. Holder*,
    609 F.3d 1076 (10th Cir. 2010) ........................................................... 17, 18

*Golthy v. Alabama*,
    287 F. Supp. 2d 1259 (M.D. Ala. 2003) ................................................... 20

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................... 12

*Haviland v. Butz*,
    543 F.2d 169 (D.C. Cir. 1976) ........................................................... *passim*

*Hernandez-Gotay v. United States*,
    985 F.3d 71 (1st Cir. 2021) ....................................................................... 16

*In re: Martine Colette*,
    AWA Docket No. 03-0034, 2009 WL 2710082 (U.S.D.A. Aug. 21, 2009) ................. 2, 10, 15

*In re Bill E. DeLozier*,
    AWA Docket No. 98-0036, 2000 WL 33300048, 60 Agric. Dec. 28 (U.S.D.A. 2000) ............13

*In re Lloyd A. Good, Jr.*,
  49 Agric. Dec. 156 (1990) ................................................................ *passim*

*In re Sidney Jay Yost*,
  2017 WL 6766302 (U.S.D.A. Dec. 14, 2017) .......................................... 8, 15

*Johnson v. United States*,
  576 U.S. 591 (2015) ................................................................................ 13

*Kollman v. Vilsack*,
  74 Agric. Dec. 52 (2015) ........................................................................ 13

*Naser Jewelers, Inc. v. City of Concord*,
  513 F.3d 27 (1st Cir. 2008) ..................................................................... 17

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ................................................................................ 17

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) .................................................................................. 16

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) .................................................................................. 8

*Slavin v. United States*,
  403 F.3d 522 (8th Cir. 2005) ................................................................... 13

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) ................................................................................ 18

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*,
  614 F.3d 1163 (10th Cir. 2010) ............................................................... 19

*United States v. Petrillo*,
  332 U.S. 1 (1947) ...................................................................... 12, 14, 19

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................................ 16

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ................................................................................ 12

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................................ 17

*907 Whitehead St., Inc. v. Sec'y of U.S. Dep't of Agric.*,
  701 F.3d 1345 (11th Cir. 2012) .......................................................... *passim*

## STATUTES

7 U.S.C. § 2131 ............................................................................ 3, 14, 16, 17

7 U.S.C. § 2131(1) .................................................................................. *passim*

7 U.S.C. § 2132(h) ................................................................................. *passim*

7 U.S.C. § 2133 ..................................................................................................... 3, 5, 8

7 U.S.C. § 2134 ........................................................................................................ 3, 5

7 U.S.C. § 2140 ............................................................................................................ 3

7 U.S.C. § 2143 ........................................................................................................ 3, 8

7 U.S.C. § 2143(a)(1)-(a)(2)(A) ....................................................................................9


FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 2, 20

Fed. R. Civ. P. 12(b)(6) ...............................................................................................20


REGULATIONS

9 C.F.R. § 1.1 ...................................................................................................... *passim*

9 C.F.R. § 2.75(b)(1) .....................................................................................................3

9 C.F.R. § 2.75(b)(2) .....................................................................................................3

9 C.F.R. § 2.75(b)(3) .....................................................................................................3

9 C.F.R. § 2.8 ................................................................................................................ 3

9 C.F.R. § 3.1-3.142 ..................................................................................................... 9


OTHER AUTHORITIES

U.S. Dep't of Agric., Animal Welfare Inspection Guide,
https://www.aphis.usda.gov/animal_welfare/downloads/Animal-Care-Inspection-Guide.pdf ...1, 7

U.S. Constitution, Amendment 1 ................................................................................16

The Body of Liberties § 92 (Mass. Bay Colony 1641), reprinted in American Historical
Documents 1000-1904, 43 Harvard Classics 66, 79 (C. Eliot ed. 1910) .........................................16

## INTRODUCTION

The United States has more than adequately alleged Defendants are "exhibitors" under the Animal Welfare Act ("AWA") and, thus, subject to the AWA's regulations and standards, which they have repeatedly violated. Defendants claim that the United States has failed to state a claim even after the Court found that the United States demonstrated a likelihood of success on the merits of that very claim. *See* Dkt. 65. Defendants do not deny that members of the public have visited Greater Wynnewood Exotic Animal Park ("GWEAP") and the Tiger King Park and viewed animals since Jeffrey Lowe voluntarily terminated his license on August 21, 2020.[1] Instead, they argue that their actions do not constitute "exhibiting" under the AWA. Defendants urge the Court to reject the USDA's long-standing interpretation of the AWA and the case law that supports that interpretation in favor of their proposed interpretation. But, as this Court noted, USDA's construction of the AWA should be followed unless there are compelling indications that it is wrong. Dkt. 65 at 23. That Defendants would prefer a different interpretation of "exhibitor" is not a compelling indication that USDA's construction is wrong.

The United States' Complaint ("Complaint") alleges (and Defendants have since admitted, Dkt. 73, p.2) that the animals in Defendants' possession have been used for exhibition for years. The Lowes did not retire and decide to care for their 150+ exotic and other animals as pets. Rather, as the facts alleged in the Complaint show, Mr. Lowe and the other Defendants have and continue to exhibit animals to members of the public, including filmmakers, members of the press and other individuals, while promoting their next big animal exhibition venture: Tiger King Park. *See*, *e.g.*, Dkt. 2, ¶¶ 4-7, 89-93. These well-pleaded factual allegations are accepted as true at this stage in the litigation. Thus, Defendants' attempt to dispute or downplay

---

[1] In an attempt to temporarily circumvent the AWA and avoid oversight by the U.S. Department of Agriculture ("USDA"), Jeffrey Lowe chose to voluntarily terminate his license, possibly believing that the move would moot the administrative action filed by USDA a few days earlier to permanently revoke his license. Defendants claim that Jeffrey Lowe terminated his license "because he would have to apply for a new one anyway within a matter of weeks." Dkt. 73, p. 2. However, that is untrue. A licensed exhibitor moving to a new location within the same state may simply add the new location as a second site on the existing license. A new license would be required only if the licensee is proposing a change of activity that would require a change in the class of license, such as a shift from a Class C exhibitor license to a Class B dealer license. *See* U.S. Dep't of Agric., Animal Welfare Inspection Guide, 4-22 (Jan. 2021) https://www.aphis.usda.gov/animal_welfare/downloads/Animal-Care-Inspection-Guide.pdf.

those facts in a motion to dismiss cannot result in dismissal.[2] The question is whether the United States' factual allegations, taken as true, are sufficient to show that Defendants' are exhibitors within the meaning of the AWA. *See* 7 U.S.C. § 2131(1). The answer is indisputably yes.

Defendants' constitutional challenges to the AWA are also without merit. First, Defendants' argument that the AWA's "exhibitor" definition as applied here is unconstitutionally vague is specious. The AWA's definition of "exhibitor" conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices; this is all the Constitution requires. For over 45 years, the AWA's exhibitor definition has been consistently and uniformly applied and several courts, including this one, have afforded it deference. *Haviland v. Butz*, 543 F.2d 169, 174 (D.C. Cir. 1976); Dkt. 65, p.24. Defendants' arguments that it would be impossible for them to know that "exhibiting" includes online distribution of images for compensation or that "public" includes the press, are severely undercut by jurisprudence. *See*, *e.g.*, *907 Whitehead St., Inc. v. Sec'y of U.S. Dep't of Agric.*, 701 F.3d 1345, 1350 (11th Cir. 2012); *In re: Martine Colette*, AWA Docket No. 03-0034, 2009 WL 2710082, at *1 (U.S.D.A. Aug. 21, 2009). Accordingly, the AWA's "exhibitor" definition is not void for vagueness.

Second, the AWA does not impinge on Defendants' First Amendment rights. As an initial matter, this Court has implicitly addressed and rejected this argument, and it should reaffirm that decision here. *See* Dkt. 55, p. 7-8; Dkt. 65. No aspect of the AWA or its implementing regulations' definition of exhibitor has curtailed Defendants' ability to display their animals, rather it merely requires them to obtain a license to insure the humane treatment and care of the animals. Congress intended to regulate the exhibition of animals used in commerce, not speech. Even assuming, *arguendo*, that the AWA's definition of exhibitor burdens Defendants' speech, it does so in a content-neutral manner that survives intermediate

---

[2] While not necessary for resolving this motion, the evidence developed since the filing of the Complaint confirms that the Lowes have taken every opportunity to promote themselves as exhibitors and communicate to the public their intention to use their animals for exhibition. Dkt. 28-32 (press invited to tour the zoo). *See*, *e.g.*, Dkt. 28-31, ¶¶ 5, 6, 7; Dkt. 62-13, ¶ 8 ("Come and see us down at the new park when we get it opened up. It won't be too much longer."); ¶ 9 ("Come see us in the spring at the new park."); ¶ 12 ("[W]hen we warm up this spring, we'd like to invite you out to the new Tiger King Park. It will be open despite everything you hear"); *contra* Dkt. 73, p. 2 (now claiming that Defendants "merely advertis[e] that a zoo *may* open in the future" (emphasis added)).

scrutiny. The content-neutral AWA and its regulations serve substantial government interests and are also narrowly drawn to serve that interest.

Finally, the government has sufficiently pled and established a legally cognizable and plausible claim against Tiger King, LLC. Fed. R. Civ. P. 8(a)(2) only requires a short and plain statement of the claim. Over 20 paragraphs of the Complaint allege factual allegations pertaining to Tiger King, LLC. Accepting these well-pleaded factual allegations as true and drawing all reasonable inference in the United States' favor, the Complaint alleges plausible claims for relief under the AWA and Endangered Species Act ("ESA"). Furthermore, Defendants' motion does not comply with LCvR 7(o). Accordingly, the Court should deny Defendants' partial motion to dismiss.[3]

## ANIMAL WELFARE ACT

Congress found it "essential to regulate, as provided in this chapter, the transportation, purchase, sale, housing, care, handling, and treatment of animals…by persons or organizations engaged in using them…for exhibition purposes." 7 U.S.C. § 2131. The purposes of the regulation is "to insure that animals *intended*…for exhibition purposes…are provided humane care and treatment." *Id.* § 2131(1) (emphasis added). An exhibitor must possess a valid AWA license and comply with the regulations and standards promulgated by the Secretary. *See* 7 U.S.C. §§ 2133, 2134. Particularly relevant in this case, exhibitors must maintain pertinent records and comply in all respects with the regulations and standards for the humane handling, care, treatment, housing, and transportation of animals. 7 U.S.C. §§ 2140, 2143; 9 C.F.R. §§ 2.8, 2.75(b)(1)-(3).

The AWA defines "exhibitor" as "any person…exhibiting any animals…to the public for compensation, as determined by the Secretary, and such term includes carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not." 7 U.S.C. § 2132(h). "Zoo" is broadly defined in the regulations as "any park, building, cage, enclosure, or other structure or premise in which a live animal or animals *are kept for* public exhibition or viewing, regardless of compensation." 9 C.F.R. § 1.1 (emphasis added).

_____

[3] Defendants move only to dismiss Claim 11 under the Animal Welfare Act and all claims against Defendant Tiger King LLC. Except for Tiger King LLC, Defendants do not move to dismiss Claims 1-10 under the Endangered Species Act.

**LEGAL STANDARD**

When reviewing a motion to dismiss, the Court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to [the United States]." *Doe v. Sch. Dist. No. 1, Denver*, 970 F.3d 1300, 1304 (10th Cir. 2020) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A complaint is 'plausible on its face' if its factual allegations allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe*, 970 F.3d at 1309 (citation omitted). Under LCvR 7.1(o), "[a]ll motions to dismiss shall include a section explaining why an amendment to the complaint or petition would be futile."

**ARGUMENT**

I.     **The United States Has Sufficiently Pled that Defendants Violated and Will Continue to Violate the AWA by Unlawfully Exhibiting Animals without a Valid USDA Exhibitor License.**

In their motion to dismiss, Defendants argue that USDA's jurisdiction under the AWA extends only to in-person exhibition to the general public at a traditional zoo. Dkt. 73, p. 7-8. Thus, according to Defendants, any display of animals to particular members of the public or online cannot constitute a violation of the AWA. Defendants also argue that exhibiting occurs only when the primary goal of the activity is to display animals. *See* Dkt. 73, p. 4-5. Notably, however, Defendants fail to provide any legal support for their preferred interpretation of the AWA. This is not surprising since Defendants' interpretation of the AWA is at odds with the plain language of the statute and regulations as well as relevant case law.

As an initial matter, Defendants attempt to create a strawman by throwing out hypothetical examples that bear no relation to the allegations in the Complaint, nor to the United States' position. *See, e.g.*, Dkt. 73, p. 4-6. This attempt should be rejected at the outset. First, Defendants' arguments largely rely on inferences to be drawn from the facts such as whether animals were the primary focus of videos or online content, or the certitude that the Lowes intend to open Tiger King Park. *Id.* However, at the pleadings stage, all inferences from the Complaint's factual allegations are to be made in favor of the United States. Defendants

therefore cannot prevail at this stage by spinning the inferences to be drawn from the facts differently.

Second, Defendants conflate the Complaint's examples of exhibiting with the evidence that Defendants' animals are "intended … for exhibition purposes." *See* Dkt. 73, p. 4-6. Contrary to Plaintiffs' suggestion (Dkt. 73, p. 5), a fair reading of the Complaint demonstrates that the United States has not alleged, nor has it claimed, that the mere posting of pictures or videos of animals online without compensation constitutes exhibiting under the AWA. Nor, contrary to Defendants' arguments (Dkt. 73, p. 4-5), has the United States alleged that posting content without showing any animals to try to make money from platforms such as Cameo or OnlyFans, is exhibition under the AWA. However, many of those videos and posts  advertising that Tiger King Park will be open in the near future show that Defendants' animals continue to be "intended…for exhibition purposes." *See* 7 U.S.C. § 2131(1).

Based on the reasonable inferences to be drawn from the Complaint's factual allegations, Defendants have exhibited their animals to members of the public visiting the zoo and in pay-per-view platforms. As shown below and as the Court correctly concluded in its preliminary injunction ruling, this constitutes exhibiting under the AWA, which requires a valid Class C license. *See* 7 U.S.C. §§ 2133, 2134.

**A.  USDA has consistently and rationally interpreted the term "exhibitor."**

Defendants urge the Court to reject USDA's longstanding interpretation of "exhibitor" in favor of a definition that is inconsistent with the plain language of the statute. Specifically, Defendants argue that the term "exhibitor" must be limited to "a public or private brick-and-mortar location which intentionally invites the general public in to view animals." Dkt. 73, p. 8. Defendants provide no support for this reading of the statute. And, despite having the benefit of the government's preliminary injunction reply brief addressing this issue, Defendants make no attempt to grapple with case law adverse to their position or even this Court's own order on the subject. As stated in the January 15, 2021 order, the "court is required to give substantial weight to the interpretation made by the agency which is charged with the statute's administration. We are obligated to regard as controlling a reasonable, consistently applied interpretation of the government." Dkt. 65, p. 23.

The AWA defines an "exhibitor" as "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects

commerce, or will affect commerce, to the public for compensation, as determined by the Secretary, and such term includes . . . zoos exhibiting such animals whether operated for profit or not." 7 U.S.C. § 2132(h). The exhibition of animals to the public,—whether in-person at a zoo or through online display for compensation—squarely fits within the definition of exhibitor and exhibiting under the AWA. The statute contains no distinctions or caveats based on whether the public exhibition is via in-person visitors or through some other method. Nor is the AWA's purpose of ensuring that animals intended for exhibition be treated humanely served by requiring those exhibiting animals in-person to be licensed, but those engaged in the same conduct be exempted from such requirements because their mode of exhibition is remote. In both cases, animals are being displayed to the public and Congress has an interest in ensuring that these animals are treated consistent with humane standards.

Consistent with this, USDA's longstanding interpretation of "exhibitor" is that it is not limited to displays to the general public or in-person displays but that Congress intended the term to apply to all forms of exhibition that make animals available to the public. *In re: Lloyd A. Good, Jr.*, 49 Agric. Dec. 156, 174 (U.S.D.A. 1990) (recognizing USDA's longstanding interpretation of "exhibitor" as "making animals available to the public"). The courts that have examined the issue have agreed. *907 Whitehead St., Inc.*, 701 F.3d at 1350 (holding that the "Secretary's reasonable and consistent interpretation of 'exhibitor' as articulated in *Good* is entitled to *Chevron* deference") (citation omitted).

Without addressing these authorities, Defendants argue that, under a recent Civil Rights Act decision, *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731 (2020), USDA can only regulate a "brick-and-motor location which intentionally invites the general public in to view animals" because, according to Defendants, this can be the only possible form of exhibition envisioned by Congress when the statute was enacted. Dkt. 73, p. 8. Defendants are wrong for three reasons. First, the Supreme Court's decision, in fact, states the opposite:

> "Those who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result. Likely, they weren't thinking about many of the Act's consequences that have become apparent over the years, including its prohibition against discrimination on the basis of motherhood or its ban on the sexual harassment of male employees. But the limits of the drafters' imagination supply no reason to ignore the law's demands. When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit."

6

*Bostock*, 140 S.Ct. at 1737. The Supreme Court analyzed the meaning of particular terms of the statute, not the applications anticipated at the time the statute was enacted. *See id.* at 1739-41.

Second, although Defendants state that their grievance is with USDA's interpretation of "exhibit" and "public" within the definition of "exhibitor," they never actually debate the meaning of these terms; rather, they argue that the platform in which the exhibiting is taking place should be limited to those platforms within Congress' imagination in 1970. *See* Dkt. 73, p. 7. However, that is precisely what the Supreme Court cautioned against in *Bostock.* USDA has consistently interpreted "exhibiting" as "showing or displaying animals to the public." *See* U.S. Dep't of Agric., Animal Welfare Inspection Guide, 4-22 (Jan. 2021) https://www.aphis.usda.gov/animal_welfare/downloads/Animal-Care-Inspection-Guide.pdf; *see also 907 Whitehead St., Inc.*, 701 F.3d at 1350 (noting that the "most obvious means of exhibiting is "displaying [the animals] to the public for compensation"); *In re: Lloyd A. Good, Jr.*, 49 Agric. Dec. at 174 (recognizing USDA's longstanding interpretation of "exhibitor" as "making [animals] available to the public"). Defendants fail to establish that the term "exhibiting" had any other meaning at the time the AWA was enacted. Nor do they argue that USDA's definition of exhibiting is unreasonable. Under *Bostock*, that the platform for exhibiting the animals could not be imagined in the 1970s is irrelevant. The written word is the law. *Bostock*, 140 S.Ct. at 1737. Regarding the term "public," Defendants provide no support for their contention that the term could only have meant the "general public" rather than members of the public, as USDA interprets the terms. *See In re: Sidney Jay Yost,* 2017 WL 6766302, at *6 (U.S.D.A. Dec. 14, 2017) (displaying a mountain lion cub solely to a restaurant owner, who "IS a member of the public" constitutes exhibition).

Third, Defendants' interpretation of the AWA and, specifically "exhibitor," is in direct conflict with the plain language of the statute. Defendants argue without support that exhibiting can only take place at "a typical zoo as it existed in 1970." Dkt. 73, p. 7. Setting aside the fact that the Thackerville facility meets the AWA's definition of zoo, the definition of "exhibitor" states that "this term includes carnivals, circuses, animal acts, zoos, and educational exhibits." 9 C.F.R. § 1.1. The use of the word "includes" necessarily means that Congress did not intend for the AWA to be limited to exhibition that occurs at a traditional zoo. As the D.C. Circuit explained:

> In like vein, the accompanying report of the House Committee on
> Agriculture states that a prime objective was to "'bring into the regulatory
> framework of the Act for the first time exhibitors (such as circuses, zoos,
> carnivals and road shows)….'" The words "'includes'" and "'such as'"
> point convincingly to the conclusion that the listing of types of exhibitions
> in the statutory text was intended to be but partial and illustrative.

*Haviland*, 543 F.2d at 174; *cf. Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("It is true that use

of the word 'include' can signal that the list that follows is meant to be illustrative rather than

exhaustive."). In addition, the inclusion of carnivals and circuses, which are not typically brick-

and-mortar locations, indicates that Congress did not have that limitation in mind. *See also In re:*

*Sidney Jay Yost*, 2017 WL 6766302, at *3 (displaying of lion at the taping of "The Tonight

Show" constitutes exhibition). Congress certainly could have included limiting language as

Defendants propose. But, when Congress amended the statute to add the "carnivals, circuses, and

zoos" language, it chose not to do so. *See Bostock*, 140 S.Ct. at 1739 (describing the various

ways Congress <u>could have</u> limited the scope of the statute but ultimately concluded that "none of

this is the law we have").

    In response to this straightforward application of terms that have been reasonably

construed by USDA for years, Defendants march out a parade of horribles.  Defendants'

arguments, however, ignore statutory context, Plaintiff's actual arguments, *see* supra Argument

I.B., and inconvenient facts.

    Defendants incorrectly assert that, under USDA's interpretation of exhibitor, Netflix,

Cameo, OnlyFans, and others would be considered exhibitors as well. Dkt. 73, p. 7-8. This

ignores the purpose and plain language of the AWA. As already noted, the stated purpose of the

AWA is to "insure that animals intended…for exhibition purposes…are provided humane care

and treatment." 7 U.S.C. § 2131(1). The AWA goes on to say that the Secretary shall issue a

license to an exhibitor provided that the exhibitor has "demonstrated that his facilities comply

with the standards promulgated by the Secretary pursuant to section 2143 of this title." 7 U.S.C.

§ 2133. Section 2143 directs the Secretary to promulgate standards for "humane handling, care,

treatment, and transportation of animals." 7 U.S.C. § 2143. It is obvious from these provisions,

as well as the numerous regulations and standards that provide specific requirements for how the

exhibitor must care for the animals, that Congress intended the AWA to apply only to a person

who has actual possession or control over the animal being exhibited, as well as those working

8

under the exhibitor. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation omitted).

Defendants also argue that, if the Court determines that the United States has stated a claim, "any person who legally owns any animal, as defined by 7 U.S.C. § 2132, shall [be required to] shield the eyes of any guest lest they be labeled 'exhibitors.'" Dkt. 73, p. 6. Of course, Defendants fail to cite any evidence of their sky-is-falling scenario. The fact is that Defendants own or possess 150 exotic and wild animals that they have used and are continuing to use for exhibition purposes at the zoo. The Lowes have chosen to live at the 55-acre property where the zoo is located. Given the size of the property, the Lowes should certainly be able to avoid a "lifetime of solitude" by simply hosting guests at a different location on the property.

In any event, this situation is a crisis of Defendants own making. With the financial rewards of operating a zoo comes great responsibility with respect to the care of the animals being exhibited. *See* 7 U.S.C. § 2143(a)(1)-(2)(A); 9 C.F.R. § 3.1-3.142. Defendants failed to comply with the AWA and, in response to USDA's decision to institute a 21-day suspension and pursue revocation of Mr. Lowe's license, Mr. Lowe chose to terminate his license. Whether intended or not, Mr. Lowe's decision had the consequence of limiting permissible activities vis-à-vis the 150 exotic and wild animals at the Thackerville facility.

**B. The allegations supporting the government's unlawful exhibition claim easily meet the standard to survive a motion to dismiss.**

The United States' Complaint includes sufficient factual allegations to establish that Defendants exhibit their animals by allowing members of the public to view the animals at Tiger King Park and through pay-per-view platforms. Additionally, the Court can draw the reasonable inference from the factual allegations in the Complaint that Defendants' animals are intended for exhibition purposes. As a practical matter, Defendants do not even dispute the facts underlying the AWA claim. *See* Dkt. 73, p. 4 (Netflix film crew filmed the animals "for context"); (some Cameo videos show animals); 5 (stating that in some OnlyFans posts, the animals "can be briefly seen"). It is simply their opinion that their activity does not require an AWA license.

The AWA defines a "zoo" as "any park, building, cage, enclosure, or other structure or premise in which a live animal or animals are *kept for* public exhibition or viewing, regardless of compensation." 9 C.F.R. § 1.1 (emphasis added). Beyond stating that the zoo is still under

construction and not yet open to the public, Defendants do not argue that the Complaint fails to allege sufficient facts as to this point. *See* Dkt. 73, p. 5; *see also* Dkt. 65, p. 25 (rejecting Defendants' argument that Tiger King Park is not a zoo because it is not yet open to the public). Thus, if animals at the zoo are displayed to or viewed by members of the public, whether for compensation or not, that activity constitutes exhibition under the AWA. *See* 9 C.F.R. § 1.1 (definition of "exhibitor").

The Complaint alleges that, "Defendants have been exhibiting their animals to a film crew as recently as October 2020." Dkt. 2, ¶ 89, *see id.* ¶ 90. Even if the Court were not required to accept this allegation as true, Defendants readily admit that a Netflix film crew has been to the zoo and has filmed the animals "for context." Dkt. 73, p. 4;[4] *see also* Dkt. 55-10, ¶ 8. Accordingly, Defendants have displayed animals to members of the public without a valid AWA license. As the Court concluded, this constitutes exhibition under the AWA and, thus, the government sufficiently pled the AWA claim.[5]

Under the Local Rules, Defendants were required to "include a section explaining why an amendment to the complaint or petition would be futile," but failed to do so. *See* LCvR 7.1(o). Defendants cannot make that showing. Should the Court determine that the government's Complaint does not allege sufficient factual allegations as to this claim, the government can

---

[4] Although Defendants admit that the film crew viewed and filmed the animals at Defendants' zoo, they go on to mischaracterize the government's argument, claiming that "[a]llowing a film crew to interview [Defendants] on their own land is exhibiting *regardless* of whether any animal is shown." Dkt. 73, p. 4 (citing Dkt. 2, ¶¶ 89-90). The cited paragraphs state that the government believes Defendants are exhibiting animals to a film crew—which Defendants admit—and that they have made statements about their future plans to exhibit their animals. Dkt. 2 ¶¶ 89-90. Neither paragraph supports Defendants' assertions. Once again, if someone wants to interview the Lowes somewhere on the 55-acre property that is out of view of the animals, they are welcome to do so.

[5] Moreover, since filing the Complaint, the government has learned that another filmmaker was at the GWEAP photographing the animals after Mr. Lowe terminated his license. The government also discovered that Defendants invited members of the press and their photographer to the Thackerville zoo to view and photograph the animals as recently as December 4, 2020. Dkt. 28-32. Another court held that "[m]embers of the press are generally considered 'the public' for Animal Welfare Act purposes." *In re: Martine Colette*, 2009 WL 2710082, at *11. The Judicial Officer concluded that unlawful exhibiting occurred when animals were visible during a press conference attended by members of the press. *Id.*

easily cure the issue by including the newly discovered examples of Defendants exhibiting their animals to members of the public in an amended complaint.

The Complaint also includes sufficient factual allegations regarding Defendants' online exhibition of animals. As the Complaint notes, the "Lowes are also exhibiting animals in 'shout out' videos made available to members of the public for a fee on the video-sharing platform, Cameo." Dkt. 2, ¶ 4 (including pictures of the Lowes on the platform and an example of a video posted on the pay-per-view platform displaying a white tiger); ¶ 92 (alleging that Defendants exhibited a white tiger in a video produced for a fee for one or more members of the public through the Cameo platform). The Complaint alleges that "Lauren Lowe also exhibits animals, including lions and tigers, on the paid subscription online platform "OnlyFans" using the handle @tigerqueen_." *Id.*, ¶ 5; *see also id.*, ¶ 93. Once again, in their motion to dismiss, Defendants do not take issue with these facts and any inferences to be drawn must be in favor of the United States.

Defendants appear to argue that the Complaint is deficient because it "makes no attempt to distinguish when the photographs or videos were filmed in a case where the timeline is important." Dkt. 73, p. 5. Defendants' argument is a red herring. The only example cited by Defendants is of Lauren Lowe posting a photograph of her with a tiger cub taken in 2015. *Id.* Once again, the act of taking the photo or filming yourself with your own animal is not exhibition. Nor is it exhibition to simply post a photo of yourself with an animal on a free site, such as Facebook, as Defendants imply. Dkt. 73, p. 5. Rather, Lauren Lowe became an exhibitor when she chose to make the photo available to the public on a pay-per-view site. Defendants do not dispute that Lauren Lowe posted the photo on a pay-per-view site after Mr. Lowe voluntarily terminated his license. *See* Dkt. 65, p. 24 n. 18.

Further, although Defendants would like the Court to ignore the fact that the animals in their possession have always been intended for exhibition purposes and, as illustrated by Defendants' own statements, continue to be intended for exhibition purposes, the Complaint easily establishes that it is plausible that Defendants' animals are "intended" for exhibition purposes, thereby bringing their animals within USDA's jurisdiction. 7 U.S.C. § 2131(1). The Complaint alleges that Defendants exhibited the animals at Greater Wynnewood Exotic Animal Park under Jeffrey Lowe's Class C AWA license until mid-August. *See* Dkt. 2, ¶¶ 60, 80, 85. Those same animals were then moved to the Thackerville facility around the end of September.

*Id.*, ¶ 86. The Complaint shows Defendants' website, which alerts the public that the "Animal Park" will open in 2021. Dkt. 2, ¶¶ 6-7.

## II.     The Animal Welfare Act's Definition of "Exhibitor" Is Not Unconstitutionally Vague.

Defendants claim the Complaint should be dismissed because "no reasonable person in the Lowes['] shoes could have realistically assumed the actions which the government alleges constitutes 'exhibiting' to the 'public.'" Dkt. 73, p. 13. Defendants' argument is without merit. The AWA's definition of "exhibitor" "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more." *United States v. Petrillo*, 332 U.S. 1, 8 (1947).

When evaluating a statute for vagueness, courts must determine whether a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited," and whether the statute "provide[s] explicit standards" to avoid "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Moreover, in order to find a civil statute, like the AWA, void for vagueness, the statute must be "so vague and indefinite as really to be no rule or standard at all." *Boutilier v. Immigr. & Naturalization Servs.*, 387 U.S. 118, 123 (1967); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498-99 (1982) ("The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment . . . The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.").

The AWA, and in particular the definition of "exhibitor," is sufficiently clear and provides fair warning of the conduct it covers. The AWA defines exhibitor as:

> "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary. This term includes carnivals, circuses, animal acts, zoos, and educational exhibits, exhibiting such animals whether operated for profit or not.  This term excludes retail pet stores, horse and dog races, an owner of a common, domesticated household pet who derives less than a substantial portion of income from a nonprimary source (as determined by the Secretary) for exhibiting an animal that exclusively resides at the residence of the pet owner, organizations sponsoring and all persons participating in State and country fairs, livestock shows, rodeos, field trials, coursing events, purebred dog and cat shows, and any other fairs

> or exhibitions intended to advance agricultural arts and sciences, as may be
> determined by the Secretary."

9 C.F.R. § 1.1; *see also* 7 U.S.C. § 2132(h). The AWA's definition of exhibitor

defines in no uncertain terms what conduct constitutes exhibiting and what conduct

does not.

 For over 45 years the AWA's definition of exhibitor has been consistently and uniformly

applied. *See 907 Whitehead St., Inc.*, 701 F.3d at 1349-50; *Haviland*, 543 F.2d at 174; *In re:*

*Lloyd A. Good, Jr.*, 49 Agric. Dec. at 174; *Kollman v. Vilsack*, 74 Agric. Dec. 52, 57 n.a1 (2015)

("'exhibit' means 'to present for others to see'"); *In re: Bill E. DeLozier*, AWA Docket No. 98-

0036, 2000 WL 33300048, at *2, 60 Agric. Dec. 28 (U.S.D.A. Nov. 7, 2000).  Notably,

Defendants did not (and cannot) point to a single case where any provision of the AWA was held

to be unconstitutionally vague, much less the definition of "exhibitor." Indeed, the Eighth Circuit

found that "the [AWA] statute is not unconstitutionally vague because it provides fair warning of

what is proscribed." *Slavin v. United States*, 403 F.3d 522, 523-24 (8th Cir. 2005) (per curiam)

(citation omitted). Nor can Defendants point to a circuit split, inconsistent interpretation, or

failed efforts by the courts to establish a standard for what constitutes an exhibitor. *Cf. Johnson*

*v. United States*, 576 U.S. 591, 598 (2015) (finding that the Court's "repeated attempts and

repeated failures to craft a principled and objective standard" was evidence that the statutory

provision was unconstitutionally vague).

 In fact, the sole case Defendants rely on to suggest that the exhibitor definition is

unconstitutionally vague—*907 Whitehead St., Inc.*—stands for the opposite proposition.

*Compare* Dkt. 73, p. 13, *with 907 Whitehead Street, Inc.*, 701 F.3d at 1349-50. Like Defendants,

the museum in *907 Whitehead* argued that it was not an "exhibitor" of animals as defined in the

AWA and, even if it was, that the AWA was unconstitutional.[6] *Id.* at 1349. The Eleventh Circuit,

relying on *Good*, affirmed the district court's finding that the museum exhibited animals when it

broadcasted their images online and used them to attract visitors through promotional advertising

material. *Id.* at 1350; *see also In re: Lloyd A. Good, Jr.*, 49 Agric. Dec. at 174 (holding that an

exhibitor becomes subject to the AWA if he distributes animals by television or simply by

---

[6] The Eleventh Circuit disagreed and found that Congress has the power to regulate the museum
and the exhibition of the Hemingway cats via the AWA.  *Id.* at 1351.

making them available to the public). Moreover, the Eleventh Circuit held that "[t]he Secretary's reasonable and consistent interpretation of 'exhibitor' as articulated in *Good* is entitled to *Chevron* deference." 701 F.3d at 1350 (citation omitted). Other courts have also afforded the definition of exhibitor deference, including this Court. *See Haviland*, 543 F.2d at 174 (affording "heightened" deference to the AWA's definition of exhibitor and finding "nothing suggesting persuasively that the Secretary's interpretation of 'exhibitor' is incorrect"); Dkt. 65, p. 24 ("This Court has no indication that this interpretation is unreasonable or incorrect and will therefore afford it deference."). Thus, Defendants argument that the government is "mak[ing] it up as it goes along" and that there was no possible way they could have understood the meaning of exhibiting under the AWA, Dkt. 73, p. 14-15, is undercut by nearly 45 years of USDA's public interpretation of the AWA definition of "exhibitor." Moreover, the 2012 *907 Whitehead St.* decision made clear that this definition extended to online content or simply by making the animals available to the public. 701 F.3d at 1350. Long before Mr. Lowe obtained an exhibitor's license, Defendants had sufficient notice and a definite warning as to the proscribed conduct; this is all the Constitution requires. *Petrillo*, 332 U.S. at 8.

Moreover, Defendants blatantly misconstrue the government's position on what constitutes exhibition under the AWA. For example, Defendants claim that the government "insists the Lowes are 'exhibitors' because they post videos and photographs of themselves on the internet, most of the time without any animal to be seen." Dkt. 73, p. 13. However, this incorrectly states the government's position. Under the AWA, Defendants are exhibiting when they post videos and photographs of themselves online *displaying their animals for compensation*. *See* 7 U.S.C. § 2132(h); 9 C.F.R. § 1.1; Dkt. 2, ¶¶ 38-39, 88-93. It is when Defendants profit from displaying their animals through online content that these Cameo videos or OnlyFans pictures or videos become exhibiting.[7] *See, e.g.*, Dkt. 28-5, Att. CAMEO_000044 &

---

[7] Contrary to Defendants' assertion, Dkt. 73, p. 13, the government does not contend that Cameo videos without animals constitute exhibiting. Rather, the government included Cameo videos without animals with its preliminary injunction motion because they contained statements by the Defendants that Tiger King Park will be opening soon. *See, e.g.*, Dkt. 28-7 & Dkt. 28-31. In other words, these videos demonstrate Defendants' intent on exhibiting their animals to the public at the Thackerville location, which is germane to the scope and purpose of the AWA. *See* 7 U.S.C. § 2131 (The AWA was enacted to "insure that animals *intended* . . . for exhibition purposes . . . are provided humane care and treatment") (emphasis added). Jeffrey Lowe did not relinquish his AWA license because he wanted to retire to live with his pets; rather, in every

CAMEO_000045 (Cameo videos with animals displayed) (conventionally filed); Dkt. 28-6, ¶ 3, Att. (OnlyFans videos with animals displayed) (conventionally filed); Dkt. 68-2 (OnlyFans photos with animals displayed).  Defendants also claim that the government's "interpretation of 'exhibiting' . . . is so 'standardless that it authorizes or encourages seriously discriminatory enforcement'" as evidenced by "[t]he Lowes [being] accused of exhibiting without a license[,]" [whereas] Netflix and PETA are not." Dkt. 73, p. 14-15. However, the government has no information that Netflix or PETA own, possess, control, or care for the animals being displayed or that they otherwise qualify as exhibitors requiring a license under the AWA.

Lastly, Defendants argue that the "Government's novel interpretation of . . . 'public'" to include documentary film crews and Defendants' friends renders the definition of exhibitor void for vagueness. Dkt. 73, p. 14. This argument in specious and contrary to legal precedent. There is no indication that Congress' use of the term exhibitor hinges on the relative number of people or the identities of specific individuals involved. Nor would it make sense since ultimately Congress' purposes in enacting the AWA was to ensure that animals used for public display are treated humanely. This is not contingent on how many or which members of the public are involved. Consistent with this, in *In re: Martine Colette*, for example, a press conference was held to announce the completion of the new chimpanzee facilities at Wildlife Waystation; the only people invited were local officials and press. 2009 WL 2710082, *15. Because there was testimony that animals were visible, the Judicial Officer held that press were considered the "public" under the AWA. *Id.* Similarly, here, any press or documentary filmmakers physically present at Tiger King Park who see animals, are members of the "public" under the AWA. In *In re: Sidney Jay Yost*, the owners of a restaurant had hired a publicity exhibition of a mountain cub at their restaurant. 2017 WL 6766302, at *1. The Judicial Officer agreed with APHIS and found that the restaurant owner himself who had seen, but not physically interacted with the cub, was a member of the "public" under the AWA. Similarly, here, any familial friends are not exempt from being members of the "public" based on their close relationship with Defendants. Even more compelling, the purported female family friend seen on the YouTube video did not merely observe the animals, but kissed a Big Cat cub and put her hand inside a cage to pet an animal.

---

sense he is continuing to run a commercial zoo operation without a license. *See* Dkt. 55, p. 7 ("It is no secret the Lowes intend to open and operate a zoo in Thackerville.")

Dkt. 28-31, at 2 (YouTube video) (conventionally filed). In sum, the definition of "exhibitor" has been consistently and uniformly applied by the courts and is not unconstitutionally vague.

### III. The Animal Welfare Act's Definition of "Exhibitor" Does Not Violate the First Amendment.

The Defendants argue that the government's claim that Defendants are exhibitors under the AWA is "in violation of the First Amendment." Dkt. 73, p. 10. Notably, Defendants raised this same First Amendment argument in their Opposition to the United States' motion for preliminary injunction, Dkt. 55, p. 7-8. The Court implicitly addressed and rejected this argument when it found that the United States had a likelihood of success on its AWA claim and granted the United States' motion. Dkt. 27-28, 62, 65. It should reaffirm that decision here.

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amend. 1. In general, this means that the government may not restrict speech or expression "because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (citation omitted). Thus, the First Amendment applies when the government restricts speech or expression, and not when it regulates non-expressive conduct. *See*, *e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65-66 (2006).

The Supreme Court has specifically recognized that statutes prohibiting animal cruelty regulate non-expressive conduct. The Court has noted that there is a longstanding "tradition excluding . . . animal cruelty from 'the freedom of speech' codified in the First Amendment," which derives from "a long history in American law, starting with the early settlement of the Colonies" of prohibiting animal cruelty. *United States v. Stevens*, 559 U.S. 460, 469 (2010) (citing The Body of Liberties § 92 (Mass. Bay Colony 1641), *reprinted in* Am. Hist. Documents 1000-1904, 43 Harvard Classics 66, 79 (C. Eliot ed. 1910) ("No man shall exercise any Tiranny or Crueltie towards any bruite Creature which are usuallie kept for man's use")). Although the Court found that *depictions* of animal cruelty may be expressive, and therefore protected by the First Amendment, the conduct *itself* is not. *See id.* at 469-92. Here, the AWA's definition of exhibitor places no restrictions on depictions of the animals, but rather the conduct alone. *See Hernández-Gotay v. United States*, 985 F.3d 71, 80 (1st Cir. 2021) (holding that the 2018 amendments to the AWA Animal Fighting Venture Prohibition that prohibit the sponsorship and exhibition of cockfighting are constitutional because cockfighting is not expressive conduct

entitled to First Amendment protection). The First Amendment consequently has no bearing on its constitutionality.

The AWA does not interfere with free speech. No aspect of the AWA or its implementing regulations' definition of exhibitor has curtailed Defendants' ability to display their animals.[8] 7 U.S.C. § 2132(h); 9 C.F.R. § 1.1. If Defendants want to post photographs and videos online displaying their animals for no compensation, they are free to do so. And if they choose to display their animals online for compensation (or in person at the zoo), they are also free to do so, but they need a license under the AWA to ensure that the animals are receiving humane care and treatment. 7 U.S.C. § 2131. The mere fact that Defendants need to get a license to exhibit their animals for compensation is not a restriction of speech.

Even assuming, *arguendo*, that the AWA's definition of exhibitor burdens Defendants' speech, it does so in a content-neutral manner that survives intermediate scrutiny. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or idea or message expressed;" content-based laws are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citation omitted). Conversely, "[i]f the regulation serves purposes unrelated to the content of expression it is considered neutral, even if it has an incidental effect on some speakers or messages but not others." *Golan v. Holder*, 609 F.3d 1076, 1083 (10th Cir. 2010) (citation omitted). Content-neutral laws are presumptively constitutional. *Naser Jewelers, Inc. v. City of Concord*, 513 F.3d 27, 33 (1st Cir. 2008).

The Supreme Court in *Reed* established a two-step analysis to determine whether a law is content-based or content-neutral. 576 U.S. at 163. The first step is to determine whether the law, on its face, is a content-based regulation of speech. *Id.* at 163-64 (citation omitted). The second step is to determine whether, even if facially content-neutral, the law "cannot be 'justified without reference to the content of the regulated speech,' or that [the law was] adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 163 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Here, because the AWA is content-neutral—both on its face and by Congress' express justification and purpose for enacting the Act—it is presumptively constitutional.

---

[8]  Moreover, Defendants are free to post photographs or videos of their own likenesses on the internet without animals either for compensation or not.

The AWA regulates conduct—the care of animals used in exhibition—not speech. Indeed, nothing on the face of the definition of exhibitor regulates content. *See* 7 U.S.C. § 2132(h); 9 C.F.R. § 1.1. Further, the statute serves purposes unrelated to the content of expression and is therefore content-neutral. Congress' stated purposes were:  (1) to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment; (2) to assure the humane treatment of animals during transportation in commerce; and (3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen. 7 U.S.C. § 2131. Thus, there can be no dispute that Congress did not seek to disadvantage a particular message when it enacted the AWA. Congress intended to regulate the exhibition of animals in commerce, not speech.

Even if the regulation of exhibition of animals in commerce incidentally burdens speech it does not follow that the statute is unconstitutional. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011) ("It is also true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burden on speech."). The definition of exhibitor and the regulation requiring the licensure of exhibitors implement Congress' purposes. Those statutory and regulatory provisions were not adopted as "a regulation of speech because of disagreement with the message it conveys." *Golan*, 609 F.3d at 1083 (citation omitted). Thus, the AWA and its regulations are content neutral and, as Defendants concede, serve substantial government interests.  Dkt. 73, p. 11 ("The Defendants agree the Government's interest in protecting animals [] is 'substantial.'").

The statute and regulations are also narrowly drawn to serve those interests. The laws regulate individuals and companies that choose to exhibit or transport animals in commerce, not every person who owns a pet or takes a selfie at a zoo. *See Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1248 (10th Cir. 2000) (holding a state statute requiring fundraising consultants to register and disclose certain information is narrowly tailored to address concerns about fraudulent charities). Accordingly, the AWA does not impinge on Defendants' First Amendment rights.[9]

---

[9]  Regardless of whether you analyze the AWA's definition of exhibitor under content neutrality or commercial speech, both apply intermediate scrutiny. *See Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cnty.*, 492 F.3d 1164, 1171 (10th Cir. 2007); *see also Cent. Hudson Gas*

IV.     **The Complaint Establishes a Legally Cognizable Claim Against Tiger King, LLC.**

The burden is on the moving party to show there is no legally cognizable claim. Wright & Miller, Federal Practice and Procedure, § 1357. District courts must apply a two-step approach when deciding motions to dismiss. *Ashcroft*, 556 U.S. at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.* Second, the court must consider whether the factual allegations in a complaint allege a plausible claim for relief. *Id.* A claim is facially plausible when a complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Defendants have failed to carry their burden.

In their partial motion to dismiss, Defendants argue that the extent of any accusations made against the corporation specifically, is that it is a limited liability company formed in May 2020. Dkt. 73, p. 15. This is not accurate. In the Complaint, the government pled that the registered Trade Name for Tiger King, LLC is the same name as the new unlicensed exhibition facility in Thackerville, Oklahoma:  Tiger King Park. Dkt. 2, ¶¶ 3, 34. Additionally, Tiger King, LLC's registered principal place of business is the same address as Tiger King Park. Dkt. 2, ¶ 31, 34. Further, signs referring to Tiger King Park were posted at that address. Dkt. 2, ¶ 35 (photo included). Moreover, Lauren Lowe is a member of Tiger King, LLC. Dkt. 2, ¶ 32.

Defendants further allege that "Tiger King, LLC is barely mentioned" in the Complaint and that "[t]he factual allegations are against the Lowes." Dkt. 73, p.15. Again, this is not accurate. In the Complaint, all four defendants—Jeffrey Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Tiger King, LLC—are collectively referred to as "Defendants." Dkt. 2, ¶ 1. Thus, any time the Complaint refers to "Defendants," this includes Tiger King, LLC. The government has sufficiently pled facts establishing a plausible claim against Tiger King, LLC. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). For example, the government has alleged that Defendants, and thereby

---

& *Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.") (citation omitted). Thus, even assuming, *arguendo*, the First Amendment is even implicated, as demonstrated above, the AWA's definition of exhibitor is designed to serve a substantial government interest and reasonable alternative avenues of communication remain available. *See City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986).

Tiger King, LLC, in order to avoid federal investigation and inspection, unlawfully established an unlicensed exhibition facility on a parcel of land in Thackerville, Oklahoma, which is called "Tiger King Park." *Id.*, ¶ 3 (including aerial photo), which is also Tiger King, LLC's Trade Name, *id.*, ¶ 34; they own, possess, and/or exhibit the animals that are included in the subject of this action, *id.*, ¶ 36; they do not currently have a valid USDA Class C exhibitor's license, but they nevertheless continue to exhibit to members of the public without a license, *id.*, ¶¶ 23, 88; they are placing and are continuing to place the health of numerous animals in serious danger and are in violation of the AWA and its implementing regulations and standards, *id.*, ¶ 24; that as recently as October 2020, they have been exhibiting their animals to a film crew, *id.*, ¶ 89; they have exhibited at least one tiger—Thor—to members of the publish through an online platform called Cameo for compensation, *id.*, ¶ 92; they are presently exhibiting animals at the Thackerville facility, which constitutes a "zoo" under the AWA and they will continue to display the animals to a film crew and other members of the public, and through online sites such as Cameo, *id.*, ¶ 187; they have constructed or are constructing facilities at Tiger King Park to allow for public exhibition in the future, including a gift shop, *id.*, ¶ 188; they do not have adequate financial resources to provide proper care, including veterinary care, to the animals in their possession without exhibiting them for compensation, *id.*, ¶ 94; many of their Big Cats have not been seen by a veterinarian at all in the last two years and, as a result, suffered from easily preventable or treatable conditions, which frequently have caused their untimely deaths, *id.*, ¶ 96; they "harm" and "harass" their animals by providing substandard care, *id.*, ¶ 97; Defendants feed their Big Cats nutrient-deficient diets, causing medical issues such as metabolic bone disease, *id.*, ¶ 99; their Big Cats have been harassed by fleas resulting from poor husbandry practices, *id.*, ¶ 128; they continued to place ring-tailed lemurs in direct contact with Big Cat cubs during these events despite a lemur previously being clawed in the back by a baby tiger, *id.*, ¶ 146; they are not authorized to "take" ESA-protected animals, *id.*, ¶ 87; and they have placed the health of their animals in serious danger by failing to employ an attending veterinarian and by providing their animals with substandard care, *id.*, ¶ 170.  Accepting these factual allegations as true, and drawing all reasonable inferences as required, the United States has alleged plausible claims for relief under the AWA and ESA. *Ashcroft*, 556 U.S. at 679; *see also Golthy v. Alabama*, 287 F. Supp. 2d 1259 (M.D. Ala. 2003), *aff'd*, *Golthy v. State*, 104 F. App'x 153 (11th Cir. 2004)

(noting that the threshold is exceedingly low to survive Fed. R. Civ. P. 12(b)(6) motion to dismiss since Fed. R. Civ. P. 8(a)(2) only requires a short and plain statement of the claim).

Finally, Defendants' motion does not comply with LCvR 7(o). LCvR 7(o) states that "[a]ll motions to dismiss shall include a section explaining why an amendment to the complaint or petition would be futile." Even assuming, *arguendo*, that the complaint insufficiently pled Tiger King, LLC as a party, Defendants would be hard-pressed to provide an explanation why amending the Complaint would be futile, especially in light of information that has been discovered through pleadings filed subsequent to the Complaint. For example, that Tiger King, LLC is a limited liability corporation composed of Jeffrey Lowe, Lauren Lowe, and Eric Yano. Dkt. 55-9, ¶ 1 (Eric Yano's Decl.). And that Eric Yano, not the Lowes, reached out to Dr. Durham to inquire whether she would be the Attending Veterinarian for Tiger King Park.  Dkt. 32-2, ¶ 4. And that on December 21, 2020, Eric Yano brought a young male tiger to the Ada Veterinary Clinic for emergency care, where he represented that he was the owner of the tiger and authorized euthanasia in violation of a Court-approved stipulation. *Id.*, ¶¶ 5-11; Dkt. 23, 25. Thus, even assuming, *arguendo*, Tiger King, LLC was insufficiently pled as a party, the United States should be allowed to amend the Complaint.

## <u>CONCLUSION</u>

For the aforementioned reasons, the Court should deny Defendants' Partial Motion to Dismiss.

21

DATED: March 1, 2021                    Respectfully Submitted,

                                        JEAN E. WILLIAMS
                                        Acting Assistant Attorney General
                                        Environment and Natural Resources Division

                                        /s/ *Briena L. Strippoli*
                                        BRIENA STRIPPOLI
                                        Trial Attorney
                                        MARY HOLLINGSWORTH
                                        Senior Trial Attorney
                                        United States Department of Justice
                                        Environment & Natural Resources Division
                                        Wildlife & Marine Resources Section
                                        P.O. Box 7611, Ben Franklin Station
                                        Washington, D.C. 20044-7611
                                        Briena.Strippoli@usdoj.gov | 202-598-0412
                                        Mary.Hollingsworth@usdoj.gov | 202-598-1043
                                        Fax: 202-305-0275

                                        CHRISTOPHER J. WILSON
                                        Acting United States Attorney
                                        SUSAN BRANDON, Civil Chief
                                        United States Attorney's Office
                                        Eastern District of Oklahoma
                                        520 Denison Avenue
                                        Muskogee, OK 74401

                                        *Attorneys for the United States of America*