IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

      **Plaintiff,**

v.

                                     **Case No. 20-cv-0423-JFH**

JEFFREY LOWE, LAUREN LOWE,
GREATER WYNNEWOOD EXOTIC
ANIMAL PARK, LLC, and TIGER KING,
LLC,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Motion to Enforce the Court's January 15, 2021 Order and the Parties' Stipulation [Dkt. No. 72], filed by the United States of America (the "United States") against Defendants Jeffrey Lowe a/k/a Jeff Lowe ("Jeff Lowe"), Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC") and Tiger King, LLC (collectively referred to as "Defendants"). For the reasons set forth below, the Court grants the motion.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged violations by Defendants of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA") in connection with an unlicensed exhibition facility known as Tiger King Park, in Thackerville, Oklahoma, which houses approximately 100 to 200 ESA protected animals for the purpose of exhibiting their animals to the public ("Thackerville Facility"). *See generally* Dkt. No. 2. The

United States filed its complaint on November 19, 2020, seeking declaratory and injunctive relief. *Id.*   Specifically, the United States seeks an order:  (1) declaring that Defendants have violated the ESA and the AWA; (2) enjoining Defendants from interfering with United States Department of Agriculture ("USDA") inspections of their properties, exhibiting animals without a license and placing the animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals.  *Id.* at 46-47.

On November 25, 2020, the United States filed its first motion for preliminary injunction seeking an order:  (1) requiring Defendants to provide a complete and accurate inventory of the animals in their custody or control; (2) prohibiting Defendants from acquiring or disposing of any animals without notice to the United States and consent of the Court; (3) requiring Defendants to submit complete and accurate veterinary records to the United States' attorneys within seven days of any animal's treatment; and (4) authorizing inspectors from the USDA's Animal and Plant Health Inspection Services ("APHIS") to conduct an immediate inspection of the Thackerville Facility and inspections every three weeks thereafter for the duration of the injunction.  Dkt. No. 9; Dkt. No. 10 at 31-32.  The Court set a hearing on the motion for December 16, 2020.  Dkt. No. 14.

On December 14, 2020, the parties filed a stipulation in which they agreed, in pertinent part, that:  (1) on or before December 15, 2020, Defendants would provide the United States with a complete inventory of all ESA and AWA protected animals in their custody or control; (2) during the pendency of the case, Defendants would not acquire or dispose of any ESA or AWA protected animal without first meeting and conferring with the United States and obtaining leave of Court; (3) APHIS would conduct routine inspections of the Thackerville Facility, the first of which would occur on December 15, 2020; and (4) thereafter, APHIS would conduct unnoticed inspections of

the Thackerville Facility, not to exceed one inspection every 21 days, at USDA's discretion. Dkt. No. 23 at 2. The Court approved the parties' stipulation and vacated the December 16, 2020 hearing. Dkt. No. 25.

On December 23, 2020, the United States filed a second motion for preliminary injunction, citing additional ESA and AWA violations following the December 15, 2020 inspection. Dkt. No. 27; Dkt. No. 28 at 13-14. In its motion, the United States requested that, pending adjudication of its claims, the Court order Defendants to: (1) immediately cease exhibiting animals without a valid exhibitor's license; (2) retain an attending veterinarian, as required under the AWA; (3) provide acquisition and disposition records for all animals missing since the June 2020 inspection; (4) submit veterinary records after treatment of an animal; and (5) submit acquisition and disposition records after any change to the December 16, 2020 inventory. Dkt. No. 27; Dkt. No. 28 at 33-34.

On December 30, 2020, the United States also filed a motion for a temporary restraining order. The United States claimed that on or about December 21, 2020, Defendants authorized the euthanasia of a tiger cub with metabolic bone disease and secondary fracture without conferring with the United States or seeking leave of Court, in violation of the parties' stipulation. Dkt. No. 32 at 23-24. In its motion for temporary restraining order, the United States sought an order requiring Defendants to relinquish custody and control of all Big Cat cubs one year old or younger, along with the cubs' respective mothers, to the United States for temporary placement at reputable facilities selected by the United States. Dkt. No. 32 at 32.

The Court held an evidentiary hearing on the United States' motion for preliminary injunction and motion for temporary restraining order on January 12, 2021. Dkt. No. 35. Based on the arguments and evidence presented at the hearing, the Court concluded that the United States was entitled to preliminary injunctive relief. Dkt. No. 65 at 32. On January 15, 2021, the Court

entered an Order requiring that Defendants (including anyone acting, directly or indirectly, through them or on their behalf):  (1) immediately cease exhibiting animals protected by the ESA and the AWA without a valid USDA exhibitor's license; (2)  retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40, no later than January 29, 2021; (3) provide acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020, no later than January 22, 2021; (4) submit complete and accurate veterinary records to counsel for the United States within 7 days of any animal being treated by a veterinarian; (5) submit acquisition and disposition records to counsel for the United States within 7 days of any change to the animal inventory; (6) immediately relinquish all Big Cats one year old or younger, along with their respective mothers, to the United States; (7) not acquire or dispose of any ESA or AWA protected animal without first conferring with the United States and obtaining leave of Court; and (8) permit APHIS to conduct routine inspections of the Thackerville Facility up to every three weeks, at the USDA's discretion.  Dkt. No. 65 at 33-34.

On February 12, 2021, the United States filed its motion to enforce the Court's January 15, 2021 Order.  Dkt. No. 72.  The United States claims that Defendants have failed to comply with the Order by:  (1) failing to provide complete and accurate acquisition and disposition records; (2) failing to retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40; and (3) breeding animals without conferring with the United States and without leave of Court.  Dkt. No. 72 at 3-10.  Defendants did not file a response to the United States' motion and the time to do so has expired.  *See* LCvR 7.1(d) ("Each party opposing a motion or objection shall file with the Court Clerk and serve upon all other parties a response within fourteen (14) days, if applicable, from the date the motion or objection was filed.").  On

March 8, 2021, the United States requested that the motion to enforce be deemed confessed due to

Defendants' failure to respond.  Dkt. No. 76.

## II.    LEGAL STANDARD

The Court retains the authority and jurisdiction to enforce its own orders.  *Spallone v.*

*United States*, 493 U.S. 265, 276 (1990).  In other words, a federal court is not reduced to issuing

an injunction "and hoping for compliance."  *Hutto v. Finney*, 437 U.S. 678, 690 (1978).  "Once

issued, an injunction may be enforced."  *Id.*

## III.    DISCUSSION

As a preliminary matter, the Court notes that Defendants were given the opportunity to

respond in opposition to the United States' motion to enforce the Court's January 15, 2021 Order,

and to dispute any of the factual assertions set forth therein, yet they have not done so.

Accordingly, the motion, including the facts asserted therein, are deemed confessed.  LCvR 7.1(d)

("In the discretion of the Court, any non-dispositive motion or objection which is not opposed

within fourteen (14) days may be deemed confessed.").

### A. Acquisition and Disposition Records

Pursuant to the Court's January 15, 2021 Order, Defendants were required by January 22,

2021, to provide "acquisition and disposition records for any and all animals added to or missing

from their inventories since June 22, 2020."  Dkt. 65 at 33.  Such "records are necessary to be able

to accurately track animals being used in regulated activities to ensure their legal acquisition,

proper care, and humane transportation."  Dkt. No. 28-21 at 3.

The United States alleges that Defendants have failed to comply with the Court's January

15, 2021 Order to provide acquisition and disposition records in the following ways:  (1) failing to

provide missing acquisition and disposition records noted on the July 8, 2020 APHIS Inspection

Report, [Dkt. 28-21 at 3-4];[1] (2) transferring six Big Cats to Tiger Haven sanctuary and only

providing disposition records for three of them [Dkt. No. 72-7]; (3) providing inconsistent records

and inventories regarding wolves disposed of and/or acquired between August 21, 2020 and

December 16, 2020 [Dkt. No. 28-27 at 7-8]; (4) failing to provide disposition records for one De

Brazza's monkey, who appeared on the June 22, 2020 inventory, but not on the August 21, 2020

inventory [Dkt. No 28-15 at 8; Dkt. No. 28-27]; (5) failing to provide disposition records for one

bare-tailed wooly opossum, who appeared on the August 21, 2020 inventory, but not on the

December 16, 2020 inventory [Dkt. No 28-27 at 24; Dkt. No. 28-35 at 16]; (6) failing to provide

acquisition records for animals who appear for the first time on the December 16, 2020 inventory,

including four tigers named Gladys, Cersi, Chuckles, and Tierian; and (7) failing to provide

accurate and complete information regarding the parents and littermates of a hybrid tiger litter born

August 21, 2020 [Dkt. No. 28-35 at 14; Dkt. No 56 at 4; Dkt. No. 56-2 at 2; Dkt. No. 72-1 at 1;

Dkt. No. 72-7 at 6.  Dkt. No. 72 at 3-4].

The United States also alleges that of the few acquisition and disposition records

Defendants did provide, only one complied with AWA requirements.  Dkt. No. 72; Dkt. No. 72-

6; *see* 9 C.F.R. § 2.75(b)(1) (stating that animal exhibitors must maintain records that include, in

pertinent part:  (1) the name and address of the person from whom the animals were purchased or

otherwise acquired or to whom an animal was sold or given; (2) the USDA license or registration

number of the person if she or he is licensed or registered under the AWA; (3) the vehicle license

---

[1] The July 8, 2020 Inspection Report indicates that acquisition and/or disposition records for 34 animals were missing or unaccounted for at the time of the inspection.  Dkt. No. 28-21 at 3.  The report included two examples:  (1) four Big Cats listed on the previous inventory were not listed on the current inventory, and there was no documentation of their disposition and (2) two tigers were added to the previous inventory and there was no documentation of their acquisition.  *Id.*  The report did not provide explanation or detail for each of the 34 animals for which records were missing.  *Id.* at 3-4.

number and State, and the driver's license number (or photographic identification card for nondrivers issued by a State) for persons not licensed or registered under the AWA; (4) the date of purchase, acquisition, sale or disposal of the animal; and (5) the species of the animal). According to the United States, it attempted to address the issue of non-compliant records on January 22, 2021, January 25, 2021, and on January 2021, to no avail.  Dkt. No. 72 at 5.

Finally, the United States alleges that the records provided by Defendants do not fully and correctly disclose information about the animals referenced, as required by 9 C.F.R. § 2.75(b)(1). The United States claims that Defendants have provided inconsistent records and information regarding:  (1) the number of animals and the identifying characteristics of the animals transferred to the Wild Animal Sanctuary in October 2020; (2) the identifying characteristics of the animals transferred to Tiger Haven Sanctuary; and (3) the date and manner of death for several animals reported as deceased between September 2020 and January 2021.  Dkt. No. 72 at 5-7; Dkt. No. 72-1 at 1, 5-7; Dkt. No. 72-3 at 2-3; Dkt. No. 72-4 at 4; Dkt. No. 72-6 at 5; Dkt. No. 72-7 at 3, 5-7; Dkt. No. 72-8 at 1-3.

In support of its allegations, the United States has presented:  (1) the declaration of Mary Lynn Haven, the director of Tiger Haven Sanctuary, and records regarding animals transferred from Defendants to Tiger Haven in September 2020 [Dkt. No. 72-1]; (2) the declaration of APHIS Investigator Kevin McLaughlin regarding his investigation of the death of one of Defendants' Big Cats in October 2020 [Dkt. No. 72-3]; (3) the report from the January 20, 2021 inspection of the Thackerville Facility [Dkt. No. 72-4]; (4) acquisition and disposition records provided by Defendants during the January 20, 2021 inspection [Dkt. No. 72-6]; (5) acquisition and disposition records provided by Defendants' counsel [Dkt. No. 72-7]; and (6) Travel Certificates for the

transfer of animals from Defendants to the Wild Animal Sanctuary in October 2020 [Dkt. No. 72-8].

This evidence demonstrates that the acquisition and disposition records provided by Defendants pursuant to the Court's January 15, 2021 Order, are incomplete, contain numerous inconsistencies, and do not comport with the reporting requirements set forth in 9 C.F.R. § 2.75(b)(1). Defendants did not respond to the United States' motion and have made no effort to refute the allegations or explain any of the inconsistencies detailed therein, therefore, the allegations are deemed confessed. Accordingly, the Court concludes that Defendants have violated the Court's January 15, 2021 Order, as it pertains to the acquisition and disposition records Defendants were ordered to produce.

**B. Retention of a Qualified Veterinarian Under Formal Arrangements**

The Court's January 15, 2021 Order required Defendants to retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, and 2.40, no later than January 29, 2021. Under these regulations, a qualified attending veterinarian must have "received training and/or experience in the care and management of *the species being attended*." 9 C.F.R. § 1.1 (emphasis added). Exhibitors employing an attending veterinarian on a part-time basis are required to do so under formal arrangements that include "a written program of veterinary care and regularly scheduled visits" to the facility. 9 C.F.R. § 2.40(a)(1). Relevant here, the program of veterinary care must include: (1) "the availability of appropriate facilities, personnel, equipment, and services"; and (2) the "use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the availability of emergency, weekend, and holiday care." 9 C.F.R. § 2.40(b)(1)-(2). Finally, the program of veterinary must address the "appropriate methods to prevent, control, [and] diagnose" diseases. 9 C.F.R. § 2.40(b)(2).

The United States alleges that Defendants have failed to comply with the Court's directive to retain a qualified attending veterinarian under formal arrangements by: (1) failing to provide information establishing that their proposed attending veterinarian has received training and/or experience in the care and management of each species housed at the Thackerville Facility; (2) failing to establish a plan of veterinary care that identifies a back-up veterinarian or an animal hospital/clinic to provide case if the proposed attending veterinarian is unavailable; (3) failing to establish a plan of veterinary care that establishes an adequate plan for immobilizing and or sedating Big Cats; and (4) failing to establish a plan of veterinary care that that includes a nutritional plan, despite the fact that a number of Big Cats at the Thackerville Facility have been diagnosed with conditions related to malnutrition. Dkt. No. 72 at 8-9.

In support of these allegations, the United States has presented the proposed attending veterinarian's plan of veterinary care ("Plan"). Dkt. No. 72-5. The Plan does not include any information regarding the veterinarian's qualifications to treat the species housed at the Thackerville Facility. Dkt. No. 72-5. The Plan is also silent as to the specific method of tranquilization that will be used on Big Cats and as to the nutritional plan for the animals at the Thackerville Facility. *Id.* While the Plan identifies "Exotic ER" in Mills, TX, as an alternative treatment facility for emergency, weekend, and holiday care, no specific veterinarian is identified, and the Plan does not state that the facility has been retained for potential emergency services on formal arrangements. *Id.* at 5. The Court agrees with the United States that the Plan does not meet the requirements of 9 C.F.R. §§ 1.1 and 2.40(b)(2), and Defendants, therefore, are in violation of the Court's January 15, 2021 Order.

**C. Unauthorized Acquisition of Animals**

9

The Court's January 15, 2021 Order prohibited Defendants from acquiring or disposing of any ESA or AWA protected animal without first conferring with the United States and obtaining leave of Court.  Dkt. No. 65 at 34.  In this context, acquisition includes the birth of new animals. 9 C.F.R. 2.75(b)(1).  The United States alleges that Defendants are in violation of the Court's January 15, 2021 Order because they continue to house male and female animals who are not spayed or neutered in the same enclosures.  Dkt. No. 72 at 9-10.  While the United States does not provide documentary support for this allegation, it is deemed confessed by virtue of Defendant's failure to respond to the United States' motion or otherwise refute the allegation.  *See* LCvR 7.1(d). The Court finds that any failure of Defendants to prevent breeding of the animals at the Thackerville Facility is in violation of the Court's January 15, 2021 Order.

## D.  Civil Contempt

This Court's "interest in ensuring a party's compliance with its orders is a great one." *Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997); *see also Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) ("The district court has 'inherent power to enforce compliance with [its] lawful orders through civil contempt.' "); *see also United States v. Bibbins*, 113 F. Supp. 2d 1194, 1202 (E.D. Tenn. 2000) ("In large measure, the American legal system is fundamentally dependent upon voluntary compliance with its judgments and procedures by all participants in the system .... The Court does not have a standing army to enforce its rules and orders.").

Courts have the inherent authority "to manage their own affairs," including "[t]he power to punish for contempt." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255-57 (10th Cir. 2015).  Pursuant to that authority, a court may impose appropriate sanctions to discourage misconduct and protect the integrity of judicial

proceedings. *Chambers*, 501 U.S. at 50-51; *Farmer*, 791 F.3d at 1255-57. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947).

Having found that Defendants are in violation of the Court's January 15, 2021 Order, the Court will require Defendants to show cause why contempt sanctions should not be entered against them.

**IT IS HEREBY ORDERED** that the Motion to Enforce the Court's January 15, 2021 Order and the Parties' Stipulation [Dkt. No. 72] is **GRANTED**.

**IT IS FURTHER ORDERED** that a show cause hearing is set for May 12, 2021 at 9:30 a.m. At this hearing, Defendants should show cause why they should not be found in contempt for violating the Court's January 15, 2021 Order.

Dated this 22nd day of March 2021.


_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE