# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        *Plaintiff,*

        –v–

JEFFREY LOWE, LAUREN LOWE,
GREATER WYNNEWOOD EXOTIC
ANIMAL PARK, LLC, and TIGER KING,
LLC,

        *Defendants.*

Case No. 6:20-cv-00423-JFH

**PROPOSED INTERVENOR-PLAINTIFF PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS' BRIEF IN SUPPORT OF MOTION TO INTERVENE**

# Table of Contents

Statement of Compliance With LCvR 7.1(f) ................................................................... 1

Preliminary Statement ................................................................................................ 1

Factual Background .................................................................................................... 2

Procedural Background ............................................................................................... 3

Argument .................................................................................................................. 6

    I.    PETA is Entitled to Intervene As of Right.......................................................... 6

        A.    PETA's Intervention Is Timely ................................................................. 6

        B.    PETA Has Substantial Interests in This Proceeding .................................. 8

            1.    PETA seeks to redress impairment of its mission .............................. 8

            2.    PETA has litigation interests at stake ............................................... 9

            3.    PETA has financial interests at stake ............................................... 11

        C.    The Disposition of This Case May Impair PETA's Interests ...................... 11

            1.    PETA is entitled to redress impairment of its mission ...................... 11

            2.    PETA is entitled to protect its litigation interests ............................. 12

            3.    PETA is entitled to protect it is financial interests .......................... 13

        D.    PETA's Interests Are Not Adequately Represented by the Existing Parties ... 13

            1.    The government presumptively represents varied stakeholders ......... 13

            2.    PETA is entitled to pursue its own litigation strategy ...................... 16

    II.    Alternatively, PETA Satisfies the Standards for Permissive Intervention ..................... 17

Conclusion ................................................................................................................ 18

# Table of Authorities

## Cases

*Big Cat Rescue Corp. v. Schreibvogel*,
    No. CIV-16-155-SLP, 2020 WL 2842845 (W.D. Okla. June 1, 2020)...................................... 17
*Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996).......................................................................................... passim
*Kane Cty. v. United States*,
    928 F.3d 877 (10th Cir. 2019)........................................................................................... passim
*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
    564 F.2d 381 (10th Cir.1977)................................................................................... 6, 14, 16
*Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*,
    578 F.2d 1341 (10th Cir.1978)............................................................................... 11, 13
*PETA v. Dade City's Wild Things, Inc.*,
    No. 8:16-CV-2899-T-36AAS, 2019 WL 245343 (M.D. Fla. Jan. 17, 2019)............................ 3
*PETA v. Lauren Lowe*,
    No. 5:20-CV-00612-PRW (W.D. Okl. Dec. 17, 2020)........................................................... 11
*PETA v. Lowe, et al.*,
    No. 5:20-CV-01076-D (W.D. Okla. Oct. 22, 2020)......................................................... passim
*PETA v. Tri-State Zoological Park of W. Maryland, Inc.*,
    424 F. Supp. 3d 404 (D. Md. 2019), aff'd, No. 20-1010, 2021 WL 305546 (4th Cir. Jan. 29,
    2021)................................................................................................................................. 3, 17
*PETA v. United States Dep't of Agric.*,
    861 F.3d 502 (4th Cir. 2017)................................................................................................... 14
*PETA v. Wildlife in Need and Wildlife in Deed, Inc., et al.*,
    476 F. Supp. 3d 765 (S.D. Ind. Aug. 3, 2020) ................................................................. passim
*San Juan Cty., Utah v. United States*,
    503 F.3d 1163 (10th Cir. 2007)................................................................................................ 7
*United States v. Osage Wind, LLC*,
    No. 14-CV-704-GKF-JFJ, 2020 WL 3578351 (N.D. Okla. July 1, 2020)................................ 6
*Utah Ass'n of Ctys. v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001)........................................................................................ passim
*W. Energy All. v. Zinke*,
    877 F.3d 1157 (10th Cir. 2017)........................................................................................ passim
*WildEarth Guardians v. National Park Service*,
    604 F.3d 1192 (2010)........................................................................................ 8, 9, 11, 13

## Statutes

16 U.S.C. § 1540(g)(2) ............................................................................................................ 5, 7
16 U.S.C. § 1540(g)(4) ......................................................................................................... 11, 12

## Rules

Rule 12(b)(6), Federal Rules of Civil Procedure ........................................................................ 7
Rule 24(a)(2), Federal Rules of Civil Procedure ............................................................. 8, 11, 12
Rule 24(a), Federal Rules of Civil Procedure ................................................................ 2, 6, 17, 18
Rule 24(b)(1)(B), Federal Rules of Civil Procedure.............................................................. 17, 18

Rule 24(b)(3), Federal Rules of Civil Procedure .......................................................... 17
Rule 24(b), Federal Rules of Civil Procedure ............................................... 2, 6, 17, 18
Rule 27(a)(2), Federal Rules of Civil Procedure ........................................................... 5
Rule 7.1(f), Local Civil Rules ........................................................................................ 1

**Statement of Compliance With LCvR 7.1(f)**

Proposed Plaintiff-Intervenor People for the Ethical Treatment of Animals, Inc. ("PETA") has fulfilled its obligation to meet and confer with counsel of record for Defendants and the Plaintiff the United States of America under LCvR 7.1(f). Counsel for the United States, by telephone conference and email (allowed under LCvR 7.1(f) given the significant distance between offices of counsel), informed PETA that the United States does not oppose PETA's requested intervention, but reserves the right to move the Court to place any limits on PETA's participation it may deem reasonable and necessary. During an in-person meet and confer with counsel for Defendants held Tuesday, April 20, 2021, counsel discussed the parties' positions with respect to the proposed intervention, after which counsel for Defendants informed PETA's counsel that his clients intend to oppose PETA's motion to intervene, on grounds to be set out in their opposition.

**Preliminary Statement**

PETA is a non-profit dedicated to protecting animals from abuse, neglect, and cruelty. For many years, this has meant confronting Jeffrey Lowe, Lauren Lowe, and their many business partners and facilities through, among other means, fielding public complaints, conducting investigations, submitting public records requests and regulatory complaints, publishing press releases and other media content, coordinating public demonstrations, and prosecuting litigation in Florida, Indiana, and Oklahoma.

These measures were necessitated by PETA's mission. For years, Defendants have been the hub of a national industry of hands-on interaction between members of the public and exotic animals including lions, tigers, and hybrids thereof. As some of the highest profile exploiters and abusers of animals, including those protected by the Endangered Species Act ("ESA"), Defendants' ongoing operations have significantly impaired PETA's mission. In addition, Mr. Lowe and Mrs. Lowe and their accomplices, many of whom are Defendants in this action, have

voluntarily interposed themselves in ongoing efforts by PETA to fight exploitation of captive animals by other exhibitors—including litigation in the Southern District of Indiana and the Middle District of Florida in which Defendants willfully made themselves required parties or subjects of discovery because of their actions with respect to ESA-protected animals.

PETA had previously sent notice of its intent ("NOI") to file a citizen suit under the ESA to Defendants Jeffrey Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP"), and Tiger King LLC, as well as Cheryl Scott, Eric Yano, Erik Cowie, and the Big Cat Institute. As PETA's claims against all recipients are now ripe, PETA satisfies the standards for intervening in this proceeding as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, should be granted leave to intervene under Rule 24(b).

### Factual Background

PETA contends Defendants have unlawfully harmed, harassed, wounded, and caused the death of animals, including many protected by the ESA, for years without meaningful repercussion. *See* Drft. Verified PETA Compl., attached as **Exhibit 1**, at ¶¶ 13-158. These practices have greatly impaired, and continue to greatly impair, PETA's mission by, for example, creating incorrect public impressions that these practices are humane, lawful, and tolerable. *Id.* at ¶ 162, 171. As a result, PETA's mission has required it to, through the course of many years, divert significant non-litigation resources to counteract this impairment. *Id.* at ¶¶ 163-164, 169-170. These diversions include engaging in frequent monitoring of Defendants' activities and practices; submitting complaints and public records requests relating to Defendants' practices to government agencies; publishing media content about Defendants including blog posts, articles, fact sheets,

and press releases; reviewing and responding to complaints from members of the public about Defendants; coordinating public demonstrations, and facilitating animal rescues. *Id.*

When necessary, that same mission obligates PETA to evaluate and consider litigation, such as under the ESA's citizen suit provision and public nuisance law. For example, PETA has previously pursued successful litigation against exhibitors in the District of Maryland, the Middle District of Florida, and the Southern District of Indiana. *See, e.g.*, *PETA v. Tri-State Zoological Park of W. Maryland, Inc.* ("Tri State"), 424 F. Supp. 3d 404 (D. Md. 2019), aff'd, No. 20-1010, 2021 WL 305546 (4th Cir. Jan. 29, 2021); *PETA v. Wildlife in Need and Wildlife in Deed, Inc.* ("WIN")*, et al.*, 476 F. Supp. 3d 765 (S.D. Ind. Aug. 3, 2020); *PETA v. Dade City's Wild Things, Inc.* ("DCWT"), No. 8:16-CV-2899-T-36AAS, 2019 WL 245343 (M.D. Fla. Jan. 17, 2019).

While Defendants were not anticipated subjects of these prior actions, they chose to insert themselves into a number of them by taking possession of—and ultimately causing or contributing to the harm, harassment, wounding, and deaths of—ESA-protected animals at issue in those cases, in knowing contempt of the Federal Rules of Evidence and court orders. *See, e.g.,* Ex. 1, at ¶¶ 166-168. As a result, PETA has also been required, during the course of many years, to divert significant resources to taking discovery from and litigating claims against Mr. and Mrs. Lowe and their associates in the Middle District of Florida, the Southern District of Indiana, and the Western District of Oklahoma. *Id.* Some of these actions, including proceedings against Mr. and Mrs. Lowe, remain pending. *Id.*

### Procedural Background

On September 21, 2020, PETA sent a NOI to file a citizen suit pursuant to the ESA to Mr. Lowe, Mrs. Lowe, GWEAP, and Tiger King LLC. *See* Notice of Intent to File Citizen Suit, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D (W.D. Okla. Oct. 22, 2020) [Doc. No. 3-1,] also attached as App. 1 to the Draft Verified PETA Complaint ("NOI Letter"). Other addressees of PETA's NOI

were Cheryl Scott, Eric Yano, Erik Cowie, and the Big Cat Institute. *Id.* PETA's NOI alleged past and ongoing violations of the ESA with respect to lemurs, a grizzly bear, a jaguar, tigers, lions, and tiger-lion hybrids (together with jaguar, tigers, and lions, "Big Cats"). *Id.*

The United States filed this action on November 19, 2020—59 days after PETA sent its NOI. [Doc. No. 2.]

On October 22, 2020, while waiting for its ESA claims to ripen, PETA filed a Rule 27 petition to preserve existing evidence related to the endangered and threatened species in the possession and control of Defendants and other respondents in the Western District of Oklahoma. *See* R. 27 Petition, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D (W.D. Okla. Oct. 22, 2020) [Doc. No. 1] ("R. 27 Petition"). This action was necessitated, in large part, by Defendants' prior actions aiding and abetting attempted spoliation of Big Cats at issue in the Middle District of Florida and in the Southern District of Indiana. *Id.* at 10-15.

PETA's Rule 27 petition was granted following oral argument on November 30, 2020. *See* Order, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D (W.D. Okla. Nov. 30, 2020) [Doc. No. 27] ("R. 27 Order"). Two weeks later, instead of taking steps to comply with the Court's order, Mr. and Mrs. Lowe moved to set it aside. *See* Mot. to Set Aside Court's Nov. 30 Order, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D, (W.D. Okla. Dec. 16, 2020) [Doc. No. 31] ("Recons. Mot."). This motion was rejected on December 29, 2020. *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D, 2020 WL 7755657, at *2-*3 (W.D. Okla. Dec. 29, 2020). PETA conducted an inspection and took depositions pursuant to the Western District of Oklahoma's Rule 27 order on January 22-23, 2021.

On November 30, 2020, during oral argument with respect to PETA's Rule 27 petition, counsel for Defendants conceded that the United States' action does not preclude PETA's citizen suit, *see* Tr. of Oral Arg. on R. 27 Petition, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D (W.D.

Okla. Dec. 22, 2020) [Doc. No. 33-1,] ("Oral Arg. Tr."), at 24:7-20, going so far as to say he would move to consolidate it with the present case should PETA file in the Western District: "I was just served today with the DOJ case from the Eastern District of Oklahoma. Obviously, as the Court is aware, DOJ is requesting—it's the same facts, exact same animals, same place. . . . And, obviously, there is substantial—there could be—there's substantial risk of contradicting judgments at the end of the day. . . . [E]ven if [PETA's citizen suit] weren't dismissed, I would move to transfer it and consolidate it to the Eastern District because, again, the Lowes shouldn't have to pay for and litigate two different lawsuits on the exact same thing. . . . So the point is there's a lot of overlap. And even if it weren't dismissed, I would request that it be transferred and consolidated." Oral Arg. Tr., at 19:6-21:3.

Despite PETA's best efforts, it was unable to send its NOI to all recipients in September 2020, as Mr. Yano never claimed the certified mailing. *See* Mot. for Recognition of Substitute Service, *PETA v. Lowe, et al.*, No. 5:20-CV-01076-D (W.D. Okla. Dec. 11, 2020) [Doc. No. 29] ("Mot. for Substitute Service"). Nor was PETA able to, despite reasonable diligence, serve Mr. Yano for the purposes of Rule 27(a)(2). *Id.* at 2-4. On December 29, 2020, the Western District of Oklahoma approved PETA's efforts as acceptable substitute service and appointed counsel for Defendants, Daniel Card, to represent Mr. Yano consistent with Rule 27(a)(2). *PETA v. Lowe, et al.*, 2020 WL 7755657, at *1-*2. PETA sent Mr. Card the NOI for Mr. Yano's benefit on December 29, 2020. Dec. 29, 2020 email from A. Smith, attached as **Exhibit 2**.

As such, PETA's ESA claims became ripe against all recipients of its NOI after March 1, 2021. 16 U.S.C. § 1540(g)(2). Should this Court choose not to grant leave for PETA to intervene as a party plaintiff, PETA stands ready to file all of its claims as a standalone case. *See* Ex. 1.

## Argument

Anyone shall be permitted to intervene in an ongoing action when, "[o]n timely motion . . . [they] claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). PETA easily meets these requirements, as well as the broader standards for permissive intervention under Rule 24(b).

## I.     PETA is Entitled to Intervene As of Right

This Circuit has "historically taken a liberal approach to intervention and thus favors the granting of motions to intervene" provided the movant can meet the elements of Rule 24(a). *Kane Cty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019). *See also Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (reversing denial of motion to intervene while observing "[t]his circuit follows 'a somewhat liberal line in allowing intervention.'" (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir.1977))).

This analysis remains unchanged where a movant is seeking to intervene as a plaintiff in civil litigation brought by the United States. *See, e.g.*, *United States v. Osage Wind, LLC*, No. 14-CV-704-GKF-JFJ, 2020 WL 3578351, at *7 (N.D. Okla. July 1, 2020) (allowing intervention as of right for private litigant as plaintiff). Likewise, this Circuit recognizes that intervention is appropriate to vindicate the ESA citizen suit provision and ensure protection of listed species. *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840-46 (10th Cir. 1996).

### A.     PETA's Intervention Is Timely

Whether a motion to intervene is timely is determined by considering "all of the circumstances," including the "length of time since the applicant knew of his interest in the case,"

"prejudice to the existing parties," "prejudice to the applicant," and "the existence of any unusual circumstances." *Kane Cty.*, 928 F.3d at 890-91.  All of these factors weigh in favor of granting PETA leave to intervene.

First, PETA's motion to intervene and accompanying draft verified complaint against all recipients of its NOI comes squarely within the range of time this Circuit deems timely. Ex. 2; 16 U.S.C. § 1540(g)(2). In a similar context, the 10th Circuit has suggested that non-profit environmental conservation groups' interval of "just over two months" after intervention became possible was timely. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164-165 (10th Cir. 2017). *See also Kane Cty.*, 928 F.3d at 891 (interval of three months deemed timely).

Second, there is no prejudice to any party. As Defendants conceded, intervention serves their own interests—if they cannot succeed in having PETA's lawsuit dismissed under Rule 12(b)(6), it would be less burdensome for them to have it consolidated with the instant litigation rather than face "two different lawsuits." Oral Arg. Tr., at 19:6-21:3. There is also no prejudice to the United States. The United States would not be "expose[d] . . . to any burden not inherent in the litigation to which it has consented," *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1174 (10th Cir. 2007), because PETA's ESA and public nuisance claims implicate the same conduct and the same animals that are at issue in the United States' ESA and Animal Welfare Act ("AWA") claims. Rather, "every item of evidence" that PETA might present "is one that another party . . . would undoubtedly have the right to present in the absence of [PETA]," even though PETA "may in fact present matters that would not have been presented by other parties[.]" *Id.* And as the instant litigation has only been pending since November 2020, the "relatively early stage of the litigation" also supports the timeliness of PETA's motion to intervene. *Utah Ass'n of Ctys.*, 255 F.3d at 1251. *See also W. Energy All.*, 877 F.3d at 1165.

– 7 –

Finally, the unusual circumstances at hand favor PETA's request to intervene while further demonstrating Defendants' lack of prejudice. Defendants' own conduct has unnecessarily prolonged PETA's timeline for bringing its lawsuit. Mr. Yano's refusal to accept the certified mail PETA sent him in September 2020 required PETA to pursue a motion for substitute service. *See* Mot. for Substitute Service, at 2-4; *PETA v. Lowe, et al.*, 2020 WL 7755657, at *1-*2. PETA could only be sure that Mr. Yano had adequate notice of its NOI via his newly-appointed counsel after December 29, 2020. *See* Ex. 2. Mr. Lowe and Mrs. Lowe likewise unnecessarily prolonged the resolution of PETA's motion for recognition of substitute service for Mr. Yano and appointment of Mr. Card as counsel by interposing an unsuccessful motion to set aside the Western District of Oklahoma's prior order. *PETA v. Lowe, et al.*, 2020 WL 7755657, at *2-*3.

### B.       PETA Has Substantial Interests in This Proceeding

Rule 24(a)(2) requires the applicant to "claim[] an interest relating to the property or transaction that is the subject of the action[.]" This is not a rigid test, but "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]" *Coal.*, 100 F.3d at 841 (internal citations omitted). Based on this Circuit's determination that a movant's "record of advocacy for . . . protection" of animals under the ESA "amounts to a direct and substantial interest . . . for the purpose of intervention as of right," *id.* at 841, PETA should easily meet the necessary threshold. *See, e.g.*, *WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1198 (2010) ("With respect to Rule 24(a)(2), we have declared it indisputable that a prospective intervenor's environmental concern is a legally protectable interest.")

### 1.       PETA seeks to redress impairment of its mission

As PETA alleges in the verified allegations of its draft complaint, its mission has caused it to advocate for the animals under Defendants' care for years. Ex. 1, at ¶¶ 159-173. Meanwhile,

this action brought by the United States seeks similar declaratory and injunctive relief and to have Defendants "relinquish possession of all their ESA-protected animals[.]" *See, e.g.*, [Doc No. 2,] at 46. As addressed further below, PETA has a valid interest in redressing impairment of it mission—elaborated at Ex. 1, at ¶¶ 159-173—by seeing that Defendants' practices receive legal condemnation and injunction and that all of the animals at issue are protected via surrender to reputable facilities. *See Coal.*, 100 F.3d at 841; *WildEarth Guardians*, 604 F.3d at 1198.

### 2.   PETA has litigation interests at stake

Defendants' willful actions—including the physical taking of Big Cats at issue in litigation against exhibitors in other federal jurisdictions, in violation of evidence preservation obligations and orders—have also required PETA to engage in years of litigation against Defendants in the Southern District of Indiana and the Western District of Oklahoma, and to take third party discovery from Defendants in litigation in the Middle District of Florida. Ex. 1, at ¶¶ 165-168. This prior litigation is further evidence of PETA's substantial interest in this proceeding. *See W. Energy All.*, 877 F.3d at 1165 ("The conservation groups also have an interest in preserving the Leasing Reform Policy that they spent years negotiating and litigating.").

Prior rulings in this case have acknowledged some of PETA's interests in this proceeding. For example, this Court's January 15, 2021 ruling on the United States' motion for a preliminary injunction recognized that allegations relating to four lions that are the subject of PETA's litigation in the Southern District of Indiana—and that are the subject of a pending summary judgment motion in that case, *see* Br. in Supp. of Mot. for Summ. J., *PETA v. WIN, et al.*, No. 4:17-cv-00186-RLY-DML (S.D. Ind. Sept. 11, 2020), [Doc. No. 407] ("S.D. Ind. Summ. J. Mot.")—are also at issue in this matter. [Doc. No. 65,] at 11. PETA has a valid interest in ensuring that evidence

presented in this proceeding does not erroneously place any material facts presented in PETA's pending motion for summary judgment in dispute. *See W. Energy All.*, 877 F.3d at 1165.

This Court's ruling also cited the fact that "[the Southern District of Indiana] recently issued an order rejecting the argument that Big Cat hybrids are not protected under the ESA." [Doc. No. 65,] at 9. Defendants chose to reserve their right to press this issue later rather than addressing it in their pending motion to dismiss, *see* [Doc. No. 70,] and PETA has a valid interest in preserving the precedent it has won—and may continue to win—against Defendants in other jurisdictions on this point.[1] *See W. Energy All.*, 877 F.3d at 1165.

PETA also has an interest in holding Defendants accountable in this jurisdiction for representations they have made in this proceeding that contradict positions they have taken in the Southern District of Indiana. As PETA recently informed the Southern District of Indiana, records produced by Defendants and entered as evidence in this proceeding contradict evidence, sworn testimony, and assertions of counsel concerning the date of a lion's death and the date of a break-in at GWEAP, as well as other issues relevant to the merits of PETA's pending summary judgment motion against Mr. Lowe. *See* Mot. for Leave to File Supplemental Evidence, *PETA v. WIN, et al.*, No. 4:17-cv-00186-RLY-DML (S.D. Ind. Dec. 2, 2020), [Doc. No. 440] ("First S.D. Ind. Supplemental Evidence Motion"); Mot. for Leave to File Supplemental Evidence, *PETA v. WIN, et al.*, No. 4:17-cv-00186-RLY-DML (S.D. Ind. March 2, 2021), [Doc. No. 441] ("Second S.D. Ind. Supplemental Evidence Mot.").

---

[1]      Defendants' pending motion to dismiss also argues that the prevailing definitions of terms defined by the AWA may implicate PETA. [Doc. 69,] at 8, 14. PETA stands ready to address this spurious argument at an appropriate juncture after it is granted leave to intervene.

### 3. PETA has financial interests at stake

Finally, PETA has a financial stake in this proceeding. Mrs. Lowe has been found in contempt of an order issued in the Western District of Oklahoma to pay PETA $6,851.92. *See* Order, *PETA v. Lauren Lowe*, No. 5:20-CV-00612-PRW (W.D. Okl. Dec. 17, 2020), [Doc. No. 17] ("Lauren Lowe Contempt Order"). Mrs. Lowe now owes PETA this amount as well as an award of interest. *Id.* at 3. PETA also anticipates the success of its pending summary judgment motion against Mr. Lowe in the Southern District of Indiana will result in a fee award under the ESA's fee shifting provision. 16 U.S.C. § 1540(g)(4) (under the ESA, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate"). To the extent the outcome of this matter may alter Defendants' financial status, PETA intends to pursue any available remedies to protect its own interests.

### C. The Disposition of This Case May Impair PETA's Interests

Rule 24(a)(2) requires a movant to show that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest[.]" In this Circuit, "the question of impairment is not separate from the question of the existence of an interest." *Utah Ass'n of Ctys.*, 255 F.3d at 1253, citing *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir.1978). To satisfy this test, PETA need only meet "a minimal burden," and show that impairment is merely "possible" if intervention is denied. *Kane Cty.*, 928 F.3d at 891-92; *W. Energy All.*, 877 F.3d at 1167; *WildEarth Guardians*, 604 F.3d at 1199; *Utah Ass'n of Ctys.*, 255 F.3d at 1253.

### 1. PETA is entitled to redress impairment of its mission

Disposition of this action is likely to adjudicate Defendants' past, ongoing, and future animal care practices and decide the permanent home of many animals in Defendants' control. If

this action were to conclude without Defendants' practices being declared in violation of the ESA or otherwise subject to injunction, or if the animals at issue were to remain with Defendants or relinquished to facilities that do not meet sufficient standards of humane and lawful conduct, PETA's interests—and mission—will continue to be impaired. Ex. 1, at ¶¶ 159-173. This more than meets Rule 24(a)(2)'s standard. *Coal.*, 100 F.3d at 841 (recognizing potential impairment to movant's ability to protect owls).

### 2.  PETA is entitled to protect its litigation interests

As referenced above, disposition of this action without PETA's intervention may impair PETA's active litigation in the Southern District of Indiana, *see* [Doc. No. 65,] at 9, 11; Ex. 1, at ¶ 168; S.D. Ind. Summ. J. Mot.; First S.D. Ind. Supplemental Evidence Mot.; Second S.D. Ind. Supplemental Evidence Mot., as well as PETA's efforts to recover money owed as a result of pending litigation. *See* Lauren Lowe Contempt Order; 16 U.S.C. § 1540(g)(4).

PETA's interests would be further impaired if the outcome of this litigation alters the interpretation of the ESA, including the definition of protected species and whether challenged conduct amounts to a "take"—the prevailing interpretations of which result in significant part from PETA's recent legal victories, including in litigation involving Mr. Lowe. *See, e.g.*, [Doc. No. 65,] at 9. In addition, factual holdings with respect to whether Defendants harmed, harassed, wounded, or engaged in conduct leading to the death of animals at issue both in this proceeding and in PETA's litigation in the Southern District of Indiana may also impair not only the outcome of that case, but also the precedential value of holdings from that case. In this way, PETA's circumstances resemble those of intervenors in *Utah Ass'n of Ctys.*, who successfully argued that an adverse judgment "would impair the intervenors' interest in promoting their environmental protection goals by seeking presidential designation of other national monuments in the future." 255 F.3d at

1254 (recognizing potential adverse precedent as valid impairment under Rule 24). *See also Coal.*, 100 F.3d at 841-44 (holding similarly).

The fact that factual holdings in this proceeding may also be based on information that contradicts what Mr. Lowe and his counsel have represented to the Southern District of Indiana aggravate any potential impairment. That PETA can alert the Southern District of Indiana to these discrepancies is not a sufficient remedy. *Utah Ass'n of Ctys.*, 255 F.3d at 1254 ("[W]here a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene.").

**3.       PETA is entitled to protect it is financial interests**

The practical implications of a decision in this proceeding for PETA's financial interests— that it may impair PETA's ability to collect its outstanding and anticipated debt—is also cognizable. *Utah Ass'n of Ctys.*, 255 F.3d at 1253 ("Moreover, 'the Rule refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature.'") (citation omitted); *Coal.*, 100 F.3d at 841 (same).

**D.       PETA's Interests Are Not Adequately Represented by the Existing Parties**

PETA's burden to show that existing parties may not adequately represent its interests is similarly "minimal." *Kane Cty.,* 928 F.3d at 892; *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *Utah Ass'n of Ctys.*, 255 F.3d at 1254. PETA does not need to— and does not intend to—impugn the United States' prosecution of its lawsuit against Defendants, but need only explain how its interests and those of the United States "may" diverge. *Kane Cty.,* 928 F.3d at 892, citing *Natural Res. Def. Council*, 928 F.3d at 877.

**1.       The government presumptively represents varied stakeholders**

When the representative of a movant's interest is the government, the presumption of adequacy can be "rebutted by the fact that the public interest the government is obligated to

represent may differ from the would-be intervenor's particular interest." *Id.*; *Utah Ass'n of Ctys.*, 255 F.3d at 1255. This is because, even where "both the government and the intervenors have the same objective" and will "occupy the same posture in the litigation . . . the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Utah Ass'n of Ctys.*, 255 F.3d at 1255-56. *See also W. Energy All.*, 877 F.3d at 1168 (same); *Coal.*, 100 F.3d at 845 (same); *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir.1977) (recognizing that it is "on its face impossible" for the government to protect not only the interests of the public but also movants).[2]

The potential divergence between PETA's interests and the government's balancing of competing policy considerations is readily apparent. For example, some of PETA's disagreements with the government in its administration of the ESA and AWA are a matter of public record. PETA has previously sued the United States for the "policy, pattern, and practice of rubber-stamping . . . license renewal applications" of animal exhibitors. *PETA v. United States Dep't of Agric.*, 861 F.3d 502, 505 (4th Cir. 2017). For this reason, in its prior ESA litigation, PETA has submitted evidence regarding the quality of care provided by facilities capable of meeting standards for animal welfare promulgated by the Global Federation of Animal Sanctuaries ("GFAS"). *See, e.g.*, Br. in Supp. of Mot. for Determination of Sanctuaries for Placement of Big Cats, *PETA v. WIN, et al.*, No. 4:17-cv-00186-RLY-DML (S.D. Ind. Aug. 24, 2020), [Doc. No.

---

[2]     While PETA has no indication such a scenario is likely here, it would be perverse if, because PETA may have confidence in the case brought by the United States, it was obligated to remain at the mercy of "unanticipated policy shifts." *Utah Ass'n of Ctys.*, 255 F.3d at 1256. *See also W. Energy All.*, 877 F.3d at 1168 (recognizing that "government policy may shift"). These concerns are particularly relevant here, where the government's case was filed in November 2020 before the inauguration of a new presidential administration. *Id.* at 895 ("Our court has recognized that a 'change in [presidential a]dministration raises 'the possibility of divergence of interest' or a 'shift' during litigation.'").

384,] at 3-6 (quoting verified expert report and declarations from the Vice President of GFAS and the heads of two GFAS-accredited sanctuaries as to the standards at GFAS or GFAS-equivalent facilities).[3]

Likewise, PETA has had particular success in arguing that husbandry standards voluntarily embraced by private facilities should inform interpretation of the ESA. *See, e.g.*, *PETA v. WIN, et al.*, 476 F. Supp. 3d 765, 772 (S.D. Ind. 2020) (crediting the testimony of a behavioral and husbandry expert employed by a facility accredited by the Association of Zoos and Aquariums ("AZA")); *Tri-State*, 424 F. Supp.3d at 415-416, 431 (crediting similar expert testimony and applying AZA standards to analysis of whether facility's lemur and tiger care met AZA standards). For this reason, examples of generally accepted husbandry standards embraced by private facilities are highlighted as relevant guidance in the verified allegations of PETA's draft complaint. *See, e.g.*, Ex. 1, at ¶¶ 70-72, 96. PETA anticipates these standards will significantly inform the analysis of its expert witnesses. The United States, on the other hand, is responsible for promulgating husbandry standards under the AWA and has put forward experts employed by the USDA. *See, e.g.*, [Doc. No. 10-16,] at ¶ 1 (testimony of veterinary medical officer employed by USDA since 2004). Without casting any aspersions on the testimony that may be offered by such experts—or on such experts' qualifications—it is presumptively the case that the government's views about appropriate husbandry will represent varied stakeholders. *Utah Ass'n of Ctys.*, 255 F.3d at 1255-

---

[3]   On January 15, 2021, this Court ordered Defendants to relinquish "all Big Cats one year old or younger, along with their respective mothers, to the United States to be transferred to reputable facilities, selected by the United States, pending final resolution of the United States' claims in this case." [Doc. No. 65,] at 34. Without impugning the adequacy of this preliminary relief or any temporary placements arranged by the United States, preliminary relief—which on its face does not extend to all of the animals at issue—does not alter PETA's ongoing interest in ensuring appropriate final relief for all animals in Defendants' control.

56; *W. Energy All.*, 877 F.3d at 1168; *Coal.*, 100 F.3d at 845; *National Farm Lines*, 564 F.2d at 384.

### 2. PETA is entitled to pursue its own litigation strategy

There are also meaningful distinctions between the case prosecuted by the United States and PETA's anticipated litigation. For example, as discussed above, PETA anticipates putting forward evidence of generally accepted husbandry standards embraced by private, more reputable facilities. *Supra* at 14-15.

Furthermore, as is apparent from PETA's NOI and the verified allegations in PETA's draft complaint, PETA anticipates adding additional Defendants—Cheryl Scott, Eric Yano, Erik Cowie, and the Big Cat Institute. Ex. 1, at ¶¶ 14, 18-20; NOI Letter. The verified allegations of PETA's draft complaint also include numerous allegations—concerning, for example, the genetic and social effects of Defendants' crossbreeding of Big Cats, the transport of animals more than 800 miles from Indiana to Oklahoma in 100 degree heat in the summer of 2019 without water or air-conditioning, and Defendants' alleged trafficking of Big Cats—not advanced by the United States. *See, e.g.*, Ex. 1, at ¶¶ 34, 109-113, 119-127. Many of the unique, verified allegations in PETA's draft complaint stem from PETA's own extensive investigation of Defendants' practices. *See, e.g.*, Ex. 1, at ¶¶ 34, 42-43, 51-52, 58-59, 79, 81-82, 106, 110, 125, 165-168 (allegations premised in whole or in part on discovery PETA took in other proceedings).

Although the United States may pursue such allegations at a later date, and while this Court has taken steps to bind current non-parties such as Mr. Yano piecemeal, *see* [Doc. No. 65,] at 32-33, PETA has a right under Rule 24(a) to pursue its preferred strategy even if the United States may choose in any particular instance to prioritize "the efficient administration of its own litigation resources." *Kane Cty.*, 928 F.3d at 895.

## II.   Alternatively, PETA Satisfies the Standards for Permissive Intervention

As set forth above, PETA meets the requirements for intervention as of right under Rule 24(a). Alternatively, PETA also meets the requirements for permissive intervention under Rule 24(b). Under Rule 24(b), permissive intervention may be granted when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to allow permissive intervention, courts are instructed to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

PETA meets this standard. For the reasons addressed above, PETA's intervention is timely. *Supra* at 6-8. PETA's intervention will not unduly delay or prejudice the original parties' rights— as discussed above, Defendants have acknowledged intervention is an alternative to parallel litigation in the Western District of Oklahoma. Oral Arg. Tr., at 19:6-21:3. Because it is sufficiently early in the litigation, and because PETA has the benefit of evidence preserved via its Rule 27 proceeding and extensive experience litigating similar claims—including claims against and involving Defendants, *see, e.g.,* Ex. 1, at ¶¶ 165-168; S.D. Ind. Summ. J. Mot.; First S.D. Ind. Supplemental Evidence Mot.; Second S.D. Ind. Supplemental Evidence Mot.—PETA anticipates that it can participate on more or less the same schedule as the United States and Defendants.[4]

There is no question that PETA's prosecution of its intended litigation "shares with the main action . . . common question[s] of law [and] fact." Fed. R. Civ. P. 24(b)(1)(B). As disclosed in PETA's draft verified complaint, Ex. 1, at ¶¶ 21-158, PETA seeks to prove factual and legal

---

[4]      PETA anticipates noticing appearances by counsel with experience in several successful civil actions involving Defendants, Defendants' current or former facilities, Defendants' business partners in their Wynnewood and Thackerville operations, and similar facilities. *See, e.g., PETA v. Lowe, et al.,* 2020 WL 7755657; Lauren Lowe Contempt Order; *PETA v. WIN, et al.,* 476 F. Supp. 3d 765 (S.D. Ind. Aug. 3, 2020); *Big Cat Rescue Corp. v. Schreibvogel,* No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (W.D. Okla. June 1, 2020); *Tri-State,* 424 F. Supp. 3d 404.

questions at the center of this proceeding. Rather than distract from the main action, PETA will provide a more complete consideration and adjudication of the issues at hand. This is in part because PETA, as discussed above, will represent distinct interests and be committed to investigating a broader set of parties and facts. *Supra* at 13-16. This is also because PETA brings a unique expertise both in Defendants' operations and litigating claims on behalf of captive animals. *Supra* at 17 n.4.

### Conclusion

For the reasons set forth above, PETA should be granted leave to intervene as a party plaintiff under Rule 24(a) or, in the alternative, Rule 24(b).

Respectfully submitted,

/s/ *Heather L. Hintz*
Thomas G. Wolfe, OBA NO. 11576
Heather L. Hintz, OBA No. 14253
Mark E. Hornbeek, OBA No. 33198
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-4100
Facsimile:  (405) 235-4133
*tgwolfe@phillipsmurrah.com*
*hlhintz@phillipsmurrah.com*
*mehornbeek@phillipsmurrah.com*

**Attorneys for Proposed Intervenor-Plaintiff, People for the Ethical Treatment of Animals, Inc.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing was served on April 28, 2021, via the Court's CM/ECF system on the following:

Mary Hollingsworth
mary.hollingworth@usdov.gov
Briana Strippoli
briana.strippoli@usdoj.gov
Michael J. O'Malley
Micahel.O'Malley@usdoj.gov
Robert M. Norway
robert.m.norway@usdoj.com
Susan S. Brandon
susan.brandon@usdoj.gov

**Attorneys for Plaintiff the United States of America**

Daniel J. Card
Dan@cardlawok.com

**Attorney for Defendants**

/s/ *Heather L. Hintz*
Heather L. Hintz
