# EXHIBIT 1 – Hollingsworth Declaration

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br>     v.<br><br>JEFFREY LOWE,<br><br>LAUREN LOWE,<br><br>GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and<br><br>TIGER KING, LLC,<br><br>  *Defendants*. | Case No. 6:20-cv-00423-JFH |

## DECLARATION OF REASONABLE EXPENSES IN SUPPORT OF THE UNITED STATES' APPLICATION FOR DAMAGES

I, Mary Hollingsworth, hereby declare as follows:

1. I am an attorney for the U.S. Department of Justice (DOJ), Environment and Natural Resources Division (ENRD), and I am co-counsel for the United States in the above-captioned matter. I am submitting this affidavit in support of the United States' application for damages.

2. ENRD maintains a Case Management System (CMS). The CMS is a database that tracks all time spent by DOJ attorneys and paralegals on specific DOJ cases. In the regular course of DOJ's business, DOJ attorneys and paralegals are required to enter into the CMS a case number, activity code, and work date for each hour worked. DOJ attorneys and paralegals are required to make these entries at the time of performing, or shortly after they perform, the work. *See* Decl. of Andrew Collier, Exhibit 6. Beyond identifying the case, the time spend, and activity code (i.e., case-related work), CMS does not require personnel to enter further detail describing the work. *Id.* I and the other members of the litigation team entered our time in CMS consistent with DOJ/ENRD

1

policies. In preparation for the damages application, I asked a member of our staff to retrieve our CMS time records for this case during the dates the team took steps to address Defendants' noncompliance. *See* United States' Application for Damages. I also reviewed my emails and work product to determine how much of my time on those dates was taking steps to bring Defendants into compliance versus working on a different aspect of the case. I also have conferred with my co-counsel and paralegal regarding their time as well.

3. Based on my review of those time records, my emails, work product, and knowledge, our team began addressing potential compliance issues on January 21, 2021, after Defendants provided some documentation to U.S. Department of Agriculture Animal and Plant Health Inspection Service inspectors during the January 20, 2021 inspection. In emails, we promptly identified deficiencies in the records provided so that Defendants could meet their January 22, 2021 deadline for acquisition and disposition records. For the next two weeks, our team continued to reach out to Defendants' counsel regarding their noncompliance with the January 15, 2021 Order. During this time, I spent a significant amount of time reviewing Defendants' past and current inventories, disposition and acquisition records, and communicating with individuals with firsthand knowledge of the transfer of particular animals from Greater Wynnewood Exotic Animal Park and Tiger King Park. *See* Exhibit 2 (Hollingsworth time sheets for Jan. 21-23, 25-29, Feb. 1-4). This time-consuming process was necessary because of the numerous inconsistencies and inaccuracies in the paperwork provided by Defendants. In particular, Defendants have consistently failed to provide records accounting for litters born to animals in their care/possession or records accounting for dead or transferred animals, requiring our team, together with USDA employees, to contact various veterinarians, other exotic facilities and witnesses to learn of the existence of animals and determine their whereabouts.

4. With this information, I began working on the motion to enforce on February 5, 2021, after a meet and confer with Defendants' counsel. During this time, our team also took steps to attempt to verify the qualifications of the veterinarian employed by Defendants at the end of January after Defendants and their veterinarian failed to provide such information despite a number of requests. *See id.* (Hollingsworth time sheets for Feb. 5-10). I spent roughly a week preparing the motion and supporting exhibits and filed the motion on February 12, 2021. *See id.* (Hollingsworth time sheets for Feb. 5-12). The combined total of hours I spent engaging

2

Defendants' counsel, verifying information, and preparing the motion to enforce and exhibits is 80 hours.

5. After reviewing my records, the only additional time I am submitting at this time is for my review of the draft notice of noncompliance filed on April 12, 2021, *see id.* (Hollingsworth time sheet for April 10, 2021—0.5 hours included), and preparation for and appearance at the show cause hearing, *see id.* (time sheets for May 11-12—total of 3 hours included).

6. Based on a review of the CMS time records for the relevant dates, her emails, notes, and own knowledge, my DOJ co-counsel Briena Strippoli submitted 8 hours for communications with Defendants' counsel and work on the motion to enforce. *See* Exhibit 3 (Strippoli time sheets for Jan. 21, 24, Feb. 4, 10, 11). Ms. Strippoli spent an additional 23 hours on the first notice of non-compliance and 9 hours preparing for and appearing at the show cause hearing. *See id.* (Strippoli time sheets for April 8-12, May 11-12).

7. Based on a review of the CMS time records for the relevant dates, her emails, notes and own knowledge, my DOJ co-counsel, Devon Flanagan spent approximately 10.5 hours on the notice of non-compliance filed on April 12, 2021. *See* Exhibit 4 (Flanagan time sheet).

8. Based on a review of the CMS time records for the relevant dates, his emails, notes, and own knowledge, a paralegal in my office, Kyle Hogan, spent approximately 34 hours total reviewing and analyzing inventory-related documents to help me identify discrepancies and preparing exhibits for the motion to enforce. *See* Exhibit 5 (Hogan time sheets for Feb. 1, 2, 3, 4, 5, 12). In addition, he spent 8 hours on the first notice of non-compliance, including cite checking and proofing the notice as well as preparation of supporting materials. *See id.* (Hogan time sheets for April 6, 12).

9. I have exercised billing judgment and reduced the requested hours to reflect a conservative estimate of the cost to the government associated with Defendants' non-compliance with the Court's orders. I eliminated the time spent on the motion to consider the motion to enforce confessed and time spent on the second notice of non-compliance filed May 11, 2021. We also do not seek compensation for additional time Ms. Flanagan spent researching civil contempt and reviewing the Defendants' non-compliance in preparation for the notice of non-compliance and the show cause hearing.

10. DOJ uses a standard method for calculating hourly fee rates, which involves multiplying the direct salary costs to reflect overhead costs and benefits. *See* Exhibit 6 (Collier

Decl.). Pursuant to that methodology, my hourly fee rate is $78.46. Ms. Strippoli's hourly fee rate is $82.61. Ms. Flanagan's hourly fee rate is $73.63. And Mr. Hogan's hourly fee rate is $34.84.

11. Based on the hours worked and DOJ's formula, the United States seeks $36,328.41 in fees for work undertaken to bring Defendants into compliance with the Court's Orders.

12. In addition, the U.S. Fish and Wildlife Service sent four agents to Thackerville to execute the May 6 warrant. The agency requests reimbursement solely for per diem expenses at a rate of $193 per agent, for a total of $772. Using the standard per diem rate for Texas, the agency calculated costs for their agent's time preparing for the execution of the warrant on May 5 and the execution of the warrant on May 6. *See https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=&fiscal_year=2021&zip=76240&city=*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May 28, 2021.

*/s/ Mary Hollingsworth*
MARY HOLLINGSWORTH