# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. JEFFREY LOWE, LAUREN LOWE, GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and TIGER KING, LLC, *Defendants*. | Case No. 6:20-cv-00423-JFH |

**UNITED STATES' NOTICE OF DEFENDANTS' CONTINUED NONCOMPLIANCE**

At the May 12, 2021 show cause hearing and in the Court's subsequent order, Dkt. 97, the Court found Defendants in civil contempt for failing to comply with the Court's previous orders and imposed sanctions. The Court stated that it would consider further sanctions if Defendants were not fully compliant with the Court's January 15, 2021 and March 22, 2021 orders by June 11, 2021. Dkt. 97 at 8. At the show cause hearing, the Court invited the United States to file a notice informing the Court if Defendants did not come into compliance by June 11, 2021.

Not only have Defendants failed to cure the deficiencies identified by the United States in the motion to enforce and subsequent notices of noncompliance, but they have added additional violations of the Court's orders. Dkt. 72, 83, 93. Specifically, Defendants continue to violate the Court's orders by: (1) not retaining *any* attending veterinarian, let alone a qualified veterinarian

1

with whom they must prepare a legally sufficient written program of veterinary care consistent with the Animal Welfare Act ("AWA") regulations; (2) continuing to ignore their obligation to confer with the United States and obtain leave of Court before acquiring or disposing of animals; and (3) failing to produce complete and accurate acquisition or disposition records and veterinary records by the Court-ordered deadlines.

Given that Defendants seem unfazed by the Court's contempt finding and the existing sanctions, the United States believes additional sanctions are necessary to ensure Defendants come into compliance with the Court's orders. Such sanctions are particularly important in this case where Defendants' continued defiance of the Court's orders puts the animals in their care in danger.

## I. Defendants continue to Ignore, Defy, and Violate the Court's Orders.

### A. Defendants have not retained a qualified attending veterinarian under formal arrangements.

One of the most alarming updates since the Court's May 12, 2021 hearing is the withdrawal of Defendants' former veterinarian and Defendants' apparent failure to secure a replacement. During the May 12, 2021 show cause hearing, the United States shared with the Court and the Lowes a communication from the Lowes' veterinarian in which she indicated that she was going to give notice and cease working with them by the end of May. Exhibit ("Exh.") 6 (Partial Transcript for May 12, 2021 Show Cause Hearing) at 26:8-25. On May 26, 2021, the Defendants' former veterinarian informed the U.S. Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS") that she no longer worked for Defendants and had stopped all communications with them. *See* Dkt. 100-9. During the June 2, 2021 APHIS inspection of Tiger King Park, Defendant Lauren Lowe initially claimed that they were still working with Dr. Fryer. When the APHIS inspectors noted that Dr. Fryer had informed

USDA that she was no longer working with the Lowes, Lauren Lowe then admitted that they had no qualified attending veterinarian. *See* Exh. 1 (Decl. Dr. Cynthia Digesualdo) ¶ 3.

To date, Defendants have not informed the United States that they have obtained a new attending veterinarian, let alone one that meets the requirements of the AWA regulations, 9 C.F.R. §§ 1.1, 2.40. Defendants' former program of veterinary care was legally deficient, as the Court found in its March 22, 2021 order, *see* Dkt. 78 at 8-9, and now is obsolete because the plan was with a veterinarian who is no longer providing services at the Thackerville facility. Thus, Defendants continue to defy the Court's January 15, 2021 order requiring them to "retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40" and have a program of veterinary care consistent with the regulations. Dkt. 65 at 33.

Having no attending veterinarian puts the animals at the Thackerville facility at risk of avoidable suffering, injury, and death, defies court orders, and violates the AWA. For example, at the May 12, 2021, hearing, counsel for United States brought to the attention of the Court reports that a red fox at the Thackerville facility was suffering and that the Lowe's former veterinarian had inquired about the legal steps that needed to be taken to humanely euthanize the animal. In a May 14, 2021 order, the Court approved the humane euthanasia of the red fox as the parties may stipulate. Dkt. 96. Despite the efforts of the United States and the Court to facilitate the humane treatment of this animal, Defendants have taken no steps to reach a stipulation. Nor have they provided any veterinary records that demonstrate that the animal is receiving adequate care. Instead, the Lowes have unilaterally decided to simply watch the animal die.

On June 2, 2021, APHIS inspected the Thackerville facility. *See* Exh. 2 (June 9, 2021 Inspection Report). The inspection report indicates that the veterinarian's recommendations for

the fox dated February 20, 2021, had not been followed and that the May 1, 2021 daily record for the animal states that Defendants plan to "allow him to pass away peacefully when it's his time." *Id.* at 3. Further, that record describes his condition as "possible cancer is now getting to him." Exh. 3 (records produced by Lauren Lowe at June 9, 2021 inspection) at 2. The inspection report also notes that the red fox "continues to receive no veterinary care" for its known chronic medical conditions. Exh. 2 at 3. Defendants' failure to retain an attending veterinarian means no qualified individual is available to treat this animal, monitor the extent of his suffering, or perform a humane euthanasia. *See* Exh. 1 ¶ 7.

The June 2, 2021 APHIS inspection revealed several other animals in need of veterinary care, including a ferret, a raccoon, a bush baby, and two bobcats. Exh. 2 at 2-4. Lauren Lowe presented a record for the bush baby, which stated that the animal has a "bed sore on his right side and rash above left eye. Applying Vaseline every other day. Will continue to monitor." Exh. 3 at 3. It also noted a decrease in the animal's energy level. *Id.* Notably the record is dated May 27, a day after Dr. Fryer told USDA that she no longer worked for the Lowes. Dkt. 100-9. Dr. Fryer told USDA that she had never been informed that the bush baby had any medical issues or asked to examine it. Exh. 2 at 3. Either the record is based on the Lowes' unqualified assessment of the medical needs of their animals or they consulted with another veterinarian but failed to comply with the Court's order to provide "complete and accurate veterinary records to counsel for the United States within 7 days of any animal being treated by a veterinarian." Dkt. 65 at 34.

USDA observed a ferret with swelling that encompassed the entire width of the animal's neck. Exh. 2 at 2. Although the Lowes had noticed the swelling at least on June 1, 2021, they had not contacted a veterinarian. *Id.* More than two weeks later, the United States has not received any veterinary records for the animal. A raccoon was "lethargic with an overall unthrifty

4

appearance." *Id.* The animal also "seemed to be isolating himself from the other animals which is not normal" for raccoons. *Id.* at 2-3. The APHIS inspectors also observed hair loss on a female bobcat. *Id.* at 3. The hair loss on the sides of the animal's neck were present on May 17 and 18, 2021. *Id.* As of the June 2, 2021 inspection, the hair loss had spread to one of the ears. *Id.* A male bobcat "appeared thin and lethargic. He has noticeably lost weight since he was observed on May 18, 2021." *Id.* at 4. The Lowes presented no documentation that indicated that they had consulted with a veterinarian about either animal's condition. *Id.*

The inspection also revealed a lack of appropriate food at the facility, signs that animals were not receiving adequate food and water, and no environmental enhancement plan for nonhuman primates approved by an attending veterinarian. *Id.* at 5-6. In the case of the macaques, the APHIS inspectors observed dog kibble contaminated with many flies in their food receptacle and old produce covered in flies in their outside yards. *Id.* "Dog food is not an appropriate diet for nonhuman primates." *Id.* at 5. The inspectors also noted the "progressively decreasing body conditions" of the bobcats, wolves, foxes, and Canada lynx. *Id.* at 8. These observations reveal that animals at the Thackerville facility are in need of veterinary care and routine visits from an attending veterinarian to ensure that they do not needlessly suffer.

    **B. Defendants continue to obtain and dispose of animals without conferring with the United States or seeking leave of Court.**

Defendants continue to violate the Court's orders requiring them to confer with the United States and seek leave of the Court before acquiring or disposing of any animals protected under the Endangered Species Act ("ESA") or AWA. *See* Dkt. 23 at 2; Dkt. 65 at 34; Dkt. 78 at 10. Acquisition and disposition includes any births and deaths as well as transfers of animals to/from other facilities. *See* Dkt. 78 at 10; 9 C.F.R. § 2.75(b)(1). Since the May 12, 2021 show cause hearing, the United States has learned of several additional births and dispositions of

animals subject to the Court's orders. On May 20, 2021, one of the Big Cats seized by the United States on May 6, 2021, gave birth to three cubs. *See* Dkt. 100-8. Based on a Big Cat's average gestational period of 109 days, this animal was bred by the Lowes around February 2021, without conferring with the United States or obtaining leave of Court. *See United States v. 21619 Jimbo Road, 21469 Jimbo Road, 21371 Jimbo Road, Thackerville, Oklahoma 73459*, 6:21-mj-00218-SPS, Dkt. 1, Attachment A (Aff. of Dr. Laurie Gage) ¶ 59.

The June 2, 2021 inspection also revealed two new baby raccoons and identified a total of nine animals previously listed on the Lowe's inventories that were missing. *See* Exh. 2 at 4. Regarding the nine missing animals, Lauren Lowe implied that four raccoons had escaped and stated that three sheep, a goat, and an alpaca were given or sold to a local farmer. *Id.*[1] All of these animals were listed on the December 16, 2020 inventory prepared by Defendants and provided to the United States and are covered by the AWA. Dkt. 28-35 (Exh. DD) at 13, 18. Additionally, the goat, alpaca, and three sheep were present at the Thackerville facility on May 17 and 18, 2021. *See* Exh. 1 ¶ 4. Defendants' willingness to transfer five animals, while under a Court order to not "dispose of any animal covered by the ESA or any animal covered by the AWA" absent leave of Court, s*ee* Dkt. 65 at 34, and *after* being found in contempt, demonstrates their continued willful disregard for the Court's orders. The inspectors also identified a female

---

[1] The Lowes attempted to justify the transfer of the animals without a court order by claiming that the five animals were owned by Jeff Lowe's son, Taylor Lowe. *See* Exh. 5 at 3. As an initial matter, the December 16, 2020 inventory produced by the Lowes did not identify Taylor Lowe as the owner of any of those animals. In fact, the Lowes specifically identified Jeff Lowe as the owner of the alpaca. Dkt. 28-35 at 13. In any event, it is irrelevant who owns the animals listed on the December 16, 2020 inventory. The Lowes were required to confer with the United States and seek leave of court before transferring any animals listed on that inventory. Dkt. 65 at 34 (prohibiting Defendants, "*including anyone acting, directly or indirectly, through them or on their behalf*," from disposing of any animals covered by the ESA or AWA absent a court order (emphasis added)).

bobcat housed with a male bobcat and suffering from patches of hair loss and exposed reddened skin, which Lauren Lowe stated were from breeding. Exh. 2 at 3. Again, the Lowes did not confer with the United States or obtain leave of the Court prior to the births, breeding, or disposition of any of these animals.

### C. Defendants still have not provided counsel for the United States with complete acquisition and disposition records.

Defendants still have not complied with the Court's order requiring them to: (1) produce acquisition and disposition records for all animals added to or missing from their inventories since June 22, 2020; and (2) produce acquisition and disposition records within seven days of any change to the December 16, 2020 inventory, including the birth or death of any animal. *See* Dkt. 65 at 33-34.

Following the May 12, 2021 show cause hearing, Defendants sent copies of some records via email to counsel for the United States. *See* Dkt. 95. A number of the records were the same ones that the Court already determined were deficient. *See* Dkt. 95-2 at 3-6, 8. Defendants also submitted a chart listing animal births, as well as one new acquisition record. *Id*. In an email response on May 19, 2021, counsel for the United States explained to counsel for Defendants how the records were legally insufficient and incomplete. *See* Exh. 4 (May 19, 2021 Email Between Counsel). Since that email, Defendants have not cured any of the identified deficiencies. The only additional record provided by Defendants is a disposition record for the recently transferred five animals, which was provided only after counsel for the United States informed counsel for Defendants that those animals were missing during the June 2, 2021 inspection. Exh. 5 (disposition record for five animals from Jeff Lowe to his son, Taylor Lowe). Setting aside that the Lowes had no authority to transfer those animals in the first place, the

record provided fails to contain the necessary information required for transfers involving individuals who are not licensed under the AWA. *See* 9 C.F.R. § 2.75(b)(1).

In addition to the record issues previously identified in our filings, the birth chart provided by Lauren Lowe does not meet the regulatory requirements for acquisition or disposition records under the AWA. Moreover, the chart is missing many animals, including offspring identified on the December 16, 2020 inventory, such as Daniel, as well as those offspring who either died or were transferred by the Defendants or their agents and, thus, were not identified on the December 16, 2020 inventory.[2] Finally, from the chart the United States has now identified additional discrepancies in Defendants' paperwork. The chart states that Wendy, Rita and Legacy are offspring of Phenix and Stalker. Dkt. 95 at 2. However, the December 16, 2020 inventory provides that they are the offspring of Sebastian and Priscilla. Dkt. 28-35 at 15. The chart lists Alyssa as the offspring of Simba and Unicara. Dkt. Dkt. 95 at 2. However, the December 16, 2020 inventory states that she is the offspring of Simba and Manie. Dkt. 28-35 at 6.

Lauren Lowe provided some explanation for other discrepancies in their records; however, those explanations are inconsistent with the available evidence. For example, during the June 2020 inspection, APHIS inspectors observed twelve wolves/hybrids. Dkt. 28-15 (Exh. J) at 8. When the Lowes produced an inventory in August 2020, they likewise identified twelve wolves/hybrids. Dkt. 28-27 (Exh. V) at 7-8. All of those animals had names. *Id.* Defendants concede that eleven wolves/hybrids were transferred to Pat Craig at the beginning of October 2020. Dkt. 72-6 (Exh. EEE) at 3. On the disposition record provided, three of the eleven wolves

---

[2] Healthy Big Cats have litters of between 2 and 7 cubs with 3-4 cubs being the average. Dkt. 72-2 (Exh. AAA) ¶ 3. Defendants need to identify all cubs born, not just those that are on their inventory or for whom we have documentation.

8

had "no name." Dkt. 95-2 at 12. With eleven transferred to Pat Craig in October, that should leave one wolf/hybrid at the facility. However, during the December 15, 2020 inspection, APHIS inspectors observed four wolves/hybrids, which were then listed on the inventory produced by Defendants on December 16, 2020. Dkt. 28-33 (Exh. BB) at 11; Dkt. 28-35 at 8. Thus, there were three additional wolves/hybrids at the property but no acquisition record provided.

Regarding Lauren Lowe's response to the record issue related to the fisher/fishing cat, the United States agrees that a fishing cat and fisher are two different species. (*See below* photos of

 

fishing cat and fisher, respectively).



However, contrary to Lauren Lowe's assertions, the Lowes do not currently have in their possession a fishing cat; they have a fisher. *Contra* Dkt. 95 at 1. The report for the June 22, 2020 inspection contained a video of the fisher. *See* Dkt. 28-15 at 41 (*see* photo from video above); *see also* Dkt. 28. If the Lowes had a fishing cat, as Lauren Lowe insists, then they need to produce a record for the animal because APHIS inspectors have not observed this animal at the Thackerville facility. Further, as detailed in the previous section, the United States has recently learned that two raccoons were born, four raccoons went missing, and five animals

listed on the December 16, 2020 inventory have been sold, but Defendants failed to submit within seven days complete acquisition or disposition records for these animals. Their failure to comply with this requirement calls into question whether additional changes in their inventory, such as other potential births, have been documented and such documentation has been provided to the United States.

In sum, as of the date of this filing, there are still missing acquisition and disposition records, records which do not comply with the regulatory requirements, and inaccurate information evident due to unexplained inconsistencies between different documents. Defendants must account for the whereabouts of their animals to come into compliance with the Court's orders.

## II. Request for Relief

Defendants have once again defied the Court's deadline to come into compliance with its previous orders. Because Defendants have failed to comply with the Court's orders and have, in fact, committed additional infractions—including disposing of animals without a court order— the Court should consider other remedies to compel compliance, including potentially jail time. *See* Exh. 6 at 14:22-23 ("The Court could imprison the defendants until they get themselves in compliance"); Dkt. 97 at 3 ("courts have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as disobedience or resistance to its lawful writ, process, order, rule, decree, or command") (citing 18 U.S.C. § 401(3)) (internal quotation marks omitted); *see also United States v. Ford*, 514 F.3d 1047, 1051-53 (10th Cir. 2008) (affirming the district court's finding that imprisonment was the appropriate remedy for defendants' civil contempt and noting that defendant "holds the proverbial keys to the prison doors" and that "[h]e himself can choose to end his incarceration at any point in time, simply by

10

complying with the [government's] requests").[3] Further, the Court should order the return of the five animals that Defendants improperly disposed of and permit the United States to file an additional application for damages.[4]

If the Court were amenable, one option to avoid additional sanctions would be for Defendants to voluntarily and permanently surrender the remaining animals in their possession to the United States at which point the United States would identify proper placements for those animals.[5] Although this would not resolve the records issue, it would address the other very serious violations of the Court's orders and ensure the safety of the animals currently in Defendants' possession. In that case, the United States would withdraw our pending application for damages resulting from Defendants' noncompliance.

---

[3] Such additional sanctions are further supported by the assertions made in the motion to withdraw filed by Defendants' own attorney, in which Mr. Card argues that the Court should grant his motion to withdraw, in part, because the Lowes "persist[] in a course of action involving [his] services that [he] reasonably believes is criminal or fraudulent" and the Lowes have "used [his] services to perpetrate a crime or fraud." *See* Dkt. 102 at 1, pt. 4 ("Further, for *all reasons* enumerated by Rule 1.16(b)(1)-(6), the precise nature of which cannot be divulged upon counsel from the OBA, counsel seeks to withdraw." (emphasis added)).

[4] Upon learning that Defendants had recently (since May 18, 2021) transferred the five animals, the United States requested the immediate return of those animals. To date, Defendants have not confirmed the return of the animals or indicated the steps they are taking to ensure the prompt return of the animals. Exh. 7 (June 14-16, 2021 Email exchange).

[5] Defendants have informed the United States that a subset of animals currently in Defendants' possession are claimed by two other individuals both of whom have had their AWA licenses terminated or revoked. The United States is not currently in a position to assess the validity of those individuals' claims that they have a continued interest in the animals. However, it is the position of the United States that none of the animals should be returned to those individuals. Thus, if Defendants indicated that they were willing to surrender those animals, we would propose that the Court make an equitable finding that all of the animals be transferred to the United States.

DATED: June 18, 2021                Respectfully Submitted,

                                                                  JEAN E. WILLIAMS
                                                                   Acting Assistant Attorney General
                                                                   Environment and Natural Resources Division

                                                                  /s/ Mary Hollingsworth
                                                                  MARY HOLLINGSWORTH
                                                                  Senior Trial Attorney
                                                                  BRIENA STRIPPOLI
                                                                  Trial Attorney
                                                                  DEVON LEA FLANAGAN
                                                                  Trial Attorney
                                                                  United States Department of Justice
                                                                  Environment & Natural Resources Division
                                                                  Wildlife & Marine Resources Section
                                                                  P.O. Box 7611, Ben Franklin Station
                                                                  Washington, D.C. 20044-7611
                                                                  Briena.Strippoli@usdoj.gov | 202-598-0412
                                                                  Mary.Hollingsworth@usdoj.gov | 202-598-1043
                                                                  Devon.Flanagan@usdoj.gov | 202-305-0201
                                                                  Fax: 202-305-0275

                                                                  CHRISTOPHER J. WILSON
                                                                  Acting United States Attorney
                                                                  SUSAN BRANDON, Civil Chief
                                                                  United States Attorney's Office
                                                                  Eastern District of Oklahoma
                                                                  520 Denison Avenue
                                                                  Muskogee, OK 74401

                                                                  *Attorneys for the United States of America*