UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY LOWE, LAUREN LOWE, GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and TIGER KING, LLC,<br><br>    Defendants. | Case No. 20-cv-423-JFH |

**OPINION AND ORDER**

This matter is before the Court on the Corrected Partial Motion to Dismiss ("Dismissal Motion") filed by Defendants Jeffrey Lowe a/k/a Jeff Lowe ("Jeff Lowe"), Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC") and Tiger King, LLC (collectively referred to as "Defendants"). Dkt. No. 73. For the reasons set forth below, the motion is denied.

  **I.**  **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from alleged violations by Defendants of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA") in connection with an unlicensed exhibition facility known as Tiger King Park, in Thackerville, Oklahoma, which, at the time the Complaint was filed, housed approximately 100 to 200 ESA protected animals for the purpose of exhibiting their animals to the public ("Thackerville Facility"). *See generally* Dkt. No. 2. The United States filed its complaint on November 19, 2020, seeking declaratory and injunctive relief. *Id.* Specifically, the United States seeks an order: (1) declaring that Defendants have violated the ESA and the AWA; (2) enjoining Defendants from interfering with United States Department of Agriculture ("USDA") inspections of their

1

properties, exhibiting animals without a license and placing the animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals. *Id.* at 46-47.

On November 25, 2020, the United States filed its first motion for preliminary injunction requesting that the Court: (1) require Defendants to provide a complete and accurate inventory of the animals in their custody or control; (2) prohibit Defendants from acquiring or disposing of any animals without notice to the United States and consent of the Court; (3) require Defendants to submit complete and accurate veterinary records; and (4) authorize inspectors from the USDA's Animal and Plant Health Inspection Services ("APHIS") to conduct inspections of the Thackerville Facility. Dkt. No. 9; Dkt. No. 10 at 31-32. Subsequently, the United States filed a second motion for preliminary injunction and moved for a temporary restraining order based on a December 15, 2020 APHIS inspection. Dkt. No. 27; Dkt. No. 28 at 13-14; Dkt. No. 32.

On January 12, 2021, the Court held an evidentiary hearing on the United States' requests for a preliminary injunction and a temporary restraining order. Dkt. No. 35. Based on the arguments and evidence presented at the hearing, the Court concluded that the United States was entitled to preliminary injunctive relief. Dkt. No. 65 at 32. On January 15, 2021, the Court entered an Order requiring that Defendants (including anyone acting, directly or indirectly, through them or on their behalf): (1) immediately cease exhibiting animals protected by the ESA and the AWA without a valid USDA exhibitor's license; (2) retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40, no later than January 29, 2021; (3) provide acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020, no later than January 22, 2021; (4) submit complete and accurate veterinary records to counsel for the United States within 7 days of any animal being treated by a veterinarian; (5) submit acquisition and disposition records to counsel for the United

2

States within 7 days of any change to the animal inventory; (6) immediately relinquish all Big Cats one year old or younger, along with their respective mothers, to the United States; (7) not acquire or dispose of any ESA or AWA protected animal without first conferring with the United States and obtaining leave of Court; and (8) permit APHIS to conduct routine inspections of the Thackerville Facility up to every three weeks, at the USDA's discretion.  Dkt. No. 65 at 33-34.

On February 12, 2021, the United States filed a motion to enforce the Court's January 15, 2021 Order.  Dkt. No. 72.  The United States claimed that Defendants failed to comply with the Order by:  (1) failing to provide complete and accurate acquisition and disposition records; (2) failing to retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40; and (3) breeding animals without conferring with the United States and without leave of Court.  Dkt. No. 72 at 3-10.  Defendants did not file a response to the United States' motion.  On March 8, 2021, the United States requested that the motion to enforce be deemed confessed due to Defendants' failure to respond.  Dkt. No. 76.  On March 22, 2021, the Court entered an Order granting the United States' motion to enforce and setting a show cause hearing for May 12, 2021 for Defendants to show why they should not be found in contempt for violating the Court's January 15, 2021 Order.  Dkt. No. 78; Dkt. No. 80.

During the May 12, 2021 show cause hearing, the Court found by clear and convincing evidence that the Defendants violated the Court's Orders and civil contempt sanctions were warranted.  *See* Dkt. No. 101.  The Court ordered Defendants to be fined $1,000 per day, beginning May 12, 2021, until they came into full compliance with the requirements set forth in the Court's January 15, 2021 and March 22, 2021 Orders.  Dkt. No. 97 at 8.  The Court also invited the United States to submit an accounting of actual damages it incurred as a result of Defendants' noncompliance and noted it would consider further sanctions if Defendants did not become fully

compliant with the Orders by June 11, 2021. *Id.* On May 28, 2021, the United States filed a Motion for Costs. Dkt. No. 100. On June 18, 2021, the United States filed a Notice of Defendants' Continued Noncompliance describing the Defendants' failure to cure numerous deficiencies as well as additional violations of the Court's orders. Dkt. No. 106. The Court has set another show cause hearing for September 16, 2021 on the United States' Motion for Costs and Notice of Defendants' Continued Noncompliance. Dkt. No. 111.

On February 15, 2021, Defendants filed their Dismissal Motion. The majority of the Dismissal Motion reiterates arguments from Defendants' responses to the United States' injunction briefing. Defendants claim that: (1) the United States' AWA claim must be dismissed because the United States uses an impermissibly broad definitions of "exhibit;"[1] (2) the United States' claim that Defendants "exhibit" animals violates the First Amendment; and (3) the United States fails to state a claim against Tiger King, LLC. Dkt. No. 73. The United States responded on March 1, 2021. Dkt. No. 75.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In reviewing a motion to dismiss, the Court disregards conclusory allegations, but accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). The Court's duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary

---

[1] Although Defendants claim that the United States' definition of "exhibit" takes improperly broad liberties with the statutory definition, they also argue the statute itself is void for vagueness under the Fifth Amendment. The Court will address both arguments together.

4

to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Under the plausibility standard, dismissal for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (internal quotation marks omitted).

### III.   DISCUSSION

**A. The Government Sufficiently States a Claim for Violation of the AWA**

Defendants argue that the United States' AWA claim should be dismissed because its "definition of 'exhibitor' and 'public' is so broad it strains credulity" and "completely take[s] it out of the realm of what Congress intended." Dkt. No. 73 at 3, 10. Defendants' arguments fail for the same reasons discussed in the Court's January 15, 2021 order.

Under the AWA, the term "exhibitor" means "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary." 7 U.S.C. § 2132(h). The term includes "carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not." *Id.* Here, Defendants argue that they do not fall within the statutory definition of "exhibitor" because they have not operated "a public or private brick-and-mortar location which intentionally invites the general public in to view animals" since August 2020. Dkt. No. 73 at 8. Defendants also argue that certain of their activities—including allowing the animals to be filmed for a Netflix® documentary series, posting videos of the animals through the paid subscription services Cameo and OnlyFans, advertising a zoo currently under construction, and allowing friends to visit and play with the animals—do not constitute "exhibiting" for purposes of the AWA. *Id.* at 4-6. The Court does not agree.

Under the AWA, "exhibitor" means "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary." 7 U.S.C. § 2132(h). The term includes: "carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not." *Id.* In interpreting the term "exhibitor" as set forth in the AWA, the Court will look to the USDA's construction of the term absent compelling indications that it is incorrect. *See N.L.R.B. v. Hendricks Cty. Rural Elec. Membership Corp.*, 454 U.S. 170, 177 (1981) ("[T]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially where Congress has refused to alter the administrative construction."); *Webb v. Hodel*, 878 F.2d 1252, 1255 (10th Cir. 1989) ("The court is required to give substantial weight to the interpretation made by the agency which is charged with the statute's administration. We are obligated to regard as controlling a reasonable, consistently applied interpretation of the government.").

The USDA has determined that a person acts as an exhibitor "simply by making animals available to the public." *In re Lloyd A. Good, Jr.*, 49 Agric. Dec. 156, 174 (1990). For over three decades, the USDA has relied upon this interpretation to apply the AWA to fixed-site, intra-state exhibitors like Tiger King Park. *See 907 Whitehead St., Inc. v. Sec'y of U.S. Dep't of Agric.*, 701 F.3d 1345, 1350 (11th Cir. 2012); *see, e.g.*, *In re Peter Gronbeck*, AWA Docket No. 05-0018. This Court has no indication that this interpretation is unreasonable or incorrect and will therefore afford it deference.[2]

---

[2] Defendants also claim the AWA's definition of "exhibit" is void for vagueness. Dkt. No. 73 at 12-14. The Court first notes that Defendants' argument that "no reasonable person in the Lowes['] shoes could have realistically assumed [their] actions . . . constitute[d] 'exhibiting' to the 'public'" [*id.* at 13] while admitting they allowed, among other things, filming of animals for the sequel of a miniseries "watched by some 34 million people" [*id.* at 4] defies both logic and common sense.

Defendants' own briefing highlights multiple occasions where Defendants have made animals available to the public. Defendants admit that: (1) they have allowed filming of the animals for the Netflix® documentary series Tiger King 2 [Dkt. No. 73 at 4]; (2) they have performed "shout out" videos which show animals through the video platform Cameo [Dkt. No. 73 at 4]; (3) Defendant Lauren Lowe has posted photographs or videos of herself with animals on the paid subscription service OnlyFans, including a photograph with a tiger cub taken in 2015 but posted after Defendant Jeff Lowe terminated his AWA license [Dkt. No. 73 at 5]; they operate a website promoting the opening of Tiger King Park sometime in 2021 [Dkt. No. 73 at 5-6]; and they have allowed individuals who do not reside on the premises to view animals residing on Defendants' property [Dkt. No. 73 at 6]. Defendants attempt to minimize these activities, claiming variously that animals were "shown on camera for context" in Tiger King 2; that the animals are "tangential at best even when they can briefly be seen" in Mrs. Lowe's OnlyFans content; that their zoo is equivalent to a car chassis on an assembly line without wheels or engine; and that members of the public viewed animals only as part of a Christmas party. Dkt. No. 73 at 4-6. The Court rejects these characterizations and instead agrees with the United States that "the animals in [Defendants'] possession[,] . . . as illustrated by Defendants' own statements, continue to be intended for exhibition purposes." Dkt. No. 75 at 16. Each instance described by Defendants involves them making animals available to the public. The Court concludes that these undisputed activities—along with the rest of the allegations in the United States' Complaint—more than meet the plausibility standard required at the motion to dismiss stage regarding "exhibition" as contemplated by the AWA and applied by the Secretary.

---

In any case, a regulation is vague if "it is unclear as to what fact must be proved." *F.C.C. v. Fox Tele. Stations, Inc.*, 567 U.S. 239, 253 (2012). The definition of exhibition as "making animals available to the public" is not unclear, as the USDA's decades-long reliance on it bears out.

7

Additionally, to the extent that Defendants argue that Tiger King Park is not a "zoo" because it is not yet open to the public, the Court disagrees. The AWA defines a "zoo" as "any park, building, cage, enclosure, or other structure or premise in which a live animal or animals are kept for public exhibition or viewing, regardless of compensation." 9 C.F.R. § 1.1. There is no dispute, based on the Lowes' public representations that they intend to open Tiger King Park to the public in 2021, that the animals currently housed at the facility are kept for the purpose of public exhibition, regardless of whether such exhibition is currently taking place or to take place in the near future. Thus, even though Tiger King Park may not yet be completely open to the public, it is a "zoo" for purposes of the AWA and Defendants are therefore exhibitors, subject to the AWA's provisions. This conclusion reflects Congress' stated intent in promulgating the AWA, which was to "insure that animals intended … for exhibition purposes … are provided humane care and treatment". 7 U.S.C. § 2131. *See Gallegos v. Lyng*, 891 F.2d 788, 797 (10th Cir. 1989) ("A statute must be interpreted to effect its evident purpose, and to be consistent with evidenced congressional intent." (internal quotation marks and citations omitted)). The Court is not persuaded that Defendants have ceased their zoo operation merely because they have not operated "a public or private brick-and-mortar location which intentionally invites the general public in to view animals" since August 2020. Dkt. No. 73 at 8. Again, the plausibility standard is more than satisfied.

**B. The Government's AWA Claim Does Not Violate the First Amendment**

Defendants next claim that their exhibition activities are protected by the First Amendment and that any curtailing of these activities under the AWA infringes on their constitutional right to free speech. Dkt. No. 73 at 10-12. The Court disagrees.

8

1. **The AWA is Content-Neutral**

To determine the proper level of scrutiny to apply to Defendants' constitutional challenge, the Court must determine whether the AWA is content-based or content-neutral.[3] "The primary inquiry 'is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'" *Golan v. Holder*, 609 F.3d 1076, 1083 (10th Cir. 2010) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). If a "regulation serves purposes unrelated to the content of expression it is considered neutral, even if it has an incidental effect on some speakers or messages but not others." *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 686 (10th Cir. 1998). Conversely, "[g]overnment regulation of speech is content[-]based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Content-based regulation includes two types of laws: those that are facially content-specific and those that, while facially content-neutral, "cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys." *Id.* (quotations and citation omitted). "In determining whether a regulation is content-neutral or content-based, the government's purpose in enacting the regulation is the controlling consideration." *Golan*, 609 F.3d at 1083 (quotation omitted).

Congress's stated purpose in enacting the AWA was, in pertinent part, to "insure that animals intended . . . for exhibition purposes . . . are provided humane care and treatment." 7 U.S.C. § 2131(1). "*[T]he AWA is sharply focused on the 'humane treatment' of captive animals

---

[3] Defendants argue that their speech is commercial speech. Assuming without deciding it is, the Court notes that commercial speech is reviewed under the same intermediate level of scrutiny as content-neutral speech. *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1237 (10th Cir. 2004) (citations omitted).

*used for exhibition . . . .* Indeed, the terminology 'humane treatment' is employed repeatedly in no fewer than five different sections in the statutory scheme, and it is the overriding concern reflected in the implementing regulations." *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1352 (S.D. Fla. 2016) (citing 7 U.S.C. §§ 2131 *et seq.*; 9 C.F.R. Ch. 1, Subch. A., Pt. 3, Subprt. E) (emphasis added). Because the AWA is sharply focused on animal welfare and treatment, it serves purposes unrelated to the content of Defendants' expression. The AWA is content-neutral.

### 2. The AWA Withstands Intermediate Scrutiny

A content-neutral regulation of speech receives intermediate scrutiny. *Golan*, 609 F.3d at 1083. Under this test, "a content-neutral statute 'will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) ("*Turner II*")).[4]

First, the AWA advances a substantial or important government interest unrelated to the suppression of free speech. Defendants concede that the United States' "interest in protecting

---

[4] As mentioned *supra* n.3, commercial speech is also reviewed under intermediate scrutiny, although the phrasing of its test is slightly different:

> First, the government must assert a substantial interest to be achieved by the regulation. Second, the regulation must directly advance that governmental interest, meaning that it must do more than provide "only ineffective or remote support for the government's purpose." Third, although the regulation need not be the least restrictive measure available, it must be narrowly tailored not to restrict more speech than necessary. Together, these final two factors require that there be a reasonable fit between the government's objectives and the means it chooses to accomplish those ends.

*Mainstream Mktg.*, 358 F.3d at 1237.

animals [] is 'substantial.'" Dkt. No. 73 at 11. As discussed *supra*, the AWA is sharply focused on the humane treatment of captive animals. "[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies." *United States v. Stevens*, 559 U.S. 460, 469 (2010). When it amended the AWA to include exhibitors, the Legislature stated that the amendments represented "a continuing commitment by Congress to the ethic of kindness to [] animals." H.R. Rep. No. 91-1651 (1970). The AWA itself contains language that Congress "finds that it is *essential* to regulate . . . the transportation, purchase, sale, housing, care, handling, and treatment of animals . . . by persons or organizations engaged in using them . . . for exhibition purposes." 7 U.S.C. § 2131 (emphasis added). This is a substantial government interest unrelated to the exercise of free speech.

Next, the AWA has a reasonable fit of objectives and means which does not burden substantially more speech than necessary. The AWA's objectives include standards for "humane handling, care, treatment, and transportation of animals." 7 U.S.C. § 2143. The means it employs, including licensure standards for exhibitors, are narrowly tailored to directly advance these goals of humane handling. Any incidental burdens imposed on speech are congruent with or outweighed by the benefits afforded.

The First Circuit recently affirmed rejection of a similar argument that the AWA's prohibition against cockfighting was unconstitutional where plaintiffs "failed to identify any expressive element in the cockfighting activities," *Hernández-Gotay v. United States*, 985 F.3d 71, 80 (1st Cir. 2021). The court noted that even if plaintiffs had shown "some expressive element, [the AWA] is plainly permissible as an incidental restraint on such speech." *Id.* So too here. Defendants have wholly failed to identify any expressive element in their exhibition of animals. The limits Defendants protest regarding the circumstances where they may show their animals are

at most an incidental burden resulting from the AWA's licensure requirement, which is designed to ensure animals meant for exhibition purposes are treated humanely. The AWA survives intermediate scrutiny. The United States' AWA claim does not infringe on Defendants' First Amendment rights.

### C. The Government Sufficiently States a Claim against Tiger King LLC

Defendants argue the United States' Complaint "barely mention[s]" Defendant Tiger King, LLC. Dkt. No. 73 at 15. As the United States notes in its response [Dkt. No. 75 at 24], the Complaint collectively refers to all four Defendants: Jeff Lowe; Lauren Lowe; GWEAP, LLC; and Tiger King, LLC. Dkt. No. 2. at ¶ 1.[5] Allegations brought collectively against all four Defendants include, for illustration and without limitation:

- To avoid federal investigation and inspection, Defendants have unlawfully established an unlicensed exhibition facility on an approximately 33-acre parcel of land in Thackerville, Oklahoma. Dkt. No. 2 at ¶ 3.

- Neither Jeffrey Lowe nor the other Defendants currently have a valid USDA Class C exhibitor license. Nevertheless, Defendants continue to exhibit animals to members of the public without a USDA exhibitor license in violation of the AWA. *Id.* at ¶ 23.

- Defendants' actions placed and are continuing to place the health of numerous animals in serious danger . . . . *Id.* at ¶ 24.

- Defendants continue to exhibit animals to members of the public without a USDA exhibitor license. *Id.* at ¶ 88.

- Upon information and belief, Defendants have been exhibiting their animals to a film crew as recently as October 2020. *Id.* at ¶ 89.

- Upon information and belief, Defendants have exhibited at least one tiger—Thor—to members of the public through an online platform called Cameo for compensation. *Id.* at ¶ 93.

---

[5] As the United States also notes, Defendants failed to comply with LCvR 7.1(o) requiring all motions to dismiss to include a section explaining why amendment would be futile.

- Upon information and belief, Defendants do not have adequate financial resources to provide proper care, including veterinary care, to the animals in their possession without exhibiting them for compensation. *Id.* at ¶ 94.

- Defendants' animals have suffered from easily preventable or treatable conditions, which frequently have caused their untimely death. Many of Defendants' other animals have not been seen by a veterinarian at all in the last two years. *Id.* at ¶ 96.

- Defendants have placed the health of their animals in "serious danger" by failing to employ an attending veterinarian and by providing their animals with substandard care. *Id.* at ¶ 170.

Additionally, the Complaint alleges that signage for Tiger King Park is posted at Tiger King, LLC's principal place of business and that Tiger King, LLC uses the trade name "Tiger King Park." *Id.* at ¶¶ 34, 35. These allegations, taken as true for purposes of this motion, are plausible and sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theories proposed by the United States.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Corrected Partial Motion to Dismiss [Dkt. No. 73] is **DENIED**.

Dated this 26th day of July 2021.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE