# EXHIBIT 8 –

# *Leo v. Lowe,* Leo's Motion for Judicial Disqualification or Recusal

IN THE DISTRICT COURT FOR THE COUNTY OF GARVIN

STATE OF OKLAHOMA

STATE OF OKLAHOMA
GARVIN COUNTY } SS,

FILED
MAY - 5 2021
AT 1:51 O'CLOCK M
LAURA LEE, Court Clerk
BY_____ DEPUTY

|  |  |
|---|---|
| CARRIE M. LEO,<br>                    Plaintiff,<br><br>vs.<br><br>JEFFREY L. LOWE and<br>LAUREN F. LOWE,<br>                    Defendants. | Case No.: CJ-19-89<br><br>**Motion for Recusal.**<br><br>**Case Filing Date:**  June 11, 2019 |

## MOTION FOR JUDICIAL DISQUALIFICATION OR RECUSAL

**COMES NOW** the above-named, Carrie M. Leo, Plaintiff herein, and moves to recuse Judge LEAH EDWARDS from the above-entitled matter.

A separate statement of facts accompanies this document and includes the entire procedural posture of the case at bar.

### PRELIMINARY STATEMENT

The Plaintiff submits this memorandum in support of the disqualification of Judge Leah Edwards in the aforementioned case identified with cause no. 2019-00089.  This request has resulted from a sharp noticeable difference in the treatment of the plaintiff and her interests by the court primarily marked by both the defense attorney, Robert Rennie, and Judge Edwards misrepresenting the status of property which is the core of the pending suit.

The plaintiff is also aware of both written and verbal statements circulating secretly to which everyone, but the plaintiff is privy.  As a result, such misinformation, and false allegations, not supported by any evidence, has drastically hurt the plaintiff in every one of her lawsuits.  There is a dedicated effort in keeping the plaintiff's property from her by way of unlawful seizure as well as preventing her from prevailing in any of the cases at bar. Judge Edwards, unfortunately, appears to have willingly and abruptly joined the effort in ensuring the plaintiff's defeat in both the case in Garvin County over which she presides but possibly the case in Love County which was recently filed by the plaintiff in February 2021 in order to attain an order for the search of the defendants' facility by Love County officials.

The plaintiff is vying for the recusal of the judge from the case at bar since she has dedicated herself to an outside agenda detrimental to the plaintiff's interests and rights. By refusing to disclose external influences upon the case, the judge has already essentially conducted part of the trial in secret in which the plaintiff has already been made guilty. This is the reason for laws which the court and defense counsel are not following, which protect the rights of both parties in an action, such as the Fourteenth Amendment. However, the court seems to use the law when it's convenient and helpful for the court in controlling the actions of the plaintiff yet continues to violate rules and laws which protect the plaintiff from unfair treatment.

## STATUTORY and PROCEDURAL BACKGROUND

In submitting this complaint for consideration, the plaintiff relies upon the venue provided by both federal and state statutory law; more specifically, Article II of the United States Constitution, Article VII-A of the Oklahoma Constitution, the *Code of Judicial Conduct*, 5 O.S.2001, app.4, Canons 1-3, *Code of Professional Responsibility* and State Statutes 20 O.S.2001 § 1401, **1403** and 1404. Procedural mandates incorporating the disqualification of a trial judge are located in State Rule 15.

Timeliness of an action to disqualify a trial judge is defined by the submission of a request to the judge of voluntary disqualification no later than three days before trial. See *Holloway v. Hall*, 192 P. 219 (Okla. 1920) The trial has been scheduled for May 7, 2021 and this motion is dated April 30, 2021 and thus has been submitted to the court within the allowable timeframe three days before trial; that is, by May 4, 2021.

The aforementioned mandates direct the process for disqualification of judges. Oklahoma law dictates a four-step process for seeking the disqualification of a trial court judge. See OKLA. STAT. TIT. 20, § 1403; OKLA. DIST. CT. R. 15. See also *HCA Health Services of Oklahoma, Inc., v. Shinn, 558, US 1012-Supreme Court 2009.*

- The movant must have made an informal request for recusal.
- With Judge Edwards refusing to voluntarily recuse herself from the matter, the movant is required to file a formal motion for recusal, such as this request herein.
- If the judge denies the motion for recusal, the movant is required to represent the formal request to the chief judge of the county in which the case at bar is pending; that is, Garvin County.

- If the chief judge denies relief to the movant, then the aggrieved party may file a mandamus petition in Oklahoma Supreme Court. See *Pierce v. Pierce*, 39 P.3d 791, 794 (Okla. 2001) ("¶ 4 *On appeal the Court of Civil Appeals determined that a trial judge's error in not certifying his or her disqualification should be reviewed first in the trial court pursuant to District Court Rule 15, and then by the Supreme Court on an application for mandamus.*").

- The plaintiff sent Judge Edwards an informal request for self-recusal via a mailed letter to the court dated February 25, 2021.

- A true and accurate copy of the letter sent to the judge requesting her voluntary recusal is available in Exhibit 1.

- Primarily, this complaint puts forth the plaintiff's allegations of violations detrimentally affecting the plaintiff by way of state statute 20 O.S. § 1401(A) since the Court has a new-founded interest external to the case for which it now serves and has been put above the adherence by the court to its own rules as well as the due process right of the plaintiff. Thus dedication to such an agenda poses a conflict of interests for the court.

- In its order filed on March 22, 2021, the court stated it will not voluntarily recuse itself from presiding over the case at bar. A true and accurate copy of the order is located in Exhibit 2.

- Hence the plaintiff is now required to file a request in accordance with 20 Okla. Stat. § 1403(A).

## ARGUMENTS FOR RECUSAL

- According to the *OBA Standards of Professionalism*, professionalism for lawyers and judges request honesty, integrity, competence, civility, and public service.

- The website for the Oklahoma Council on Judicial Complaints ("OCJC") states:

> "*Justice requires that the administration of our laws and Courts must meet the highest standards of independence, integrity, and impartiality. Our State Constitution, Statutes, Court Opinions and Court Rules have established rules of judicial conduct, competence, procedure, and demeanor designed to promote adherence to and public confidence in those standards.*"

- The following arguments in favor of the recusal of Judge Edwards are presented utilizing the "three I's" of the OCJC; that is, independence, integrity, and impartiality.

# I

## INDEPENDENCE[1]

- Judges are expected to disqualify themselves where they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts[2] concerning the proceeding;
  - represented by conduct in which a judge acts as a lawyer in the proceeding;
  - is known to have an interest in the outcome of the proceeding;
  - acquiring information, opinions, advice, etc. from external sources. 5 O.S. Supp. 2000, Ch.1, App. 4, *Code of Judicial Conduct*, Canon 3(E)(1).

- An independent judiciary requires that judges decide cases according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public, the media, government officials, or the judge's friends or family.

- Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences.

Given Judge Edwards is clearly adhering to an outside agenda far from the control of law and facts, it appears there is no possibility the judge can distance herself from the motives of the outsider enough to fairly preside over any proceeding involving the plaintiff. Even though there may be occasions in which a judge may confer with external parties, such is required to be disclosed to both parties to the action. The plaintiff requested disclosure on several occasions, specifically on February 1, 2021, February 23, 2021, and March 8, 2021, (See ¶ 43 *Statement of Facts*) which were denied by the judge which resulted in the violation of the plaintiff's right to be heard.

---

[1] "*Independence*" means a judge's freedom from influence or controls other than those established by law. See Canons 1 and 4, and Rules 1.2, 2.7, 2.10, 3.1, 3.2, 3.4, 3.7, 3.12, 3.13, 3.14, 4.1, and 4.2.   source:   https://scholar.google.com/ scholar_case?case=14197775512495513543&q=judge+violation+Rule+2.9(A)(b)+&hl=en&as_sdt=4,223,224,226.

[2] *In re Application of Oklahoma Bar Association*, 2006 OK 2 (Okla. 2006) and *In re Oklahoma Code of Judicial Conduct*, 285, P.3d 1080 (Okla. 2010).

The judge is shirking her duty to disclose information to the plaintiff,[3] as the only party involved in the proceeding who does not know, according to Rule 2.9(A)(b) which states:

> *"A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except [if] the judge makes a provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond."*

The proscription against communications concerning a proceeding includes communications with lawyers and other persons who are not participants in the proceeding, except to the limited extent permitted by the Rule.  See *Fox v. CROWGEY*, 346 P. 3d 425 - Okla. Court of Civil Appeals, 2nd Div. 2014.

Rule 2.9 does provide exceptions to its prohibition of ex parté communications generally. However the communication in which Judge Edwards participated is not likely to be covered by any one of these exemptions.   For instance, because the result of the communication was the deprivation of the plaintiff's rights by the court, the communication is not exempt because a party, the defendants, gained a procedural, substantive, or tactical advantage as a result of the ex parté communication as indicated in 2.9(A)(1)(a).   Nor can it be claimed to have satisfied the requirement in 2.9.(A)(1)(b) which requires prompt notification to all parties of the substance of the ex parte communication nor did she give the opportunity for the plaintiff to respond.  Thus the plaintiff's right to be heard has been violated as well as 5 O.S. § Rule 2.6.  (See *In RE: Oklahoma Code of Judicial Conduct*, OK 90, 2010.)  This was evident when the court railroaded the plaintiff from two hearings which had been scheduled remotely. (See ¶ 82 in the accompanying *Statement of Facts.)*

In addition, the plaintiff has had more than one request for a pre-trial hearing denied by the judge after the plaintiff had been shut out of the two which were scheduled.  A request for an evidentiary hearing, although appropriate under the circumstances, was also denied by Judge Edwards. (¶ 83-4, *Statement of Facts*),  No other exemptions listed in the rule apply either.

In violation of this rule, the judge has deliberately engaged in communication with outside influencers who, due to their ties with specific members of government agencies, are

---

[3] See *In re Amendments to Okla. Supreme Court Rules,* 2013 OK 67, 0 (Okla. 2013) (*"A conference judge shall disclose any circumstance that may appear to affect impartiality."*).  See also *In re Judl. Ethics,* 162 P.3d 986, 987 (Okla. 2007) (*"However circumstances may arise when the Judge is required to make disclosure to adverse counsel."*)

using such credibility to falsify information and accounts involving the plaintiff. Some examples of these are

- the plaintiff's animals were confiscated by authorities when, in truth, they were boarded with private facilities on her own accord.

- the plaintiff is not allowed to possess any animals indefinitely which not only is untrue, but the authorities involved have absolutely no authority whatsoever to impose such an extreme rule, especially when there is no evidence of any of the allegations they have made against the plaintiff. If such an order existed lawfully, it would be an injunction - a written order as a result of a procedure which would have to be followed. It is a violation of the plaintiff's right to due process to suddenly decide someone cannot have animals.

- The helpers of the government agencies which are covertly influencing the case at bar have also passed around pictures, articles and statements regarding another person's facility which was raided by the local SPCA in early December 2016. The circulation of this story was accompanied with a false accusation that the facility was that of the plaintiff and she was the one who was charged with animal cruelty because she starved animals. Again, this is an outrageous story and completely untrue. The facility belonged to another person and was at least a two-hour drive from the plaintiff's actual facility in Walworth, NY. Furthermore, the plaintiff had no animals there which died from starvation.

- Last, these individuals want others to believe the plaintiff was not licensed for the animals she had before she put them in private facilities temporarily for boarding. In fact, not only was the plaintiff licensed to have every animal in her possession if they required licensing for exhibition at the time, but the wrongful detainment of the plaintiff's animals began (under the influence of the DEC and USDA) before her licensing ended - both state licensing and federal. Her state licensing had 1 ½ years to go after the unlawful detainment of her animals would have been legal (although a licensee is given ninety days to rehome the animals if they need to be transferred) and she had a federal license until last month.

- The plaintiff has convincing evidence which can prove these statements, and other lies spread around by these influencers are not true at all. This is why the influencers do not want the plaintiff to have a copy of any of their circulating statements nor do they want to confront her in a forum in which she has a voice since they will be proven wrong in their accusations.

- It is disturbing that the court is disinterested in hearing the plaintiff dispel such horrendous rumors which have been started by individuals external to the case for the sole purpose to ensure her failure. Judges are charged with the responsibility to prevent such interference so neither party is prejudiced. Instead Judge Edwards seems to have done the opposite. *In re Oklahoma Code of Judicial Code of Judicial Conduct*, 285 P.3d 1080, 1088(Okla. 2010) ("*To ensure that judges are available to fulfill their judicial duties, judges must conduct their personal and extrajudicial activities to minimize the risk of conflicts that would result in frequent disqualification*"). The information influencing the court and yet not disclosed to the plaintiff is considered extrajudicial in nature, if not a personal prejudice.

It appears the judge has not thought that perhaps the statements heard about the plaintiff from the court's outside influencers are false and made out of bad faith. For some of us, the mere fact that information is passed around with the utmost secrecy would be enough to question its validity, not to mention how many times the plaintiff has been denied knowledge of the information. If a person speaks the truth and has good intentions behind her or his actions, there is nothing to hide. Judges have a duty to disclose any information which may be seen as relevant by the parties involving the case in which they are a party. See *In re Judicial Ethics Opinion 2009-3*, 228 P.3d 547, 548 (Okla. 2009).[4] See also *Boland v. Boland (In re Estate of Boland)*, 397 Mont. 319, 328 (Mont. 2019)[5]

The same is true for judges who investigate aspects of a pending case over which they are presiding outside of the information they receive on the record, such as on the internet or social media. All facts related to a case should only be learned internally to the case and should be on the public record so all know them. *"Such investigation, of course, would undermine public confidence in the judiciary and hinder, if not disrupt, the judicial process — all to the detriment of the fair administration of justice."* See *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995).

This has resulted in the misrepresentation of facts to the plaintiff (a scheme involving the defense counsel) which, in turn, has virtually resulted in the unlawful detainment of the plaintiff's personal property. (See *Statement of Facts* ¶ 22, 29)   Not only are the court's actions involving the plaintiff prejudicial, but they represent a fundamental error in the interpretation of the law and applicability of ethical standards in the case at bar. As a result, Judge Edwards has incurred an abuse of discretion in her treatment of the plaintiff.

## II.

### INTEGRITY[6]

*In re Oklahoma Code of Judicial Conduct*, 285 P.3d 1080, 1081 (Okla. 2010), it is stated *"Judges should maintain the dignity of judicial office at all times and avoid both impropriety and the appearance of impropriety in their professional and personal lives."*

---

[4] "¶ 10 We reiterate that Pierce teaches that the judge should disclose to the parties an on the record any information which the judge believes the parties or their attorneys might consider relevant to the question of disqualification, and if asked to recuse, act in accordance with District Court Rules regarding the same."

[5] *"Judge Pinski explained that a judge has an 'affirmative obligation' under the rules of judicial conduct, requiring judges to make disclosures when there is something to disclose."*

[6] *"Integrity"* means probity, fairness, honesty, uprightness, and soundness of character. See Canon 1 and 4, and Rules 1.2, 2.7, 2.10, 2.16, 3.1, 3.2, 3.6, 3.7, 3.12, 3.13, 3.14, 4.1, and 4.2.   source: https://law.justia.com/cases/oklahoma/supreme-court/2010/461550.html.

However, the issues identified by the plaintiff have gone well beyond the mere appearance e of impropriety.

On December 3, 2021, the plaintiff received an email from the defense counsel stating the plaintiff's animals are not possessed by the defendants and never were. (See ¶21,37 and 42 in the accompanying *Statement of Facts*.) This is not true since the animals belonging to the plaintiff have been carefully tracked on USDA Live Inventory sheets included in the defendants' licensing inspection reports. Last November, a federal judge started requiring additional inspections by the USDA starting in December 2020 during which the plaintiff's animals were still listed as residents of the facility as late as February 2021. True and accurate copies of the inspection reports are included in filings such as the *Motion to Renew Petition of Replevin* filed on April 23, 2021.

When the December, January and February inspection reports became available to the public, they proved the animals were still in possession of the defendants, the court ignored any statement the plaintiff made and did not act on it. This makes the court appear to have been involved in "hiding" of the plaintiff's animals collaborating with the defense. This conduct is an exceptional betrayal to the public and makes her feel she can never trust the judge again.

Along with being shut out of two scheduled meetings presumably by the manipulation of the remote application's participation link by the court, there are problems with discovery which also indicate the court is acting in favor of the defense and a different agenda than the one with which she's been charged to impose.

Another hindrance to the plaintiff in the case at bar is the fact that the plaintiff has noticed significant resistance from both the defense and the judge in allowing her opportunities to conduct discovery. (See p. 7-8 in the accompanying *Statement of Facts*) The hindrance experienced by the plaintiff in the discovery phase of the case has escalated to the point where the case is now at a standstill for her.

Mr. Rennie, defense counsel, was served the first set of combined discovery requests from the plaintiff on or around November 20, 2020. A certificate of service was sent for filing with the court on or around November 20 as well.

When Mr. Rennie failed to heed the thirty-day deadline in providing answers to the plaintiff's requests nor did he seek an extension of the deadline, the plaintiff filed a *Motion to Compel* Discovery on January 2, 2021. Defense counsel never communicated with plaintiff

concerning whether he was or wasn't going to send responses to her requests, either before or after the motion to compel was filed.

The judge alleviated any responsibility the defense had with responding to the plaintiff. In her order issued on January 19, 2021 she claimed

> "Plaintiff's Motion to Compel Discovery is not ripe for hearing. Adequate response time has not lapsed for Defendants to respond. Once either: "(1.) the response time has elapsed with no response filed; or (2.) a response is filed and provided to the Court, the Court will rule on the pleadings without further argument pursuant to District Court Rule 4."

The judge never specified what part of Rule 4 to which she refers. Since it is a lengthy rule, it would be most appropriate to do so especially since there is no timeframe established by the court in regard to the period of time the defense had to respond to the discovery requests. In referring to the rule, it appears, a motion to compel or the timeframe within which a party is mandated to respond to discovery requests is not even mentioned in the list of motions included in, thus addressed by, the rule.

12 O.S. § 3233, however, contradicts the judge's assertion that plaintiff's motion of compel isn't ripe since it allegedly did not give the defense enough time to respond to the interrogatories as well as other requests for discovery. In fact, the statute specifies:

> "The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections, if any, within thirty (30) days after the service of the interrogatories."

Motions to compel are also mentioned in the same statute:

> "The party submitting the interrogatories may move for an order under subsection A of Section 3237 of this title with respect to any objection to or other failure to answer an interrogatory.

Therefore, the defense was non-compliant with the law when failing to return responses to the plaintiff's discovery requests within thirty days, as was the court. It wasn't until her order of March 22, 2021 when the judge finally mandated the defense to respond to the plaintiff's discovery requests sent to the defendants over four months prior. It wasn't until April 1, 2021 when the plaintiff received the responses for which she waited months.

The responses given by the defense were evasive and conspicuously dismissive. Each entailed dishonesty or an objection. Each and every question was pertinent to the subject matter of the case at bar and should be answered in their entirety - that is, the way the plaintiff did for the interrogatories sent to her by Mr. Rennie in October 2020.

Also included in the judge's March 22 order was the command for the defense to file the responses with the court which will, in turn, publish them online for public view. This is not customary in cases since discovery questions and especially the responses are held confidential from the public.

The plaintiff suspects the judge had reviewed the responses first to make sure no useful information was contained within them for the plaintiff to use to her advantage. Thus, the judge may be acting like an advisor or additional counsel for the defense. At this point, the defense had two counsel advocating, through any means necessary, for the defendants whereas the plaintiff has no counsel.

Further dishonesty occurred when the judge stated in her January 19, 2021 order, anxious to end the case, that the **parties** requested a trial.  Neither party requested a trial - especially not the plaintiff since she was being held back from conducting discovery.

Moreover, Judge Edwards admitted in her order issued on February 23, 2021 how she took it upon herself (and against the will of the plaintiff),  to amend the plaintiff's motion for a subpoena deuces tecum to include a request the witness participate remotely for the trial.

A true and correct copy of the February 23, 2021 Order is attached as Exhibit 3.

Given the court's "mishaps" with allowing the plaintiff access to hearings in the recent past, the plaintiff is not comfortable with this arrangement, nor is it necessary.  It is now known why Judge Edwards wants to include a witness for the plaintiff remotely when he's likely to be within driving distance of the courthouse whereas the plaintiff is required to appear in person.

Without full discovery capability and secrets being withheld from her (which are affecting the case and undoubtedly the result of the trial as well), the plaintiff simply cannot continue on in the case until the external influence is eradicated and full disclosure is made allowing her to continue with discovery.

It seems as though Judge Edwards choses which rules and laws by which she and the defense abides.  This handicaps the plaintiff while favoring the interests of the defendant. Either Judge Edwards follows the law, or she doesn't.  Her arbitrary use of the laws and rules while ignoring the canons of ethics, the judicial oath to which she swore, and the plaintiff's constitutional rights are deliberate and are causing irreversible prejudice  and irreparable harm to the plaintiff.  It is impossible to respect a judge or any authority if their conduct suggests they are above the law and basic standards of honesty.

The judge's and defense's refusal to disclose the external source which had influenced both of them deprives the plaintiff of her basic fundamental right to see her accusers and

respond in the like. Therefore, this case simply cannot progress and thus is in a standstill until there are no more secrets, disclosure is made, and the plaintiff can be assured a fair jury trial will ensue.

This secret and unlawful court activity strikes right to the heart of our standards for a fair and open trial process. An anti-corruption advocate, Donald Best, says it best when he so aptly stated:

> *Secret evidence is prohibited in our courts. Persons before the court have a right to see, examine and challenge all evidence considered by the court and to do so in public. This standard goes back over eight hundred years to the Magna Carta and is what differentiates English-based judicial practice from so many other countries and cultures. Thus in the British, American, and Canadian courts, jury members and judges are not supposed to do independent research into the cases they are considering. This is to ensure that all the evidence the court or jury members consider is on the record and in public so the prosecution and defense are aware of the evidence, can test it for accuracy and make submissions as to its value and interpretation in the case.*
>
> *If the judge or jury members consider evidence that nobody else is aware of, they are conducting a portion of the trial in secret. The issue of no secret evidence in the courts is so important to justice and fair trials that in the United States and Britain jury members are regularly jailed for violating this prohibition. Recently in Canada two lengthy criminal proceedings were declared mistrial when jurors were caught independently researching the case. Jurors are usually caught when another member of the jury finds out and alerts the court staff. As one can imagine though, catching judges secretly investigating cases is exponentially more difficult . . . . .*

-   2018 Award Acceptance Speech

## Other Concerns:

- The right to jury trial is guaranteed by Article 2, Section 19 of the Oklahoma State Constitution.
- The accuracy of recitation of the laws in court is imperative for justice to be properly administered. In *Taliaferro*, 2006 OK 96, 154 P.3d at 1247-1248,[7] it is stated although trial courts are not required to frame the issues, they are required to state the law correctly. Although this holding was stated in the course of the court's communication with the jury, it is also applicable to any situation in which the court is involved, including when granting or denying motions, such as plaintiff's *Motion to Compel* in the case at bar.

<strong>III.</strong>

---

[7] https://scholar.google.com/scholar_case?case=87815146957054791 9&q=judge+violation+Rule+2.9(A)&hl=en&as_sdt=4,223,224,226

## IMPARTIALITY[8]

First and foremost, the court has acquired significant prejudice against the plaintiff and her interests in this case.   To this day, both the court and the defense refuse to disclose documents and/or individuals responsible for negatively influencing the case at bar.   It's difficult enough for the plaintiff to be forced to represent herself in this matter, then to experience open hostility, procedural abuses, and deliberate misconduct by members in the legal profession that has come to value winning at any cost, gives her little, if any, chance for fair process.

The judge has become invested in the outcome of this case and thus has created a conflict of interest.   She is invested in that she no longer operates according to the rules in every instance and has predetermined the result of the case in favor of the defendants.   There is no more independence of thought or decision on her part anymore.

Conflict of interest undermines the profession's credibility and the public trust. It is unacceptable by any modern standards and cannot be resolved without independent review of her actions ensuring professional and unbiased investigation and to lay charges where appropriate. Her conduct is simply indefensible since she has betrayed the public trust.

* * * * * * * * * *

It has become unfortunately clear to the plaintiff, through her experiences over the past four years in courts located throughout three different states, that the rules of litigation, rules of normal court procedure and the rule of law are not applied equally to self-represented persons especially when the judges are caught red-handed committing misconduct and operating in a questionable manner - conduct which wins over honor, integrity, duty to the public trust and the rule of law.  As Mr. Best also expressed:

> *Unlike police officers, lawyers don't generally commit crimes in the street while surrounded by surveillance cameras and citizens wielding mobile phones. Lawyer misconduct is often done in back rooms with a signature a few words a wink and a nod that betray a small client in favor of a big spending long term corporate client, or in the courts where self-represented persons are deliberately steamrolled with a tsunami of tactical motions, aggressive summary judgment applications and abuses of process that would not be attempted or tolerated if the person were able to hire a lawyer. Many of these abuses against self-represented persons are tolerated and accepted by the courts.*

---

[8] *"Impartial," "impartiality,"* and *"impartially"* mean absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge. See Canons 1, 2, and 4, and Rules 1.2, 2.2, 2.6, 2.8, 2.10, 2.11, 2.13, 3.1, 3.6, 3.7, 3.13, 4.1, and 4.2.   source: https://scholar.google.com/scholar_case?case=14197775512495513543&q=judge+violation+Rule+2.9(A)(b)+&hl=en&as_sdt=4,223,224,226.

*So many self-represented litigants report accidentally discovering that the opposing lawyers have been secretly briefing or communicating with the trial judge sometimes in writing sometimes in case meetings where the self-represented litigant was not informed. It's quite common and quite frequent. Self-represented litigants perceive, correctly or not, opposing counsel and the judge are working together against them. This destroys the public confidence in the courts.*

*There should be no secret evidence or secret hearings in the back rooms of our courts. Secrecy undermines the very foundation of our justice system and destroys the public's faith in a fair and impartial court. Secret proceedings and secret evidence are devastating to every citizen before the courts but especially for those who cannot afford a lawyer and forced to represent themselves. Yet secret evidence and private backroom hearings happen every day in our courts.*

## CONCLUSIONS

- Around late November - early December the court came under the influence of an external party who either sent written documents, such as a letter, or spoke with the court, be it directly with the judge or a member of her ancillary staff.

- Withstanding the method of communication, any of which is inappropriate, the judge drifted under the influence of ideas and/or statements hostile to the plaintiff and her interests.

- The plaintiff also received confirmation of the defense counsel's part in the influence in a December 3, 2020 email putting forth in obvious dishonesty regarding the whereabouts of the plaintiff's property.

- As of the month of February 2021, the animals were documented by the USDA as part of the inventory possessed by the defendants. This is evidence contradicting the defendants' and court's falsehood about the defendants not being in possession of the animals.

- The plaintiff has substantial evidence of ownership and a boarding contract which placed the animals at a related facility in Wynnewood as far back as April 2017, when the facility was under different management. Under the legal doctrine of agency, the boarding agreement was and is valid.

- Both the court and defense counsel are both keeping extraneous information "secret" from the plaintiff even though such information seems to be the sole instrument guiding the litigation and consequently the disposition of the case.

- At the very least, both the court and defense attorney have been successful in donning the appearance of impropriety[9] since actions governing their conduct are in sync (such as the defense refusing to respond to discovery requests and the judge defending such by extending the time taken to respond to discovery requests without rational explanation).

- Both have lied about and are attempting to mislead the plaintiff in the whereabouts of her property by employing dishonest means and refusing to consider statements made by the plaintiff thereby refusing her right to be heard.

- Exclusion of the plaintiff has also been accomplished by the judge and her staff by dishonest manipulation of the remote appearance application resulting in the absence of the plaintiff from the last two hearings scheduled in December and January. Upon multiple requests, the judge has either ignored or denied the plaintiff's request for a hearing in which the plaintiff suggested all parties participate by phone. Such denials have been detrimental to the plaintiff's right to be heard.

- The aforementioned violations are representative of the fact that Judge Edwards has just recently become dedicated to an illegitimate agenda, external to the case at bar, which wrongly favors the interests of the defense over the plaintiff in pending litigation.

- Despite the wrongdoings experienced by the plaintiff, of which she is underserving, she attempted to address any concerns the court and defense had resulting from the external influencer to no avail.

- The court and defense counsel continues to mislead and deny the plaintiff access to and repossession of her property which is still located at the facility of the defendants in Thackerville, Oklahoma.

- This renders both Judge Edwards and defense counsel, Mr. Rennie, untrustworthy in the eyes of the plaintiff.

- Combined with the fact that the plaintiff cannot conduct discovery and the judge is dedicated to an inappropriate agenda, the case is at a standstill.

- Even when citing the law and rules in her orders, the judge cannot be trusted in terms of the rationale resulting in the decisions she makes; especially, since she has misrepresented the laws as well. An example is the judge's misrepresentation of the discovery code in terms of responding to discovery requests.

---

[9] "Impropriety" includes conduct that violates the law, court rules, or provisions of this Code, and conduct that undermines a judge's independence, integrity, or impartiality. See Canon 1 and Rules 1.2, 3.6, and 3.13. source: https://scholar.google.com/scholar_case?case=14197775512495513543&q=judge+violation+Rule+2.9(A)(b)+&hl=en&as_sd t=4,223,224,226.

- Even though the tactics being used by both defense counsel and the judge have resulted in wasting resources and delaying the disposition of the case, the judge then tries to rush into a trial with the misrepresentation in one of her January orders that both parties requested such, when they clearly did not. This was initially done before the defendant was ordered to respond to the plaintiff's discovery requests. Hence, the trial was originally intended to be held after outright denying the plaintiff's combined discovery requests sent to the defendant.

- It is clear both individuals will continue to rely on misrepresentations simply because they can since they have the power, authority, and credibility as officers of the court.

- The information herein was aggregated in order to support the disqualification of Judge Edwards - either voluntarily or by way of transferring the case to another judge who will be fair, honest and unaffected by external influences. This means the judge should not convey any of her prejudices or secret information to the judge who may take over the case if the case is transferred.


### RELIEF REQUESTED

**WHEREFORE,** the plaintiff, Carrie M. Leo, is hereby moving, in light of this evidence detailing unethical and illegal conduct which gives the plaintiff a solid pretext to believe the above-mentioned judge cannot hear the above case in a fair and impartial manner, the above-named Judge to recuse herself on the basis of a lack of impartiality to this matter and, thereby, has created a conflict of interest in this matter. The above-mentioned Judge has wantonly refused to provide due process and equal protection to the plaintiff as a litigant before the court and has behaved in a manner inconsistent with that which is needed for full, fair, and impartial hearings.

**FURTHER,** the plaintiff requests full disclosure of anything which would disqualify the judge to preside over this case in a fair and just manner. Such information is specified as written instruments, such as, but not limited to, letters and statements, and verified accounts of oral communication whether directly or indirectly made to the court or one of its staff members regarding this case. Statements of particular concern are those which were heard by, made to or read by Judge Edwards relating to the case at bar. Any and all information of which both parties do not have knowledge is requested to be disclosed.

Plaintiff additionally requests the bench trial scheduled for May 7, 2021 be removed from the court's calendar until this motion is processed and the court is ready to schedule a trial by jury.

In sum, this request of the court ends with an appropriate sentiment expressed by Supreme Court of Canada Justice, Rosalie Abella, but is very much applicable to the justice system in the United States as well.

> *"So what's the noise our profession can't ignore?*
> *The sound of a very angry public. And it's a public*
> *that's been mad at us for a long, long time ... I'm*
> *not sure they're going to take it anymore and frankly,*
> *I'm not sure they should."*

Dated: <u>April 30, 2021</u>

CARRIE M. LEO, Plaintiff

## VERIFICATION

WAYNE COUNTY
NEW YORK STATE        } ss:

The above foregoing information is true and accurate according to the plaintiff's information and belief.   This statement is given under the oath or perjury this 30th day of April 2021.

Sworn to before me this 30th day of April 2021

_Public Notary_

CARRIE M. LEO, Plaintiff
3199 Walworth Road
Walworth, NY 14568
tele: (315) 538-8316
carrieleo15@gmail.com
Carrie M. Leo

LAUREN FRIEDL
Notary Public - State of New York
NO. 07FR6383306
Qualified in Wayne County
My Commission Expires Nov 13, 2022

**IN THE DISTRICT COURT**
**GARVIN COUNTY, STATE OF OKLAHOMA**

CARRIE M. LEO,
Plaintiff,

– v –

JEFFREY L. LOWE and
LAUREN F. LOWE,
Defendants.

Case No.  CJ-19-89

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the filing entitled "*Motion for Judicial Disqualification or Recusal*" has been furnished via USPS to the party set forth below, this 1st day of May 2021.

**VIA USPS**
Robert T. Rennie, Esq.
Attorney for the Defendants, Jeff & Lauren Lowe
Rennie Law Office
118 N. Chickasaw
Pauls Valley, OK 73075
rennielaw@yahoo.com

*s/ Carrie M. Leo*
_____

Carrie M. Leo, Plaintiff *pro se*

**EXHIBIT 1**
Leo v Lowe

3199 Walworth Road
Walworth, NY 14568
February 25, 2021

Oklahoma District Court of Garvin County
Chambers/Courtroom of Judge Leah Edwards
201 W Grant Avenue #3
Pauls Valley, OK 73075

RE:    *Leo v Lowe* # CJ-2019-00089
       LETTER REQUEST FOR RECUSAL pursuant to OKLA. STAT. tit. 20, § 1403; OKLA. DIST. CT. R. 15

Dear Judge Edwards,

This is a request in accordance with Oklahoma District Court Rule 15, Rules for the District Courts of Oklahoma, and Okla. Stat. tit. 12, Ch. 2, App. and serves as a request for you to recuse yourself in the matter captioned *Carrie M. Leo v Jeffrey L. Lowe* and *Lauren F. Lowe* enumerated by Cause No. CJ 2019-00089. I am representing myself as the plaintiff in this action and the defendants are represented by counsel, Robert T. Rennie, Esq. of Pauls Valley, Oklahoma.

As you know, this matter was filed on June 11, 2019 in the Oklahoma District Court of Garvin County and involves the conversion of personal property of mine by the defendants, Jeff and Lauren Lowe. You initially granted me repossession of the animals on or around October 28, 2020 via a writ of replevin and again on or around November 6, 2020 accommodating circumstances beyond my control which affected my ability to travel to Oklahoma and pick up the animals.

On December 3, 2020, defense counsel emailed[1] me and stated that, suddenly, my property was gone and not in the possession of his clients. He even put forth the false and untimely affirmative defense that the animals were never in their possession and it was the former director of the zoo (with whom my boarding agreement was made in April 2017) disposed of the animals when he left the facility permanently in June 2018.

Both parties and the court know the defense's new affirmative defense is not true. However it was also held up as the truth by the court without even the slightest bit of skepticism. The defendants, defense counsel and the court all knew of this new affirmative defense prior to the plaintiff's knowledge of it and in contradiction to court rules prohibiting ex parté communication; namely 5 O.S. § Rule 2.9.

I am also concerned there may have been an external influence upon the court or if not, it is highly likely Mr. Rennie was and still is influenced by an external player who is kept anonymous to me.   There is at least one person external to all of my cases outside of New York State who I have confirmed to have influenced defense counsel and thus the court in at least one of my cases, other than this one. I'm concerned of the same problem with this case. The following are problems which have occurred recently to which I believe make it necessary for recusal since I do not trust the court at all to preside over a fair and impartial bench trial scheduled for March 22, 2021.

1.  **Misrepresentation of the status of property at the center of the case.** Defense counsel emailed me on December 3, 2020 alleging my animals had suddenly disappeared from the possession of his clients. Given the evidence I currently have

---
[1] Exhibit 1 contains a true and accurate copy of the email accompanying this document.

1

EXHIBIT 1

Leo v Lowe

in my possession,[2] as well as eyewitness testimony,[3] such an allegation made by the defense is ludicrous. The defense counsel's email was more indicative of a change in strategy than it was conveyance of a true change in circumstances.[4]

2. **Misrepresenting laws and regulations to the benefit of the defense.** In the case at bar, Plaintiff's *Motion to Compel*[5] will not be heard due to it not being "ripe" according to the Court.[6] The Motion was filed after the thirty-day cut-off deadline for discovery requests to be finished and in the hands of the plaintiff, the requesting party. The court is misrepresenting the discovery laws of Oklahoma.[7] Again, discovery has been an issue with every one of my cases since the defense counsel are protecting the interests of those individuals other than their clients.

3. **Unequal Discovery Opportunities.** While I'm prevented from discovery opportunities, the defense received responses from me to their discovery demands.

   Oddly, there was a lot of request for information concerning my finances which I felt was irrelevant to the action.[8] I am concerned that such financial information was obtained by the defense and may have been inappropriately divulged to an influencer external to the case. Another reason the court may not be keen on the Plaintiff participating in discovery is it already knows the disposition of the case since it's clear it is predetermined and set for trial on March 22, 2021.

4. **Failure for Staff to File** *Certificate of Service*[9] **for the Plaintiff's Delivery of Discovery Requests on the Defendants.**

   To date, the staff has not filed the proof of service paper I sent in on November 20, 2020 for the discovery requests I sent along with the responses to the defense's combined discovery requets. Most likely, the reason for this is to prevent the document from making it into the record where it will contradict the judge's claim in her Order issued on January 26, 2021[10] in which she states the Plaintiffs Motion to Compel Discovery from the Defendant was not going to be heard because it wasn't "ripe".

5. **Ex parté communication[11] and failure to disclose.**

   It is clear the defense and court are "in the know" together about the direction of the case and the details of the source causing such a shift in direction. The plaintiff is the only party to the action unknowing of the facts and influences of and upon the case as the court and defense are. This is unfair and violates both state and federal constitutions as well as any notion of fair play.

---

[2] Exhibit 2 contains a true and accurate copy of the *Amended Application for Contempt Citation* which includes evidence of the animals in the possession of the defendants.

[3] A true and accurate written and signed statement may be read in Exhibit 3 from the former director of the zoo who provides eye-witness input in contradiction. A verified copy of this statement is pending.

[4] In a case currently on appeal in New York State Supreme Court of Jefferson County, *Leo v Thomas*, identified by Index No. 2017-1668, the animals at the focus of the case were also prone to "disappearance" when the defendant and defense counsel wanted me to believe all animals he had which were being boarded with him at the time died. However, more than one piece of evidence filed with the court from the plaintiff made it clear the animals were still alive and well and unlawfully possessed and secreted in Texas by the defendant and defense counsel. The defense counsel in this case did, in fact, communicate with at least one of the opposing attorneys in one of my cases.

[5] Exhibit 4 contains a true and accurate copy of Plaintiff's *Motion to Compel.*

[6] A true and accurate copy of the Order in which this statement was included may be accessed in Exhibit 7. While the court contravenes discovery and ex parte rules as seen in the order when she virtually denies any discovery opportunities for the Plaintiff by misrepresenting the "ripeness" notion, the court then makes it known that it is following the statute for an in-person trial knowing this is a hardship for the Plaintiff. This is cherry-picking the laws the court follows. There needs to be consistent enforcement of rules and laws resulting in fairness between the two parties.

[7] In *Leo v Thomas*, the defense counsel misrepresented laws around the possession of exotic animals. Even though I had evidence from the main attorney in a government agency stating otherwise, the court opted to go with the party with the lack of evidence for its claim(s) and dismiss the case abruptly. Such a decision made by the judge makes the bias of the court obvious.

[8] The defendants' interrogatories along with my answers can be read in the Amended Application for a Contempt Citation in Exhibit 2 which is a true and accurate copy of such.

[9] A true and accurate copy of the *Certificate of Service* may be found in the *Amended Application for a Contempt Citation* in Exhibit 2.

[10] A true and accurate copy of the order, filed on January 19, 2021, accompanies this letter as Exhibit 7A.

[11] Ex parté communications are governed by Rule 2.9, Appendix 4 of Title 5 of the Oklahoma Statutes.

**EXHIBIT 1**
Leo v Lowe

The Plaintiff has made a request for disclosure from both the court and defense counsel. The request has not been answered to date by either either.[12] Such disclosure should be given as soon as possible under oath before the plaintiff suffers any further irreparable harm from the alliance. The Plaintiff has requested Justice Winchester, presiding judge of the Fifth Judicial Administrative District, assist with holding such an evidentiary hearing so the plaintiff can mitigate the damage as soon as possible, especially in terms of her property.

6. **Deprivation of Constitutional Rights.**
Judge Edwards took an oath to, above all else, uphold the constitutions of the state and the United States. This is not occurring in the case at bar since the plaintiff has experienced deprivation of the following constitutional rights.

    A. Due process;
    B. Equal treatment under the law;
    C. Access to justice / access to fair and impartial decision-maker and
    D. Right to personal property.

7. **Overall game plan.**
The actions of the court and defense at the command of influencers affecting my pending cases, only make sense when considering not only what result(s) the outsiders are intending to ensure but how they intend on ensuring such result(s). The ultimate for their twisted interests would be ideally served by not only ousting the plaintiff from the legal system but to prevent her from ever using it again. The way to do this is to get the trial judge to dismiss the plaintiff's case early with sanctions of attorney fees to be compensated by the plaintiff, and labeling the cases filed by the plaintiff as "frivolous" thereby appearing justified to include the plaintiff as a vexatious litigant barred from use of the courts indefinitely.

This may sound paranoid to the reader. However, the same occurrences have been experienced by the plaintiff in all of her cases.

8. **Exclusion**
Last, the plaintiff was unable to attend the last two hearings held remotely via Zoom!. For the December 15th hearing, the Zoom! participation link was sent too late and wasn't received until after the hearing was finished. A month later, around January 15, the wrong participation link was sent to the plaintiff. On both occasions, the plaintiff attempted to contact the court during the hearings by phone and email to no avail. The court, nor the defense attorney, ever made an effort to initiate communication in order to see why the inclusion of the plaintiff was not happening. A statement for both absences was sent to the court, with screen shots, via usps mail and email, respectively.

The tone in the court's Order[13] from the court filed on January 19, 2021 seemed to point the proverbial finger at the plaintiff. It is possible that the court caused the inability of the plaintiff to make it to both hearings in order to make it look like, on the record, the plaintiff deserved to be pushed towards a trial without having the right to conduct her discovery. Coincidentally, or not, the plaintiff's *Motion to Compel* was scheduled to be heard during both of the scheduled meetings in December and January.

By preventing the plaintiff from making it to the meetings, the motion or any of the plaintiff's concerns cannot be addressed (nor can she ask questions about the defense's new revelation about her missing property) and she can be blamed by the court for it having to seek a premature end to the case as well as requiring the plaintiff show up in-person for the trial when other courts and states are either postponing trials or holding them remotely due to the Covid pandemic.

---

[12] On February 3, 2021, the Plaintiff submitted a *Notice of Objection* to the Court's January 26th Order Setting a Non-Jury Trial for March 22, 2021. The Notice also included a request for disclosure from both the defense counsel and the judge in terms of ex parté communication occurring at any time throughout the case. A true and accurate copy of the Notice of Objection may be accessed in Exhibit 8.

[13] included in accompanying papers.

EXHIBIT 1
Leo v Lowe

**Hostility Toward Pro Se & Indigent Litigants**

Ensuring the administration of justice regardless of socio-economic status is at the focus of many *Access to Justice* Committees put in place by court systems around the country.  However, the frequent abuse of the system occurs, most often from the collusion between the court and the party opposing the self-represented litigant.  This is an egregious violation interfering with the administration of justice and is the reason the public has very little confidence and faith in the judiciary.[14]

---

**Verification**

State of ___NEW YORK___ )

                                             )   SS.

County of ___WAYNE___ )

                          ___CARRIE M. LEO___, of lawful age, being first duly sworn, states:

I have read the foregoing statement, am familiar with the contents thereof and the statements therein contained are true and correct, to the best of my knowledge and belief.

(Signature) _____

Subscribed and sworn to before me this 22nd day of ___February___, 20 _21_.

(Notary Public) _____

My commission expires ___Nov. 13, 2022___      Commission No. ___07FR6383306___

> LAUREN FRIEDL
> Notary Public - State of New York
> NO. 07FR6383306
> Qualified in Wayne County
> My Commission Expires Nov 13, 2022

---

Sincerely,

Carrie M. Leo, Plaintiff
tele: (315) 538-8316
carrieleo15@gmail.com

---

[14] As stated in a presentation given by the organization, "Voices for Civil Justice" and is entitled "*Findings of the Civil Legal Aid Opinion Research, Presented by Celinda Lake*".  The reader may find the video of the presentation at: https://vimeo.com/89645967.

4

## IN THE DISTRICT COURT
## GARVIN COUNTY, STATE OF OKLAHOMA

**CARRIE M. LEO,**
**Plaintiff,**

- v -

**JEFFREY L. LOWE and**
**LAUREN F. LOWE,**
**Defendants.**

**Case No. CJ 19-89**

**AFFIDAVIT**

**WAYNE COUNTY** } ss:
**NEW YORK STATE**

## STATEMENT OF FACTS AND PROCEDURAL POSTURE
## IN SUPPORT OF MOTION FOR JUDICIAL DISQUALIFICATION

1. This matter was filed on June 11, 2019 in the Oklahoma District Court of Garvin County and involves the conversion of personal property of the plaintiff by the defendants, Jeff and Lauren Lowe. On July 23, defendants filed their answer by way of their attorney, Robert T. Rennie, of Pauls Valley, Oklahoma.

2. The plaintiff filed affidavits on April 13, 2020 and July 13, 2020 in order to supplement those filed along with her complaint on June 11, 2019 advocating for the return of her animals from the defendants.

3. Defendants responded with a *Motion to Dismiss, Objection to Temporary Injunction and Cross Petition for Damages* on August 13, 2020.

4. On September 1, 2020, a hearing was held, and the plaintiff was awarded a temporary restraining order disallowing the defendants from moving the plaintiff's animals out of the Wynnewood facility without prior authorization from the court.

5. Plaintiff filed both her response to defendant's motion to dismiss and her *Petition for Replevin to Supplement Affidavit in Support of Emergency TRO & Preliminary Injunction.*

6.  In violation of court order, the defendants transported the animals from Wynnewood, OK to Thackerville, OK presumably sometime in September 2021.

7.  A hearing determining the plaintiff's request for a writ of replevin was held at 10:30 A.M. CT on October 5, 2020.

8.  On October 23, 2020, the plaintiff was granted a writ of replevin allowing for the repossession of her property which was located at the defendants' zoo since April 2017 when the zoo was under different management but owned by the defendant Jeff Lowe.

9.  The plaintiff also received requests for discovery from the defense counsel during the last week of October 2020 via certified mail.

10. Plaintiff submitted an *Application for Contempt Citation* on October 30, 2020 involving the violation of the TRO by the defendants.

11. Despite violating the TRO, the defendants seemed cooperative and voiced no intentions of causing problems once the Court granted the writ to the Plaintiff.

12. The defendants made no claim that the animals were not possessed by them. In fact, they went along with plans of repossession and transport of the animals by the plaintiff.

13. On November 2, 2020, plaintiff filed a *Motion to Modify the Writ of Replevin* since she had to reschedule transport of the animals.

14. The court granted the plaintiff the *First Amended Writ of Replevin* on November 6, 2020.

15. Plans for the transport authorized by the second writ were also prematurely terminated beyond the control of the plaintiff.

16. Plaintiff then sent an informal request for a *Second Amended Writ of Replevin* on or around November 19, 2020. Mr. Rennie and Bailiff, Beth Smith, were also emailed a copy.

17. However, the hearing for the second amended writ was never held.

18. On November 19, 2020, plaintiff notified Mr. Rennie and court bailiff, Beth Smith, that

she had to reschedule the transport of the animals.

19.   Later on the same day, November 19, 2020, plaintiff emailed her responses to the
      defendants' discovery requests pursuant to 12 O.S. § 3226 (30-day deadline).

20.   Plaintiff sent discovery requests to the defendants on November 20, 2020 and a certificate
      of service to the court for filing. However, there has never been any evidence of its filing
      since it was never publicly accessible.

21.   On December 3, 2020, defense counsel emailed[1] plaintiff and stated that, suddenly, her
      property was gone and not in Mr. and Mrs. Lowe's possession. The email consisted of one
      sentence: "*I have discussed your animals with Jeff Lowe and he indicates that they were
      disposed of by Joe Schreibvogel Maldonado-Passage [sic] and are no longer in their
      possession.*"

22.   The defendants put forth the false and untimely defense that the animals were never in
      their possession and that the former director of the zoo disposed of the animals when he
      left the facility permanently in June 2018. Both parties and the court know this is not true.

23.   However it was also held up as the truth by the court without even the slightest bit of
      skepticism.

24.   The defense and the court all knew of this new defense prior to the plaintiff in contradiction
      to court rules prohibiting ex parté communication; namely 5 O.S. § Rule 2.9. This rule is
      invoked in this situation whether the court was contacted by an external influencer or the
      communication went through defense counsel.

25.   Both defense counsel, Mr. Rennie, and Judge Edwards have refused the plaintiff's several
      wrong participation link for the hearing.

---

[1] Exhibit 1 contains a true and accurate copy of the email accompanying this document.

26.   The plaintiff have made numerous requests for disclosure[2] since it is clear there has been some external influence affecting the direction of the case which is certain to have occurred as a result of communication by the court, or someone on behalf of the court, with an uninvolved party.

27.   After the assertion was made that the animals were not in the possession of the defendants, there were two hearings scheduled between the parties and the court.

28.   A hearing was scheduled by the court for December 15, 2020 at 10:00 A.M. EST.  The plaintiff unintentionally missed the meeting because she didn't receive the remote appearance participation link in time before the hearing.  On the same day, the plaintiff submitted an explanation to the court for not attending the hearing.  The submission included screen shots and evidence regarding the plaintiff receiving the participation link too late.  (See *Figure 1* on the following page)  Furthermore, no one was available by phone nor did anyone try calling the plaintiff like what some other courts do.

29.   The plaintiff missed the first hearing in December 2020 due to the participation link having been sent too late for the remote appearance application she was using to participate in the hearing.

30.   Plaintiff filed an *Amended Application for Contempt Citation* on January 4, 2021 for the defense putting forth the falsehood that the plaintiff's animals are not in the possession of the defendants thereby refusing to allow the repossession and transport of the animals by the plaintiff - the true owner.

31.   On the same date, the plaintiff filed a *Motion to Compel Discovery* from the defendants since they had not responded to her discovery requests from November 20, 2020.

---

[2] Plaintiff requested disclosure in pleadings such as Plaintiff's *Motion to Amend Order* filed on February 1, 2021, Plaintiff's *Notice of Objection to Setting Non-Jury Trial & Request* filed on February 23, 2021, and Plaintiff's *Motion to Disqualify Defense Counsel* filed on March 8, 2021.

32.    The plaintiff also missed the second hearing on January 15, 2021 when she was sent the

33.    The hearing was rescheduled for January 15, 2021 at 2:30 P.M. CT which the plaintiff again

unintentionally missed.  She had tested the participation several days earlier to make sure it

worked then used the same link to access the hearing twenty minutes prior to the hearing's

commencement.   However the judge never "arrived" in the "hearing room" (using virtual

terminology); the reason being the plaintiff had been given the wrong participation link so



*Figure 1: Above are images of the attempts the plaintiff made in accessing the hearing via Zoom! and the email attempting to contact the court when she realized she could not access the hearing online.  To the reader's upper left corner is the plaintiff's attempt to contact the bailiff of the court one minute after the start of the hearing when the plaintiff still did not have the participation link for the remote appearance.  Below in the lower left-hand corner is the screen received by the plaintiff when trying to get into the meeting and its inclusion in an email to the court 34 minutes after the start of the hearing.   In the upper right-hand corner is the screen shot attached in the previous email and the image in the lower left-hand corner is the email with the statement sent to the court and defense counsel explaining why the plaintiff was not present at the December 15, 2020 hearing to be held at 10:00 A.M. Central Time. A similar statement was sent to the court in January when the same thing occurred costing the plaintiff to be excluded from the scheduled hearing scheduled.*

she was waiting for the judge to appear while the judge was in another "hearing room" waiting for the plaintiff to appear.[3]

34.   As was the case on December 15, there was no way for the plaintiff to contact the bailiff of the court or any other staff personnel in order to alert the court so the problem could be fixed in time for the hearing to be held.  No staff member tried contacting the plaintiff either.

35.   The plaintiff spoke to Mr. Rennie on the phone just after he had returned to his office from the hearing, and he stated the court had problems signing onto the platform.  The plaintiff didn't worry about sending an explanation or statement like she did the month prior when she missed the hearing since she thought the court would reschedule since they knew from their own direct experience why the hearing didn't take place.

36.   Reading the judge's order issued on January 19, 2021, it sounds like this doesn't seem like it was the case when she stated:

> "Plaintiff specifically requested the proceedings be held remotely by Zoom at 2:30 p.m. central time. At the request of Plaintiff, the Court scheduled and sent a Zoom invitation for the date and time requested by Plaintiff. Defendants appeared through counsel, Robert Rennie, Jr. but Plaintiff failed to appear.  After waiting approximately ten (10) minutes past the scheduled time, the Court cancelled the hearing.  This is the second time Plaintiff has requested a remote hearing but has failed to appear."

37.   A true and correct copy of the order from January 19, 2021 is attached as Exhibit 4.

38.   This is an incredibly unfair statement to make and shows the outright bias the judge has against the plaintiff.  Even if the judge didn't know why the plaintiff failed to appear for the January hearing, she already had been given proof in a statement written by the plaintiff regarding the December hearing.  When it comes right down to it, the judge knows exactly why the plaintiff was not able to attend either hearing since she most likely fixed it to be exactly the way it turned out in order to exclude the plaintiff from both hearings so she

---

[3] Exhibit 3 contains a true and accurate copy of the email message sent to the bailiff during the hearing.

would not get the chance to ask for information regarding the second writ of replevin.

39. Judge's January 23, 2021 order made a non-jury trial for March 15 at 1:30 P.M.  She stated: "... *this matter comes on before the Court on the parties' request to set Non-Jury Trial.*"

40. A true and accurate copy of the order is attached as Exhibit 5.

41. There was never any motion from either party for a trial.  Hence to say both parties requested a trial is not true.

42. Needlesstosay, the plaintiff wasn't ready for trial, especially since she wasn't able to conduct any discovery.

43. Likewise, the judge also stated she took it upon herself to amend the plaintiff's motion for a subpoena duces tecum filed in February to order one of the witnesses, a local resident of Oklahoma, to appear remotely.  The plaintiff objects against this amendment since there is no reason to order remote appearance in this situation.  Furthermore, the plaintiff, with waning trust and faith in the court, cannot be sure the witness will experience the same "technical difficulties" she did when she was unable to access the hearings in December and January.

44. Plaintiff made an objection against the judge's push for a trial when on February 1, 2021, the plaintiff submitted a *Motion to Amend Order* and on February 23, 2021, the plaintiff submitted the *Notice of Objection to Setting Non-Jury Trial & Request for Disclosure of Ex Parté Communication Pursuant to 5 O.S. Rule 2.9.*  Both were denied in an order issued on March 22, 2021.

45. A true and accurate copy of the March 22nd order is attached as Exhibit 8.

46. Moreover, the plaintiff has requested a number of times to have a pre-trial hearing, such as the requests she made on February 23, 2021 and March 8, 2021.  The judge was either evasive in her response or denied it outright.

47. On February 23, 2021, the plaintiff was granted a subpoena duces tecum for a witness which the judge ordered to testify remotely. It is not known why the judge wants the witness to participate in the trial remotely; however, it certainly was not a request from the witness or the plaintiff.

48. Only after reasonable inquiry and trying to discuss matters in the case did the plaintiff then opt to file *Plaintiff's Motion to Disqualify Defense Counsel, Request for Evidentiary Hearing and Second Request for Stay of Trial*, as well as *Affidavit in Support of Motion for Disqualification of Defense Counsel, Robert T. Rennie, in the Matter Leo v Lowe & Lowe CJ-19-89* on March 8, 2021.

49. On March 22, 2021, the judge issued an order denying the plaintiff's motion for disqualification, an evidentiary hearing and stay of trial. The order had a section which clashed loudly when contrasting the court's concern for the rights of the defendants to have counsel of their choice with the treatment of the plaintiff by the court in that her rights of remain not only unprotected but have been violated repeatedly by the court and defendants.

50. It appears the only party required to follow the rules is the plaintiff whereas the court and defendants may do as they please.

51. The defendants released their responses to the plaintiff's requests for production sent over four months prior. The March 22nd order from the court stated the plaintiff's *Motion to Compel* was finally "ripe" and was therefore granted. The deadline within which to furnish responses to interrogatories and requests for production is thirty days in accordance with 12 Okal. Stat. § 3226(c).

52. The defendants' responses to the plaintiff's discovery requests were unacceptable in that they continued the lie regarding the defendants not having the plaintiff's animals in their possession. It is not known for sure if the defendants are aware of this claim put forth by

defense counsel or if it's simply the strategy of Mr. Rennie, the outside influencer and the court.

53. On the 30th day of March 2021, the plaintiff sent *Notice to Take Depositions* of the defendants to defense counsel and filed the certificate of service with the court. On the same day the defendants' responses to plaintiff's discovery requests from November 20, 2020 were filed. Even though the plaintiff was emailed a copy directly from defense counsel, Mr. Rennie, there was a day lapse between when the document was filed with the court and when it was emailed to the plaintiff.

54. On April 1, 2021, the defense filed a *Motion to Quash Notice to Take Depositions*. Again, Mr. Rennie portrayed his clients as uncooperative and dismissive of any requests made by the plaintiff.

55. In both the defendants' responses to plaintiff's discovery requests and its response to plaintiff's *Notice to Take Depositions*, there is an unfortunate and newly found air of indignation and lack of cooperation on behalf of the defendants which has caused a standstill in the case.

56. Plaintiff's *Notice to Take Depositions* was for both defendants, Mr. and Mrs. Lowe as well as Mr. Rennie.

57. The lack of cooperation from the defense is another reason why the case is at a standstill and should not be expected to progress towards trial in May.

58. The case simply cannot continue when the court insists on managing the case and treatment of the plaintiff in accordance with the unreasonable demands of an external influencer use to getting its own way. It is this secret agenda to which the court remains adhered that has replaced the rules and laws which are supposed to protect each party in proceedings like this.

59.  This case should not be a forum within which an outside agenda intentionally made secret from the plaintiff while everyone else knows, is imposed.

60.  It is clear this case cannot move forward with such stifling prejudice against the plaintiff consisting of violations of due process and right to property.   Such prejudice needs to be eliminated so both parties are on equal footing before moving forward, especially in terms of a trial.

61.  The last filing, as of the date of this affidavit, is *Plaintiff's Request for a Jury Trial* which was filed on April 5, 2021.

**Plaintiff's Attempts To Resolve Contention Before Litigation With The Defendants**

62.  In each of the Plaintiff's cases, she had made solid and sincere effort in effectuating a solution to the issues which were at the center of each case.  This involved attempts to settle with the other side.

63.  Attempts were made with the defendants on several occasions which they rejected.

64.  The defendants also didn't consider any efforts to resolve the contentions between them and the plaintiff after being served with a summons for this suit and even speaking with an attorney.   It is assumed the defendants would have been given an explanation of the doctrines and case law which may work against them and the difficulty level in attempting to prove they have not wrongly kept the plaintiff's animals from her.

65.  Despite all of the support received by the defendants in settling the matter prior to joinder in the case, they opted to pay an attorney to litigate the matter.  Since this was their choice, they should not expect nor be awarded compensation for fees they've incurred by the wrongful detention of valuable property which isn't theirs.

66.  It is also important to understand the defendants are engaged in conflicts with other animal

owners who have the same complaint of conversion[4] against the defendants as the plaintiff in the case at bar does. As mentioned earlier, there are many people in the exotic animal industry who link together in order to operate in the practice of stolen animals. The defendants are a part of such practices.

67. In fact, recent USDA inspection reports have documented the extent to which the defendants have failed to account for the sources of the animals currently in their possession, including those of the plaintiff, as well as the disposition of those which seem to just "disappear".

68. In contrast, the plaintiff can not only account for every animal she owns but she can provide the paperwork from the sellers and donors who sold or gave them to her.[5]

69. The longer the court goes without transferring the plaintiff's animals into her possession, the closer they are to their demise.[6] However, the court has excluded the plaintiff to the point in which most, if not all, of her statements are not considered.

70. Plaintiff is telling the entire truth of this matter. This is the reason she has not resorted to secrecy and seemingly, is the only one in the case who hasn't.

### Court-Sponsored Prejudice Against the Plaintiff

---

[4] See recently litigated cases such as *Barth v. Lowe*, and currently pending cases such as *Stark v. Lowe*.

[5] The plaintiff has included such in various filings for the case at bar such as, but not limited to, the original complaint, the filing citing grounds for injunctive relief involving the immediate return of her animals, *Application for Contempt Citation* as well as the first Amended *Application for Contempt Citation* and the *Second Amended Application for Contempt Citation*.

[6] The plaintiff assumes her Virginia Opossums are deceased since there has been no record of them at the facility. Furthermore, the facility has been cited for severe neglect of the animals resulting in the deaths of many of them, as well as the lack of veterinary care. The latter was evidenced by the fly-strike problem a number of animals had in June 2020 as well as the plaintiff's fisher cat who was video-recorded as being lame due to a limb injury of unknown origin. The defendants were cited by the USDA more than once since they would not get a veterinarian to assess and treat the injury. It is extremely difficult for the plaintiff to watch her animals suffer when she would have taken far better care of them if they were in her possession. The video taken by the USDA and acquired by the plaintiff via an e-foia request will be e-mailed to beth.smith@oscn.net so it can then be forwarded to the judge for viewing. Likewise, there are pictures of the plaintiff's African Crested Porcupine in an enclosure which has not been suitably maintained and provides an elevated risk of injury to her. Exhibits 9 and 10 hold true and accurate renditions of both the foia request made by the plaintiff and submitted to the USDA as well as the pictures of the porcupine and mention of the fisher video to verify plaintiff's statements about the condition of the animals and their surroundings.

71.    The plaintiff submitted at least two requests for disclosure including the offer of providing a defense against any derogatory information the judge and defense attorney may have heard regarding the plaintiff.

72.    The judge denied communicating directly with one state agency which has been responsible for many underhanded actions taken against the plaintiff. Judge Edwards also denied ex parté communication with the defense counsel.

73.    However, especially in terms of the latter allegation, the plaintiff's allegation of ex parté communication between her and some external influencer stands as an allegation despite the court's denial.

74.    Since it has been clear both the defense and court are 'in the know' about the course of the case before the plaintiff is, there is no other way both the judge and Mr. Rennie, defense counsel, could not have been "in the know" coordinating their behavior and actions, without communicating in some way, even if by way of a third individual who is a non-party to the case. Examples of this are the defense not replying to the plaintiff's discovery requests and the untruthful claim that the defendants are no longer in possession of the plaintiff's animals.

75.    Intervention by an outside party isn't difficult to recognize since it's the same *modus operandi* used in every case, causing misconduct from the defense and court in every case this outsider is successful influencing.

76.    It is clear the first agenda item of the influencer is to prevent the return of the plaintiff's valuable animals to her.

77.    This was the case in a case pending appeal in New York State during which the attorney employed everything from harrassment and intimidation to submitting falsified instruments in order to get a dismissal of the case.

78. The dismissal of the case was highly erroneous since the judge assumed facts not in evidence which were to be the focus of the upcoming jury trial.   He also made incorrect assumptions regarding the plaintiff's claims inherent in her Amended Complaint of May 22, 2017.

79. Since the judge in the New York case had also awarded the plaintiff an order for the return of her animals from a former colleague who converted title over the animals by unlawfully transporting them from New York State to Texas State, the judge's abrupt change in direction relating to the case was noticed by the plaintiff and was identical to Judge Edwards' behavior in the case at bar.

80. The start of the external influence in the boarding arrangements of plaintiff's valuable animals, her business and her lawsuits really began in April 2017 when her former colleague (just previously mentioned) in the New York lawsuit started a fraudulent scheme to acquire the plaintiff's animals indefinitely by entering into a boarding contract intending on violating its terms when it came time to return the animals.

81. At this time, the former colleague of the plaintiff has secreted away at least two animals belonging to the plaintiff claiming they are deceased without any authentic, legitimate evidence to support such an accusation.

82. The plaintiff puts forth this type of scheme is what is occurring at this time in the case at bar and could have been suggested by the external influencer to the defense.

83. As a matter of due process, a litigant is entitled to whatever Sixth Amendment protections are "*necessary component(s) of accurate factfinding.*" *See McKeiver v. Pennsylvania*, 403 U.S. 543 (1971).[7]  However, to no avail, the plaintiff had made multiple requests for a hearing after she was excluded from the December and January hearings.

---

[7] *McKeiver v. Pennsylvania* involves a juvenile delinquency proceeding which is considered a "civil" proceeding, just as personal injury cases are and is addressed by stating:  "[t]o hold otherwise would be to disregard substance because of the feeble

84. An evidentiary hearing, in particular, would have been especially appropriate since the plaintiff continues to be kept in the dark regarding what external influence confronted the court and changed its course of treatment of the plaintiff.

85. However the plaintiff's request for one was denied by the court's order issued on February 2021.

## **VERIFICATION**

Carrie Leo, of lawful age, being first duly sworn upon oath, deposes and states that she is the Plaintiff in the above-named case, that she has authored, read and understands the foregoing document affidavit in support of the corresponding *Motion for Judicial Disqualification*, knows the contents thereof, that the facts therein set forth are true and correct and that no statements thereof are frivolous, to the best of her knowledge and belief.

Date: <u>April 30, 2021</u>

Respectfully Submitted,

Sworn to before me this 30th day of April 2021

_____
Notary Public

Carrie M. Leo, Plaintiff
3199 Walworth Road
Walworth, NY 14568
tele:  (315) 538-8316
carrieleo15@gmail.com

LAUREN FRIEDL
Notary Public - State of New York
NO. 07FR6383306
Qualified in Wayne County
My Commission Expires Nov 13, 2022

---

enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings". Hence, even though the sixth amendment literally specifies the right of a fair trial for "criminal" cases, it also applies to civil cases as well.

**IN THE DISTRICT COURT**
**GARVIN COUNTY, STATE OF OKLAHOMA**

CARRIE M. LEO,
Plaintiff,

– v –

JEFFREY L. LOWE and
LAUREN F. LOWE,
Defendants.

Case No. CJ-19-89

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the filing entitled "*Statement of Facts and Procedural Posture in Support of Motion for Judicial Disqualification*" has been sent via USPS to the party set forth below, this 1st day of May 2021.

**VIA USPS**
Robert T. Rennie, Esq.
Attorney for the Defendants, Jeff & Lauren Lowe
Rennie Law Office
118 N. Chickasaw
Pauls Valley, OK 73075
rennielaw@yahoo.com

*s/ Carrie M. Leo*
Carrie M. Leo, Plaintiff *pro se*

# IN THE DISTRICT COURT
## GARVIN COUNTY, STATE OF OKLAHOMA

CARRIE M. LEO,
**Plaintiff,**

- v -

**JEFFREY L. LOWE and
LAUREN F. LOWE,
Defendants.**

**Case No. CJ 19-89**

**EXHIBIT LIST
FOR AFFIDAVIT**

## STATEMENT OF FACTS AND PROCEDURAL POSTURE
## IN SUPPORT OF MOTION FOR JUDICIAL DISQUALIFICATION

| # | | Exhibit | Date |
|---|---|---|---|
| 1 | | December 3 email from Rennie | 12/03/2021 |
| 2 | A | Letter of Explanation to the Court | 12/15/2020 |
| | B | Screen shot showing inability to appear at hearing via Zoom! | 12/15/2020 |
| 3 | | Motion to Amend Order (includes explanation of Jan. 15 hearing absence) | 02/01/2021 |
| 4 | | Order | 01/19/2021 |
| 5 | | Order setting non-jury trial | 01/28/2021 |
| 6 | | Order re: pending motions | 02/23/2021 |
| 7 | | Order | 03/22/2021 |
| 8 | A | FOIA Request #2020-APHIS-05777-F | 08/13/2020 |
| | B | USDA-APHIS Response to FOIA Request #2020-APHIS-05777-F | 09/03/2020 |
| | C | Video of fisher cat | 06/22/2020 |
| 9 | A | page 3 from the *USDA Monthly FOIA Log 7/01/2020-7/30/2020* | 07/30/2020 |
| | B | Photograph of African Crested Porcupine from FOIA Request #2020-APHIS-05436-F | 06/22/2020 |

**Date:** <u>April 20, 2021</u>

<u>*s/ Carrie M. Leo*</u>
Carrie M. Leo, Plaintiff
3199 Walworth Road
Walworth, NY 14568
tele: (315) 538-8316
carrieleo15@gmail.com

 **Gmail**

**Carrie Leo <carrieleo15@gmail.com>**

---

# RE: Replevin
1 message

---

**carrieleo15@gmail.com** <carrieleo15@gmail.com>        Thu, Dec 3, 2020 at 4:20 PM
To: Robert Rennie <rennielaw@yahoo.com>

Sorry Mr. Rennie, but they were on his license as soon as a year ago. I will be down on the 20th to get my animals. Please help him do the right thing. If they were sold, etc. then I need to know that. Was he not told about the restraining order, etc.? All of this should have been told to me at the beginning of the case.

---

**From:** Robert Rennie
**Sent:** Thursday, December 3, 2020 3:28 PM
**To:** Carrie Leo
**Subject:** Replevin

I have discussed your animals with Jeff Lowe and he indicates that they were disposed of by Joe Schreibvogel Maldanado-Passage and are no longer in their possession.

Robert T. Rennie, Jr.

---

 Virus-free. www.avast.com

3199 Walworth Road
Walworth, NY 14568
December 15, 2020

**VIA USPS AND EMAIL** bethsmith@oscn.net
Oklahoma State District Court of Garvin County
Office of the District Clerk
201 W. Grant Avenue
St Pauls, OK 73075

**RE: Leo v Lowe Case No.: CJ 2019-89**

Dear Judge Edwards,

I would like to inform the Court of the reason for my absence for the last hearing, which was to take place today, December 15 at 9:00 a.m. so you understand it was unavoidable and not due to disrespect of the court or callous disregard for your and Mr. Rennie's time.

I waited for the Zoom! invite link from you from 9:40 AM CT this morning. When I didn't receive it, I sent an email to Ms. Smith at 10:01 A.M. and called her at 10:07 A.M. There was no answer, so I left a voicemail.

While keeping track of my email hoping to see a link, I still didn't receive it until 9:23 A.M. I figured the meeting was starting late, so I tried accessing the meeting via the link and was given an error. I again emailed your bailiff with a screen shot of the error message I was receiving (*pictured in the accompanying copy of the email thread between Ms. Smith*).

Ms. Smith emailed me at 9:40 A.M. telling me the time is well past the time the hearing was to take place and it will have to be rescheduled.

Again, I apologize for the possible appearance of my disregard for your and your Court staff's time and effort in organizing the meeting. However, I would like to make sure you know the circumstances under which I missed it. I appreciate your and your staff's patience in rescheduling the hearing and hope it incurred no notable inconvenience for either of you or Mr. Rennie, although he appeared in person for the hearing as I understand.

I would like to respectfully request if the Zoom! link could be sent at least a ½ hour before the hearing in the future if this is possible. This way, if there are technical difficulties, there would be more time to fix as well as giving the servers more time to relay your email with the link to my account. Sometimes it takes a little longer for me to receive emails just due to the traffic on the web as well as

**Re: Please join Zoom meeting in progress**

 **Smith, Beth <BethSmith@oscn.net>**
10:40 AM

To: carrieleo15@gmail.com; Leah Edwards

Ms. Leo it appears that you missed the meeting or there was some technical difficulty in Zoom. Mr. Rennie has since departed for another hearing in another county. You'll have to reset.
Thank you,
Beth

Get Outlook for iOS

**From:** carrieleo15@gmail.com <carrieleo15@gmail.com>
**Sent:** Tuesday, December 15, 2020 9:34:03 AM
**To:** Leah Edwards <leah.jo.edwards@gmail.com>
**Cc:** Smith, Beth <BethSmith@oscn.net>
**Subject:** RE: Please join Zoom meeting in progress

**It states the meeting id is invalid.  I cannot sign into zoom.**



**From:** Leah Edwards
**Sent:** Tuesday, December 15, 2020 10:23 AM
**To:** Carrieleo15@gmail.com
**Subject:** Please join Zoom meeting in progress

Join Zoom Meeting
https://us04web.zoom.us/j/76612785844?pwd=VndRZENuSEJIb0hmbFpCaGd4U0RVZz09

Meeting ID: 766 1278 5844
Passcode: bm61cB

 Virus-free. www.avast.com

EXHIBIT 3
Leo v Lowe (Recusal)

## IN THE DISTRICT COURT
## GARVIN COUNTY, STATE OF OKLAHOMA

CARRIE M. LEO,
Plaintiff,

- v -

JEFFREY L. LOWE and
LAUREN F. LOWE,
Defendants.

Case No. CJ 19-89

STATE OF OKLAHOMA }
GARVIN COUNTY } SS,

**F I L E D**

FEB 0 1 2021

AT. 0:41 O'CLOCK_____ M.
LAURA LEE, Court Clerk
BY_____DEPUTY

### MOTION TO AMEND ORDER

COMES NOW, Plaintiff, Carrie M. Leo, self-represented litigant submit the following as her Request for the Court to Amend Its Order filed on January 19, 2021 and received by the Plaintiff on January 22, 2021.

Plaintiff specifically addresses her *Motion to Compel, Motion for Second Amended Writ of Replevin* and the schedule of a trial to take place in person pursuant to 20 O.S. 130.

### Hearing scheduled on January 15, 2021 at 2:30 p.m.

1. Plaintiff received the Zoom! link well enough in advance on January 11, 2021 and tested it the day before the hearing, January 14, 2021, and the link appeared as expected at that time since there was no hearing being held as expected.

2. At approximately 2:10 P.M. Central Time, the Plaintiff signed onto Zoom! to attend the hearing. Again, the link accessed the day before, let her into the meeting, or so she thought.

3. At approximately 2:30 P.M. Central Time, the Plaintiff noticed there still was no one else in the hearing so she waited.

4. At 2:36 P.M., the Plaintiff sent an email message to Bailiff, Beth Smith. However, she inadvertently entered the email address erroneously and the message was returned.

EXHIBIT 3
Leo v Lowe (Recusal)

5.  Below is a true and correct copy of the message sent by the Plaintiff to Bailiff, Beth Smith, on January 15, 2021 at 2:36 P.M. Central Time as well as the return email sent by the server denoting it being an erroneous email address used thus notifying the Plaintiff the e-mail had not been sent.  Exhibit 1 includes the entire "Undeliverable: re: hearing" e-mail.




Full-size version is accessible in Exhibit 1.

6.  The "undeliverable" email was sent the same time the Plaintiff sent her email to Ms. Smith. However, she did not look back into her email account until  after she called Mr. Rennie.

7.  At first, the Plaintiff spoke to Mr. Rennie's secretary about no one showing up in the meeting.  About the time she was going to take down a message from the Plaintiff to give to Mr. Rennie, Mr. Rennie walked through the door.

8.  Plaintiff spoke to Mr. Rennie who stated that the problem with *Zoom!* had been on the Court's end since multiple attempts to try and get into the hearing were not successful.

9.  Thinking the technological problem was not on her end but on the end of the Court, the Plaintiff didn't think it was necessary requesting another hearing since she knew the Court

EXHIBIT 3
Leo v Lowe (Recusal)

would do so.

10. Plaintiff sincerely apologizes to the Court for her last two unintended absences in hearings. However, the absences were out of her control and she did not mean to cause any inconvenience to Mr. Rennie or, especially, the Court.

11. Plaintiff requests the Court amend the order filed on January 19, 2021[1] to allow the next hearing remotely via *Zoom!* while all parties stay close to their phones. Should technological difficulties arise again, Plaintiff requests the parties and the Court hold a phone conference instead.

12. To travel to Oklahoma for a trial would subject the Plaintiff to undue hardship since there is a quarantine in every state and non-essential travel is still prohibited. New York State, the Plaintiff's state of residence, still has a mandatory 14-day quarantine upon return to the state.[2]

13. There may also be a similar quarantine with Plaintiff traveling to Oklahoma. This makes travel risky to the welfare of the health of the parties, especially that of the Plaintiff and her elderly parents with whom she resides in New York.

14. Furthermore, such a trip is naturally overburdensome since the distance is far and the Plaintiff has to find an individual to care for her elderly parents.

### Plaintiff's Motion to Compel

15. It is understood by the Plaintiff that the order filed by the Court on January 19, 2021 states that the Plaintiff's *Motion to Compel* isn't "ripe" yet since the necessary time has not been given to the Defendants to comply with the discovery requests provided by the Plaintiff and served upon the Defendants by way of their counsel, Mr. Rennie.

---

[1] A true and correct copy of the Judge's Order may be read in Exhibit 2.
[2] See the New York State Governor's Executive Order ("EO") 205.2 contained in Exhibit I.

EXHIBIT 3
Leo v Lowe (Recusal)

16. Discovery Requests such as Interrogatories, Requests for Production and Admissions are given thirty days for response time, pursuant to § 12 O.S. 3233.

17. Plaintiff sent her Combined Discovery Requests on November 20, 2020 - the same day and in the same envelope the Plaintiff's Responses to the Defendants' Discovery Requests were sent.

18. A true and correct copy of the Plaintiff's Combined Discovery Requests may be seen in Exhibit 4.

19. The Defendants should have had their answers in the hands of the Plaintiff by December 25, 2020 since post office mail service is given five days delivery time.

20. A true and correct copy of Plaintiff's Certificate of Mailing is located in Exhibit 5.

21. The Plaintiff also sent in the Certificate of Mailing to be filed on November 20, 2020.

22. A true and correct copy of the letter sent along with the Certificate of Mailing may be found in Exhibit 6.

23. However, Plaintiff has not seen it filed along with the rest of the documents in oscn.net.

24. On December 23, 2020, the Plaintiff emailed Bailiff Smith to see why the certificate had not been filed. Ms. Smith did not know why and suggested the Plaintiff ask the other clerk(s).

25. A true and correct copy of the email sent between the Plaintiff and Ms. Smith can also be viewed in Exhibit 7.

26. A true and correct copy of the receipt of mailing can also be viewed in Exhibit 8.

27. Therefore, the Plaintiff respectfully requests an Order from the Court to Compel the Defendants to honor their obligation of discovery with sanctions tailored to the Court's discretion.

EXHIBIT 3
Leo v Lowe (Recusal)

## TEMPORARY RESTRAINING ORDER

28. The Plaintiff also respectfully requests the Court to reiterate in its order that the TRO is still in effect and the Defendants should not be moving or doing anything with animals named in this suit for return to the Plaintiff.

**WHEREAS, PREMISES CONSIDERED,** Plaintiff requests this Honorable Court Amend the Order filed on January 19, 2021 to remote appearance for the next hearing. Additionally, she also requests the Court grant the Plaintiff an Order to Compel Discovery against the Defendants.

## VERIFICATION

STATE OF NEW YORK|
COUNTY OF WAYNE |     ss:

Carrie Leo, of lawful age, being first duly sworn upon oath, deposes and states that she is the Plaintiff/Petitioner in the above-named case, that she has authored, read and understands the foregoing statements, knows the contents thereof, that the facts therein set forth are true and correct and that no statements thereof are frivolous, to the best of her knowledge and belief.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via USPS to the party set forth below, this 24th day of January 2021.

EXHIBIT 3
Leo v Lowe (Recusal)

Robert T. Rennie, Esq.
Attorney for the Defendants, Jeff & Lauren Lowe
Rennie Law Office
118 Chickasaw
Pauls Valley, OK 73075
email: rennielaw@yahoo.com

Respectfully submitted,

Carrie M. Leo, Plaintiff *pro se*
3199 Walworth Road
Walworth, NY 14568
tele: 315-538-8316
email: carrieleo15@gamil.com

Sworn to before me this 24th day of
January 2021.

_____
Public Notary

**EXHIBIT 4**
Leo v Lowe (Recusal)

IN THE DISTRICT COURT OF GARVIN COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA } SS.
GARVIN COUNTY

**F I L E D**

JAN 19 2021

AT 10:05 o'CLOCK _A_ M.
LAURA LEE, Court Clerk

BY _____ DEPUTY

| | | |
|---|---|---|
| CARRIE M. LEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CJ-2019-89 |
| | ) | |
| JEFFREY L. LOWE and | ) | |
| LAUREN F. LOWE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The above-entitled matter comes before the Court this 15th day of January, 2021 on *Plaintiff's Motion for Second Amended Writ for Replevin, Plaintiff's Motion to Compel Discovery* and *Plaintiff's Application for Contempt Citation* request and *Notice of Hearing* filed by Plaintiff January 4, 2021. Plaintiff specifically requested the proceedings be held remotely by Zoom at 2:30 p.m. central time. At the request of Plaintiff, the Court scheduled and sent a Zoom invitation for the date and time requested by Plaintiff. Defendants appeared through counsel, Robert Rennie, Jr. but Plaintiff failed to appear. After waiting approximately ten (10) minutes past the scheduled time, the Court cancelled the hearing. This is the second time Plaintiff has requested a remote hearing but has failed to appear. Therefore, the Court orders as follows:

1.    *Plaintiff's Motion for Second Amended Writ for Replevin* will be set for trial. Plaintiff and Defendants are ordered to appear in person consistent with 20 O.S. 130 which states:

> The use of videoconferencing technology, or the equivalent thereof, in the district courts is hereby authorized in all stages of civil or criminal proceedings and shall be governed by the Rules for District Courts of Oklahoma; provided, however, **such technology shall not be used in a jury trial or a trial before a judge.**

1

The Court will work with the parties to schedule a date and time that is suitable to both.

2.      *Plaintiff's Motion to Compel Discovery* is not ripe for hearing.  Adequate response time has not lapsed for Defendants to respond.  Once either: (1) the response time has elapsed with no response filed; or (2) a response is filed and provided to the Court, the Court will rule on the pleadings without further argument pursuant to District Court Rule 4.

3.      Plaintiff amended her *Application for Contempt Citation* the same day she filed her notice of hearing.  Therefore, Defendants had not been arraigned on the *Amended Application for Contempt Citation* and did not have notice of the same.  To promote expediency and judicial economy, the Court will arraign Defendants on *Plaintiff's Amended Application for Contempt Citation* on the date scheduled for trial directly before the trial is to begin.

**IT IS HEREBY ORDERED!**

_____
LEAH EDWARDS,
Judge of the District Court

2

EXHIBIT 5

Leo v Lowe (Recusal)

## IN THE DISTRICT COURT OF GARVIN COUNTY
## STATE OF OKLAHOMA

STATE OF OKLAHOMA  } ss.
GARVIN COUNTY

**FILED**

JAN 2 8 2021

AT___8:47__O'CLOCK __A__ M.
LAURA LEE, Court Clerk
BY_____DEPUTY

| | |
|---|---|
| CARRIE M. LEO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.:  CJ-2019-89 |
| | ) |
| JEFFREY L. LOWE and | ) |
| LAUREN F. LOWE, | ) |
| | ) |
| Defendants. | ) |

### ORDER SETTING NON-JURY TRIAL

Now on this _25_ day of January, 2021, this matter comes on before the Court on the parties request to set Non-Jury Trial. The Court FINDS that the same should be set.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** by the Court that the Non-Jury Trial in the above referenced matter is set for the _22nd_ day of _March_, 2021, at _1:30_ o'clock p.m. before the Honorable Leah Edwards in her courtroom located on the 3rd floor of the Garvin County Courthouse, 201 West Grant Street, Pauls Valley, Oklahoma.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** by the Court that all parties are to appear, in person, for the Non-Jury Trial.

_____
Judge of the District Court

EXHIBIT 6

Leo v Lowe (Recusal)

## IN THE DISTRICT COURT OF GARVIN COUNTY
## STATE OF OKLAHOMA

CARRIE M. LEO,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Case No.  CJ-2019-89
                                        )
JEFFREY L. LOWE and                     )
LAUREN F. LOWE,                         )
                                        )
                    Defendants.         )

STATE OF OKLAHOMA }  ss.
GARVIN COUNTY

**F I L E D**

FEB 2 3 2021

AT 11:30 O'CLOCK____ M,
LAURA LEE, Court Clerk
BY_____DEPUTY

## <u>ORDER RE: PENDING MOTIONS</u>

The above-entitled matter comes before the Court this 23rd day of February, 2021 on *Plaintiff's Motion Request to Set Case for Hearing, Plaintiff's request for Subpoena Ad Testificandum re: Joseph A. Maldonado-Passage, Plaintiff's request for Subpoena Ad Testificandum re: Eric Cowie, and Plaintiff's Notice of Objection to Setting Non-Jury Trial and Request for Disclosure of Ex-Parte Communications pursuant to 5 O.S. Rule 2.9.* After review of the pleadings, along with the applicable case and statutory law, the Court orders as follows:

1.    *Plaintiff's Motion Request to Set Case for Hearing* is hereby granted.  The case has already been for trial on the date requested.

2.    *Plaintiff's request for Subpoena Ad Testificandum re: Joseph A. Maldonado-Passage* is hereby denied.  Title 12, O.S. § 2004.1(A)(2) states: "A subpoena shall issue from the court where the action is pending, and it may be served at any place within the state." Plaintiff has provided no authority which permits this Court to issue a subpoena to be served on Josepha A. Maldonado-Passage as he is currently a federal inmate in Fort Worth, TX.

1

3.   *Plaintiff's request for Subpoena Ad Testificandum re: Eric Cowie* is hereby granted, in part. Title 12, O.S. § 2004.1(B)(1) states: "If the subpoena commands production of documents and things or inspection of premises from a nonparty before trial but does not require attendance of a witness, the subpoena shall specify a date for the production or inspection that is at least seven (7) days after the date that the subpoena [...]." The date for production on the requested subpoena is listed as February 25, 2021 which does not comply with the seven-day provision. Therefore, the Court has modified the date for production to March 8, 2021 to allow Plaintiff sufficient time to effectuate service on the named witness. In addition, the Court has modified Plaintiff's request that witness Eric Cowie appear remotely. Title 20 O.S. § 130 states: "The use of videoconferencing technology, or the equivalent thereof, in the district courts is hereby authorized in all stages of civil or criminal proceedings and shall be governed by the Rules for District Courts of Oklahoma; provided, however, such technology shall not be used in a jury trial or a trial before a judge." Therefore, the Court has stricken the word "remotely" from Plaintiff's proposed subpoena.

4.   *Plaintiff's Notice of Objection to Setting Non-Jury Trial and Request for Disclosure of Ex-Parte Communications pursuant to 5 O.S. Rule 2.9* is hereby denied. The Court affirmatively asserts that it has never had any communications whatsoever with the New York State Department of Environmental Conservation. Because these allegations appear to be the basis of Plaintiff's "objection to setting non-jury trial" and because Plaintiff has simultaneously filed her *Request to Set Case for Hearing*, Plaintiff's request is denied.

2

**IT IS HEREBY ORDERED!**

LEAH EDWARDS,
Judge of the District Court

## Certificate of Delivery

I hereby certify that on the 23rd day of February, 2021, I emailed and mailed, postage prepaid a true and correct copy of the foregoing to the following:

Carrie M. Leo
3199 Walworth Road
Walworth, NY. 14568
Email: carrieleo15@gmail.com
*Plaintiff*

Robert T. Rennie, Jr.
118 North Chickasaw
Pauls Valley, OK. 73075
*Attorney for Defendants*

Beth Jarman,
District Court Bailiff

4

**EXHIBIT 6**
Leo v Lowe (Recusal)

## **Certificate of Delivery**

I hereby certify that on the ___23rd___ day of February, 2021, I emailed and mailed, postage prepaid a true and correct copy of the foregoing to the following:

Carrie M. Leo
3199 Walworth Road
Walworth, NY. 14568
Email: carrieleo15@gmail.com
*Plaintiff*

Robert T. Rennie, Jr.
118 North Chickasaw
Pauls Valley, OK. 73075
*Attorney for Defendants*

Beth Jarman,
District Court Bailiff

4

EXHIBIT 7
Leo v Lowe (Recusal)

**IN THE DISTRICT COURT OF GARVIN COUNTY**
**STATE OF OKLAHOMA**

STATE OF OKLAHOMA
GARVIN COUNTY   } SS,

**F I L E D**

MAR 2 2 2021

AT. 8:41 O'CLOCK A .M.
LAURA LEE, Court Clerk
BY _____ DEPUTY

| | | |
|---|---|---|
| CARRIE M. LEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CJ-2019-89 |
| | ) | |
| JEFFREY L. LOWE and | ) | |
| LAUREN F. LOWE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The above-entitled matter comes before the Court this 19th day of March, 2021 on *Plaintiff's Motion to Compel Discovery* filed January 4, 2021 and *Plaintiff's Motion to Disqualify Defense Counsel, Request for Evidentiary Hearing and Second Request for Stay of Trial* filed March 8, 2021. The Court makes the following orders without further argument as provided for in District Court Rule 4.

### Plaintiff's Motion to Compel Discovery

On January 19, 2021 the Court ruled that *Plaintiff's Motion to Compel Discovery* was not ripe for hearing because adequate response time has not lapsed for Defendants to respond. Now on this 19th day of March, 2021, the Court takes notice of the court file and the pleadings therein and finds that Defendants have failed to respond to Plaintiff's Motion to Compel Discovery. Therefore, the Court grants *Plaintiff's Motion to Compel Discovery,* and orders Defendants to comply with Plaintiff's November 20, 2020 discovery requests within ten (10) days of today's date.

1

**Plaintiff's Motion to Disqualify Defense Counsel, Request for Evidentiary Hearing and Second Request for Stay of Trial**

*Plaintiff's Motion to Disqualify Defense Counsel, Request for Evidentiary Hearing and Second Request for Stay of Trial* is hereby denied. As held in Arkansas Valley State Bank v. Phillips, 2007 OK 78, ¶ 9, 171 P.3d 899, 903, "the heavy burden to establish the necessity of disqualifying counsel rests with the movant." Plaintiff cites no legal authority for disqualification of defense counsel, other than to allege improper *ex parte* communication with this Court. While the Court denies any such communications have taken place, Plaintiff is compelled by law to comply with Oklahoma District Court Rule 15 if she seeks recusal of the undersigned. No other legal basis for disqualification exists.

As held in *In re Towne*, 2000 OK 30 ¶ 14, 3 P.3d 154, 160-61:

> Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

While a party's right to choose his own counsel "may be set aside under limited circumstances," a showing must first be made that declining to do so "would threaten the integrity of the judicial process." *Id.* Therefore, Plaintiff's Motion to Disqualify Counsel is Denied.

Plaintiff further requests a "Stay of Trial"; however, it appears that Plaintiff has withdrawn that request after the Court offered to continue the trial to May 7, 2021. The Court has filed a Notice of Court's Communication with Pro Se Plaintiff and Counsel, and has attached the both parties' responses wherein both parties agree to the new date proposed by the Court. Therefore, Plaintiff's Second Request for Stay of Trial is denied.

**IT IS HEREBY ORDERED!**

LEAH EDWARDS,
Judge of the District Court

**Certificate of Delivery**

I hereby certify that on the $\underline{22^{nd}}$ day of March, 2021, I emailed and mailed, postage prepaid a true and correct copy of the foregoing to the following:

Carrie M. Leo
3199 Walworth Road
Walworth, NY. 14568
Email: carrieleo15@gmail.com
*Plaintiff*

Robert T. Rennie, Jr.
118 North Chickasaw
Pauls Valley, OK. 73075
*Attorney for Defendants*

_____
Beth Jarman,
District Court Bailiff

# M Gmail

Carrie Leo <caringforcottontails@gmail.com>

---

## FOIA 2020-APHIS-05777-F

1 message

---

**Perry, Robbie T - APHIS** <robbie.t.perry@usda.gov>     Thu, Sep 3, 2020 at 3:51 PM
To: "caringforcottontails@gmail.com" <caringforcottontails@gmail.com>

Dear Ms. Leo:

This is in response to your August 12, 2020, Freedom of Information Act (FOIA) for:

☐ The video of the lame fisher cat as taken during the inspection of G.W. Zoo/Jeff Lowe (Certificate No. 73-C-0230) in Wynnewood, Oklahoma by D.V.M./Animal Care Inspector, Bonnie Boone, on June 22, 2020. Although the ACI is listed as Ms. Boone, the video was taken by Dr. Cunningham. The Inspection No. is 2016082569350135. It appears this may have been the only video taken during this inspection. The inspection report was written by ACI Bonnie Boone on June 23, 2020. (Date Range for Record Search: From 06/22/2020 to 06/23/2020).

Your request was received in this office on August 13, 2020, and assigned case number FOIA 2020-APHIS-05777-F. On August 14, 2020, the Animal Care (AC) program began a search of their records. AC has searched for the requested information and found the responsive video. After a review of the video, it is being released to you in its entirety without any FOIA redaction edits affixed.

We have completed processing and have now closed your FOIA request. The response letter and video are attached.

Thank you,

Robbie Perry

Government Information Specialist

USDA APHIS LPA FOIA

Attachments

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

---

**2 attachments**

**20-05777 response letter.pdf**
244K

**20-05777 Video.mp4**
12107K

**EXHIBIT 8B**

Leo v Lowe (Recusal)

**USDA**

**United States Department of Agriculture**

Marketing and
Regulatory
Programs

Animal and Plant
Health Inspection
Service

Legislative and
Public Affairs

Freedom of
Information

4700 River Road
Unit 50
Riverdale, MD
20737-1232

August 31, 2020

Carrie Leo
3199 Walworth Road
Walworth, NY 14568
caringforcottontails@gmail.com

Re: FOIA Request 2020-APHIS-05777-F

Dear Ms. Leo:

This is in response to your August 12, 2020, Freedom of Information Act (FOIA) for:

- *The video of the lame fisher cat as taken during the inspection of G.W. Zoo/Jeff Lowe (Certificate No. 73-C-0230) in Wynnewood, Oklahoma by D.V.M./Animal Care Inspector, Bonnie Boone, on June 22, 2020. Although the ACI is listed as Ms. Boone, the video was taken by Dr. Cunningham. The Inspection No. is 2016082569350135. It appears this may have been the only video taken during this inspection. The inspection report was written by ACI Bonnie Boone on June 23, 2020. (Date Range for Record Search: From 06/22/2020 to 06/23/2020).*

Your request was received in this office on August 13, 2020, and assigned case number FOIA 2020-APHIS-05777-F. On August 14, 2020, the Animal Care (AC) program began a search of their records. AC has searched for the requested information and found the responsive video. After a review of the video, it is being released to you in its entirety without any FOIA redaction edits affixed.

If you need any further assistance or would like to discuss any aspect of your request please do not hesitate to contact Mr. Robbie Perry, the analyst who processed your request, at (301) 851-4105 or Robbie.t.perry@usda.gov. You may also contact our FOIA Public Liaison, Ms. Abbey Fretz, at (301) 851-4100. Additionally, you may contact the Office of Government Information Service (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road – OGIS
College Park, MD 20740-6601
Email: ogis@nara.gov / Phone: (202) 741-5770
Toll Free: (877) 684-6448 / Fax: (202) 741-5769

Additionally, if you are not satisfied with this response, you may submit an administrative appeal. During the pandemic, our offices are closed. Instead of physically mailing your appeal, we ask that in the short term you submit your appeals

An Equal Opportunity Provider and Employer

Ms. Carrie Leo
2020-APHIS-05777-F

electronically by email to FOIA.MRP.Appeals@usda.gov. Your appeal must be electronically transmitted within 90 days of the date of this response. Please reference case number 2020-APHIS-05777-F and the phrase "FOIA APPEAL" in the subject line of your email. To assist the Administrator in reviewing your appeal, please provide specific reasons why you believe modification of this determination is warranted.

Sincerely,

**KATHERINE VAGNONI**
Digitally signed by KATHERINE VAGNONI
Date: 2020.08.31 08:42:21 -04'00'

*for:*
Tonya G. Woods
Director
Freedom of Information & Privacy Act
Legislative and Public Affairs

Enclosure

2

**EXHIBIT 8C**
Leo v Lowe (Recusal)



Photographer: DR. CUNNINGHAM
Date and Time: 22-JUN-20
Inspection No: 2016082569850135
Description:
 Fisher cat limping and exposed grate in sub-floor of enclosure

Certificate: 73-C-0230
Legal Name:

JEFFREY LOWE

| 2020-APHIS-05155-F | Marshall, Teresa | PETA Foundation | 7/8/2020 | 8/5/2020 | PETA requests: 1. All inspection report appeal requests, the inspection report under appeal, and the final inspection report as a result of the appeal, for all licensees and registrants, from June 1, 2020 to June 30, 2020; 2. All written exchanges of information between agency personnel and records that document similar oral exchanges pertaining to the subject of the records specified above, as follows: • Letters, faxes, and similar correspondence; • Memoranda; • Emails on government-issued and personal devices; • Text messages on government-issued and personal devices; • Messages on instant messaging applications, including but not limited to Confide and Signal; • Messages on social media accounts; and • Notes of communications (e.g., notes of in-person conversations or telephone calls). 3. All written exchanges of information to/from the licensees, registrants, or their representatives and records that document similar oral exchanges pertaining to the subject of the records specified above, as follows: • Letters and faxes; • Memoranda; • Emails on government-issued and personal devices; • Text messages on government-issued and personal devices; • Messages on instant messaging applications, including but not limited to Confide and Signal; • Messages on social media accounts; and • Notes of communications (e.g., notes of in-person conversations or telephone calls). (Date Range for Record Search: From 06/01/2020 To 06/30/2020) |
| 2020-APHIS-05328-F | Marshall, Teresa | PETA Foundation | 7/17/2020 | 8/14/2020 | PETA requests a list of the three groups of all licensees as they had been randomly assigned for purposes of the new licensing roll out as mentioned in the July 15, 2020 USDA AC Webinar. (Date Range for Record Search: From 07/01/2019 To 07/17/2020) |
| 2020-APHIS-05436-F | Marshall, Teresa | PETA Foundation | 7/24/2020 | 8/21/2020 | PETA requests all videos and photographs in their original digital format taken during the June 22, 2020 inspection of 73-C-0230, Jeff Lowe DBA The Greater Wynnewood Zoo. (Date Range for Record Search: From 06/22/2020 To 07/24/2020) |
| 2020-APHIS-05234-F | Tuskes, Marlee | WIVB-TV | 7/10/2020 | 8/7/2020 | Dear FOIA Officer, Under the Freedom of Information Act, I would like to request any citation filed against Hidden Valley Animal Adventure Park at 2887 Royce Road, Varysburg NY, 14167. I am also requesting reports for any incident occurring at Hidden Valley Animal Adventure Park at 2887 Royce Road, Varysburg NY, 14167 that had to be investigated by the USDA. |



Photographer: **DR. CUNNINGHAM**
Date and Time: **22-JUN-20**
Inspection No: **2016082569850135**
Description:
Sub-floor grate exposed in porcupine enclosure under the water receptacle

Certificate: **73-C-0230**
Legal Name:

**JEFFREY LOWE**

# Exhibit 10A

# Exhibit 10B



**Monthly FOIA Log**
**07/01/2020 to 07/31/2020**

| Request ID | Requester Name | Organization | Received Date | Target Date | Request Description |
|---|---|---|---|---|---|
| 2020-APHIS-05481-F | Sullivan, Joseph | - | 7/28/2020 | 8/25/2020 | The records I am seeking are related to the USDA/APHIS classification of Georgia as an unapproved country for the importation of honey bees, honey bee queens, & honey bee germ-plasm. Under 7 CFR § 322.12. & 7 CFR § 322.4. These records might include a request from the country of Georgia for a risk assessment of the importation of honey bees, queens, or germ-plasm into the U.S. In addition, these records might include documents or emails produced by the USDA/APHIS regarding the risk assessment for importation from Georgia and how the decision was made to classify Georgia as an unapproved country for import. Dates - Jan 1st 1922 to present. I would greatly appreciate you getting these documents to me as soon as possible but do not have a specific deadline. |
| 2020-APHIS-05121-F | MacLeod, John | None | 7/2/2020 | 7/31/2020 | I am requesting the following documents held in/by the Washington State offices of APHIS: 1.) Copy of the complaint(s) about damages caused by geese on Shaw Island, WA that led to their culling by APHIS during the month of June 2020. 2.) Any and all internal or external emails and/or meeting notes that relate to the above complaint. 3.) Any and all documents related to APHIS/Washington's investigation of the complaint. 4.) Any and all documents related to the operation in June 2020 that led to the culling of a flock of geese on Shaw Island, including personnel and equipment involved, method of euthanization, disposable of remains and costs of the operation. 5.) Any documents related to the culling of geese in San Juan County, Washington, since July 2015. 6.) Any documents that report relative percentages of culling geese in Washington state in urban, suburban or rural areas in the past five years. |