IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY LOWE, LAUREN LOWE, GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and TIGER KING, LLC,<br><br>Defendants. | Case No. 20-cv-0423-JFH |

## OPINION AND ORDER

This matter is before the Court on the motion to intervene, filed by Carrie M. Leo ("Leo"), proceeding pro se. Dkt. No. 118.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged violations by Defendants of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA"). *See generally* Dkt. No. 2. From 2017 until approximately September 2020, Jeffrey Lowe ("Jeff Lowe") and Lauren Lowe (collectively, the "Lowes"), along with Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC"), operated a roadside zoo in Wynnewood, Oklahoma (the

"Wynnewood Location").[1] *See Big Cat Rescue*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (requiring that the property be vacated 120 days from the June 1, 2020 Order). Dkt. No. 28-30 at 3-14.

Inspectors from the Animal and Plant Health Inspection Services ("APHIS"), United States Department of Agriculture ("USDA"), performed inspections of the Wynnewood Location on June 22, 2020 and July 8, 2020. Dkt. No. 28-15; Dkt. No. 28-21. Reports from those inspections document numerous instances of animals at the facility being provided inadequate food, shelter, and veterinary care in violation of the AWA. *Id*. As a result of the documented violations, Jeff Lowe's AWA license was suspended on August 13, 2020. Dkt. No. 28-29 at 2-3. On August 17, 2020, the USDA filed an administrative complaint seeking permanent revocation of Jeff Lowe's AWA license and imposition of civil penalties. Dkt. No. 28-30. Jeff Lowe voluntarily terminated his AWA license on August 21, 2020.[2]

In an unrelated case, the United States District Court for the Western District of Oklahoma issued an order requiring Defendants to vacate the Wynnewood Location by October 1, 2020. *See Big Cat Rescue Corp. v. Schreibvogel*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (W.D. Okla. June 1, 2020). The Lowes, along with a business associate Eric Yano ("Yano"), formed Tiger King, LLC for the purpose of marketing their zoo which was to be moved to, and operated from, a location in Thackerville, Oklahoma (the "Thackerville Location"). Dkt. No. 56-3 at 1.

---

[1] The zoo at the Wynnewood Location, for a period of time, was also operated by Joe Maldonado-Passage, also known as "Joe Exotic," featured in the Netflix® series "Tiger King: Murder, Mayhem and Madness."

[2] Lauren Lowe does not have a USDA issued AWA exhibitor license; she and Defendant GWEAP, LLC had operated under Jeff Lowe's license. Dkt. No. 54 at 1.

On November 19, 2020, the United States initiated this case, alleging ongoing ESA and AWA violations and seeking declaratory and injunctive relief. Dkt. No. 2. Specifically, the United States sought an order: (1) declaring that Defendants had violated the ESA and the AWA; (2) enjoining Defendants from interfering with USDA inspections of their properties, exhibiting animals without a license and placing the animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals to the United States. *Id.* at 46-47.

On May 6, 2021 and May 17, 2021, two search and seizure warrants, issued by United States Magistrate Judge Steven P. Shreder, were executed. *See* 21-MJ-218, Dkt. No. 7; 21-MJ-244, Dkt. No. 7. Pursuant to these warrants, 68 big cats were seized from the Thackerville Location. *Id.*

On July 12, 2021, Leo, proceeding pro se, submitted a letter to the Court claiming that Defendants were in possession of eight animals that belonged to her: one African Porcupine; one Golden/Black Backed Jackal; two Virginia Opossums; two Fisher Cats; one Arctic Fox; and one Red Fox. Dkt. No. 108 at 1. According to Leo, she arranged to board the animals at the Wynnewood Location in April 2017 and has been trying to effectuate their return since September of 2018.[3] *Id.*; Dkt. No. 118 at 2. On August 26, 2021, Leo filed a motion to intervene in this case, pursuant to Federal Rule of Civil Procedure 24(a).[4] Dkt. No. 118. Meanwhile, on August 18,

---

[3] Leo filed suit against Defendants in 2019 and that case is still pending. Dkt. No. 118 at 2; *Leo v. Lowe et al.*, No. CJ-2019-00089 (Garvin Cty., Okla. 2019).

[4] The United States filed a response to the motion to intervene on September 9, 2021. Dkt. No. 125. Leo requested an extension of time to file a reply in support of the motion. Dkt. No. 135. On September 23, 2021, the Court entered an Order granting Leo leave to file her reply no later than September 30, 2021. Dkt 136. On the reply deadline, Leo filed an amended motion to intervene instead. Dkt. No. 140. The amended motion was stricken for failure to comply with the Court's September 23, 2021 Order. Dkt. No. 141.

2021, Defendants voluntarily relinquished the remaining animals at the Thackerville Location to the custody of the United States.  Dkt. No. 115; Dkt. No. 116.[5]

## II.   LEGAL STANDARD

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty., Utah v. United States*, 928 F.3d 877, 891 (10th Cir. 2019) (internal quotation marks and citation omitted).  The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks and citations omitted). "The factors of Rule 24(a)(2) are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation, and those factors are not rigid, technical requirements." *Id.*

## III.   DISCUSSION

### A. Timeliness

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Kane*, 928 F.3d at 890-91 (internal quotation marks and citation omitted).  "[D]elay in itself does not make a request for intervention untimely." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,

---

[5] The United States did not take possession of three dogs that the Lowes kept as pets. Dkt. No. 116 at 1.

619 F.3d 1223, 1235 (10th Cir. 2010). "The other factors in the test for untimeliness must also be considered." *Id.*

Here, Leo did not address the timeliness of her motion to intervene. *See generally* Dkt. No. 118. Consequently, the Court cannot determine the length of time since she knew of her claimed interest in the case. However, because no scheduling order has been entered and discovery has not commenced, the Court concludes any delay between the time Leo learned of her claimed interest and the time she filed her motion to intervene will not prejudice the parties in this case. Notably, the United States does not argue otherwise.[6] Thus, the first factor considered in determining whether Leo may intervene as of right weighs in favor of intervention.

**B. Leo's Interest in this Litigation; Potential Impairment of that Interest**

The Court considers the second and third factors in the intervention as a matter of right analysis together. *Utah Ass'n of Ctys. V. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) (recognizing that "the question of impairment is not separate from the question of the existence of an interest.") (internal quotation marks and citation omitted). To meet the interest requirement, a movant "must have an interest that could be adversely affected by the litigation." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007). The Court applies "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.*

---

[6] The United States points out that by failing to address the timeliness of her motion to intervene, Leo has not met her burden to demonstrate that the motion is timely. Dkt. No. 125 at 3 n. 4. However, the United States does not argue that the motion is untimely or that any prejudice would result from a delay in the motion's filing. *Id.* The Court also notes that Defendants, by failing to respond to the motion to intervene, have waived their right to object to its timeliness. *See* LCvR 7.1(d) ("Each party opposing a motion or objection shall file with the Court Clerk and serve upon all other parties a response within fourteen (14) days, if applicable, from the date the motion or objection was filed . . . In the discretion of the Court, any nondispositive motion or objection which is not opposed within fourteen (14) days may be deemed confessed.").

Leo claims that she has an interest in the outcome of this litigation because she owns eight exotic animals that have been boarded at Defendants' Wynnewood and Thackerville Locations. Dkt. No. 108 at 1-2; Dkt. No. 118 at 1-2.  In support of her claim, Leo has submitted:

1. Facebook messages between Leo and Joseph Maldonado-Passage ("Maldonado-Passage") regarding arrangements to transport and board exotic animals in 2017 [Dkt. No. 108 at 9-24];[7]

2. an affidavit by Maldonado-Passage regarding his agreement with Leo to transport and board exotic animals at the Wynnewood Location in 2017 [*Id.* at 26-31];[8]

3. Facebook messages Leo claims to have exchanged with the Lowes [*Id.* at 32-35];

4. text messages Leo claims to have exchanged with a transport company regarding the transport of exotic animals to the Wynnewood Location [*Id.* at 36-37];

5. documents Leo identifies as "Evidence of Ownership African Crested Porcupine/African Cape Porcupine," which include:  an advertisement for the sale of a male African Crested Porcupine; emails purportedly between Leo and the seller of an African Crested Porcupine; a Facebook comment in which Leo claims to own one of the porcupines exhibited at the Wynnewood Location; and a copy of a Paypal transaction history showing three outgoing payments from "Caring for Cottontails Wildlife Rescue & Rehabilitation, Inc." [*Id.* at 38-44];

6. documents Leo identifies as "Evidence of Ownership Black-backed Jackal/Golden Jackal," which include:  an advertisement for the sale of three Black Back Jackals; emails purportedly between Leo and the seller of a female Jackal; a still frame image purportedly from a video of a Jackal; a copy of a Paypal transaction history showing three outgoing payments and one credit to "Primate Babies;" and a Delta Airlines waybill for the transportation of one Jackal from "Exotics Unlimited" to Leo on May 12, 2016 [*Id.* at 45-56];

7. documents Leo identifies as "Evidence of Ownership Virginia Opossums," which include emails purportedly between Leo and an individual named Jan regarding two Opossums [*Id.* at 58-59];

---

[7] In an affidavit also submitted by Leo, Maldonado-Passage attests to authoring the Facebook messages submitted.  Dkt. No. 108 at 26-31.

[8] A duplicate copy of Maldonado-Passage's affidavit was submitted and docketed at Dkt. No. 108 at 92-97.

8. documents Leo identifies as "Evidence of Ownership Fisher Cats", which include: emails purportedly between Leo and the seller of two Fisher Cats; an illegible document that appears to be a veterinary certificate; a document dated November 29, 2014 (referencing two Fisher Cats and listing two addresses, two phone numbers, and two USDA exhibitor license numbers); and one photograph of a Fisher Cat [*Id.* at 60-75];

9. documents Leo identifies as "Evidence of Ownership Arctic Fox", which include photographs of an Arctic Fox and a Facebook post by Leo regarding an Arctic Fox [*Id.* at 76-79];

10. documents Leo identifies as "Evidence of Ownership Red Fox", which include photographs of a Red Fox and a Facebook post by Leo regarding a Red Fox [*Id.* at 80-84];

11. copies of Leo's USDA exhibitor licenses from 2018-2021 [*Id.* at 85-89]; and

12. an APHIS inspection report indicating that on April 21, 2016, Leo was in possession of six Virginia Opossums, one (African) Cape Porcupine, two Fisher Cats, one Arctic Fox, and twelve Red Foxes [*Id.* at 90-91].[9]

This evidence shows that, beginning on April 20, 2017, one African Crested Porcupine, one Black Backed Jackal, two Virginia Opossums, one Fisher Cat, one Arctic Fox, and one Red Fox, owned by Leo were boarded at the Wynnewood Location. *Id.* at 27. The United States acknowledges that, of the animals surrendered by Defendants at the Thackerville Location on August 18, 2021, three match the general description of the animals identified above; one African Crested Porcupine, one Jackal, and one Fisher Cat. Dkt. No. 125 at 5. However, other than the animals' species, Leo has not provided the Court with any identifying information that would allow it to determine whether the animals boarded for her in April 2017 at the Wynnewood Location are the same animals surrendered to the United States in 2021 from the Thackerville location. Moreover, the record in this case makes clear that Defendants regularly acquire and dispose of

---

[9] The APHIS inspection report also indicates that Ms. Leo was in possession of two North American Porcupines, one Groundhog/Woodchuck, two Eastern Grey Squirrels, one Shadow Chipmunk, and one American Badger, which are not relevant for purposes of Ms. Leo's motion to intervene. Dkt. No. 108 at 91.

7

exotic animals without maintaining complete or accurate records. Dkt. No. 28-27; Dkt. No. 28-35; Dkt. No. 72 at 3-4; Dkt. No. 83 at 3-5; Dkt. No. 93 at 2-3; Dkt. No. 137 at 3-9. Without information linking Leo's animals to those now in the United States' custody, Leo has not sufficiently demonstrated an interest that would be adversely affected by this litigation. *See San Juan Cty.*, 503 F.3d at 1199. Applying "practical judgment," the Court concludes that the strength of Leo's claimed interest and any potential impairment of that interest is too speculative to justify intervention in this case. *See id.* Indeed, Leo has not provided the Court with any evidence that any interest she might have would be impaired by a decision in this case. In light of this conclusion, the Court need not address the fourth factor in the intervention as of right analysis—whether Leo's interest is adequately represented by the existing parties in the case.

**THEREFORE, IT IS ORDERED** that Leo's motion to intervene [Dkt. No. 118], is **DENIED**.

**IT IS FURTHER ORDERED** that future submissions sent by email to the clerk by Leo, a non-party to this litigation, will not be filed in this case.

Dated this 6th day of October 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE