IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          Plaintiff,<br><br>v.<br><br>**JEFFREY LOWE, LAUREN LOWE, GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and TIGER KING, LLC,**<br><br>          Defendants. | Case No. 20-cv-0423-JFH |

### OPINION AND ORDER

This matter is before the Court on the motion to intervene, filed by People for the Ethical Treatment of Animals, Inc. ("PETA"). Dkt. No. 85.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged violations by Defendants of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA"). *See generally* Dkt. No. 2. From 2017 until approximately September 2020, Jeffrey Lowe ("Jeff Lowe") and Lauren Lowe (collectively, the "Lowes"), along with Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC"), operated a roadside zoo in Wynnewood, Oklahoma (the

"Wynnewood Location").[1] *See Big Cat Rescue*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (requiring that the property be vacated 120 days from the June 1, 2020 Order). Dkt. No. 28-30 at 3-14.

Inspectors from the Animal and Plant Health Inspection Services ("APHIS"), United States Department of Agriculture ("USDA"), performed inspections of the Wynnewood Location on June 22, 2020 and July 8, 2020. Dkt. No. 28-15; Dkt. No. 28-21. Reports from those inspections document numerous instances of animals at the facility being provided inadequate food, shelter, and veterinary care in violation of the AWA. *Id*. As a result of the documented violations, Jeff Lowe's AWA license was suspended on August 13, 2020. Dkt. No. 28-29 at 2-3. On August 17, 2020, the USDA filed an administrative complaint seeking permanent revocation of Jeff Lowe's AWA license and imposition of civil penalties. Dkt. No. 28-30. Jeff Lowe voluntarily terminated his AWA license on August 21, 2020.[2]

In an unrelated case, the United States District Court for the Western District of Oklahoma issued an order requiring Defendants to vacate the Wynnewood Location by October 1, 2020. *See Big Cat Rescue Corp. v. Schreibvogel*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (W.D. Okla. June 1, 2020). The Lowes, along with a business associate Eric Yano ("Yano"), formed Tiger King, LLC for the purpose of marketing their zoo which was to be moved to, and operated from, a location in Thackerville, Oklahoma (the "Thackerville Location"). Dkt. No. 56-3 at 1.

---

[1] The zoo at the Wynnewood Location, for a period of time, was also operated by Joe Maldonado-Passage, also known as "Joe Exotic," featured in the Netflix® series "Tiger King: Murder, Mayhem and Madness."

[2] Lauren Lowe does not have a USDA issued AWA exhibitor license; she and Defendant GWEAP, LLC had operated under Jeff Lowe's license. Dkt. No. 54 at 1.

On November 19, 2020, the United States initiated this case, alleging ongoing ESA and AWA violations and seeking declaratory and injunctive relief. Dkt. No. 2. Specifically, the United States sought an order: (1) declaring that Defendants had violated the ESA and the AWA; (2) enjoining Defendants from interfering with USDA inspections of their properties, exhibiting animals without a license and placing the animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals to the United States. *Id.* at 46-47. Counsel for Defendants executed waivers of the service of summons for each Defendant on January 8, 2021. Dkt. No. 117-2. Defendants filed a partial motion to dismiss on February 8, 2021, and a corrected partial motion to dismiss on February 15, 2021. Dkt. No. 69; Dkt. No. 73. PETA filed its motion to intervene in this case on April 28, 2021.[3] Dkt. No. 85.

On May 6, 2021 and May 17, 2021, two search and seizure warrants, issued by United States Magistrate Judge Steven P. Shreder, were executed. *See* 21-MJ-218, Dkt. No. 7; 21-MJ-244, Dkt. No. 7. Pursuant to these warrants, 68 Big Cats were seized from the Thackerville Location. *Id.*

After the Court denied Defendants' corrected partial motion to dismiss on July 26, 2021 [Dkt. No. 114], no responsive pleading was filed. On August 25, 2021, the United States filed a motion for entry of default by the Clerk. Dkt. No. 117. The motion was granted, and default was entered against Defendants on September 9, 2021. Dkt. No. 124. On August 18, 2021, Defendants voluntarily relinquished the remaining animals at the Thackerville Location to the custody of the United States. Dkt. No. 115; Dkt. No. 116.[4]

---

[3] Defendants' responsive pleading was due March 1, 2021. *See* Fed. R. Civ. P. 12(a)(4)(A) (providing that "the responsive pleading must be served within 14 days after notice of the court's action" where the court denies a motion to dismiss.").

[4] The United States did not take possession of three dogs that the Lowes kept as pets. Dkt. No. 116 at 1.

## II. LEGAL STANDARD

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty., Utah v. United States*, 928 F.3d 877, 891 (10th Cir. 2019) (internal quotation marks and citation omitted). The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks and citations omitted). "The factors of Rule 24(a)(2) are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation." *Id.*

Under Rule 24(b), permissive intervention may be granted when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to allow permissive intervention, courts are instructed to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III. DISCUSSION

### A. Intervention as a Matter of Right

#### 1. Timeliness

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Kane*, 928 F.3d at 890-91 (internal quotation marks and citation omitted). "[D]elay in itself does not make a request for intervention untimely." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,

619 F.3d 1223, 1235 (10th Cir. 2010). "The other factors in the test for untimeliness must also be considered." *Id.*

Here, PETA suggests that it learned of this litigation on or about November 30, 2020. Dkt. No. 86 at 8-9. It filed its motion to intervene approximately five months later, on April 28, 2021. Dkt. No. 85. As no scheduling order has been entered and discovery has not commenced in this case, the Court concludes any delay between the time PETA learned of its claimed interest and the time it filed its motion to intervene will not prejudice the parties in this case. Notably, the neither the United States nor Defendants argue otherwise.[5] Accordingly, the first factor considered in determining whether PETA may intervene as of right weighs in favor of intervention.

## 2. PETA's Interest in this Litigation; Potential Impairment of that Interest

The Court considers the second and third factors in the intervention as a matter of right analysis together. *Utah Ass'n of Ctys. V. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) (recognizing that "the question of impairment is not separate from the question of the existence of an interest.") (internal quotation marks and citation omitted). To meet the interest requirement, a movant "must have an interest that could be adversely affected by the litigation." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007). The Court applies "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.* PETA claims three distinct interests in this case, which will be addressed in turn.

---

[5] The Court notes that the United States and Defendants, by failing to respond to PETA's motion to intervene, have waived their right to object to its timeliness. *See* LCvR 7.1(d) ("Each party opposing a motion or objection shall file with the Court Clerk and serve upon all other parties a response within fourteen (14) days, if applicable, from the date the motion or objection was filed . . . In the discretion of the Court, any nondispositive motion or objection which is not opposed within fourteen (14) days may be deemed confessed.").

### a. PETA's Interest in Redressing Impairment of its Mission

PETA identifies itself as a non-profit organization "dedicating to protecting animals from abuse, neglect, and cruelty." Dkt. No. 86 at 5. According to PETA, this mission "has caused it to advocate for the animals under Defendants' care for years." *Id.* at 12. PETA claims that it has "a valid interest in redressing impairment of its mission by seeing that Defendants' practices receive legal condemnation and injunction" and by seeing "that all of the animals at issue are protected via surrender to reputable facilities." *Id.* at 13. PETA argues that this interest will be impaired "[i]f this action were to conclude without Defendants' practices being declared in violation of the ESA or otherwise subject to injunction, or if the animals at issue were to remain with Defendants relinquished to [unsuitable] facilities." *Id.* at 13, 16.

On January 15, 2021 this Court granted the United States' requests for injunctive relief based on evidence that Defendants were violating the ESA by providing unsanitary conditions, inadequate nutrition, untimely and inadequate veterinary care to the animals in their care. Dkt. No. 65 at 16-21, 33-35. In pertinent part, the Court ordered that Defendants relinquish all Big Cats one year old or younger, along with their respective mothers, to the United States to be transferred to reputable facilities. *Id.* at 34. And after PETA's motion to intervene was filed, the United States took possession of the remaining animals at the Thackerville Location for placement in reputable AWA-licensed facilities. *See* 21-MJ-218, Dkt. No. 7; 21-MJ-244, Dkt. No. 7; Dkt. No. 115; Dkt. No. 116. In light of this development, the Court finds that PETA's interest in redressing the impairment of its mission and protecting Defendants' animals from abuse, neglect, and cruelty is not implicated here.

### b. PETA's Litigation Interests

PETA claims that it has been engaged in litigation against Defendants for years and that the evidence in at least one of its other cases involving Jeff Lowe overlaps with the evidence in this case. Specifically, PETA references a case in the Southern District of Indiana, in which the court issued a preliminary injunction requiring Timothy Stark, a defendant in that case, to maintain the status quo by not disposing of any animals in his possession. In violation of the court's order, Stark gave four neonatal lions to the Lowes. *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML, 2020 WL 4448481, at *13 (S.D. Ind. Aug. 3, 2020). Thereafter, the court granted a permanent injunction terminating Stark's ownership rights in various animals, including the four lions in the Lowes' custody, which are now the subject of a pending motion for summary judgment in that case. *Id.*; Dkt. No. 86 at 13.

In this case, the United States submitted evidence that Nala, one of the four lions at issue in *Wildlife in Need*, was a victim of Defendants' ESA violations at the Wynnewood Location. Dkt. No. 28 at 15-16; Dkt. No. 28-17. PETA argues that because the evidence in this case overlaps with evidence relevant to disputed issues in *Wildlife in Need*, it has "a valid interest in ensuring that evidence presented in this proceeding does not erroneously place any material facts presented in [its] pending motion for summary judgment in dispute." Dkt. No. 86 at 14. This argument fails for two reasons. First, the Court notes that evidence of Nala's mistreatment was submitted in this case as evidence of a historical pattern of mistreatment of animals by Defendants. There is no indication that Nala or the other three lions received from Mr. Stark were in Defendants' possession at the inception of this case. In fact, according to the United States, three of the four lions at issue in *Wildlife in Need* were relinquished to a sanctuary in Colorado in September 2020

7

6:20-cv-00423-JFH   Document 147   Filed in ED/OK on 10/20/21   Page 8 of 11

and there is no evidence in the record as to the whereabouts of the fourth lion. Dkt. No. 28-1 at 3. Second, PETA has not identified any other evidentiary issues in any other cases that could be affected by the outcome of this case.

PETA also notes that in *Wildlife in Need*, the court recently issued an order rejecting the argument that Big Cat hybrids are not protected under the ESA. Dkt. No. 86 at 14; *see Wildlife in Need*, No. 4:17-CV-00186-RLY-DML, Dkt. No. 414 at 6-7 (S.D. Ind. Sept. 15, 2020). Because Defendants advanced a similar argument in this case [Dkt. No. 55 at 8], PETA claims that it has an interest in "preserving the precedent it has won" on the issue in the Southern District of Indiana. Dkt. No. 86 at 14. The Court agrees. However, because this Court has already rejected Defendants' argument that Big Cat hybrids are not protected under the ESA [Dkt. No. 65 at 8-9], issuing a ruling consistent with the court in *Wildlife in Need*, PETA's interest in preserving the precedent is not implicated here.

Finally, with regard to its litigation interests, PETA argues that it has an interest in holding Defendants accountable in this jurisdiction for representations made in this proceeding that contradict positions they have taken in litigation in other districts. Dkt. No. 86 at 14. Specifically, PETA claims that records produced by Defendants in this case contradict evidence, sworn testimony, and assertions of counsel made in litigation in the Southern District of Indiana. *Id.* PETA states that it has advised the court in the Southern District of Indiana of these discrepancies, but argues, without explanation, that doing so is not a sufficient remedy. *Id.* PETA's argument does not make clear, and the Court cannot discern, how PETA's interest in holding Defendants accountable for inconsistencies in their evidence and assertions across jurisdictions could be impaired by the outcome of this case.

8

### c. PETA's Financial Interest

PETA claims financial interest in the present litigation based on: (1) a contempt order, issued in the Western District of Oklahoma, requiring Lauren Lowe to pay PETA $6,851.92 and (2) PETA's anticipated success on its summary judgment motion in the Southern District of Indiana, which PETA expects will result in a fee award under the ESA's fee shifting provision. *Id.* at 15. PETA argues that it has a right to protect its ability to collect its outstanding and anticipated debt. *Id.* at 17. However, under Rule 24(a), the interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is related to the property that is the subject of the action." *Utah Ass'n of Counties*, 255 F.3d at 1252 (citation omitted).

Here, PETA's claimed financial interest is based on debt either incurred or anticipated in unrelated litigation. Dkt. No. 86 at 15. This is insufficient to satisfy the requirement of Rule 24(a) that PETA's interest have a direct and substantial connection to the subject of this action. *See City of Stilwell, Okla. v. Ozarks Rural Electric Cooperative Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (holding that intervention was not justified where the would-be intervenor's claimed financial interest was "too attenuated and [did] not satisfy the direct and substantial requirement of Rule 24(a)(2)." (internal quotation marks and citation omitted)); *New Mexico v. United States*, No. 11-CV-691 JP/WDS, 2012 WL 13081268, at *7 (D.N.M. Feb. 17, 2012) (same).

PETA has not sufficiently demonstrated it has any interest that would be adversely affected by this litigation. *See San Juan Cty.*, 503 F.3d at 1199. Applying "practical judgment," the Court concludes that the strength of PETA's claimed interests and any potential impairment of those interests are too speculative to justify intervention in this case as a matter of right. *See id.*

9

Accordingly, the Court need not address the fourth factor in the intervention as of right analysis—whether PETA's interest is adequately represented by the existing parties in the case.

### B. Permissive Intervention

PETA seeks to intervene in this action to address ongoing violations of the ESA and its implementing regulations arising out of Defendants' operation of the Wynnewood and Thackerville Locations. Dkt. No. 86-1 at 1. As such, PETA has shown that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). However, permissive intervention under Rule 24(b) is "a matter within the district court's discretion." *City of Stilwell*, 79 F.3d at 1043. Permissive intervention may be denied, despite common questions of law or fact, where an intervenor's interest is adequately represented by a party or where the intervention "would unduly delay and prejudice the adjudication of the rights of the parties as [intervenor] attempts to interject additional issues." *Id.*; *see Genesis Ins. Co. v. Crowley*, No. 05-CV-00335, 2005 WL 3989772, *5 (D. Colo. Aug. 31, 2005) (recognizing that under Rule 24(b), the court in its discretion may or may not permit intervention, "even if the Rule's requirements are otherwise satisfied").

In this case, the United States alleges that Defendants have violated and continue to violate the ESA by: (1) failing to maintain an attending veterinarian and establish and maintain programs of adequate veterinary care; (2) failing to provide food that is wholesome, palatable, free from contamination, and of sufficient quantity and nutritive value to maintain good health; (3) removing Big Cat cubs and ring-tailed lemur pups from their mothers prematurely; (4) forcing Big Cat cubs and ring-tailed lemur pups to engage in "play time" with one another and/or the public; (5) failing to maintain sanitary living conditions; (6) failing to maintain adequate and safe enclosures; (7)

possessing unlawfully "taken" ESA protected animals; and (8) delivering, carrying, and/or transporting unlawfully "taken" ESA protected animals. Dkt. No. 2 at 39-45.

PETA has submitted a proposed verified complaint for declaratory and injunctive relief ("proposed complaint") in which it alleges ESA violations nearly identical to those enumerated above. Dkt. No. 86-1 at 9-30. However, PETA's proposed complaint includes additional allegations that Defendants violated the ESA by crossbreeding BIG Cats and subjecting them to "unsafe and injurious handling." *Id.* at 27-29. Through its proposed complaint, PETA also seeks to add four defendants not named in the present action and to add claims for public nuisance, impairment of PETA's activities and programs, and diversion of PETA's resources. *Id.* at 1, 30-39. Given that default on the United States' claims against Defendants was entered on September 9, 2021 [Dkt. No. 124], the Court finds that intervention, and the resulting interjection of additional parties and issues into the case, would unduly delay and prejudice the adjudication of the rights of the parties.

**IT IS THEREFORE ORDERED** that PETA's motion to intervene [Dkt. No. 85], is **DENIED**.

Dated this 20th day of October 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE