IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br>                  v.<br><br>JEFFREY LOWE,<br><br>LAUREN LOWE,<br><br>GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and<br><br>TIGER KING, LLC,<br><br>    *Defendants*. | Case No. 6:20-cv-00423-JFH |

**JOINT STATUS REPORT**

On October 18, 2021, the Court ordered the United States and Defendants Jeffrey and Lauren Lowe ("the Lowes") (collectively, "the Parties") to confer regarding the Lowes' compliance with the Court's January 15, 2021, and May 14, 2021 Orders, and to file a joint status report. Dkt. 146. The Parties hereby provide this Joint Status Report pursuant to that Order. The Lowes maintain "that they have provided all documents that were in their possession and have no additional documents to provide" at this time. Exhibit 1 (email exchange between counsel). The United States has reviewed the Lowes' response, Dkt. 144, to the notice of continued noncompliance, Dkt. 137, as well as their most recent position, Exhibit 1, and maintain that Defendants are still not in compliance with the Court's previous orders.

1

**I.	Background**

On January 15, 2020, this Court granted a preliminary injunction to the United States which, among other things, required Defendants to provide the United States with certain records. Dkt. 65. As relevant here, Defendants were required to provide to the United States: (1) acquisition and disposition records for all animals added to or missing from their inventories since June 22, 2020; (2) acquisition and disposition records within seven days of any change to the December 16, 2020 inventory, including the birth or death of any animal; and (3) complete and accurate veterinary records within seven days of any animal being treated by a veterinarian. *See* Dkt. 65 at 33-34. After Defendants' failure to comply with these and other provisions of the Court's order, the Court issued a subsequent order enforcing these requirements on March 22, 2021. Dkt. 78. Defendants still did not come into compliance and continued to violate additional terms of the Court's orders as detailed in three previous notices filed by the United States. *See* Dkt. 83, 93, 106. At a May 12, 2021 show cause hearing and in the Court's subsequent order, Dkt. 97, the Court found Defendants in civil contempt for failing to comply with the Court's previous orders and imposed sanctions.

On September 16, 2021, the Court held a second show cause hearing. At the September 16 hearing and in a subsequent order, the Court directed the United States to provide Defendants with a list of outstanding documents required to be provided pursuant to the Court's previous orders. Dkt. 133. The Court also ordered Defendants to provide the outstanding documents to the United States within one business day of receiving the United States' notification. Dkt. 133. On September 16, 2021, the United States provided a list of the outstanding documents as well as a description of the regulatory requirements for a valid acquisition or disposition record via email to Mr. and Mrs. Lowe. *See* Dkt. 137-1.

On September 16, 17, and 18, Defendants provided some records to the United States, but remained out of compliance with the Court's January 15, 2021, March 22, 2021, May 14, 2021, and September 16, 2021 orders. On September 30, 2021, the United States filed a fourth notice of continued noncompliance. Dkt. 137. The Court directed Defendants to respond to that notice, Dkt. 139, which they did, *see* Dkt. 144. Because "[i]t is not apparent from its face whether the Lowes' response is sufficient to satisfy the United States' request for outstanding records," the Court ordered the Parties to confer and file a joint status report by November 1, 2021, "advising the Court as to: (1) the status of Defendants' compliance with the Court's January 15, 2021 and May 14, 2021 orders, and (2) if Defendants are in compliance, the date that compliance was completed." Dkt. 146 at 2.

## II.     Outstanding Record Issues

There are six outstanding record issues. The Parties' respective positions for each are stated below:

   1. **Accurate and complete acquisition records for the four cubs sent to Tiger Haven on December 13, 2020.**

**The Lowes' Position:**

"These cubs were born at the facility and therefore were not acquired. Any record of the births are more than one year old and are therefore not required to be kept or maintained pursuant to Section 2.80 of the Animal Welfare Act and Animal Welfare Regulations." Dkt. 144.

**The United States' Position:**

On September 18, 2021, Lauren Lowe sent an email stating that Moana and three other cubs were sent to Tiger Haven. Dkt. 137-2. However, the United States still does not have

acquisition records for the three cubs other than Moana, including their names, dates of birth, and parents.

Further, the Lowes' response is untenable. As an initial matter, under the AWA's regulations, acquisition records "shall include any offspring born of any animal while in [the exhibitor's] possession or under his or her control." 9 C.F.R. § 2.75(b)(1). The fact that the cubs were born at the facility therefore does not eliminate the Lowes' legal obligation to produce accurate and complete acquisition records. Moreover, the Court's January 15, 2021 Order required Defendants to "provide acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020, no later than January 22, 2021." Dkt. 65 at 33. The Court has explicitly held in its orders that the Lowes are required to produce records for "the *birth* or death of any animal." Dkt. 65 at 34 (emphasis added); Dkt. 78 at 10 ("acquisition includes the birth of new animals"). Indeed this requirement was reiterated in the Court's most recent order. *See* Dkt. 146 at 1. When the Court initially ordered Defendants to comply, it was well under one year from the date the cubs were born and from the date they sent the cubs Tiger Haven. The fact that the Lowes have remained out of compliance for more than a year does not eliminate their legal obligation to produce acquisition records for these three cubs.

   **2.    Accurate and complete disposition records for the alpaca, goat, and three sheep.**

**The Lowes' Position:**

"All records related to the disposition of these animals have been provided. They were given away free of charge to local farmers that responded to a Craigslist ad. The emails related to this transaction are encrypted through Craigslist's software and Defendants are unable to retrieve any information regarding these transactions." Dkt. 144.

**The United States' Position:**

On June 10, 2021, Attorney Card sent counsel for the government a purported disposition record for the five animals: one alpaca, one goat, and three sheep. Dkt. 106-5. In this record, Defendants represented that the ownership of these five animals was transferred from Jeffrey Lowe to his son, Taylor Lowe. Subsequently, the story changed to the one that the Lowes provide herein, i.e., the 5 animals were donated to unidentified "local farmers." Dkt. 137-5 at 8, Dkt. 144. In any event, the record is legally deficient because it does not include the identifying information for the recipient(s) or the date of transfer as required by 9 C.F.R. § 2.75(b)(1). Dkt. 137-5 at 8.

  **3. Accurate and complete disposition record for the sloth.**

**The Lowes' Position:**

"Christine[1] Jane Harkey is the full legal name of the recipient." Dkt. 144. In response to the October 19, 2021 email from Christina Jane Harkey stating that she neither received nor owned any sloth, *see* Exhibit 2 (Harkey's October 19, 2021 email), "[t]he Lowes are adamant that Ms. Harkey is the one who received the sloth, and have no knowledge as to why she would assert otherwise." Exhibit 1.

**The United States' Position:**

The United States had and continues to have reason to believe the disposition record is inaccurate. Dkt. 137-6.

On October 19, 2021, counsel for the United States received an email from Christina Jane Harkey stating that she "ha[d] never agreed to, nor accepted the receipt of the sloth in any

---

[1] The Lowes state that *Christine* Jane Harkey is the full legal name of the recipient, Dkt. 144, but it appears the full legal name is *Christina* Jane Harkey, *see* Exhibit 2.

5

manner whatsoever. [She] did not receive one, nor did [she] ever own one." Exhibit 2. Ms. Harkey states that the "response made by the Defendants Jeffrey and Lauren Lowe is untrue and entirely inaccurate." *Id.* Further, she contends that "[t]he statement made by the Lowes[] was done without [her] permission, cooperation or knowledge" and that she is "not an escape route for them, nor will [she] tolerate [her] good name to be used by them in an untruthful statement." *Id.* Ms. Harkey's unsolicited statement calls into question the veracity and accuracy of the Lowes' response and the sloth's disposition record. Moreover, if the sloth was never transferred to Ms. Harkey, it begs the question where the animal is and in what condition.

### 4. Accurate and complete disposition record for the two skunks.

**The Lowes' Position**:

"The skunks were given away free of charge to a local farmer that responded to a Craigslist ad. The emails related to this transaction are encrypted through Craigslist's software and Defendants are unable to retrieve any information regarding these transactions." Dkt. 144.

**The United States' Position:**

This response is legally deficient because it does not meet the requirements of 9 C.F.R. § 2.75(b)(1). This response also appears inconsistent with a previously submitted record identifying Clayton Hughes of Marrieta, Oklahoma as receiving the two skunks on October 1, 2020. Dkt. 135-7. The record does not identify the address of Mr. Hughes/the person to whom the animal was given, and therefore is legally deficient.

**5.  Accurate and complete disposition record for "Filet."**

**The Lowes' Position**:

"Filet was transferred to Tiger Haven.  The name was inadvertently omitted from the disposition form, but his name was included on the health certificate, which has been provided to the government."  Dkt. 144.

**The United States' Position:**

Lauren Lowe represented that "Filet" was sent to Tiger Haven on February 27, 2021, but the animal's name mistakenly did not appear on the disposition form.  Dkt. 137-2.  The Oklahoma Department of Agriculture, Food, & Forestry Certificate of Veterinary Inspection is not a substitute for a disposition record required by the Animal Welfare Act's regulations.  To date, the Lowes have not produced an accurate and complete disposition as required by 9 C.F.R. § 2.75(b)(1).  It is the Lowes' responsibility to create an accurate disposition record for Filet if one does not currently exist.

**6.  Accurate and complete disposition and/or acquisition records for "Mia."**

**The Lowes' Position**:

"Mia has been on inventory since we accepted all cats from Joseph Maldonado-Passage.  The government has been provided with accurate and complete disposition and acquisition records."  Dkt. 144.

**The United States' Position:**

Although the Lowes assert that "Mia has always been on [the] inventory," Dkt. 137-2, the Lowes also provided a disposition record showing "Mia" was sent to Tiger Haven on February 27, 2020.  Dkt. 137-5 at 4.  Tiger Haven also produced documentation that it received a female tiger named "Mia" on February 29, 2020.  Exhibit 3 (Tiger Haven Master List).  So, if "Mia" is

7

on the inventory and did not get transferred, the Lowes must submit an accurate disposition record for her and also identify the correct animal transferred to Tiger Haven in February 2020, and provide appropriate records for this extra animal. If Mia was sent to Tiger Haven but later returned, the Lowes must provide an acquisition record.

In sum, Defendants maintain "that they have provided all documents that were in their possession and have no additional documents to provide" at this time. Exhibit 1. The Court has pointed out on multiple occasions that it is Defendants' responsibility to create accurate records for the acquisition and disposition of animals, and therefore providing what is in their possession is not sufficient to satisfy the requirements of the Court. The United States maintains that Defendants are still not in compliance with the Court's previous orders for the aforementioned reasons.

**III.     The Parties Have Reached An Agreement In Principle to Settle the Case Against Defendants Jeffrey and Lauren Lowe.**

Although not specifically responsive to the Court's October 18, 2021 Order, the Parties hereby notify the Court that the Parties have reached an agreement-in-principle to settle the case against Defendants Jeffrey and Lauren Lowe. This agreement does not include Defendants Greater Wynnewood Exotic Animal Park, LLC, or Tiger King Park, LLC. This agreement is subject to review and approval by the requisite officials at the United States Department of Agriculture and the United States Department of Justice. If a final agreement can be reached, the Parties will promptly file the executed Consent Decree and proposed order for the Court's approval.

DATED: November 1, 2021    Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ *Briena Strippoli*
BRIENA STRIPPOLI
Trial Attorney
MARY HOLLINGSWORTH
Senior Trial Attorney
DEVON LEA FLANAGAN
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Briena.Strippoli@usdoj.gov | 202-598-0412
Mary.Hollingsworth@usdoj.gov | 202-598-1043
Devon.Flanagan@usdoj.gov | 202-305-0201
Fax: 202-305-0275

CHRISTOPHER J. WILSON
Acting United States Attorney
SUSAN BRANDON, Civil Chief
United States Attorney's Office
Eastern District of Oklahoma
520 Denison Avenue
Muskogee, OK 74401

*Attorneys for the United States of America*


/s/ *Jason D. May*
JASON D. MAY
May Law Office
9 W Main Street
Ardmore, OK 73401
jasonmayesq@yahoo.com | 580-223-9184
Fax: 580-798-3118

*Attorney for Defendants Jeffrey and Lauren Lowe*