# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY LOWE, LAUREN LOWE,
GREATER WYNNEWOOD EXOTIC
ANIMAL PARK, LLC, and TIGER KING,
LLC,

    Defendants.

Case No. 20-cv-0423-JFH

## OPINION AND ORDER

This matter is before the Court on the motion to intervene, filed by Carrie M. Leo ("Leo"), proceeding pro se. Dkt. No. 118.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from alleged violations by Defendants of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA"). *See generally* Dkt. No. 2. From 2017 until approximately September 2020, Jeffrey Lowe ("Jeff Lowe") and Lauren Lowe (collectively, the "Lowes"), along with Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC"), operated a roadside zoo in Wynnewood, Oklahoma (the

"Wynnewood Location").[1] *See Big Cat Rescue*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (requiring that the property be vacated 120 days from the June 1, 2020 Order). Dkt. No. 28-30 at 3-14.

Inspectors from the Animal and Plant Health Inspection Services ("APHIS"), United States Department of Agriculture ("USDA"), performed inspections of the Wynnewood Location on June 22, 2020 and July 8, 2020. Dkt. No. 28-15; Dkt. No. 28-21. Reports from those inspections document numerous instances of animals at the facility being provided inadequate food, shelter, and veterinary care in violation of the AWA. *Id.* As a result of the documented violations, Jeff Lowe's AWA license was suspended on August 13, 2020. Dkt. No. 28-29 at 2-3. On August 17, 2020, the USDA filed an administrative complaint seeking permanent revocation of Jeff Lowe's AWA license and imposition of civil penalties. Dkt. No. 28-30. Jeff Lowe voluntarily terminated his AWA license on August 21, 2020.[2]

In an unrelated case, the United States District Court for the Western District of Oklahoma issued an order requiring Defendants to vacate the Wynnewood Location by October 1, 2020. *See Big Cat Rescue Corp. v. Schreibvogel*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (W.D. Okla. June 1, 2020). The Lowes, along with a business associate Eric Yano ("Yano"), formed Tiger King, LLC for the purpose of marketing their zoo which was to be moved to, and operated from, a location in Thackerville, Oklahoma (the "Thackerville Location"). Dkt. No. 56-3 at 1.

---

[1] The zoo at the Wynnewood Location, for a period of time, was also operated by Joe Maldonado-Passage, also known as "Joe Exotic," featured in the Netflix® series "Tiger King: Murder, Mayhem and Madness."

[2] Lauren Lowe does not have a USDA issued AWA exhibitor license; she and Defendant GWEAP, LLC had operated under Jeff Lowe's license. Dkt. No. 54 at 1.

On November 19, 2020, the United States initiated this case, alleging ongoing ESA and AWA violations and seeking declaratory and injunctive relief. Dkt. No. 2. Specifically, the United States sought an order: (1) declaring that Defendants had violated the ESA and the AWA; (2) enjoining Defendants from interfering with USDA inspections of their properties, exhibiting animals without a license and placing the animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals to the United States. *Id.* at 46-47.

On May 6, 2021 and May 17, 2021, two search and seizure warrants, issued by United States Magistrate Judge Steven P. Shreder, were executed. *See* 21-MJ-218, Dkt. No. 7; 21-MJ-244, Dkt. No. 7. Pursuant to these warrants, 68 big cats were seized from the Thackerville Location. *Id.*

On July 12, 2021, Leo, proceeding pro se, submitted a letter to the Court claiming that Defendants were in possession of eight animals that belonged to her: one African Porcupine; one Golden/Black Backed Jackal; two Virginia Opossums; two Fisher Cats; one Arctic Fox; and one Red Fox. Dkt. No. 108 at 1. According to Leo, she arranged to board the animals at the Wynnewood Location in April 2017 and has been trying to effectuate their return since September of 2018.[3] *Id.*; Dkt. No. 118 at 2. On August 26, 2021, Leo filed a motion to intervene in this case, pursuant to Federal Rule of Civil Procedure 24(a).[4] Dkt. No. 118. Meanwhile, on August 18,

---

[3] Leo filed suit against Defendants in 2019 and that case is still pending. Dkt. No. 118 at 2; *Leo v. Lowe et al.*, No. CJ-2019-00089 (Garvin Cty., Okla. 2019).

[4] The United States filed a response to the motion to intervene on September 9, 2021. Dkt. No. 125. Leo requested an extension of time to file a reply in support of the motion. Dkt. No. 135. On September 23, 2021, the Court entered an Order granting Leo leave to file her reply no later than September 30, 2021. Dkt 136. On the reply deadline, Leo filed an amended motion to intervene instead. Dkt. No. 140. The amended motion was stricken for failure to comply with the Court's September 23, 2021 Order. Dkt. No. 141.

2021, Defendants voluntarily relinquished the remaining animals at the Thackerville Location to the custody of the United States. Dkt. No. 115; Dkt. No. 116.[5]

## II.  LEGAL STANDARD

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty., Utah v. United States*, 928 F.3d 877, 891 (10th Cir. 2019) (internal quotation marks and citation omitted). The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks and citations omitted). "The factors of Rule 24(a)(2) are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation, and those factors are not rigid, technical requirements." *Id.*

## III.  DISCUSSION

### A.  Timeliness

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Kane*, 928 F.3d at 890-91 (internal quotation marks and citation omitted). "[D]elay in itself does not make a request for intervention untimely." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,

---

[5] The United States did not take possession of three dogs that the Lowes kept as pets. Dkt. No. 116 at 1.

619 F.3d 1223, 1235 (10th Cir. 2010). "The other factors in the test for untimeliness must also be considered." *Id.*

Here, Leo did not address the timeliness of her motion to intervene. *See generally* Dkt. No. 118. Consequently, the Court cannot determine the length of time since she knew of her claimed interest in the case. However, because no scheduling order has been entered and discovery has not commenced, the Court concludes any delay between the time Leo learned of her claimed interest and the time she filed her motion to intervene will not prejudice the parties in this case. Notably, the United States does not argue otherwise.[6] Thus, the first factor considered in determining whether Leo may intervene as of right weighs in favor of intervention.

### B. Leo's Interest in this Litigation; Potential Impairment of that Interest

The Court considers the second and third factors in the intervention as a matter of right analysis together. *Utah Ass'n of Ctys. V. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) (recognizing that "the question of impairment is not separate from the question of the existence of an interest.") (internal quotation marks and citation omitted). To meet the interest requirement, a movant "must have an interest that could be adversely affected by the litigation." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007). The Court applies "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.*

---

[6] The United States points out that by failing to address the timeliness of her motion to intervene, Leo has not met her burden to demonstrate that the motion is timely. Dkt. No. 125 at 3 n. 4. However, the United States does not argue that the motion is untimely or that any prejudice would result from a delay in the motion's filing. *Id.* The Court also notes that Defendants, by failing to respond to the motion to intervene, have waived their right to object to its timeliness. *See* LCvR 7.1(d) ("Each party opposing a motion or objection shall file with the Court Clerk and serve upon all other parties a response within fourteen (14) days, if applicable, from the date the motion or objection was filed . . . In the discretion of the Court, any nondispositive motion or objection which is not opposed within fourteen (14) days may be deemed confessed.").

Leo claims that she has an interest in the outcome of this litigation because she owns eight exotic animals that have been boarded at Defendants' Wynnewood and Thackerville Locations. Dkt. No. 108 at 1-2; Dkt. No. 118 at 1-2. In support of her claim, Leo has submitted:

1. Facebook messages between Leo and Joseph Maldonado-Passage ("Maldonado-Passage") regarding arrangements to transport and board exotic animals in 2017 [Dkt. No. 108 at 9-24];[7]

2. an affidavit by Maldonado-Passage regarding his agreement with Leo to transport and board exotic animals at the Wynnewood Location in 2017 [*Id.* at 26-31];[8]

3. Facebook messages Leo claims to have exchanged with the Lowes [*Id.* at 32-35];

4. text messages Leo claims to have exchanged with a transport company regarding the transport of exotic animals to the Wynnewood Location [*Id.* at 36-37];

5. documents Leo identifies as "Evidence of Ownership African Crested Porcupine/African Cape Porcupine," which include: an advertisement for the sale of a male African Crested Porcupine; emails purportedly between Leo and the seller of an African Crested Porcupine; a Facebook comment in which Leo claims to own one of the porcupines exhibited at the Wynnewood Location; and a copy of a Paypal transaction history showing three outgoing payments from "Caring for Cottontails Wildlife Rescue & Rehabilitation, Inc." [*Id.* at 38-44];

6. documents Leo identifies as "Evidence of Ownership Black-backed Jackal/Golden Jackal," which include: an advertisement for the sale of three Black Back Jackals; emails purportedly between Leo and the seller of a female Jackal; a still frame image purportedly from a video of a Jackal; a copy of a Paypal transaction history showing three outgoing payments and one credit to "Primate Babies;" and a Delta Airlines waybill for the transportation of one Jackal from "Exotics Unlimited" to Leo on May 12, 2016 [*Id.* at 45-56];

7. documents Leo identifies as "Evidence of Ownership Virginia Opossums," which include emails purportedly between Leo and an individual named Jan regarding two Opossums [*Id.* at 58-59];

---

[7] In an affidavit also submitted by Leo, Maldonado-Passage attests to authoring the Facebook messages submitted. Dkt. No. 108 at 26-31.

[8] A duplicate copy of Maldonado-Passage's affidavit was submitted and docketed at Dkt. No. 108 at 92-97.

8. documents Leo identifies as "Evidence of Ownership Fisher Cats", which include: emails purportedly between Leo and the seller of two Fisher Cats; an illegible document that appears to be a veterinary certificate; a document dated November 29, 2014 (referencing two Fisher Cats and listing two addresses, two phone numbers, and two USDA exhibitor license numbers); and one photograph of a Fisher Cat [*Id.* at 60-75];

9. documents Leo identifies as "Evidence of Ownership Arctic Fox", which include photographs of an Arctic Fox and a Facebook post by Leo regarding an Arctic Fox [*Id.* at 76-79];

10. documents Leo identifies as "Evidence of Ownership Red Fox", which include photographs of a Red Fox and a Facebook post by Leo regarding a Red Fox [*Id.* at 80-84];

11. copies of Leo's USDA exhibitor licenses from 2018-2021 [*Id.* at 85-89]; and

12. an APHIS inspection report indicating that on April 21, 2016, Leo was in possession of six Virginia Opossums, one (African) Cape Porcupine, two Fisher Cats, one Arctic Fox, and twelve Red Foxes [*Id.* at 90-91].[9]

This evidence shows that, beginning on April 20, 2017, one African Crested Porcupine, one Black Backed Jackal, two Virginia Opossums, one Fisher Cat, one Arctic Fox, and one Red Fox, owned by Leo were boarded at the Wynnewood Location. *Id.* at 27. The United States acknowledges that, of the animals surrendered by Defendants at the Thackerville Location on August 18, 2021, three match the general description of the animals identified above; one African Crested Porcupine, one Jackal, and one Fisher Cat. Dkt. No. 125 at 5. However, other than the animals' species, Leo has not provided the Court with any identifying information that would allow it to determine whether the animals boarded for her in April 2017 at the Wynnewood Location are the same animals surrendered to the United States in 2021 from the Thackerville location. Moreover, the record in this case makes clear that Defendants regularly acquire and dispose of

---

[9] The APHIS inspection report also indicates that Ms. Leo was in possession of two North American Porcupines, one Groundhog/Woodchuck, two Eastern Grey Squirrels, one Shadow Chipmunk, and one American Badger, which are not relevant for purposes of Ms. Leo's motion to intervene. Dkt. No. 108 at 91.

exotic animals without maintaining complete or accurate records. Dkt. No. 28-27; Dkt. No. 28-35; Dkt. No. 72 at 3-4; Dkt. No. 83 at 3-5; Dkt. No. 93 at 2-3; Dkt. No. 137 at 3-9. Without information linking Leo's animals to those now in the United States' custody, Leo has not sufficiently demonstrated an interest that would be adversely affected by this litigation. *See San Juan Cty.*, 503 F.3d at 1199. Applying "practical judgment," the Court concludes that the strength of Leo's claimed interest and any potential impairment of that interest is too speculative to justify intervention in this case. *See id.* Indeed, Leo has not provided the Court with any evidence that any interest she might have would be impaired by a decision in this case. In light of this conclusion, the Court need not address the fourth factor in the intervention as of right analysis—whether Leo's interest is adequately represented by the existing parties in the case.

**THEREFORE, IT IS ORDERED** that Leo's motion to intervene [Dkt. No. 118], is **DENIED.**

**IT IS FURTHER ORDERED** that future submissions sent by email to the clerk by Leo, a non-party to this litigation, will not be filed in this case.

Dated this 6th day of October 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

**Carrie M. Leo**
3199 Walworth Road
Walworth, NY 14568
(315) 538-8316
carrieleo15@gmail.com

November 1, 2021

**VIA USPS CERTIFIED MAIL #7021 0350 0002 1877 0751**
**WITH RETURN RECEIPT #9590 9402 6639 1060 5398 71**
ATTN: Patrick Kearney - Court/Law Clerk, Chambers of Judge F. Heil
U.S. District Court for the Eastern District of Oklahoma
Ed Edmondson United States Courthouse
101 North Fifth Street
Muskogee, OK 74401-6205
ph: (918) 684-7940

RE: *U.S.A. v Lowe 6:2020-cv-00423*

Dear Mr. Kearney,

Enclosed for filing please find a *Motion for Leave to File a Motion for Reconsideration*, a *Motion for Reconsideration* and a *Notice of Appeal* and its supporting affidavit with Exhibits for the Court of Appeals of the Tenth Circuit.

Please feel free to contact me should you have any questions or concerns. Thank you for your assistance in this matter.

Sincerely,

Carrie M. Leo
*Plaintiff-Appellant*

enclosures

cc:
| VIA USPS AND EMAIL | VIA USPS AND EMAIL | VIA USPS AND EMAIL |
| --- | --- | --- |
| Mary Hollingsworth | Briena L. Strippoli | JASON D. MAY, ESQ. |
| (303) 844-1898 | Department of Justice | May Law Office |
| US Attorney (CO-Denver) | Environment and Nat'l Resources Division | 9 W. Main Street |
| 999 18th St, S Terrace Ste 370 | PO Box 76110 | Ardmore, OK 73401 |
| Denver, CO 80202 | Washington, DC 20044 | 580-223-9184 |
| (303) 844-1898 | (202) 598-0412 | 580-798-3118 (fax) |
| mary.hollingsworth@usdoj.gov | briana.strippoli@usdoj.gov | jasonmayesq@yahoo.com |
| ATTORNEY OR RECORD FOR THE PLAINTIFF U.S.A. | ATTORNEY OR RECORD FOR THE PLAINTIFF U.S.A. | ATTORNEY OF RECORD FOR THE DEFENDANTS JEFFREY & LAUREN LOWE |

"*An injustice committed against one person threatens all of us.*"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEFFREY LOWE, LAUREN LOWE, GREATER
WYNNEWOOD EXOTIC ANIMAL PARK, LLC,
and TIGER KING, LLC,

        Defendants.

CARRIE M. LEO

        Plaintiff-Intervenor,

v.

THE UNITED STATES OF AMERICA,
JEFFREY LOWE and LAUREN LOWE,

        Defendants-in-Intervention.

Case No. 20-cv-00423-JFH

**MOTION FOR LEAVE
TO FILE MOTION FOR
RECONSIDERATION**

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
REGARDING MOTION TO INTERVENE AS INTERESTED PARTY**

The undersigned party seeking to intervene was denied the entitlement of intervention by order of this Court dated October 6, 2021, docket entry #142. The undersigned pro se party has duly and thoughtfully reviewed, researched, and considered the Court's order and would move this court to reconsider its interlocutory ruling based on the foregoing legal authority set forth in order #142.

1. The trial court stated in its order that it expected a "Reply" from the undersigned, and *not* an amended Motion. For this lapse on the undersigned's part, it was an unintended mistake. A humble apology is offered to the Court for this lapse.

The Court cited to two (2) cases which constitute the uniform authority in the 10th Circuit regarding a party's entitlement to intervene. Proceeding with the verbatim, heart, spirit, and words of the Court's cited authority, specifically, *WildEarth*

1

*Guardians v National Park Service*, 604 F. 3d 1192 (10th Cir. 2010), the undersigned's request to said entitlement is wholly consistent with the authority.

2. Parties are apt to provide the Court with interpretations from cited cases. Quotes from the foregoing case will be provided as an easy means for the Court's edification. In asking the Court to reconsider this matter, the short of it is that I bought, own, have the documents/paperwork as to certain exotic animals and there are no denials of fact by the United States or the Defendants, Jeffrey Lowe and Lauren Lowe as to my claims. The Lowes do not presently have them nor do they assert a superior claim over my own nor have they asked for my claimed animals to be returned to them. The United States, the Plaintiff in this matter, has affirmed that it *does* have 3 animals that match the descriptions that I gave of my animals.

My request to intervene is to ONLY to get back my own animals, that I outright own. This Court is asked to reconsider the authority it relied upon in the order, DE#142, as it should be *stare decisis*, and therefore wholly determinative of this issue.

3. People in the 10th Circuit have been granted the right to intervene in national forestry cases when they have sought to be allowed the right/entitlement to participate in hunting elk in national forestry matters. Nicely put, a group of people who did not own a single antler on any of the heads of the elk in Rocky Mountain National Park did not agree with the way the National Park Services' planned to thin the elk herd. The Court said they (the Safari Club) had a **right** to intervene regardless of possible later/subsequent administrative proceedings. Taken directly from the case.

>  *Safari Club moved to intervene as a defendant in WildEarth's suit against the NPS. In its motion to intervene and supporting memorandum, Safari Club elaborated on its interest in supporting the NPS's elk management plan, including*
>
>  *(1) its endorsement of sustainable use wildlife management and conservation techniques,*
>
>  *(2) its members' interests in hunting and otherwise enjoying wildlife in and near RMNP,*
>
>  *(3) its approval of the use of volunteers in culling activities, and (4) its desire to prevent gray wolves from being used to control RMNP's elk population*

4. In the *WildEarth* Court's explanation of how it came to review the appeal of the Safari Club, it identifies the case of *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. DOI*, 100 F.3d 837, 839 (10th Cir.1996). In this case, the 10th Circuit said, "yes", you can intervene to argue for the protection of the Mexican Spotted Owl, and it does not matter that some kind of administrative process "might" later help you if you are not allowed to intervene. *WildEarth* at 1199-1200:

>  "In Coalition, we likewise held that the impairment element was satisfied, at least in part, based on environmental concerns. In that case, the prospective intervenor had a cognizable interest in the protection of the Mexican Spotted Owl. See Coalition, 100 F.3d at 838-39, 844. We found that interest would be impaired if the plaintiff was granted the relief it requested in its complaint-a declaration that the government failed to conduct a sufficient assessment of the owl's condition and an injunction removing the owl from the endangered species list. See id. at 844. In so concluding, we explained: The appellant could submit a new petition to protect the [o]wl; however, he would, "as a practical matter," be impaired by the stare decisis effect of the district court's decision."

5. The 10th Circuit has considered the Mexican Spotted Owl, and whether or not its environment "might" be harmed, to be enough of a worthy basis to intervene. The

3

10th Circuit has considered whether hunters should be able to hunt and influence the Nat'l Park Services plan to thin out the abundant elk in a US national forest and concluded that it too was a worthy basis to intervene. The reason is that this standard is supposed to be "liberal". Not to assume that it is a liberal standard, but rather to lift the exact words from the case: *"We follow a somewhat liberal line in allowing intervention.:* Wild EarthGuardians v. USFS, 573 F.3d 992, 995 10th Cir.2010).

6. The next point from the case authority identifies as critical is the intervenor's interest and whether the trial court could dispose of all that issues with all of the interested parties assembled for handling it. In this case, the trial court need only allow me to look at the 3 animals the Plaintiff, the United States, agrees that it has that match my property/animal descriptions. Of course, the trial court could rule that I could go see these animals, where they are assembled, and if necessary take a Magistrate, third party, or collect photographic evidence in case the Plaintiff disputes animal markings, color, patterns, or other identifiable traits. This is clearly the easiest means for disposing of this matter. Doing so, at this time while these animals are at the Plaintiff's holding facility BEFORE any further separation or potential loss occurs, is the simple solution. Verbatim from *WildEarth* at 1198:

> *"The 'interest' element is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons **as is compatible with efficiency and due process.**" The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court."*
> See *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir.2001).

7. On pages 10-11 of the Court's order, DE #142, the only reason offered by the trial

4

court was that despite all of the photos, emails, pictures, receipts, and other items as set forth in the Court's order on pgs. 6-7, twelve (12) different enumerated items in support of these animals being owned by me, that the undersigned lacked additional convincing evidence about animals that have been unlawfully withheld from me since 2017. Said just a bit differently, someone has their 5 prized thoroughbred horses seized or taken in 2017, and though that person/party knows who has them, where they are, and they have shown that their horses have been kept away from them for four (4) years, the Intervenor should be able to offer still better more contemporaneous evidence and descriptions about horses not seen in 4 years….. Extending this analogy, if a child was taken from a natural/biological parent 4 years ago, would the parent, an Intervenor, be denied the chance to get their child back because they cannot show more contemporaneous up-to-date photographs and evidence of their own child which they have not seen or been in the presence of in 4 years' time?  Again, the idea and standard *is* "Liberal".

8. This Court determined that a flight and/or a hotel for an overnight stay, at my own expense, travel to the Plaintiff's facility to see 3 potential animals that are very likely mine, is too speculative, and therefore I have relinquished, abandoned, or otherwise lost my property by *de facto* adjudication. The jackal is a species which comprises less than 1% of AWA licensees animals. What are the odds the Lowes/Defendant zookeepers traded my jackal for another jackal, and therefore this same jackal taken by the Plaintiff/USA from the Lowes is probably mine?

9. These odds, in juxtaposition with my interests, are at least as clear as the desire to hunt over-populated elk or wanting to protect the Mexican Spotted Owl. Yet the desire to *want* to hunt elk or keep a Mexican Spotted Owl's environment unchanged

5

and/or keep the species name on the "Endangered Species" list *WAS* a sufficient interest. Following this legal precedent of *WildEarth* is *stare decisis*.

10. Lastly, the final pages of *WildEarth* made it clear that since the Plaintiff, the United States, has identified 3 possible/potential animals that might be mine, because they are the type/breed and were received from the Defendants, the UnitedStates can now do nothing more to protect my interest. Intervention is about theparty asking to intervene, being allowed to intervene because no other party or entity will or intends to protect the interests at stake and/or in jeopardy. The Defendants kept the undersigned's animals away from her without a legal or a lawful basis then relinquished them to the United States. The Lowes will not protect my interest in my property rights. That only leaves the Plaintiff to possibly protect my interest. *WildEarth* at 1200, below, says that is inadequate for me: *"We have repeatedly recognized that it is "**on its face impossible**" for a government agency to carry the task of protecting the public's interests **and the private interests of a prospective intervenor**."* Id.; See also *WildEarth Guardians*, 573 F.3d at 996; *Clinton*, 255 F.3d at 1255. Where a government agency may be placed in the position ofdefending both public and private interests, the burden of showing inadequacy of representation *is satisfied*.

11. The undersigned will be compelled to file an appeal directly to the 10th Circuit by November 6, 2021, if the order, docket entry #141, remains as it presently stands. With just 60 words, this Court need only say, "this Court orders the Plaintiff to provide a time and location within 30 days for Carrie Leo to be put in direct proximity with the three (3) animals-at her own cost and expense. If the Plaintiff and Ms. Leo agree they are her animals, then for them to be immediately relinquished to

6

her within 5 calendar days' time". If this Court would kindly consider the simplicity and reasonableness of my request prior to November 6, 2021, this would alleviate the need to continuing doing so much when the finish line is right there in sight. Examining and collecting the grounds that may support my ownership of these three (3) particular animals is no burden at all to me, and my interests align with the case that governs non-parties right to intervene.

The *Motion for Reconsideration* is attached as **Exhibit 1**. Plaintiff asks this Court to allow the attached *Exhibit 1* be duly accepted, and rule on said Motion in expeditious fashion since it is unlikely that any of the parties' facts, relative to this Motion to Intervene, have changed.

Dated: November 1, 2021

Carrie M. Leo, Intervenor-*Plaintiff, Pro Se*
3199 Walworth Road
Walworth, New York 14568
(315) 538-8316 | carrieleo15@gmail.com

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 3rd day of November, 2021, a true and correct copy of the foregoing motion for the case captioned *U.S.A. v Lowe*, distinguished by the alpha-numeric identifier 6:2020-cv-00423-JFH, was served upon counsel of record for the plaintiff, Mary Hollingsworth and Briena Strippoli, and counsel of record for the defendant, Jason Day, by way of each's respective email addresses as well as by the U.S. Mail, postage pre-paid, to each's office address listed below. The U.S. District Court for the District of Eastern Oklahoma was also served via USPS certified mail numerically identified by #7021 0350 0002 1877 0751 with return receipt numerically identified by #9590 9402 6639 1060 5398 71.

**VIA USPS AND VIA EMAIL** mary.hollingsworth@usdoj.gov
**MARY HOLLINGSWORTH**
Senior Trial Attorney
(303) 844-1898
US Attorney (CO-Denver)
999 18th St, S Terrace, Ste 370
Denver, CO 80202
mary.hollingsworth@usdoj.gov

**VIA USPS AND EMAIL** briena.strippoli@usdoj.gov
**BRIENA L. STRIPPOLI**
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Wildlife & Marine Resources Section
P O Box 7611, Ben Franklin Station
Washington, DC 20044-7611
US Department of Justice (Civil-Commercial & Federal Programs)
1100 L St, NW
Washington, DC 20530
briena.strippoli@usdoj.gov | (202) 598-0412
Fax: (202) 305-0275
*Attorneys for Plaintiff the United States of America*

**VIA USPS AND EMAIL** jasonmayesq@yahoo.com
**JASON D. MAY, ESQ.**
MAY LAW OFFICE
9 W. Main Street
Ardmore, OK 73401
580-223-9184
580-798-3118 (fax)
jasonmayesq@yahoo.com
*Attorney of record for the
defendants Jeffrey & Lauren Lowe*

Carrie M. Leo, *Appellant pro se*
3199 Walworth Road
Walworth, NY 14568
(315) 538-8316
carrieleo15@gmail.com

4