IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY LOWE, LAUREN LOWE, GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC, and TIGER KING, LLC,<br><br>Defendants. | Case No. 20-cv-0423-JFH |

**OPINION AND ORDER**

This matter is before the Court following a hearing held to address the United States' claims that, despite being found in civil contempt and subject to sanctions after a May 12, 2021 contempt hearing, Defendants Jeffrey Lowe a/k/a Jeff Lowe ("Jeff Lowe"), Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP, LLC") and Tiger King, LLC (collectively referred to as "Defendants") continued to violate the Court's prior Orders. For the reasons set forth below, the Court finds Defendants were in civil contempt beginning May 14, 2021, and continuing through August 18, 2021, and imposes sanctions accordingly.

**BACKGROUND**

**A. 2020 Investigation and Initiation of this Lawsuit**

This case arises from alleged violations of the Endangered Species Act, 16 U.S.C. §§ 1531-44, ("ESA") and the Animal Welfare Act, 7 U.S.C. §§ 2131-59, ("AWA") by Defendants. *See generally* Dkt. No. 2. From 2017 until approximately September 2020, Jeff Lowe and Lauren

Lowe (collectively the "Lowes"), along with GWEAP, LLC, operated a roadside zoo in Wynnewood, Oklahoma (the "Wynnewood Location").[1] *See Big Cat Rescue Corp. v. Schreibvogel*, No. CIV-16-155-SLP, 2020 WL 2842845, at *3 (W.D. Okla. June 1, 2020); Dkt. No. 28-30 at 3-14.

Inspectors from the Animal and Plant Health Inspection Services ("APHIS"), United States Department of Agriculture ("USDA"), performed inspections of the Wynnewood Location on June 22, 2020 and July 8, 2020. Dkt. No. 28-15; Dkt. No. 28-21. Reports from those inspections documented numerous instances of animals at the facility being provided inadequate food, shelter, and veterinary care in violation of the AWA. *Id.* As a result of the documented violations, Jeff Lowe's AWA exhibitor's license was suspended on August 13, 2020. Dkt. No. 28-29 at 2-3. On August 17, 2020, the USDA filed an administrative complaint seeking permanent revocation of Jeff Lowe's AWA exhibitor's license and imposition of civil penalties. Dkt. No. 28-30. Jeff Lowe voluntarily terminated his AWA exhibitor's license on August 21, 2020.[2] In an unrelated case, the United States District Court for the Western District of Oklahoma issued an order requiring Defendants to vacate the Wynnewood Location by October 1, 2020. *See Big Cat Rescue Corp.*, No. CIV-16-155-SLP, 2020 WL 2842845 at *3. The Lowes, along with a business associate Eric Yano ("Yano"), formed Tiger King, LLC for the purpose of marketing their zoo which was to be moved to, and operated from, a location in Thackerville, Oklahoma (the "Thackerville Facility"). Dkt. No. 56-3 at 1.

---

[1] The zoo at the Wynnewood Location, for a period of time, was also operated by Joe Maldonado-Passage, also known as "Joe Exotic," featured in the Netflix® series "Tiger King: Murder, Mayhem and Madness."

[2] Lauren Lowe does not have an AWA exhibitor's license; she and Defendant GWEAP, LLC had operated under Jeff Lowe's license. Dkt. No. 54 at 1.

On November 19, 2020, the United States initiated this case, alleging ongoing ESA and AWA violations and seeking declaratory and injunctive relief. Dkt. No. 2. Specifically, the United States sought an order: (1) declaring that Defendants had violated the ESA and the AWA; (2) enjoining Defendants from interfering with further USDA inspections of their properties, exhibiting animals without a valid AWA license, and placing their animals' health and safety at risk; and (3) requiring Defendants to relinquish possession of all ESA protected animals to the United States. *Id.* at 46-47.

**B. The United States' Requests for Injunctive Relief**

On November 25, 2020, the United States filed a motion for preliminary injunction requesting that the Court: (1) require Defendants to provide a complete and accurate inventory of the animals in their custody or control; (2) prohibit Defendants from acquiring or disposing of any animals without notice to the United States and consent of the Court; (3) require Defendants to submit complete and accurate veterinary records; and (4) authorize USDA inspectors to conduct inspections of the Thackerville Facility. Dkt. No. 9; Dkt. No. 10 at 31-32.

On December 14, 2020, the parties filed a stipulation in which they agreed, in pertinent part, that: (1) on or before December 15, 2020, Defendants would provide the United States with a complete inventory of all ESA and AWA protected animals in their custody or control; (2) during the pendency of the case, Defendants would not acquire or dispose of any ESA or AWA protected animal without first meeting and conferring with the United States and obtaining leave of Court; (3) the USDA would conduct routine inspections of the Thackerville Facility, the first of which would occur on December 15, 2020; and (4) thereafter, the USDA would conduct unnoticed inspections of the Thackerville Facility, not to exceed one inspection every 21 days, at USDA's

discretion. Dkt. No. 23 at 2. The Court approved the parties' stipulation and vacated the December 16, 2020 hearing. Dkt. No. 25.

The United States filed a second motion for preliminary injunction on December 23, 2020, citing additional ESA and AWA violations following the December 15, 2020 inspection. Dkt. No. 27; Dkt. No. 28 at 13-14. In its motion, the United States requested that, pending adjudication of its claims, the Court order Defendants to: (1) immediately cease exhibiting animals without a valid AWA license; (2) retain an attending veterinarian, as required under the AWA; (3) provide acquisition and disposition records for all animals missing since the June 2020 inspection; (4) submit veterinary records after treatment of an animal; and (5) submit acquisition and disposition records after any change to the December 16, 2020 inventory. Dkt. No. 27; Dkt. No. 28 at 33-34.

On December 30, 2020, the United States also filed a motion for a temporary restraining order. The United States claimed that on or about December 21, 2020, Defendants authorized the euthanasia of a tiger cub with metabolic bone disease and secondary fracture without conferring with the United States or seeking leave of Court, in violation of the parties' stipulation. Dkt. No. 32 at 23-24. In its motion for temporary restraining order, the United States sought an order requiring Defendants to relinquish custody and control of all big cat cubs one year old or younger, along with the cubs' respective mothers, to the United States for temporary placement at reputable facilities selected by the United States. Dkt. No. 32 at 32.

The Court held an evidentiary hearing on the United States' requests for a preliminary injunction and a temporary restraining order. Dkt. No. 35. Based on the arguments and evidence presented at the hearing, the Court concluded that the United States was entitled to preliminary injunctive relief. Dkt. No. 65 at 32. On January 15, 2021, the Court entered an Order requiring that Defendants: (1) immediately cease exhibiting animals protected by the ESA and the AWA

without an AWA exhibitor's license; (2) retain a qualified attending veterinarian under formal arrangements consistent with the requirements of 9 C.F.R. §§ 1.1, 2.40, no later than January 29, 2021; (3) provide acquisition and disposition records for any and all animals added to or missing from their inventories since June 22, 2020, no later than January 22, 2021; (4) submit complete and accurate veterinary records to counsel for the United States within 7 days of any animal being treated by a veterinarian; (5) submit acquisition and disposition records to counsel for the United States within 7 days of any change to the animal inventory; (6) immediately relinquish all big cats one year old or younger, along with their respective mothers, to the United States; (7) not acquire or dispose of any ESA or AWA protected animal without first conferring with the United States and obtaining leave of Court; and (8) permit the USDA to conduct routine inspections of the Thackerville Facility up to every three weeks, at the USDA's discretion. Dkt. No. 65 at 33-34.

### C. Defendants' Noncompliance with the Court's Orders

On February 12, 2021, the United States filed a motion to enforce the Court's January 15, 2021 Order, asserting that Defendants were not complying with the Court's Order in that they were not: (1) providing the requisite veterinary care under the AWA; (2) conferring and seeking leave of court before acquiring or disposing of protected animals; or (3) providing complete and accurate acquisition and disposition records. Dkt. No. 72 at 3-10. The Court granted the motion and set a show cause hearing for May 12, 2021. Dkt. No. 78.

On April 12, 2022, the United States filed a notice of noncompliance, again raising concerns regarding Defendants' compliance with the Court's prior Orders with respect to the provision of veterinary care, the unauthorized acquisition and disposition of animals, and the failure to provide acquisition and disposition records. Dkt. No. 83. In the April notice, the United

States alerted the Court to new instances of noncompliance, specifically, the unauthorized acquisition of protected animals through breeding. *Id.* at 3-4.

On May 11, 2022, the United States filed a notice of continued noncompliance, reiterating its concerns regarding the provision of veterinary care, the unauthorized acquisition and disposition of animals, and the failure to produce acquisition and disposition records. Dkt. No. 93. The United States alerted the Court to new instances of noncompliance, specifically, the continued exhibition of the animals to the public, the unauthorized acquisition of protected animals through breeding, and the failure to produce acquisition and disposition records for recent inventory changes. *Id.* at 2-4.

The Court held a show cause hearing on May 12, 2022, and found Defendants in contempt for their continued violations of its prior Orders. As a coercive sanction, the Court fined Defendants $1,000 per day beginning May 14, 2022, to terminate upon Defendants' compliance. Dkt. No. 97 at 8. The Court also allowed the United States to submit an accounting of damages it incurred as a result of Defendants' noncompliance. On May 28, 2021, the United States filed a motion for costs, seeking to recover $40,757.16 in damages through the date of the show cause hearing. Dkt. No. 100.

Meanwhile, on May 6, 2021 and May 17, 2021, two search and seizure warrants were issued in a separate case. *See* 21-MJ-218, Dkt. No. 7; 21-MJ-244, Dkt. No. 7. Upon executing the warrants, the United States seized 68 big cats from the Thackerville Facility. *Id.*

On June 18, 2021, the United States filed a second notice of continued noncompliance. Dkt. No. 106. The United States raised concerns regarding new instances of noncompliance, specifically, the failure to provide necessary veterinary care to certain protected animals, the unauthorized acquisition of protected animals through breeding, and the failure to provide

acquisition and disposition records for recent inventory changes. *Id.* The United States requested that it be permitted to file a supplemental motion for costs it had incurred as a result of Defendants' continued noncompliance. *Id.* Alternatively, the United States offered to withdraw its initial motion for costs if Defendants would permanently surrender the remaining animals in their possession. *Id.* The Court set a hearing for September 16, 2021, to address the issues raised in the United States' June notice. Dkt. No. 111.

On August 16, 2021, the United States advised the Court that the Lowes had agreed to surrender the remaining animals in their possession. Dkt. No. 115. And on August 23, 2021, the United States filed a status report notifying the Court that it had taken possession of the remaining animals housed at the Thackerville Facility. Dkt. No. 116.[3]

At the September 16, 2022 hearing, the Court heard from the parties regarding the compliance issues raised in the United States' June notice. Dkt. No. 106. Because no protected animals remained at the Thackerville Facility, the only disputed issue was whether the United States had received complete and accurate veterinary, acquisition, and disposition records for the animals that had been housed there up to August 18, 2021. The Court ordered the United States to provide the Lowes with a list of records it considered to be outstanding and ordered the Lowes to provide the outstanding records identified by the United States within one business day of receiving the list. Dkt. No. 134. On September 30, 2021, the United States filed a second notice of continued noncompliance, noting that it had provided a list of outstanding records to the Lowes as ordered, but that certain records remained outstanding. Dkt. No. 137 at 9. The Lowes

---

[3] The United States did not take possession of three dogs that the Lowes kept as pets. Dkt. No. 116.

7

responded, asserting that they had provided all of the relevant records in their possession. Dkt. No. 144.

### D. Disposition of Parties and Claims

Because no responsive pleading was filed after the Court denied Defendants' corrected partial motion to dismiss on July 26, 2021 [Dkt. No. 114], the United States filed a motion for a Clerk's entry of default on August 25, 2021. Dkt. No. 117. The Clerk's entry of default was filed on September 9, 2021 [Dkt. No. 124], and the United States moved for default judgment on October 13, 2022. Dkt. No. 143. Defendants did not respond to the motion.[4]

On November 1, 2021, the United States and the Lowes filed a joint status report advising that they had conferred, and that while they were not in agreement as to whether Defendants had fully complied with the Court's prior Orders, they had reached an agreement to settle the action. Dkt. No. 148. On December 6, 2021, the Unites States submitted a consent decree between the it and the Lowes, in which the Lowes agreed to: (1) forfeit their right to and interest in the ESA protected animals in the United States' possession;[5] (2) permanently refrain from exhibiting any animals covered by the AWA; (3) permanently refrain from applying for any AWA license or registration in their individual capacities or through a corporate entity and the United States agreed to: (1) dismiss all counts asserted in the Complaint against the Lowes; and (2) withdraw its motion for costs. Dkt. No. 155 at 5-7.

---

[4] Defendants' responsive pleading was due October 27, 2021. *See* LCvR 7.1(d) ("Each party opposing a motion or objection shall file with the Court Clerk and serve upon all other parties a response within fourteen (14) days, if applicable, from the date the motion or objection was filed.").

[5] According to the Consent Decree, this includes 82 big cats, 1 jaguar, and 11 rig-tailed lemurs. Dkt. No. 149 at 5.

The Court approved the consent decree, and *the United States dismissed its claims against the Lowes and withdrew its motion for costs*. Dkt. No. 156; *Dkt. No. 160; Dkt. No. 161.* The Court also granted the United States' motion for default judgment against Defendants GWEAP, LLC and Tiger King, LLC, noting that, "[n]otwithstanding dismissal of the United States' claims, and the withdraw of its motion for damages, the issue remains concerning calculation of the contempt sanctions issued by the Court against the Lowes pursuant to the Court's May 14, 2021 Order." Dkt. No. 157 at 4 n. 5.

**AUTHORITY**

As discussed in its May 14, 2021 Order, the Court "may exercise broad discretion in using its contempt power to assure compliance with its Orders." *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001); *see also* 18 U.S.C. § 401(3) (stating that courts "have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"). Civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998) (citations omitted). Civil contempt sanctions can be imposed "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Id.* (citation omitted).

Civil contempt sanctions are warranted where the Court finds "by clear and convincing evidence, that a valid court order existed, that [the defendant] had knowledge of the order, and that [Defendants] disobeyed the order." *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1210 (10th Cir. 2011). The Court may impose coercive civil fines "as long as the offending party can avoid them by complying with the court's order." *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d

1438, 1443 (10th Cir. 1998). In setting the amount of the fine, the Court should "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers of Am.*, 330 U.S. at 304.

Coercive sanctions for civil contempt must meet three conditions. First, the contemnor must always be able to purge the contempt through compliance. *See Hicks ex rel. Feiock*, 485 U.S. 624, 650 (1988) (finding that the respondent "carries something even better than the 'keys to the prison' in his own pocket: as long as he meets the conditions of his informal probation, he will never enter the jail"). Second, civil contempt sanctions imposed to coerce compliance with a court order "cannot be any greater than necessary to ensure such compliance" and cannot be so excessive as to be punitive in nature. *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991). Third, the sanction must remain coercive: "[W]hen civil contempt sanctions lose their coercive effect, they become punitive and violate the contemnor's due process rights." *In re Lawrence*, 279 F.3d 1294, 1300 (11th Cir. 2002) (citation omitted). Generally, sanctions imposed in the form of a fine are remedial when paid to the complainant, and punitive when paid to the court. *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). However, a fine payable to the court is also considered remedial "when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Id.*

## DISCUSSION

In this case, the Court's objective in granting injunctive relief was to enforce the protections provided under the ESA, which was enacted to provide a mechanism for the preservation of endangered species, and under the AWA, which was enacted to ensure that animals intended for exhibition are provided humane care and treatment. 7 U.S.C. § 2131(1); 16 U.S.C. § 1531(b). A

$1,000 per day fine was imposed as a coercive sanction to address Defendants' repeated refusal to comply with the injunctive relief ordered. Dkt. No. 97. To the Court's knowledge, the parties never agreed on the issue of Defendants' compliance with the requirement to produce certain records. However, the Court finds that substantial compliance with its prior Orders was effected on August 18, 2021, when the remaining animals at the Thackerville Facility were surrendered to the United States and were no longer at risk of harm due to Defendants' ongoing ESA and AWA violations. Accordingly, the previously imposed fine of $1,000 per day will be levied for the 96-day period between May 14, 2021, when Court initiated the sanction, and August 18, 2021, when Defendants came into substantial compliance with the Court's Orders.

IT IS THEREFORE ORDERED that Defendants shall pay Ninety-Six Thousand Dollars ($96,000) to the United States District Court for the Eastern District of Oklahoma no later than July 5, 2022.

Dated this 2nd day of June 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE